# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF OKLAHOMA

[1] BLACK EMERGENCY RESPONSE TEAM, et al. )
                                 )
                  *Plaintiffs*, )
v.                                   )
                                 )    Case No. CIV-21-1022-G
[1] JOHN O'CONNOR, in his official capacity as )
Oklahoma Attorney General, et al. )
                                 )
                  *Defendants*. )

**DEFENDANTS, BOARD OF REGENTS FOR THE UNIVERSITY OF OKLAHOMA, MICHAEL CAWLEY, FRANK KEATING, PHIL ALBERT, NATALIE SHIRLEY, ERIC STEVENSON, ANITA HOLLOWAY AND RICK NAGELS', MOTION TO DISMISS PLAINTIFFS' <u>AMENDED COMPLAINT AND BRIEF IN SUPPORT</u>**

M. DANIEL WEITMAN, OBA #17412
TINA S. IKPA, OBA #32193
University of Oklahoma
Office of Legal Counsel
660 Parrington Oval, Suite 213
Norman, Oklahoma  73109
Telephone: (405) 325-4124
Facsimile: (405) 325.7681
E-Mail: dan.weitman@ou.edu
E-Mail: tsikpa@ou.edu

*ATTORNEYS FOR DEFENDANT BOARD OF REGENTS FOR THE UNIVERSITY OF OKLAHOMA, AND FOR DEFENDANTS MICHAEL CAWLEY, FRANK KEATING, PHIL ALBERT, NATALIE SHIRLEY, ERIC STEVENSON, ANITA HOLLOWAY AND RICK NAGEL*

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** .................................................................................. iii

**BRIEF IN SUPPORT** ......................................................................................... 1

    **PROPOSITION I: BOARD OF REGENTS ARE NOT SUBJECT TO SUIT
UNDER 42 U.S.C. §1983** ............................................................................. 3

    **PROPOSITION II: PLAINTIFFS LACK STANDING IN REGARD TO
CLAIMS AGAINST THE BOARD MEMBERS** ................................................. 4

    **PROPOSITION II(A): THERE IS NO INJURY IN FACT** ................................. 6

    **PROPOSITION II(B): FOR THE SAME REASONS THAT PLAINTIFFS
LACK AN INJURY IN FACT, THEIR CLAIMS ALSO LACK IN
CAUSATION** ............................................................................................... 10

    **PROPOSITION II(C): PLAINTIFFS' INJURY IS NOT REDRESSIBLE BY
A JUDGMENT IN THEIR FAVOR** ................................................................. 11

    **PROPOSITION III: PLAINTIFFS FAIL TO STATE A CLAIM UPON
WHICH RELIEF CAN BE GRANTED** ............................................................ 12

**CONCLUSION** ............................................................................................... 16

**CERTIFICATE OF SERVICE** ......................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................ 13

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ........................................................................ 13

*Clapper v. Amnesty International USA,*
   568 U.S. 398 (2013) .......................................................................... 8

*D.L.S. v. Utah,*
   374 F.3d 971, 975 (10th Cir. 2004) .................................................. 7

*ETP Rio Rancho Park, LLC v. Grisham,*
   517 F.Supp.3d 1177 (D. N.M. 2021) .............................................. 15

*Harris v. Champion,*
   51 F.3d 901 (10th Cir. 1995) ............................................................ 4

*Hensel v. Office of Chief Administrative Hearing Officer,*
   38 F.3d 505 (10th Cir. 1994) ............................................................ 4

*Hill v. Colorado,*
   530 US 703 (2000) ..................................................................... 14-15

*Initiative Referendum Institute v. Walker,*
   450 F.3d 1082 (10th Cir. 2006) ........................................................ 7

*Kansas Penn Gaming, LLC v. Collins,*
   656 F.3d 1210 (10th Cir. 2011) ...................................................... 13

*Khalik v. United Airlines,*
   671 F.3d 1188 (10th Cir. 2012) ...................................................... 13

*Laird v. Tatum,*
   408 U.S. 1 (1972) ......................................................................... 7,10

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) .......................................................................... 5

*McLaughlin v. Bd. of Trs. of State Colls. of Col.,*
 215 F.3d 1168 (10th Cir. 2000). .............................................................................. 4

*Nova Health Systems v. Gandy,*
 416 F.3d 1149 (10th Cir. 2005) .............................................................................. 5

