IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) BLACK EMERGENCY RESPONSE TEAM,<br>(2) UNIVERSITY OF OKLAHOMA CHAPTER OF THE AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS,<br>(3) OKLAHOMA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,<br>(4) AMERICAN INDIAN MOVEMENT INDIAN TERRITORY,<br>(5) PRECIOUS LLOYD, AS NEXT OF FRIEND OF S. L.,<br>(6) ANTHONY CRAWFORD, AND<br>(7) REGAN KILLACKEY,<br><br>PLAINTIFFS<br><br>VS.<br><br>(1) JOHN O'CONNOR, IN HIS OFFICIAL CAPACITY AS OKLAHOMA ATTORNEY GENERAL, ET AL.<br><br>DEFENDANTS. | CASE NO. CIV-21-1022-G<br><br>JUDGE CHARLES GOODWIN |

**EDMOND DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT & BRIEF IN SUPPORT**

Defendants, Jamie Underwood, Cynthia Benson, Kathleen Duncan, and Lee Ann Kuhlman, are sued in their official capacities as members of the Board of Education of Edmond Public Schools located in Oklahoma County, Oklahoma ("Board Members"). Dr. Angela Grunewald is sued in her official capacity as District Superintendent of Edmond Public Schools, Defendants are collectively referred to as the "Edmond Defendants." The official designation of Edmond Public Schools is Independent School District No. 12, Oklahoma County, Oklahoma ("District"). The Edmond Defendants move to dismiss all claims against them.

### INTRODUCTION

This action is about a law passed by the Oklahoma Legislature in the spring of 2021 and signed by Oklahoma Governor Kevin Stitt on May 7, 2021. Known as House Bill 1775 ("H.B. 1775") prior to codification, the law is now found at Title 70 O.S. § 24-157. As reflected in its title, the law prohibits the teaching of certain race- or sex-based concepts in public schools. The Edmond Defendants had no role in the passage of H.B. 1775, and none is alleged.

The Amended Complaint (Doc No. 50) also alleges that Defendant, the Oklahoma State Board of Education, adopted and implemented emergency regulations pursuant to H.B. 1775, found at Okla. Admin. Code § 210:10-1-23 ("Rules"). Like H.B. 1775, the Rules prohibit the teaching of certain race- or sex-based concepts by public educators, and they contain sanctions for such actions. The Edmond Defendants had no role in the adoption of these administrative rules, and none is alleged in the Amended Complaint.

Plaintiffs' chief aim in this case is a declaration that H.B. 1775 and the Rules be declared unconstitutional. Doc. No. 50, Am. Compl., ¶ 12. Nevertheless, they have sued the Edmond Defendants for doing precisely what their oaths of office require them to do. That is, to follow Oklahoma law. Here, that law is H.B. 1775 and the Rules. Plaintiffs allege the District Board of Education and Defendant Board Members are responsible for enforcing H.B. 1775, but neither the District nor its Board of Education (as an entity) is named as a defendant in this action. Doc. No. 50, ¶ 28.

Plaintiffs allege that "[i]n attempting to comply with H.B. 1775 and its implementing rules, EPS has adopted guidance for teachers." Doc. No. 50, ¶ 66. They further allege that, as a result of this guidance, District "educators are chilled in their ability to provide students with

anything but the most ambiguous answers to their questions, stymieing students' ability to learn and engage with subject matter." *Id.* They allege as a result of H.B. 1775, District ("EPS") struck or removed texts by women authors or authors of color, while retaining texts by Caucasian authors. Doc. No. 50, ¶ 67.

Plaintiffs allege a District student and a District teacher are members of Plaintiff Oklahoma State Conference of the National Association for the Advancement of Colored People ("NAACP-OK"). Doc. No. 50, ¶¶ 16, 20. Plaintiffs allege that "[a]s a result of H.B. 1775 and its application through the policies of EPS, Student A.A. has lost access to texts by Black and women authors that explicitly discuss racial and gender relations, and the corresponding classroom discussions that explore such issues from multiple angles." Doc. No. 50, ¶ 69. Plaintiffs allege that Plaintiff Killackey, a District teacher, "is no longer able to lead appropriate educational classroom discussions on topics related to race, sex, and gender." Doc. No. 50, ¶ 20.

