UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| [1] BLACK EMERGENCY RESPONSE TEAM, et al. )<br>)<br>*Plaintiffs*, )<br>v. )<br>)<br>[1] JOHN O'CONNOR, in his official capacity as )<br>Oklahoma Attorney General, et al. )<br>)<br>*Defendants*. ) | Case No. CIV-21-1022-G |

**DEFENDANTS' RESPONSE AND OBJECTION TO PLAINTIFFS'
MOTION FOR  PRELIMINARY INJUNCTION**

M. DANIEL WEITMAN, OBA #17412
TINA S. IKPA, OBA #32193
University of Oklahoma
Office of Legal Counsel
660 Parrington Oval, Suite 213
Norman, Oklahoma  73109
Telephone: (405) 325-4124
Facsimile: (405) 325.7681
E-Mail: dan.weitman@ou.edu
E-Mail: tsikpa@ou.edu

*ATTORNEYS FOR DEFENDANT BOARD OF
REGENTS FOR THE UNIVERSITY OF
OKLAHOMA, AND FOR DEFENDANTS
MICHAEL CAWLEY, FRANK KEATING, PHIL
ALBERT, NATALIE SHIRLEY, ERIC
STEVENSON, ANITA HOLLOWAY AND RICK
NAGEL*

# **TABLE OF CONTENTS**

**STANDARD FOR PRELIMINARY INJUNCTION** ................................................... 2

**PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS AGAINST THE OU REGENTS** ............................... 4

**PLAINTIFFS ARE NOT IN DANGER OF SUFFERING IRREPARABLE HARM** ................................................................................................................................... 8

**THE BALANCE OF EQUITIES TIPS IN THE OU REGENTS' FAVOR** ............. 8

**CONCLUSION** ............................................................................................................ 11

COME NOW the Defendants, Michael Cawley, Frank Keating, Phil Albert, Natalie Shirley, Eric Stevenson, Anita Holloway and Rick Nagel (Collectively OU Regents)[1], and for their response and objection to Plaintiffs' Motion for Preliminary Injunction [Doc. 27] show the Court as follows:

Plaintiffs filed their Complaint against several different people, including the OU Regents, members of the State Regents for Higher Education, members of the Oklahoma State Board of Education, the Oklahoma Attorney General, the Governor and members of the Edmond School District School Board. Plaintiffs assert that these individuals are all charged with "enforcing" HB 1775, a law passed by the Oklahoma legislature which, Plaintiffs allege, seeks to prohibit the teaching of certain concepts in Oklahoma's public schools. HB 1775 contains two parts. The first part, Section (A), implicates institutions of higher learning and seeks to prohibit those institutions from requiring students to engage in mandatory training or orientations. The Oklahoma State Regents for Higher Education is required to promulgate rules to effectuate Section (A). Section (B) applies solely to school districts, charter schools or virtual charter schools. Thus, to the extent that HB 1775 is aimed at, and enforceable against, the OU Regents, only subsection (A) (1) is applicable as the University of Oklahoma is not a school district or charter school, nor are the OU Regents required to promulgate any rules under the Bill.

---

[1] To the extent that the Board of Regents for the University of Oklahoma is considered a party to this matter (See Defendants' Motion to Dismiss, Doc. 51, p. 3-4), it joins as a movant herein.

1

Although the law was passed by the Oklahoma Legislature on April 29, 2021, to take effect on July 1, 2021, Plaintiffs, waited until October 29, 2021, to move this Court for a preliminary injunction asking the court to, "preliminarily enjoin the Defendants from enforcing this…Act". [Doc. 27, p. 25].

Like Plaintiffs' Complaint, which the OU regents have moved to dismiss for lack of standing and for failure to state a claim, Plaintiffs' Motion for Preliminary Injunction is light on legal substance and reads like a political manifesto of Plaintiffs' interpretation of Free Speech rights in academia. Wading through Plaintiffs verbosity, it is clear that Plaintiffs are attempting to use this court as a sounding board for their theories in the hopes that this Honorable Court will engage in an act that courts are not designed to do; dictating to a university what classes it should offer and what academic requirements it should implement. These are decisions which are left to the OU Regents through the State's Constitution. Okla. Const. Art. 13, Sec. 8.  This Court should decline Plaintiffs' invitation to interfere with the OU Regents' discretion and should overrule Plaintiffs' Motion.

