IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **(1) BLACK EMERGENCY RESPONSE TEAM, ET AL.,** | |
| **PLAINTIFFS** | |
| **VS.** | **CASE NO. CIV-21-1022-G** |
| **(1) JOHN O'CONNOR, IN HIS OFFICIAL CAPACITY AS OKLAHOMA ATTORNEY GENERAL, ET AL.,** | **JUDGE CHARLES GOODWIN** |
| **DEFENDANTS.** | |

**EDMOND DEFENDANTS' OBJECTION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION & BRIEF IN SUPPORT**

Defendants Jamie Underwood, Cynthia Benson, Kathleen Duncan, and Lee Ann Kuhlman are members of the Board of Education of Independent School District No. 12, Oklahoma County, Oklahoma a/k/a Edmond Public Schools("District") while Defendant Dr. Angela Grunewald is the District Superintendent (collectively "Edmond Defendants"). The Edmond Defendants object to Plaintiffs' request for injunctive relief. Doc. No. 27, Mot. for Prelim. Inj. With this objection, the Edmond Defendants take no position on the constitutionality on Oklahoma House Bill 1775 and its associated statutes and rules but urge the Court to consider the practical and public policy concerns associated with prohibiting a public school district from attempting to comply in good faith with a duly-enacted state law.

**INTRODUCTION**

This action is about a law passed by the Oklahoma Legislature in the spring of 2021 and signed into law by Oklahoma Governor Kevin Stitt on May 7, 2021. Known as House Bill 1775 ("H.B. 1775") prior to codification, the law is now found at Title 70 O.S. § 24-157

(MANDATORY GENDER OR SEXUAL DIVERSITY TRAINING OR COUNSELING PROHIBITED; CERTAIN RACE- OR SEX-BASED CONCEPTS PROHIBITED FROM COURSES). As reflected in its title, the law prohibits the teaching of certain race- or sex-based concepts in public schools. The Edmond Defendants had no role in the passage of H.B. 1775, and none is alleged by Plaintiffs.

The Amended Complaint (Doc No. 50) also alleges that Defendant State Board of Education adopted and implemented emergency regulations pursuant to H.B. 1775, found at Okla. Admin. Code § 210:10-1-23 ("Rules"). Like H.B. 1775, the Rules prohibit the teaching of certain race- or sex-based concepts by public educators, and they contain sanctions for such actions. The Edmond Defendants had no role in the adoption of these administrative rules, either, and again none is alleged by Plaintiffs.

Plaintiffs' chief aim in this case is a declaration that H.B. 1775, 70 O.S. § 24-157, and the Rules be declared unconstitutional. Doc. No. 50, Am. Compl., ¶ 12. Nevertheless, they have sued the Edmond Defendants for doing precisely what their oaths of office require them to do. That is, to follow Oklahoma law. 70 O.S. § 5-116. Here, that law is H.B. 1775, 70 O.S. § 24-157, and the Rules. Plaintiffs allege the Edmond Defendants are responsible for enforcing H.B. 1775, but neither the District nor its Board of Education (as an entity) is named as a defendant in this action. Doc. No. 50, ¶ 28.

Plaintiffs allege that "[i]n attempting to comply with H.B. 1775 and its implementing rules, District has adopted guidance for teachers." Doc. No. 50, ¶ 66. They further allege that, because of this guidance, District "educators are chilled in their ability to provide students with anything but the most ambiguous answers to their questions, stymieing students' ability

2

to learn and engage with subject matter." *Id.* They allege, because of H.B. 1775, District struck or removed texts by women authors or authors of color, while retaining texts by Caucasian authors. Doc. No. 50, ¶ 67. For reasons outlined below, that is not accurate and does not justify a preliminary injunction.

Plaintiffs allege a District student and a District teacher are members of Plaintiff Oklahoma State Conference of the National Association for the Advancement of Colored People ("NAACP-OK"). Doc. No. 50, ¶¶ 16, 20. Plaintiffs allege that "[a]s a result of H.B. 1775 and its application through the policies of District, [the student]. has lost access to texts by Black and women authors that explicitly discuss racial and gender relations, and the corresponding classroom discussions that explore such issues from multiple angles." Doc. No. 50, ¶ 69. Plaintiffs allege that Plaintiff Regan Killackey, a District teacher, "is no longer able to lead appropriate educational classroom discussions on topics related to race, sex, and gender." Doc. No. 50, ¶ 20. Again, this is not accurate.