*Robbins v. Oklahoma,*
 519 F.3d 1242 (10th Cir. 2008) ............................................................................ 13

*U.S. v. Stevens,*
 559 US 460 (2010) ................................................................................................ 14

**STATE COURT CASES**

*Board of Regents of the University of Oklahoma v. Baker,*
 638 P.2d 464 (Okla. 1981) ...................................................................................... 9

*Franco v. State, ex rel. Board of Regents of the University of Oklahoma,*
 482 P.3d 1 (Okla. Civ. Ct. App 2020) .................................................................... 9

*Young v. Station 27, Inc.,*
 404 P.3d 829 (Okla. 2017) ................................................................................. 9-10

**STATUTES AND CONSTITUTIONAL PROVISIONS**

42 U.S.C. §1983 ............................................................................................... 1,3,4

Okla. Const. Art. 13, §8 ......................................................................................... 4,6

Okla. Const. Art. 13(A), §2 ...................................................................................... 6

70 O.S. §3302 .......................................................................................................... 4

70 O.S. §3305 ..................................................................................................... 9, 12

COME NOW the Defendants, Board of Regents for the University of Oklahoma (Board)[1] and Michael Cawley, Frank Keating, Phil Albert, Natalie Shirley, Eric Stevenson, Anita Holloway and Rick Nagel, in their official capacities (Board Members), and, pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6), and move this Honorable Court for an order dismissing these Defendants from the above captioned lawsuit for the following reasons:

1.    Defendant Board is not a person that can be sued under 42 U.S.C. 1983;

2.    Plaintiffs lack standing to sue Defendant Board Members;

3.    The facts of this matter fail to state an actionable claim against these Defendants.

WHEREFORE, for the reasons stated above, as more fully discussed below, Defendants pray that this Honorable Court grant their Motion, enter an order of dismissal in favor of the Defendants, award costs and attorney fees, and award any other relief that the Court finds to be just and equitable.

## BRIEF IN SUPPORT

On May 10, 2021, the Governor of the State of Oklahoma signed into law HB 1775 (Exhibit 1). Subpart (A) of the bill is aimed at higher education and prohibits mandatory gender or sexual diversity training or counseling and further prohibits "any orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex." Paragraph 2 requires the Oklahoma State Regents for Higher Education to promulgate rules to implement these prohibitions. The remainder of HB 1775 applies to

---

[1] Board was not named as a defendant in the caption of the lawsuit. However, Plaintiffs allege that the Board is a Defendant in Paragraph 26 of their Complaint.

school districts, charter schools or virtual charter schools and prohibits the teaching concepts that one race or sex is inherently superior to another race or sex. The Legislature determined that there was an emergency need for this legislation, included an emergency clause, and HB 1775 became effective on July 1, 2021. (See Exhibit 1).

Plaintiffs are a number of advocacy groups who dislike HB 1775, including three groups associated to the University of Oklahoma. These groups include (1) Black Emergency Response Team (BERT) who purports to be a group of black student leaders at the University of Oklahoma dedicated to creating a safer and more supportive environment at the university for black students. BERT appears to be an unincorporated association; (2) the University of Oklahoma Chapter of the American Association of University Professors (OU-AAUP) which claims to have been founded in 2020 on behalf of university faculty; (3) and the National Association for the Advancement of Colored People (NAACP) who asserts that it has members at every public university in the state including the University of Oklahoma.[2] These groups claim that their members are damaged by HB 1775 in that they feel less safe on campus (Doc. 1 at ¶13) and that members are concerned that HB 1775 will limit what can be taught on campus. (Doc. 1 at ¶¶14-16).

Based on what these groups perceive to be the harmful effects of HB 1775, they have filed this lawsuit and named the Board of Regents of the University of Oklahoma (Board)[3] as well as each regent separately, in their official capacities (Board Members). Plaintiffs' Complaint reads more like a free speech manifesto than a legal pleading. Only

---

[2] The other Plaintiffs do not claim any connection to the University of Oklahoma.
[3] See fn 1.

after 65 pages of grandstanding do Plaintiffs recite their actual allegations. Plaintiffs allege the following Constitutional violations in regard to HB 1775:

1. Unconstitutional vagueness based on the 14th Amendment to the United States Constitution;

2. The Right to Receive Information under the First Amendment to the United States Constitution has been infringed;

3. Viewpoint based Restriction on Academic Freedom, pursuant to the First Amendment to the United States Constitution; and