Plaintiffs claim that H.B. 1775 is facially void and void, in violation of the Fourteenth Amendment right to due process. Doc. No. 50, ¶¶ 156–63. Plaintiffs also claim that H.B. 1775 is overbroad and violates the right of Plaintiff NAACP members A.A. and Killackey to receive ideas. Doc. No. 50, ¶¶ 164–70. Finally, Plaintiffs claim that the actions of the Edmond Defendants in applying H.B. 1775 violate their right to equal protection under the Fourteenth Amendment. Doc. No. 50, ¶¶ 177–89.

Plaintiffs filed this action on October 19, 2021, alleging the Edmond Defendants are complying with a state law Plaintiffs assert is unconstitutional. The Amended Complaint is

unique in that it purports to state a claim against a public school district for *complying* with a law duly-enacted by the state legislature, signed into law by the governor, and enforced by the State Board of Education. It alleges no unlawful conduct by the Edmond Defendants, and it does not allege that they or the District are ignoring, violating, or flouting state or federal law.

## **STANDARD OF REVIEW**

When courts consider a motion to dismiss for failure to state a claim, they must view the allegations in the light most favorable to the plaintiff. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). But pleadings that are no more than legal conclusions are not assumed to be true; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

A complaint does not need detailed factual allegations; however, it requires more than labels and conclusions, and a mere recitation of the elements of a cause of action is not sufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "Factual allegations must be enough to raise a right to relief above the <u>speculative</u> level." *Id.* (emphasis added).

One purpose of the plausibility requirement is judicial economy; it "weed[s] out claims that do not (in the absence of additional allegations) have a reasonable prospect of success." *Id.* at 1248. Another purpose is "to inform the defendants of the actual grounds of the claim

against them." *Id.* The "degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context," which ultimately depends on the case. *Id.*

## ARGUMENT AND AUTHORITY

**PROPOSITION I:** **PLAINTIFFS HAVE FAILED TO ALLEGE ANY UNLAWFUL ACTION BY THE EDMOND DEFENDANTS, AND AN ACTION AGAINST AN OKLAHOMA PUBLIC SCHOOL DISTRICT MAY ONLY PROCEED AGAINST THE DISTRICT As a CORPORATE ENTITY.**

Plaintiffs claim that in response to H.B. 1775, District—referred to by Plaintiffs as "EPS"—has adopted guidance for teachers which adversely affects the abilities of teachers to teach and students to learn. Doc. No. 50, ¶¶ 66–67. Elsewhere in their Amended Complaint, Plaintiffs refer to the "policies" of District as negatively impacting teachers and students. Doc. No. 50, ¶ 69. Plaintiffs clearly are asserting claims against the District but have failed to name the District as a Defendant. Further, suit against the individual Board Members or the Superintendent is not the same as an action against the District.

Rule 17 of the Federal Rules of Civil Procedure instructs that the capacity for a corporation to sue or be sued is determined by the law of the state in which it was organized. Fed. R. Civ. P. 17(b)(2). In Oklahoma, a public school district is a body corporate and must be sued by the school district number assigned by the Oklahoma State Department of Education. 70 O.S. § 5-105; *Primeaux v. Indep. Sch. Dist. No. 5 of Tulsa Cnty.*, 954 F. Supp. 2d 1292 (N.D. Okla. 2012); *Isaacs v. Konawa Pub. Schs.,* 2021 WL 1229945 at *3–4 (E.D. Okla. March 31, 2021).

Pursuant to 70 O.S. § 5-105, this action can proceed only against District as a body corporate. This conclusion is reinforced by the absence of any allegation in the Amended Complaint of any actions taken by the Edmond Defendants. Plaintiffs allege that Defendant Grunewald is the Superintendent and executive officer of the District—Doc. No. 50, ¶ 27—and that she is responsible for enforcing H.B. 1775. *Id.* Yet, the Amended Complaint contains no allegation that Defendant Grunewald took any action.

Similarly, the Amended Complaint alleges that Defendants Underwood, Duncan, Benson, and Kuhlman are members of the District Board of Education, and that the Board of Education is responsible for the supervision of instruction at the District. Doc. No. 50, ¶ 28. But the Amended Complaint is silent as to whether the Board of Education took any action related to H.B. 1775, or that the individual board members took any action. In Oklahoma, public school board members are only authorized to act as members of the board of education, at meetings called pursuant to the Oklahoma Open Meetings Act. 25 O.S. §§ 301, *et seq.*; Okla. Admin. Code 210:10-1-7. There is no allegation that the District Board of Education took any action regarding H.B. 1775.

As Plaintiffs have failed to allege any action by the District Board of Education or Defendant Grunewald, this action should be dismissed as to the Edmond Defendants. Taking the allegations in a light most favorable to Plaintiffs, the proper party is Independent School District No. 12, Oklahoma County, Oklahoma, alone.