## STANDARD FOR PRELIMINARY INJUNCTION

"A preliminary injunction is an 'extraordinary and drastic remedy... it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008)(citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)(citations

omitted). A preliminary injunction "should not be issued unless the movant's right to relief is 'clear and unequivocal.'" *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003). The hurdle for demonstrating irreparable harm is high. "Irreparable harm is not harm that is 'merely serious or substantial.'" *Heideman*, 348 F.3d at 1189 (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)).

The type of preliminary injunction sought in this case is disfavored and requires "a heightened showing" before one can be granted. *Attorney General of Oklahoma v. Tyson Foods*, 565 F.3d 769, 776 (10th Cir. 2009). In the Tenth Circuit there are "three types of specifically disfavored preliminary injunctions: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier v. University of Colorado*, 427 F.3d 1253, 1259 (10th Cir. 2005).

Plaintiffs' requested relief falls into all three categories. Plaintiffs seek a preliminary injunction that alters the status quo as it seeks to stay a law that is already in effect, is mandatory in nature and grants the same relief they would have obtained if they prevailed on final judgment regarding their claims. The preliminary injunction may require the OU Regents to drastically rewrite its schedule and impact the class schedules and curricula for thousands of students. To say the least, this is not the stuff of a typical preliminary injunction; indeed, it is, in effect, a thinly veiled request for the relief normally accorded in a final judgment.

## PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS AGAINST THE OU REGENTS

In their Motion to Dismiss, the OU Regents argued that Plaintiffs lack standing to pursue their claims against the OU Regents (Doc. 51, p. 4), that Plaintiffs have failed to demonstrate an injury in fact (Doc. 51, p. 6), that Plaintiffs have failed to demonstrate causation (Doc. 51, p. 10) and that Plaintiffs' alleged injuries cannot be redressed by a judgment in their favor (Doc. 51, p. 11). OU Regents hereby adopt those arguments and incorporate them as if set forth herein. Fed.R.Civ.P. 10(c). Because Plaintiffs' case fails at these fundamental levels, Plaintiffs cannot demonstrate that they are likely to succeed on the merits and this Court should overrule the Motion for Preliminary Injunction.

Not only does Plaintiffs' case fail for the reasons stated above, but Plaintiffs have failed to meet a factual showing that they are entitled to the preliminary injunction that they seek against the OU Regents. Plaintiffs make many assertions of "fact" which are not factual at all. Plaintiffs' claims, and the affidavits supporting those claims, are full of speculation, conjecture and worry over the effects of a statute which, frankly, does not affect the constitutional rights of the Plaintiffs, at least as applied to the OU Regents. Plaintiffs, thus, have not only failed to meet the heightened standard they must meet for a disfavored preliminary injunction, but they have also failed on a more fundamental level to demonstrate that they are likely to succeed in any way.

The law over which Plaintiffs complain reads as follows:

> A. 1. No enrolled student of an institution of higher education within The Oklahoma State System of Higher Education shall be required to engage in any form of mandatory gender or sexual diversity training or counseling; provided, voluntary counseling

4

>shall not be prohibited. Any orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex shall be prohibited.
>
>2. Pursuant to the provisions of the Administrative Procedures Act, the Oklahoma State Regents for Higher Education shall promulgate rules, subject to approval by the Legislature, to implement the provisions of this subsection.

A clear reading of the statute at issue provides that no enrolled student is required to attend mandatory gender or sexual diversity training and that any required orientations cannot present any form of race or sex stereotyping. Plaintiffs have presented no cases, because none exist, demonstrating either a constitutional right to mandatory diversity training or a constitutional right to orientations which present a form of race or sex bias or stereotyping. The Oklahoma State Regents for Higher Education, a body politic different from the OU Regents, is required to promulgate rules under Section (A) of the statute. Based on a plain reading of the law and the lack of any constitutional interest, Plaintiffs' claims lack **any** indication that they will be successful on the merits against the OU Regents.

Perhaps recognizing that the statute's plain meaning provides no mechanism by which Plaintiffs can succeed against the OU Regents, Plaintiffs parse the statute at issue in an attempt to find ambiguities which they can exploit. Plaintiffs appear to have locked onto the word "requirement" in the last sentence of subpart (A)(1) of the statute. According to Plaintiffs, they do not understand the prohibition of any "requirement" that presents race or sex bias or stereotyping. Plaintiffs, then, fret and worry that this could include the

purchasing of library books or could include the censorship of academic pursuits within and outside of the classroom.