Plaintiffs claim that H.B. 1775 is facially void, in violation of the Fourteenth Amendment right to due process. Doc. No. 50, ¶¶ 156–63. Plaintiffs also claim that H.B. 1775 is overbroad and violates the right of Plaintiff NAACP members A.A. and Killackey to receive ideas. Doc. No. 50, ¶¶ 164–70. Finally, Plaintiffs claim that the actions of District (without making any allegations against the Edmond Defendants) in applying H.B. 1775 violate their right to equal protection under the Fourteenth Amendment. Doc. No. 50, ¶¶ 177–89.

Plaintiffs filed this action on October 19, 2021, alleging the Edmond Defendants are complying with a state law Plaintiffs assert is unconstitutional. The Amended Complaint is unique in that it purports to state a claim against a public school district for *complying* with a

law duly-enacted by the state legislature, signed into law by the governor, and enforced by the State Board of Education. It alleges no unlawful conduct by the Edmond Defendants, and it does not allege that they or the District are ignoring, violating, or flouting state or federal law.

Prior to the filing of the Edmond Defendants' Motion to Dismiss (Doc. No. 52), Plaintiffs moved for a preliminary injunction preventing District from following the law passed by our legislature and the Rules promulgated by the State Board of Education. Importantly, neither the Amended Complaint nor the Motion for Preliminary Injunction allege *any* conduct by the Edmond Defendants. Rather, both documents allege actions by District without alleging that any of the Edmond Defendants were responsible for such actions.

### RELEVANT FACTS

1.    This action is about a law passed by the Oklahoma Legislature in the spring of 2021 and signed by Oklahoma Governor Kevin Stitt on May 7, 2021. Known as House Bill 1775 before codification, the law is now found at Title 70 O.S. § 24-157. As reflected in its title, the law prohibits the teaching of certain race- or sex-based concepts in public schools.

2.    The Edmond Defendants had no role in passing H.B. 1775, and none is alleged.

3.    The Amended Complaint (Doc No. 50) also alleges that Defendant, the State Board of Education, adopted and implemented emergency regulations under H.B. 1775, found at Okla. Admin. Code § 210:10-1-23 ("Rules"). Like H.B. 1775, the Rules prohibit the teaching of certain race- or sex-based concepts by public educators, and they contain sanctions for such actions. The Edmond Defendants had no role in the adoption of these administrative rules, and none is alleged in the Amended Complaint.

4.      The Edmond Defendants have taken no action in response to H.B. 1775, and none is alleged in the Amended Complaint or the Motion for Preliminary Injunction.

5.      District did not alter its reading lists for secondary English students in response to H.B. 1775. Edmond Defs.' Ex. No. 1, Aff. of Emily Steele at ¶ 11; Edmond Defs.' Ex. No. 2, Aff. of Jacqueline Rasnic at ¶ 17.

6.      The only action District has taken in response to H.B. 1775 is to provide written guidance attempting to explain H.B. 1775. Edmond Defs.' Ex. No. 1, Aff. of Emily Steele at ¶¶ 7–9, 11.

## STANDARD OF REVIEW

As Plaintiffs acknowledge, a movant seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id.*

Plaintiffs seek an injunction to prohibit the Edmond Defendants from "enforcing" H.B. 1775. However, by the plain terms of H.B. 1775, the Edmond Defendants have no role in "enforcing" the Act, and Plaintiffs offer no evidence that the Edmond Defendants have violated Plaintiffs' rights or have done anything to call for a preliminary injunction.

Three types of preliminary injunctions are generally disfavored: (1) those that alter the status quo; (2) those that pronounce a mandatory act to be undertaken by the non-moving

party; and (3) those that afford the movant all the relief it could recover at the conclusion of a trial on the merits. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004)[1]. When such a request falls into one of the three disfavored categories, a movant must show "a substantial likelihood of success on the merits." *Gonzales* at 980. As discussed below, Plaintiff's injunction request is one of those disfavored injunctions, and a heightened level of scrutiny is warranted.