4. Racially Discriminatory Purpose under the 14th Amendment's Equal Protection Clause.

Board asserts that as an arm of the state, it is not a person subject to 42 U.S.C. §1983. Board Members herein assert that they are not adequately connected to the law at issue in that nothing in the law places any requirement or responsibility on Board members which violate the constitutional rights of the Plaintiffs. Thus, Plaintiffs lack standing against these Defendants. Board Members further assert there are no facts alleged which demonstrate that these Defendants are required by the law to commit any act which harms the Plaintiffs. Therefore, Plaintiffs' Complaint fails to state a claim against these defendants.

## <u>PROPOSITION I</u>

## **BOARD OF REGENTS ARE NOT SUBJECT TO SUIT UNDER 42 U.S.C. §1983**

Although not named in the caption of the lawsuit, Plaintiffs have made claims against the Board of Regents of the University of Oklahoma. See Doc 1 at ¶¶26, 162, 169, 175 and 187. The claims sound in constitutional violations brought pursuant to 42 U.S.C.

§1983. The Board of Regents is not a person who may be sued under §1983 and therefore must be dismissed.

A cause of action under § 1983 requires the deprivation of a civil right by a "person" acting under color of law. 42 U.S.C. § 1983; *McLaughlin v. Bd. of Trs. of State Colls. of Col.*, 215 F.3d 1168, 1172 (10th Cir. 2000). The University, as an arm of the State, is not a person under § 1983. See *McLaughlin*, 215 F.3d at 1172; *Harris v. Champion*, 51 F.3d 901, 905- 06 (10th Cir. 1995).

The Board of Regents of the University of Oklahoma is a constitutionally created body. Okla. Const. Art. 13, §8. The Board is the governing body of the University of Oklahoma. *Id*. The Board of regents is an arm of the State of Oklahoma. *Hensel v. Office of Chief Administrative Hearing Officer*, 38 F.3d 505, 508 (10th Cir. 1994); Okla. Const. Art. XIII, Sec. 8; 70 O.S. §3302. Thus, the Board is not a person under §1983. To the extent that Plaintiffs have made claims against Board, this Honorable Court must dismiss.

## PROPOSITION II

### PLAINTIFFS LACK STANDING IN REGARD TO CLAIMS AGAINST THE BOARD MEMBERS

Plaintiffs conveniently do not attach a copy of HB 1775 for this Court's consideration. This makes sense, since a review of HB 1775 demonstrates that the Board Members have no connection to any constitutional violation alleged by Plaintiffs. Without such a connection, Plaintiffs lack standing to sue the Board Members.

As an irreducible constitutional minimum, a plaintiff must satisfy three criteria in order for there to be a "case or controversy" that may be resolved by the federal courts.

4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). First, the plaintiff must have suffered an "injury in fact"—an invasion of <u>a legally protected interest</u> that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Id.* Second, there must be a causal connection between that injury and the challenged action of the defendant—the injury must be "fairly traceable" to the defendant, and not the result of the independent action of some third party. *Id.* Finally, it must be likely, not merely speculative, that a favorable judgment will redress the plaintiff's injury. *Id.* at 561, 112 S.Ct. 2130; *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1155 (10th Cir. 2005). Standing is determined from the time the action is brought. The question to be resolved by the Court is whether Plaintiff faced an actual or imminent injury in fact that was caused by the Defendants and that is redressable by a favorable judicial order. *Nova* at 1155. When the Plaintiffs themselves are not the object of the governmental action, standing is not foreclosed, but it is "substantially more difficult to establish." *Lujan*, 504 US 555, 562 (1992).