**PROPOSITION II:  THE EDMOND DEFENDANTS ARE IMPROPER PARTIES AND SHOULD BE DISMISSED.**

Plaintiffs name the Edmond Defendants in their "official capacity." However, such "official capacity" allegations are unnecessary. The U.S. Supreme Court has long held that a suit against a person in his official capacity is the same as a suit against the public entity. *Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 690, n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). *See also Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 7 L. Ed. 2d 114, 121 (1985). The Tenth Circuit has also recognized this in *Griess v. Colorado*, 841 F.2d 1042, 1045 (10th Cir. 1988).

Here, Plaintiffs have sued the Edmond Defendants in their *official capacity*. *See* Doc. No. 50. Though an individual capacity suit "seeks to impose personal liability upon a government [employee] for actions he takes under color of state law," an official capacity suit is "only another way of pleading an action against an entity of which an [employee] is an agent." *Graham*, 473 U.S. at 165. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and not as a suit against the official personally, "for the real party in interest is the entity." *Id.* at 166.

Claims against governmental employees acting in their official capacities are the same as claims against the entity that such officers represent. *Pellegrino v. State ex rel. Cameron Univ.*, 2003 OK 2, 63 P.3d 535, 537. Thus, naming the Edmond Defendants in their official capacity is just another way of naming Independent School District No. 12 of Oklahoma County,

which is the appropriate defendant for claims based on District's compliance with duly-enacted legislation.

**PROPOSITION III:  THE AMENDED COMPLAINT DOES NOT STATE A VOID FOR VAGUENESS CLAIM AGAINST DISTRICT.**

In their first cause of action, Plaintiffs allege that H.B. 1775 is vague and violates the Fourteenth Amendment due process rights of Plaintiff NAACP-OK and Plaintiff Killackey. Doc. No. 50, ¶¶ 156–63. The first cause of action, however, does not state any allegations against the Edmond Defendants. It is undisputed that the Edmond Defendants did not draft, pass, or sign H.B. 1775 into law. The Edmond Defendants therefore cannot be sued for the content of H.B. 1775 or any other statute passed by our legislature and signed into law by our governor. Further, Plaintiffs do not state a claim of void for vagueness because they do not establish the violation of any constitutional right, as outlined in Proposition IV, below.

**PROPOSITION IV:  PLAINTIFFS DO NOT HAVE A FIRST AMENDMENT RIGHT TO A SAY IN THE DISTRICT'S CHOICE OF CURRICULUM.**

In their second cause of action, Plaintiffs allege that H.B. 1775 is overbroad and violates the First Amendment right to receive ideas of Plaintiff NAACP-OK as applied by the Edmond Defendants. Doc. No. 50, ¶ 167. In support, Plaintiffs allege that NAACP-OK member Student A.A., "desires greater access to diverse texts, particularly texts by non-White and women authors, because such perspectives broaden Student A.A.'s worldview, better prepare Student A.A. to participate in a multiethnic democracy, and enable Student A.A. to engage in advanced inquiry and problem solving." Doc. No. 50, ¶ 16(a). Plaintiffs also allege that the District (referred to as EPS) prohibited teachers from using the terms "diversity" and "white privilege" and that it removed certain books by women authors or authors of color from the

list of "anchor" texts. Doc. No. 50, ¶ 67. As noted above, there is no allegation that the Edmond Defendants took any action in regard to H.B. 1775 at all, and none that harmed Plaintiffs.

Plaintiffs base much of their second cause of action on the holding in *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853 (1982). In *Pico*, the Supreme Court held that:

> [W]hether petitioners' removal of books from their school libraries denied respondents their First Amendment rights depends upon the motivation behind petitioners' actions. If petitioners *intended* by their removal decision to deny respondents access to ideas with which petitioners disagreed, and if this intent was the decisive factor in petitioners' decision, (footnote omitted) then petitioners have exercised their discretion in violation of the Constitution.
>
> *Id.* at 871.

In *Pico*, a plurality of the Supreme Court held that school boards violate the First Amendment if they "remove books from school library shelves simply because they dislike the ideas contained in those books and seek by their removal to 'prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.'" *Id.* at 872 (quoting *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)).