Even if this Court decides that the statute is in-artfully worded, there is no ambiguity. "A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses." *United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir. 2002) (internal quotation marks omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Ceco Concrete Const., LLC v. Centennial State Carpenters Pension Tr.*, 821 F.3d 1250, 1258 (10th Cir. 2016) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). If statutory meaning cannot be derived "merely by reference to the text, we may also look to traditional canons of statutory construction to inform our interpretation." *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009).

This statute is easily deciphered by looking to the text and context of the statute itself. The statute by its text and context only relates to mandatory training, required orientations and the like. Nothing in subpart (A)(1) can reasonably be said to relate to what books are purchased by the library, what is taught in the classroom or what academic studies are pursued. In fact, there is no mention of academic study or anything so related in Subpart (A)(1).

In context of the entire statute, it is also clear that subsection (A)(1) does not dictate what can be taught or studied. Section (B), in comparison, does dictate what may and may

6

not be taught in the classroom and contains language which clearly expresses the legislature's intent that the statute limit what may be taught. However, Section (B) only applies to K-12 schools and does not apply to universities. Had the legislature intended the same limitations on universities, it clearly knew how to enact those limitations. The fact that Section (A) does not contain language which is even remotely similar to Section (B) is a strong indication that the legislature did not intend Section (A) to encroach on academic content.

Should it be determined that the text and context of the statute itself is not sufficiently clear, it should be noted that the legislature is without authority to dictate academic content to the OU Regents. In *Board of Regents of the University of Oklahoma v. Baker*, 638 P.2d 464 (Okla. 1981), the Oklahoma Supreme Court declared that under Oklahoma's constitutional scheme, the power to govern the University of Oklahoma is vested in the Board of Regents. *Id*. at 467. The Board of Regents maintains "constitutionally assured independence" from legislative regulation which interferes with the Board's ability to govern the University. *Id*. at 469. When institutional needs and resources are at issue, the legislature may not interfere with the Board's authority over those issues. *Id*. See also: *Franco v. Board of Regents of the University of Oklahoma*, 482 P.3d 1, 9 (Okla. Civ. App 2020)(Board of Regents of the University of Oklahoma have full and sole authority to govern the health, welfare, morals and education of the students). Thus, the statute at issue cannot be interpreted to dictate what classes the University can offer, what books the University can have in its library or what the content of its courses consists of. Those decision are left to the OU Regents free of interference from the

legislature. Thus, Plaintiffs' concern that HB 1775 might result in an infringement of their free speech rights is misplaced. HB 1775 does not, and cannot, dictate to the University what it may or may not teach.

## PLAINTIFFS ARE NOT IN DANGER OF SUFFERING IRREPARABLE HARM

For the same reasons that Plaintiffs are not likely to succeed on their claims against the OU Regents, Plaintiffs are not in danger of suffering irreparable harm. Plaintiffs have not demonstrated that HB 1775 puts them in danger of having their constitutional rights infringed. On the contrary, Plaintiffs cannot identify a single constitutional right which is affected by a proper reading of Section A of HB 1775.

Further, and importantly, even if HB 1775 impacts Plaintiffs free speech rights in their course requirements and academic work, Plaintiffs have identified no statutory penalty for HB 1775 nor any penalty established by rule. The statute itself sets forth no penalty for a violation of Section (A) and no rules have been promulgated under that Section. Thus, there are no enforcement penalties threatened against the Plaintiffs.

## THE BALANCE OF EQUITIES TIPS IN THE OU REGENTS' FAVOR

Plaintiffs have not asked for any specific, narrow relief in their Motion for Preliminary Injunction. On the contrary, Plaintiffs ask for the broadest relief possible, that the Defendants be enjoined from enforcing HB 1775. In order to succeed, the Plaintiffs must show ameliorating its injury by way of a preliminary injunction outweighs any injury that will befall the defendant if the injunction is granted. *Awad v. Ziriax*, 670 F.3d 1111,

1131 (10th Cir. 2012). As applied to the OU Regents, the balance of equities clearly tips in their favor from such a broad request for relief.

First, Plaintiffs assert that HB 1775 has caused OU Regents to end required orientation/trainings for students and has caused OU Regents to cease mandating a diversity class for all students. [Doc. 27 at 11]. Presumably, then, Plaintiffs expect that a preliminary injunction which prohibits the enforcement of HB 1775 will reinstate those orientations and diversity classes. However, this Court can take notice that Plaintiffs' Motion for Preliminary Injunction is pending in the middle of December, only a matter of weeks before the spring semester, 2022 is to begin on January 18, 2022. https://www.ou.edu/registrar/academic-calendars/spring-2022-academic-calendar (last accessed December 8, 2021). Certainly, it would be a major disruption to the University should the Court enter an order which results in the University having to reinstate mandatory classes at this late date. In fact, the Court would be requiring the impossible. This alone demonstrates that the equities favor the OU Regents as the harm caused by an injunction would greatly outweigh the speculative harm proffered by Plaintiffs.