## ARGUMENT & AUTHORITY

**PROPOSITION I:** **THE ONLY ACTION DISTRICT HAS TAKEN IN RESPONSE TO H.B. 1775 IS TO PROVIDE ITS TEACHERS THE WRITTEN GUIDANCE ATTACHED TO THE AMENDED COMPLAINT.**

As a threshold issue, it is important to note that District has not changed its reading lists in response to H.B. 1775 as alleged in Exhibit 9 to the Motion for Preliminary Injunction. District teacher Regan Killackey alleges that District (A) changed its reading lists in response to H.B. 1775 and (B) the changes resulted in a less diverse selection of texts from which to teach. Each of these allegations is incorrect.

First, the changes in District's English Language Arts reading lists were instituted without regard to H.B. 1775. Edmond Defs.' Ex. No. 1, Aff. of Emily Steele at ¶ 11; Edmond Defs.' Ex. No. 2, Aff. of Jacqueline Rasnic at ¶ 17. School districts often change their reading lists, and District planned on updating its lists before our legislature passed H.B. 1775. *Id.* Far from acting by fiat, English Language Arts Content Specialist Jacqueline Rasnic worked with District secondary English teachers to determine changes to the reading lists. *Id.*

---

[1]Aff'd and remanded sub nom. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 126 S. Ct. 1211, 163 L. Ed. 2d 1017 (2006)

Plaintiff Killackey did not attend those meetings. *Id.* at ¶¶ 11–12.

Second, the new lists represent a more diverse selection of texts than the ones required in 2020–21. They include 29 Black, Latinx, Native American, or Asian authors covering a wide variety of situations and viewpoints. *Id.* at ¶ 16.

## PROPOSITION II:   PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS.

As discussed above, three types of preliminary injunctions are generally disfavored: (1) those that alter the status quo; (2) those that pronounce a mandatory act to be undertaken by the non-moving party; and (3) those that afford the movant all the relief it could recover at the conclusion of a trial on the merits. *Ashcroft*, 389 F.3d at 975. The status quo is "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Dominion Video,* 269 F.3d at 1155.

Here, the status quo is arguably the relationship between the parties prior to the passage of, and District's attempt to comply with, H.B. 1775. The status quo would therefore be the same reading lists as are now offered by District—as they were not changed in response to H.B. 1775—but without the written teacher guidance attached to the Amended Complaint. Heightened scrutiny is proper because Plaintiffs ask the Court to mandate action by District (rescind written guidance regarding H.B. 1775) and to afford it all the relief it could recover at the conclusion of a trial on the merits (prohibition on enforcement of or compliance with H.B. 1775).

**A.**  **DISTRICT'S H.B. 1775 GUIDANCE IS NOT VOID FOR VAGUENESS UNDER THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

Plaintiffs first allege the Rules as applied by District are too vague for Oklahoma educators to understand and therefore unconstitutional. In support, the Motion points to written guidance ("Guidance") allegedly provided by the Edmond Defendants to District teachers. Doc. No. 27 at 18 (citing Doc. No. 1-1, Written Guidance). This guidance, however, is not unconstitutionally vague. Instead, the guidance is a good faith effort by District to help its teachers comply with H.B. 1775. Far from vague, it provides a specific response to inquiries on critical race theory and makes clear that teachers may engage in student-initiated discussions on race in society. According to the District guidance, teachers are only counseled not to *initiate* conversations on race or critical race theory or to inject their opinion on such matters. And, as Plaintiffs concede, District has voluntarily rescinded at least some of this guidance since the filing of this lawsuit. Doc. No. 27 at 9, n. 20.

**B.**  **THE GUIDANCE IS NOT A VIEWPOINT-DISCRIMINATORY INFRINGEMENT ON ACADEMIC FREEDOM.**

Plaintiffs further allege that H.B. 1775—as applied by the Edmond Defendants—is overbroad and violates the First Amendment right of teachers to instruct students from certain texts. Plaintiffs allege that District prohibited teachers from using the terms "diversity" and "white privilege" and that it removed certain books by women authors or authors of color from the list of "anchor" texts.[2] Doc. No. 27 at 9–10. As noted above, there is no allegation that the Edmond Defendants took any action to draft, pass, or sign H.B. 1775 at all, and no

---

[2] "Anchor texts" is not an official District term but is commonly used to refer to the four texts (or groups of texts) that will be the focus of each nine-week periods of a school year.

allegation the Edmond Defendants' acts harmed Plaintiffs. Rather, the allegation is that, before H.B. 1775, District *required* students to read certain texts, and, after H.B. 1775, District *did not require* students to read certain texts. The attached affidavits reflect that this did not occur.