When comparing the challenged law to the facts pled by Plaintiffs, Plaintiffs can meet none of the required elements to establish standing. Only one part of the challenged law even applies to the Defendants:

Section (1)(A)(1) provides that no enrolled student of an institute of higher education shall be required to engage in any form of mandatory gender or sexual diversity training of counseling. There shall also be no orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex.  Arguably, this section

prevents the Board Members from **requiring** certain trainings. Any training or orientation may not include any form of stereotyping or bias on the basis of race or sex. [4]

The only applicability of HB 1755 to Plaintiffs' case against these defendants is Section (1)(A)(1) which is a section aimed, not at the Plaintiffs, but at the Board Members, in an attempt to limit the Board Members' discretion in what training to mandate for the University students. Because this is the only section of HB 1775 aimed at the Board Members, this will be the only section discussed below:

## PROPOSITION II(A)

## THERE IS NO INJURY IN FACT

In order to demonstrate an injury in fact, Plaintiffs must show (1) an invasion of a legally protected interest; (2) that is concrete and particularized; (3) and that is actual and

---

[4] The remaining Sections are not aimed at these Defendants and are inapplicable to Plaintiff's claims against these Defendants:

**Section (1)(A)(2)** requires the Oklahoma State Regents of Higher Education to promulgate rules in accordance with section (1)(A)(1). This does not apply to the Board Members, as the Oklahoma State Regents are a different body from the Regents of the University of Oklahoma. *Compare* Okla. Const. Art. XIII, §8 *with* Okla. Const. Art. XIII(A), §2. The Board Members are not required by HB 1775 to promulgate rules. To the extent that the Board Members are required to adhere to any rules promulgated by the Oklahoma State Regents of Higher Education, there are no allegations that the State Regents have promulgated any rules. Thus, Board Members have no connection to Section (1)(A)(2).

**Section (1)(B)(1)** prohibits any "teacher, administrator or other employee of a school district, charter school or virtual charter school" from incorporating certain concepts into its curricula. Board Members are not teachers, administrators or employees of school districts, charter schools or virtual charter schools. Thus, there is no connection of the Board Members to Section (1)(B)(1).

**Section (1)(B)(2)** requires the State Board of Education to promulgate rules to implement the requirements of HB 1755. These rules do not apply to the Board Members. Thus, there is no connection between the Board Members and HB 1755.

imminent, not hypothetical or conjectural.  While Plaintiffs do not have to wait for a law to be enforced against them, there must be a justified fear of real consequences. *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir.2004). Allegations of a "subjective chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm. *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). Plaintiffs must demonstrate a credible threat of consequences flowing from the statute's enforcement. *D.L.S.* 374 F.3d at 975. See: *Initiative Referendum Institute v. Walker*, 450 F.3d 1082, 1088-1089 (10th Cir. 2006). Plaintiffs cannot meet any of these elements.

First, simply stated, Plaintiffs do not have a legally protected interest in what mandatory courses or training the University requires of the student body in general. Plaintiffs have not shown the invasion of a legally protected interest. Plaintiffs' only complaint against Board Members is that the Board Members, if they follow the mandates in HB 1775, are prohibited from **requiring** certain training. Plaintiffs point to no constitutional or statutory requirements that a university require gender or sexual diversity training for its students. Likewise, and most certainly, Plaintiffs can point to no law which would **require** presentation of sex stereotyping or a bias on the basis of race or sex. Plaintiffs cannot show that the Board Members were ever mandated to require such training. Because they were never required to provide mandatory training, the Board Members were free to end mandatory training without regard to HB 1755.

Not only do the plaintiffs not demonstrate invasion of a protected interest, Plaintiffs have not pointed to any concrete or particularized harm. Throughout their Complaint, Plaintiffs point to incidental occurrences which only hypothetically have any connection

7

to HB 1775. For example, BERT claims that their members generally "feel" heightened hostility and harassment because some mandatory training has become optional. BERT hypothesizes that due to the training becoming optional, the organization must be more vigilant in responding to incidents of racism and sexual assault (Doc 1, §13). Some OU-AAUP members are "considering" whether they should offer classes in black literature. (Doc. 1 §14). A librarian is "concerned" that "they may be unable to purchase texts" related to race or gender. Because some mandatory training was made optional, some professors "fear for their safety" not only on campus but, apparently, in the world at large due to the "hostile culture" fostered by HB 1775. (Doc. 1 §14). In one instance, a professor was told by an unknown person that the professor should not include critical race theory on an exam.[5] Regardless of the hyperbole proffered by the Plaintiffs, these "harms" are not concrete nor particularized. In fact, they are mere hypothetical harms which cannot confer standing on a party. As the Supreme Court has pointed out, where the plaintiffs inflict their own injury, standing is lacking. See: *Clapper v. Amnesty International USA*, 568 U.S. 398, 416 (2013)(a party cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending). A mere subjective concern is insufficient.