In *Miles v. Denver Pub. Schs.*, *supra*, the Tenth Circuit stated that "the caselaw does not support [the plaintiff's] position that a secondary school teacher has the constitutional right to academic freedom." 944 F.2d at 779, *citing, Pico, supra* at 920. As Plaintiffs note, there is no further holding from the Tenth Circuit that broadens a secondary public school student's right to—or a secondary public school teacher's right to teach—a certain curriculum, or to certain texts as part of the curriculum. There is no allegation here that the Edmond Defendants took

any action to "mask illicit motivations" or to "prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *Pico* at 871–72.

In Oklahoma, "[t]he State Board of Education shall adopt subject matter standards for instruction of students in the public schools of this state that are necessary to ensure there is attainment of desired levels of competencies in a variety of areas to include language, mathematics, science, social studies, communication, and health and physical education. 70 O.S. § 11-1-3.6(A)(1). Per this same section, "[s]chool districts shall develop and implement curriculum, courses and instruction in order to ensure that students meet the skills and competencies as set forth in this section and in the subject matter standards adopted by the State Board of Education." 70 O.S. § 11-1-3.6(A)(2). Per these provisions, it is the obligation of the District to develop and implement curriculum designed to meet *all* of the standards adopted by the Oklahoma State Board of Education.

As Plaintiffs do not have a First Amendment right to a say in the District's choice of curriculum, and there is no allegation of any action by the Edmond Defendants based upon an "illicit motivation" or to prescribe what shall be orthodox on any subject, Plaintiffs' second cause of action should be dismissed.

**PROPOSITION V:   THE AMENDED COMPLAINT DOES NOT STATE AN EQUAL PROTECTION CLAIM AGAINST THE EDMOND DEFENDANTS.**

In their fourth cause of action,[1] Plaintiffs allege that H.B. 1775 was enacted "in part, with the purpose to discriminate against students of color by chilling and suppressing Inclusive

---

[1] The third cause of action—First Amendment—does not allege any conduct by the Edmond Defendants and is not asserted against the Edmond Defendants. Doc. No. 50, Am. Compl., ¶ 175 ("H.B. 1775 is overbroad . . . as applied by Defendants John O'Connor, Governor Kevin Stitt, State Regents members, OU regents, and OU Regents members.").

Speech aimed at enhancing the educational, social, and civic experiences of students of color and their families." Doc. No. 50, ¶ 184. Plaintiffs further allege that H.B. 1775 "will foreseeably disparately harm students of color, with compounded harms for students of color who also identify as women, girls, and LGBTQ+." *Id.* From this, Plaintiff NAACP-OK alleges that H.B. 1775 violates its Fourteenth Amendment right to equal protection as applied by the Edmond Defendants. *Id.* at ¶ 187. There is no allegation, however, of any act by the Edmond Defendants in whole or in part to discriminate against students of color.

Plaintiffs' fourth cause of action is based upon *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S. Ct. 555, 563, 50 L. Ed. 2d 450 (1977). In that case, a nonprofit real estate developer sued the local municipality after local authorities refused to change the zoning for a parcel sought for development. *Id.* at 252. The developer claimed the zoning change refusal was racially discriminatory. *Id.* The Supreme Court held that in cases of intentional discrimination, the plaintiff's burden is to show that the discriminatory purpose was a motivating factor, rather than the primary or sole purpose. *Id.* at 265–66. Nevertheless, the court held that proof of racially-discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *Id.* at 265.

Plaintiffs allege that the court in *Arlington Heights* stated other non-exhaustive factors for consideration in ascertaining discriminatory intent, namely impact of the official action, the historical background of the action, the sequence of events leading up to the challenged decision, any departures from the normal decisionmaking process, and any legislative or administrative history including contemporaneous statements by members of the

decisionmaking body. *Id.* at 266–68; Doc. No. 50, ¶ 183. Plaintiffs allege H.B. 1775 was enacted, at least in part, to discriminate against students of color. *Id.* at ¶ 184.

A municipality or public body is liable for a constitutional injury only if the plaintiff can establish the injuries were the result of an unconstitutional municipal policy or custom. *City of Okla. City v. Tuttle,* 471 U.S. 808 (1985) (abrogation on other grounds recognized by *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L. Ed. 2d 452 (1986). In order for a municipality to be held liable under § 1983 for a constitutional violation, the plaintiff must be able to establish its "official policy as the moving force of the constitutional violation." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Accordingly, when the defendant in a § 1983 action is a municipal entity such as a city or county, "[i]t is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable." *City of Canton,* 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989); *Ware v. Unified Sch. Dist. No. 492, Butler Cnty., State of Kan.*, 902 F.2d 815, 819 (10th Cir. 1990).