Along similar lines, Plaintiffs have unnecessarily delayed asking for this relief. The law at issue was passed by the Oklahoma legislature in April 2021. The law took effect in July 2021. Classes at the University began in August. Yet Plaintiffs waited until October 19, 2021 to file their lawsuit and then did not file their Motion for Injunction until October 29, 2021. This is a clear indication that there is no urgency in the need to correct the potential "harms" which are asserted by Plaintiffs. Had there been an urgent need to prevent harm, Plaintiffs could have sought an injunction before the University began its fall

9

semester… and certainly long before the eve of the spring semester. Instead, Plaintiffs chose to wait and ask for relief only after statutory changes have allegedly been implemented. This counsels against the issuance of an injunction. See: *O'Centro Espirita Beneficiente Unio Do Vegital v. Ashcroft*, 389 F.3d 973, 1017, (10th Cir. 2004)(McConnell concurring)(a court may naturally ask why, if the injury is so pressing as to warrant preliminary relief, the plaintiff waited so long before bringing a claim); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009)(delay in seeking preliminary injunction is a factor in considering whether harm is irreparable).

Finally, just as the OU Regents argued in their Motion to Dismiss, there is no action which has been taken or contemplated by the University that this Court can enjoin. In other words, there is no effective relief that the Court can grant against these Defendants. Plaintiffs have pointed to no facts demonstrating that the University interprets the statute at issue in the way that Plaintiffs assert it might be interpreted. The OU Regents are not charged with promulgating rules to effectuate the law. There is no penalty set forth by law or rule for violating Section (A) of HB 1775 and Plaintiffs have identified no threats of enforcement against any of the Plaintiffs. Thus, there is no anticipated or pending enforcement for the Court to enjoin. Further, Plaintiffs have not demonstrated that they have any constitutional or other rights to determine what diversity training or mandatory diversity classes the University must offer. In fact, there is little question that the decision on those matters rest solely with the OU Regents who can chose whether to reinstate the mandatory trainings/classes regardless of the existence of HB 1775. So, even if Plaintiffs are correct that HB 1775 somehow interferes with their constitutional rights in some

applications, it does not follow that an injunction against the OU Regents would have any effect. This further cuts against Plaintiffs' equities in this matter. See: *Legacy Church v. Kunkel*, 455 F.Supp.3d 1100, 1163 (D. N.M. 2020)(Without a constitutional violation to point to, Plaintiff has not shown an actual or significant injury).

## CONCLUSION

This Honorable Court should overrule Plaintiffs' Motion for Preliminary Injunction as it applies to the OU Regents.

Respectfully submitted,

s/M. Daniel Weitman
M. DANIEL WEITMAN, OBA #17412
TINA IKPA, OBA #32193
University of Oklahoma
Office of Legal Counsel
660 Parrington Oval, Suite 213
Norman, Oklahoma  73109
Telephone: (405) 325-4124
Facsimile: (405) 325.7681
E-Mail: dan.weitman@ou.edu
E-Mail: tsikpa@ou.edu

*ATTORNEYS FOR DEFENDANTS MICHAEL CAWLEY, FRANK KEATING, PHIL ALBERT, NATALIE SHIRLEY, ERIC STEVENSON, ANITA HOLLOWAY AND RICK NAGEL*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 16th day of December 2021, I transmitted the attached document to the Clerk of Court using the ECF system for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Genevieve Bonadies Torres
David Hinojosa
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005

Megan Lambert
American Civil Liberties Union Foundation of Oklahoma
P.O. Box 13327
Oklahoma City, OK 73113

Gary Stein
Michael Cutini
Sara Solfanelli
Elahe Hosseini
Amir Shakoorian Tabrizi
Ramya Sundaram
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

Emerson Sykes
Leah Watson
Sarah Hinger
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004

Andy N. Ferguson
Zachary P. West
Attorney General's Office
313 NE 21 St
Oklahoma City, OK 73105

F. Andrew Fugitt
Justin C. Cliburn
The Center for Education Law
900 N Broadway Ave., Suite 300
Oklahoma City, OK 73102

                                            s/M. Daniel Weitman
                                            M. Daniel Weitman