Plaintiffs base much of their academic freedom argument on the holding in *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853 (1982)*, where a public school *removed books from its library to deny students access to such texts*. In *Pico*, a plurality of the Supreme Court held that school boards violate the First Amendment if they "remove books from school library shelves simply because they dislike the ideas contained in those books and seek by their removal to 'prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.'" *Id.* at 872 (quoting *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)). The Supreme Court summed up its holding thusly:

> [W]hether petitioners' removal of books from their school libraries denied respondents their First Amendment rights depends upon the motivation behind petitioners' actions. If petitioners *intended* by their removal decision to deny respondents access to ideas with which petitioners disagreed, and if this intent was the decisive factor in petitioners' decision, (footnote omitted) then petitioners have exercised their discretion in violation of the Constitution.

*Pico*, 457 U.S. at 871 (emphasis in original).

Further, in *Miles v. Denver Pub. Schs.*, *supra*, the Tenth Circuit stated that "the caselaw does not support [the plaintiff's] position that a secondary school *teacher* has the constitutional right to academic freedom." 944 F.2d at 779, *citing Pico, supra* at 920 (emphasis added). As Plaintiffs note, there is no further holding from the Tenth Circuit that broadens a secondary public school student's right to receive—or a secondary public school teacher's right to teach—a certain curriculum, or to certain texts as part of the curriculum. There is no allegation

here that the Edmond Defendants took any action to "mask illicit motivations" or to "prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *Pico* at 871–72.

In Oklahoma, "[t]he State Board of Education shall adopt subject matter standards for instruction of students in the public schools of this state that are necessary to ensure there is attainment of desired levels of competencies in a variety of areas to include language, mathematics, science, social studies, communication, and health and physical education." 70 O.S. § 11-1-3.6(A)(1). Per this same section, "[s]chool districts shall develop and implement curriculum, courses and instruction in order to ensure that students meet the skills and competencies as set forth in this section and in the subject matter standards adopted by the State Board of Education." 70 O.S. § 11-1-3.6(A)(2). Per these provisions, it is the obligation of District to develop and implement curriculum designed to meet *all* of the standards adopted by the State Board of Education.

Even if Plaintiffs were correct in their contention that District changed its English Language Arts reading lists in response to H.B. 1775, there is no evidence or allegation that District did so specifically to restrict students' access to information. As Plaintiffs do not have a First Amendment right to a say in the District's choice of curriculum—and there is no allegation of any action by the Edmond Defendants based upon an "illicit motivation" or to prescribe what shall be orthodox on any subject—Plaintiffs do not state a viable claim against District or the Edmond Defendants for a violation of any Plaintiff's First Amendment rights.

C.        THE GUIDANCE DOES NOT RESTRICT STUDENTS' ACCESS TO INFORMATION.

Plaintiffs further allege District's compliance with H.B. 1775 violates the First Amendment rights of students to receive ideas. Doc. No. 27 at 19. In support, Plaintiffs allege that NAACP-OK member Student A.A. desires greater access to diverse texts and that District's Guidance infringes on his or her access to such information. *Id.* at 22.

The only action the Motion alleges District took that allegedly violated the First Amendment was the alleged removal of certain books from required reading lists. In contrast to *Pico*, there is no allegation that District removed the books from its *library* or otherwise prevented students from accessing the books—only that students are no longer *required* to read them as part of classroom instruction. This does not establish that District violated Plaintiffs' First Amendment rights, as students may access such books in their school libraries, their public libraries, in the privacy of their homes, or through the internet.

As noted above, however, District did not alter *any* reading lists in response to H.B. 1775, and the new reading lists are more diverse than the ones they replaced. Edmond Defs.' Ex. No. 2 at ¶ 16. District has taken no action to prevent students from accessing and reading any books.