In this matter, Plaintiffs' "fears," "concerns" and "considerations" have no relationship to the portion of the statute which affects the University of Oklahoma.

_____

[5] Plaintiffs wholly fail to identify the professor, the class the professor is teaching or who told the professor not to include the topic on the exam (Doc 1 §14). Certainly, this is not a concrete example of enforcement by the Board Member defendants.

Plaintiffs' have no constitutional interest in which courses, training or orientation material is mandatory and which is optional for the student body in general. To the extent that Plaintiffs have a "fear" of living in their neighborhoods or teaching in their classrooms, those fears are simply subjective and manufactured. They are not concrete and particularized as required to maintain standing in this Court.

Plaintiffs attempt to weave a vagueness argument into this matter and assert that the phrase any "requirement that presents any form of race or sex stereotyping" is prohibited as vague. Based on an open interpretation, Plaintiffs allege a concern that Section (1)(A)(1) of HB 1775 chills their free speech because they may want to "require" prohibited subject matters as an area of study or research. However, that argument is nothing more than a red herring. First, from the structure of HB 1775, it is obvious that Section (1)(A)(1) applies to trainings and orientations, not to classroom study or academic research. To the extent that HB 1775 can broadly be interpreted as attempting to control academic speech or study, that attempt would violate Oklahoma's Constitution and statutory schemes; the section must, therefore, legally be construed narrowly to avoid this conflict. See: *Board of Regents of the University of Oklahoma v. Baker*, 638 P.2d 464 (Okla.  1981)(State Constitution gives power to the Board of Regents to regulate the affairs of the University of Oklahoma without legislative interference); *Franco v. State, ex rel. Board of Regents of the University of Oklahoma*, 482 P.3d 1, 9 (Okla. Civ. Ct. App 2020)(Board of Regents have plenary control over decisions regarding the health, welfare and education of the students); 70 O.S. §3305 (Board of Regents shall have control over the University of Oklahoma and all its integral parts). A statute is interpreted so as not to contradict the constitution. *Young v. Station 27,*

*Inc.*, 404 P.3d 829, 838 (Okla. 2017). Thus, HB 1775 cannot be interpreted to include legislative dictates about academic speech or study.

Second, and importantly, HB 1775 has not been interpreted either by the State Courts or by the State Regents for Higher Education in rulemaking (which is required by Section (1)(A)(2)). The fact that the Oklahoma State Regents of Higher Education "might" interpret the statute in a way that "might" infringe on speech compiles speculation on conjecture and is insufficient to show an injury in fact. See: *Laird v. Tatum*, 408 U.S. at 2 (claims that compile speculation upon speculation do not establish an injury in fact). Further, HB 1775 contains no mention of any consequences for a person who violates the Act. The prohibition is on the University itself. Any consequences which might flow to a person who violates the act (if that is even possible) would have to be set out in additional legislation or though the State Regent's rules, or through rules of the University of Oklahoma. Of course, there is no additional legislation and neither the State Regents nor the Board members have promulgated rules. Thus, there is no realistic fear of consequences identified by the Plaintiffs in their Complaint.

## PROPOSITION II(B)

### FOR THE SAME REASONS THAT PLAINTIFFS LACK AN INJURY IN FACT, THEIR CLAIMS ALSO LACK IN CAUSATION

The only portion of the law which directly impacts Board Members is paragraph (1)(A) which prohibits mandatory student training or orientation containing certain topics. Based on this, Plaintiffs assert injury in that they might now have to "consider" whether to purchase books for the library or whether the law infringes on their "academic freedom,"

or whether the law chills professors' speech, thereby denying students access to information. Of course, the law as applied to the Board Members does none of these things. The law simply makes certain training optional rather than mandatory. All of the harms that Plaintiffs assert do not flow from whether certain trainings are optional as opposed to mandatory.

Further, Plaintiffs have not, nor can they, demonstrate a constitutional right to which training the University provides to the students at large. Based on this fact alone, Plaintiffs cannot show that the portion of HB 1755, which is aimed at the Board Members and not the Plaintiffs, has caused any injury to a protected interest.

## PROPOSITION II(C)

### PLAINTIFFS' INJURY IS NOT REDRESSIBLE BY
### A JUDGMENT IN THEIR FAVOR

Even if Plaintiffs can somehow make a case for injury in fact and causation, the final element of standing is still missing. Plaintiffs must demonstrate that a judgment in their favor will give them some kind of meaningful relief. In this case, even if Plaintiffs are to prevail, there is no relief that the Court can grant to the Plaintiffs that will have any meaningful effect.