Here, Plaintiffs' Amended Complaint fails to allege any act by the Edmond Defendants, much less any act motivated by racial animus. Out of 189 paragraphs in the Amended Complaint, none allege any unlawful conduct by District or that District is violating the constitutional or statutory rights of any Plaintiff. Paragraph 20 states that Plaintiff Regan Killackey was instructed by District "to avoid certain concepts, phrases like 'diversity' and 'white privilege,' and books by non-White and female authors." Doc. No. 50, ¶ 20. Even if true, it is not unconstitutional for an educational institution to provide guidance on curricula and classroom discussion. And, although there may be a tangible benefit to English teachers

spending classroom time discussing divisive social issues, no statute gives them or their students the unqualified right to do so.

Paragraph 66 simply states that District is unclear of H.B. 1775's meaning and scope and its responsibilities in complying with it. Doc. No. 50, ¶ 66. Paragraph 67 alleges that District has prohibited its teachers from using the words "diversity" and "white privilege," but Exhibit 2 to the Amended Complaint shows that District only *advised* teachers to (1) avoid using the word "diversity" in the names of their lesson plans, and (2) refrain from initiating class discussions on "white privilege." Doc. No. 50, Ex. 2. Paragraph 67 also alleges District removed books with racial justice themes from their list of *required* reading, not that it removed the books from District libraries altogether. Doc. No. 50, ¶ 67.

Neither allegation evidences harm to any Plaintiff. First, the guidance provided in Exhibit 2 specifically states that students can initiate classroom discussions on "white privilege." Doc. No. 50, Ex. No. 2. The guidance does not prohibit any teacher from participating in student-initiated discussions on racial themes. And there is no allegation that District has prohibited students from reading any book. Students may not be *required* to read *To Kill a Mockingbird*, but there is no allegation that District is restricting students' access to the title or *prohibiting* students from reading it.

Paragraph 68 alleges District ended a module of diversity training, but it does not allege that any Plaintiff was entitled to this training by right or statute. It does not allege that diversity training is required by state or federal law. It merely alleges that District formerly provided diversity training, and now it does not. This is not a violation of Plaintiffs' civil rights.

The fourth cause of action of the Amended Complaint should be dismissed as to the Edmond Defendants.

**PROPOSITION VI:   PUBLIC POLICY COUNSELS AGAINST ALLOWING LAWSUITS AGAINST PUBLIC SCHOOL DISTRICTS FOR COMPLYING WITH STATE LAW.**

Plaintiffs have not alleged any unlawful conduct on the part of District, yet they are suing the District's superintendent and each member of its Board of Education for their compliance with H.B. 1775. This is a dangerous precedent, as allowing private parties to sue public school districts for *complying with and enforcing state law* would force school board members across the state to carefully consider which laws they should or should not obey to avoid lawsuits.

This analysis will undoubtedly result in different outcomes in different communities. Whereas one school district would face parent lawsuits for <u>not</u> following state law, school board members in a different community may fear a lawsuit if they <u>do</u> comply with the very same law. Forcing such decisions on public school districts will lead to increased legal fees for the districts and a greater caseload for the courts. It is not only bad public policy, but it is unnecessary. Should the Court rule that H.B. 1775 is unconstitutional, the State Board of Education will not enforce it and public school districts will no longer comply with it. District and its Superintendent and Board members should be dismissed from this suit.

## CONCLUSION

Plaintiffs' Amended Complaint represents very real societal concerns surrounding H.B. 1775 and its implementation. But the Edmond Defendants had no say in drafting, passing, and signing H.B. 1775 into law. With this Motion, the Edmond Defendants take no position on the constitutionality of H.B. 1775, and they are under no legal duty to defend the constitutionality of the bill's statutes. District is merely complying with state law, and the Amended Complaint alleges no wrongful conduct outside of that compliance. Further, the individually-named Edmond Defendants are improper parties and should be dismissed.

Respectfully submitted,

S/JUSTIN C. CLIBURN
F. ANDREW FUGITT, OBA #10302
JUSTIN C. CLIBURN, OBA #32223
THE CENTER FOR EDUCATION LAW
900 N. BROADWAY AVE, SUITE 300
OKLAHOMA CITY, OK 73102
TELEPHONE: (405) 528-2800
FACSIMILE: (405) 528-5800
E-MAIL: AFugitt@CFEL.COM
E-MAIL: JCliburn@CFEL.COM
ATTORNEYS FOR EDMOND DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2021 I electronically transmitted the attached document to the Clerk of the Court using the Electronic Case Filing system for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

S/JUSTIN C. CLIBURN
JUSTIN C. CLIBURN