PROPOSITION III:   PLAINTIFFS DO NOT SHOW THAT, ABSENT AN INJUNCTION, THEY WILL SUFFER IRREPARABLE HARM.

Irreparable harm is suffered when "the injury can[not] be adequately atoned for in money" or when "the district court cannot remedy [the injury] following a final determination on the merits." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (quoting *Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (1980)). However, "[w]hen an alleged

deprivation of a constitutional right is involved, such as the right to free speech . . . most courts hold that no further showing of irreparable injury is necessary." § 2948.1 Grounds for Granting or Denying a Preliminary Injunction—Irreparable Harm, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.).

While Plaintiffs allege that a constitutional right is "involved" in District's actions to comply with H.B. 1775, the above shows that they do not state a claim against District for a violation of any constitutional right. To the extent that Plaintiffs disagree with the manner in which District has attempted to comply with H.B. 1775, this does not evidence the violation of a constitutional right or harm that is irreparable. Further, the 2021–22 reading lists include the titles named in Exhibit 9 to the Motion and are more diverse than ever before. Edmond Defs.' Ex. No. 2 at ¶ 16. No one is being harmed by District's Guidance, District did not make any changes to its reading lists based on H.B. 1775, and the changes that District did make resulted in more diverse texts for teachers to teach and from which students to learn.

**PROPOSITION IV:   THE HARM AN INJUNCTION WOULD CAUSE DISTRICT IS NOT IN THE PUBLIC INTEREST.**

Even if the Guidance had not been rescinded, Plaintiffs cannot show that an injunction is in the public interest. If injunctive relief is denied, Plaintiff teachers can discuss diversity and white privilege in response to student-led discussion, and Plaintiff students can access books in school libraries, initiate class discussions on diversity and white privilege, and choose from a more diverse list of texts to study. If District is ordered not to follow H.B. 1775, it places its employees in jeopardy of discipline, to include the suspension of teaching licenses, which would adversely affect public education in Edmond, Oklahoma. Further, an injunction will call into question what laws District should follow. To give Plaintiffs injunctive relief will affect

District and the many teachers who provide instruction to the District's 13,000 secondary school students.

The public policy concerns arising out of issuing injunctive relief do not favor Plaintiffs. Any public policy consideration favors the denial of injunctive relief. No person has a protected interest in teaching from or receiving instruction from particular books, and public policy favors not ordering District to disregard duly-enacted state law so individuals can require certain texts or teach certain topics. Neither does public policy favor forcing public school districts to decide what laws with which they will comply. And it is not within anyone's best interests to change the curricula halfway through the school year.

Further, recognizing that teachers and students have a constitutional right to determine what texts and subjects are *required* to be taught or read will open the door for any teacher to disregard the academic standards developed by the State Board of Education and file a lawsuit if counseled otherwise. It would open the door for any student—or, more likely, any student's parents—to enlist federal courts to mandate that school districts teach every parent's child from the texts preferred by one student's parents. Such a scenario is sustainable for neither public school districts nor district courts.

## CONCLUSION

Plaintiffs' request for a temporary and permanent injunction should be denied, as Plaintiffs cannot establish the requisite criteria for an injunction. Plaintiffs cannot establish a likelihood of success on the merits or of irreparable harm. District can clearly establish there would be a significant negative effect if an injunction is granted and that such a restraining order or injunction would be contrary to public policy.

Respectfully submitted,


S/JUSTIN C. CLIBURN
F. ANDREW FUGITT, OBA #10302
JUSTIN C. CLIBURN, OBA #32223
THE CENTER FOR EDUCATION LAW
900 N. BROADWAY AVE, SUITE 300
OKLAHOMA CITY, OK 73102
TELEPHONE: (405) 528-2800
FACSIMILE: (405) 528-5800
E-MAIL: AFUGITT@CFEL.COM
E-MAIL: JCLIBURN@CFEL.COM
ATTORNEYS FOR EDMOND DEFENDANTS


## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2021 I electronically transmitted the attached document to the Clerk of the Court using the Electronic Case Filing system for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.


S/JUSTIN C. CLIBURN
JUSTIN C. CLIBURN