Plaintiffs complain that the Board Members are prohibited from making certain training and orientations mandatory. Plaintiffs further complain that prior to HB 1775, Board Members had required that students undergo particular trainings and a course related to equality and inclusion. See Doc. 1 §74. Since the passage of HB 1775, the University has dropped these requirements. What Plaintiffs fail to comprehend, however, is that the

training, the contents of the training, and whether training is mandatory or optional was wholly within the discretion of the Board Members. See 70 O.S. 3305. The fact that HB 1775 might remove some discretion from the Board Members does not change the fact that Board Members were never required to make the training mandatory in the first place. There are no allegations in the Complaint that only offering voluntary diversity instruction is somehow unconstitutional.

In their complaint, Plaintiffs ask for the following relief: "injunctive relief restraining the Defendants, their employees, agents, and successors in office from enforcing the Act." (Doc. 1 ¶74). This request for relief begs the question, if the Court finds HB 1775 to be unconstitutional and it orders the Board Members not to enforce the law, will the Board Members necessarily change the current offerings? The simple answer is no. Any relief would be speculative. What trainings or courses are offered and whether they are mandatory or optional would remain within the discretion of the Board Members. Thus, there is no order which this Court can enter that will require the University to make any student training or orientation mandatory. Because an order of this Court will not remedy the injury over which Plaintiffs complain, this Court lacks standing to proceed with the claims against the Board Members. This Court should dismiss.

## <u>PROPOSITION III</u>

### PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

"To survive a motion to dismiss [under Rule 12(b)(6) ], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "plausibility" standard announced in *Twombly* and *Iqbal* is not considered a "heightened" standard of pleading, but rather a "refined standard," which the Tenth Circuit has defined as "refer[ring] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

Even if this Court determines that Plaintiffs have standing, they have failed to allege facts sufficient to state a claim against the Board Members. Plaintiffs have essentially asserted two theories against the Board Members. First, that Board Members are prohibited from mandating certain student training and that Plaintiffs are harmed by this prohibition. Second, that HB 1775 is so vague that it might be interpreted in a way that interferes with the First Amendment protections afforded professors and students. However, in neither case do the facts demonstrate an actionable claim against the Board Members.

First, throughout their 75-page Complaint, Plaintiffs never identify a right that they have to any specific mandatory training. There is a simple reason for this, no such right has ever been found to exist. Other than a passing reference to the University ending a training

requirement which formed a part of the University's "efforts to comply with federal law," no federal law or federal constitutional requirement has been identified. In fact, it is undisputed that the requirement that students take a diversity course or engage in diversity training is wholly within the discretion of the University and Plaintiffs have not identified anything which holds differently. Because these claims do not impact an identified federal right, they necessarily fail to state a claim upon which relief can be granted.

Second, Plaintiffs make a claim for vagueness of the statute at issue. Plaintiffs assert that they do not understand what the law means and that they think it might mean that they cannot teach certain subjects about race or that they cannot order books about race. BERT alleges that because professors' speech is chilled, they have lost the right to receive information. However, Plaintiffs have not pled that the statute at issue has been enforced by these Defendants in any way, nor have they shown that the Board Members are about to enforce HB 1775 in a way that infringes on academic speech, nor have they shown that the rules which are required to be promulgated by the Oklahoma State Regents of Higher Education have been promulgated.

Because Plaintiffs have pointed to no enforcement of HB 1775 that impacts what may be taught or studied on campus, Plaintiffs' attack is a facial one. In order to succeed on a facial attack on the constitutionality of a statute, a party must establish that no set of circumstances exist under which the statute would be valid. *U.S. v. Stevens*, 559 US 460, 473 (2010). In a challenge for vagueness, hyper-technical theories as to what the statute might cover, and hypothetical cases which conjure up uncertainty in the meaning of words, cannot form the basis of a facial attack on a statute. *Hill v. Colorado*, 530 US 703, 733

14

(2000). A strong presumption of constitutionality underlies a legislative enactment, and a court should only strike the statute down where it is so vague that people of reasonable intelligence must guess at its meaning. Absolute or mathematical certainty is not required in the framing of a statute. *ETP Rio Rancho Park, LLC v. Grisham*, 517 F.Supp.3d 1177, 1225 (D. N.M. 2021).

Applying this to the matter at bar, Plaintiff has failed to state a claim against these Defendants. The complaints made by Plaintiffs are purely speculative and formulated from hyper-technical reading and unreasonable interpretations of the statutory language. Nothing in Section (1) of HB 1755 prohibits speech by professors or determines what books librarians may order. Plaintiff, OU-AAUP, complains that professors have removed texts from their courses and are unsure if they can select certain library materials that address race or sexual orientation. (Doc. 1 §75). But this is the professors overreacting to and stretching language beyond that which is reasonable. Especially in light of the constitutional limitations on the Legislature and its interference with the University's matters as discussed in Proposition II(A), *supra*.  Simply put, a straightforward reading of HB 1775 indicates that the "harms" alleged by Plaintiffs simply are not caused by the training prohibitions contained in HB 1775.

Further, the Oklahoma State Regents for Higher Education, not the University of Oklahoma Regents, are required to promulgate the rules implementing the requirements of HB 1775. As of the date of this brief, no rules have been promulgated. The statute has no impact on Plaintiffs unless and until the State Regents promulgate rules which interpret HB 1775 in a way that infringes on a constitutional right. As well, there has been no high

court ruling on the language of HB 1775 or whether the requirements of HB 1775 can even apply to the University of Oklahoma. Thus, Plaintiffs simply speculate and fret. They wring their hands and proclaim that they have been muzzled. In reality, there has been no interpretation of HB 1775 (1)(A)(1) which would infringe on Plaintiffs' rights to speak or to receive information. Until there is, Plaintiffs only have their own unreasonable speculations. This Court should not indulge their conjectures.

Without considering Plaintiffs' unreasonable interpretations, all that is left is Plaintiffs' Complaint that the University ended its mandatory diversity training and course; something that is within the University's discretion to do regardless of HB 1775. As such, Plaintiffs have not stated a claim against these Defendants and the Court should dismiss.

## CONCLUSION

Board and Board Members agree that the First Amendment holds a special place on the University Campus. Diversity of thoughts and opinions, both mundane and controversial, advance learning and academic rigor. Students and professors should remain free to engage in discussions and debates and to pursue academic study. Furthermore, the school takes its obligations concerning student and faculty safety seriously. The University desires a safe and inclusive campus where students, faculty and staff are free to engage in all experiences that university life offers. However, Plaintiffs' lawsuit against the Board members, based on conjecture and unreasonable interpretations of a law, do not advance those goals.

For the reasons discussed above, this Court should dismiss Plaintiffs' Complaint against the Board and the Board Members.

16

Respectfully submitted,


s/M. Daniel Weitman
M. DANIEL WEITMAN, OBA #17412
TINA IKPA, OBA #32193
University of Oklahoma
Office of Legal Counsel
660 Parrington Oval, Suite 213
Norman, Oklahoma  73109
Telephone: (405) 325-4124
Facsimile: (405) 325.7681
E-Mail: dan.weitman@ou.edu
E-Mail: tsikpa@ou.edu

*ATTORNEYS FOR DEFENDANT BOARD OF
REGENTS FOR THE UNIVERSITY OF
OKLAHOMA, AND FOR DEFENDANTS
MICHAEL CAWLEY, FRANK KEATING, PHIL
ALBERT, NATALIE SHIRLEY, ERIC
STEVENSON, ANITA HOLLOWAY AND RICK
NAGEL*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of November 2021, I transmitted the attached document to the Clerk of Court using the ECF system for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Genevieve Bonadies Torres
David Hinojosa
Lawyers' Committee for Civil Rights
        Under Law
1500 K Street NW, Suite 900
Washington, DC 20005

Megan Lambert
American Civil Liberties Union
Foundation of Oklahoma
P.O. Box 13327
Oklahoma City, OK 73113

Gary Stein
Michael Cutini
Sara Solfanelli
Elahe Hosseini
Amir Shakoorian Tabrizi
Ramya Sundaram
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

Emerson Sykes
Leah Watson
Sarah Hinger
American Civil Liberties Union
        Foundation
125 Broad Street, 18th Floor
New York, NY 10004

*COUNSEL FOR PLAINTIFFS*

s/M. Daniel Weitman
M. Daniel Weitman

18