IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

)
[1] BLACK EMERGENCY RESPONSE  )
TEAM, et al.,  )
  )
      *Plaintiffs*,  )
  )
v.  )  Case No. 5:21-cv-01022-G
  )
  )  Hon. Charles B. Goodwin
  )
[l] JOHN O'CONNOR, in his official  )
capacity as Oklahoma Attorney  )
General, et al.,  )
  )
      *Defendants*.  )
  )

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
BOARD OF REGENTS FOR THE UNIVERSITY OF OKLAHOMA, MICHAEL
CAWLEY, FRANK KEATING, PHIL ALBERT, NATALIE SHIRLEY, ERIC
STEVENSON, ANITA HOLLOWAY AND RICK NAGELS' MOTION TO
DISMISS**

| | |
|---|---|
| Genevieve Bonadies Torres | Megan Lambert |
| David Hinojosa | AMERICAN CIVIL LIBERTIES UNION |
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS |   FOUNDATION OF OKLAHOMA |
|   UNDER LAW | P.O. Box 13327 |
| 1500 K Street NW, Suite 900 | Oklahoma City, OK 73113 |
| Washington, DC 20005 | Tel.: 405-524-8511 |
| | mlambert@acluok.org |
| | |
| Gary Stein | Emerson Sykes |
| Michael Cutini | Leah Watson |
| Sara Solfanelli | Sarah Hinger |
| Elahe Hosseini | AMERICAN CIVIL LIBERTIES |
| Amir Shakoorian Tabrizi |   UNION FOUNDATION |
| Ramya Sundaram | 125 Broad Street, 18th Floor |
| SCHULTE ROTH & ZABEL LLP | New York, NY 10004 |
| 919 Third Avenue | |
| New York, NY 10022 | *Counsel for Plaintiffs* |

I.  **INTRODUCTION**

Plaintiffs have established standing and have sufficiently plead allegations supporting each of their claims against the Board of Regents of the University of Oklahoma (OU). Plaintiffs first and foremost challenge House Bill 1775 as unconstitutionally vague, overbroad, and viewpoint discriminatory in violation of their First Amendment rights. Among other harms, the law's prohibition against "[a]ny orientation or *requirement* that presents any form of race or sex stereotyping or a bias on the basis of race or sex," Okla. Stat. tit. 70, § 24-157(A)(1) (2021) (emphasis added), impinges on the academic freedom of OU faculty and on Black Emergency Response Team (BERT) members' right to information. Compl. ¶¶ 74–77, ECF No. 50. The OU Defendants make light of Plaintiffs' fear and the chill to Plaintiffs' First Amendment rights by characterizing such harms as subjective and divorced from the terms and purpose of H.B. 1775. OU Defs.' Mot. to Dismiss at 8–9, ECF No. 51. Yet, as set forth in the Complaint, there is good reason to fear H.B. 1775's chilling impact on teaching, classroom dialogue, and the free exchange of ideas across the University.

Following the passage of H.B. 1775, OU changed course to end an established student training and a class requirement, both of which addressed issues of race and gender equity and inclusion. Compl. ¶ 74. And a Plaintiff OU faculty member was instructed by their Department Chair not include the topic of critical race theory in exams, based on guidance the Department Chair received from the Office of the Dean of the Arts and Sciences College. Compl. ¶ 14; OU-AAUP Decl. ¶ 12, ECF No. 27-4; Doe Decl. ¶ 7, ECF No. 66-2. Other Plaintiff members are restructuring their pedagogical

1

approach to avoid topics related to race, gender, or sexual orientation. Compl. ¶ 14. BERT's members are deprived of comprehensive courses of study due to the removal of theoretical frameworks and historical perspectives related to race and sex. *Id.* at ¶ 76; Second BERT Decl. ¶ 11, ECF No. 66-1. As the allegations makes clear, Plaintiffs legitimately fear that discussion of topics relating to race and gender, including through classroom teachings and course materials, will lead to negative consequences pursuant to H.B. 1775.

The alleged facts belie the OU Defendants' assertion that they are not proper defendants. While the primary source of Plaintiffs' constitutional injury is H.B. 1775 itself, the OU Defendants are proper parties to this case because they can and have applied H.B. 1775 to restrict educators' and students' First Amendment rights; namely, by excluding critical race theory from exams and avoiding topics related to race, gender, or sexual orientation from courses, when there is no legitimate pedagogical purpose for doing so. Compl. ¶ 14. The OU Defendants concede this type of infringement on academic freedom and students' right to information is unlawful and unconstitutional. OU Defs.' Mot. to Dismiss at 9.

The OU Defendants assert that H.B. 1775 has not been applied to classroom study or academic research and mischaracterize Plaintiffs' claims as limited to "some mandatory training [that] was made optional." *Id.* at 8. These assertions misconstrue Plaintiffs' legal arguments and are contradicted by the Complaint.

In sum, because the injury to Plaintiffs' constitutional rights could be cured at least in part by enjoining OU's application of H.B. 1775, the OU Defendants are proper parties to this case. Plaintiffs respectfully ask this Court to deny the motion to dismiss.

## II. STANDARD OF REVIEW

The OU Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). OU Defs.' Mot. to Dismiss at 5. Under Rule 12(b)(1), a party may challenge subject matter jurisdiction for lack of standing. Plaintiffs whose standing has been challenged must demonstrate "(i) an injury in fact that is both concrete and particularized as well as actual or imminent; (ii) an injury that is traceable to the conduct complained of; and (iii) an injury that is redressable by a decision of the court." *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1241 (10th Cir. 2008). When considering a facial attack under 12(b)(1), the Court must accept the allegations in the complaint as true. *Kauble v. Bd. of Cnty. Comm'rs ex rel. Oklahoma Cnty. Sheriff's Off.*, No. CIV-17-729-D, 2018 WL 912285, at *2 (W.D. Okla. Feb. 15, 2018).

Under Rule 12(b)(6), a party may challenge the sufficiency of the allegations in a complaint. A court should not dismiss a claim under 12(b)(6) unless the complaint lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted); *see Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." (internal citation omitted)).

In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-plead factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, [courts] 'presume[] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889 (1990)).

## III. DEFENDANTS ARE PROPERLY NAMED.

Defendants argue that the Board of Regents cannot be sued because it is not a "person" under 42 U.S.C. § 1983. OU Defs.' Mot. to Dismiss at 3–4. However, as Defendants acknowledge, the Board of Regents as an entity is not a named defendant.[1] *Id.* at 3. Consistent with established precedent, Plaintiffs name the individual board members in their official capacities. "[O]fficial-capacity actions for prospective relief are not treated as actions against the State." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, n.10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)); *see McLaughlin v. Bd. of Trs. of State Colls. of Colo.*, 215 F.3d 1168, 1172 n.2 (10th Cir. 2000).

---

[1] Any reference to OU Defendants should be interpreted to refer to the named individual members of the OU Board of Regents, sued in their official capacity.

## IV. PLAINTIFFS HAVE STANDING TO CHALLENGE THE ACTIONS OF THE OU DEFENDANTS.

Plaintiffs assert that the University should not be allowed to enforce H.B. 1775 because it unconstitutionally restricts academic freedom and students' right to information. Compl. ¶ 77. OU. In response, the OU Defendants argue that the First Amendment does not provide a right to particular training. OU Defs.' Mot. to Dismiss at 11. Plaintiffs' well-plead allegations more than demonstrate standing to proceed on their claims against OU.

### A. Injury in Fact

Plaintiffs allege that their due process and First Amendment rights are infringed by the vague and chilling terms of H.B. 1775 and by the University of Oklahoma's implementation of the law. These allegations are more than "subjective" and self-imposed, as Defendants contend. OU Defs.' Mot. to Dismiss at 7–8, 12–14. Most squarely, Plaintiffs here allege, *inter alia*, that pursuant to H.B. 1775, the Office of the Dean of the Arts and Sciences told a Department Chair that an instructor could not include topics related to critical race theory in their course work. Doe Decl. ¶ 7; Compl. ¶ 14, 75; OU-AAUP Decl. ¶ 12. This directive plainly restricts Plaintiff faculty members' academic freedom, which indisputably is a protectable interest. *See Keyishian v. Bd. of Regents,* 385 U.S. 589, 603 (1967).

Notwithstanding OU's application of H.B. 1775, the chill created by an unconstitutional law is sufficient to establish standing in and of itself. It is well-settled that Plaintiffs are not required to wait until they are subject to the ultimate consequence

5

of a law before they may file suit. *See, e.g.*, *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997)) (Standing is established where "there exists a credible threat of prosecution . . . even if [plaintiffs] have never been prosecuted or actively threatened with prosecution."); *City of Houston v. Hill*, 482 U.S. 451, 459 n.7 (1987). This is particularly true where First Amendment rights are at stake, and an "ongoing injury result[s] from the statute's *chilling effect*." *Ward*, 321 F.3d at 1267 (emphasis in original) (quoting *Wilson v. Stocker*, 819 F.2d 943, 946 (10th Cir.1987)). The Tenth Circuit has recognized that a concrete First Amendment injury can be established through three forms of evidence:

> (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so *because of* a credible threat that the statute will be enforced.

*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (emphasis in original). All three are present here, as demonstrated by Plaintiffs' allegations in their Complaint.

Plaintiffs allege, *inter alia*, that as faculty members, they "are restructuring their pedagogical approach wholesale to avoid topics related to race, gender, or sexual orientation;" that they "fear complaints and sanctions for continuing to teach material related to race, gender, and sexual orientation;" that they are concerned as to whether they can "offer classes in Black Literature under H.B. 1775;" and that they are uncertain whether they are able "to purchase texts and materials relating to race, gender, and sexual

6

orientation for the library." Compl. ¶ 14; *see also* OU-AAUP Decl. ¶¶ 6–26. Further, "[d]ue to the Act's chilling effect on professors' speech, BERT's members are denied access to essential information related to race and sex." Compl. ¶ 13. This censorship harms BERT's members by stifling their exposure to ideas that are integral for their degrees. *Id.*; Compl. ¶ 76; Second BERT Decl. ¶ 11.

These fears stem from the language of H.B. 1775 and the reasonable assumption that OU administrators will continue to follow and apply the Act, a fear that is reinforced by Plaintiffs' experiences. *See* Compl. ¶¶ 14, 75; OU-AAUP Decl. ¶ 12; Doe Decl. ¶ 7; *Hill*, 482 U.S. at 459 (Evidence of prior enforcement "lends compelling support to the threat of future enforcement.") (internal citations omitted); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165–67 (2014). H.B. 1775 prohibits "[a]ny orientation *or requirement* that presents any form of race or sex stereotyping or a bias on the basis of race or sex." Okla. Stat. tit. 70, § 24-157(A)(1) (2021) (emphasis added). Because the word "requirement" can reasonably be interpreted to apply to required courses and assignments, professors have modified their curricula and stopped testing on concepts like critical race theory, thereby depriving students of access to information central to their chosen fields of study. Compl. ¶¶ 3, 13, 44, 75; Doe Decl. ¶¶ 7–8. And because legislators made clear that the purpose of the Act was to eliminate certain viewpoints about issues like police brutality and structural racism from the classroom, *see generally* Compl. Section IV(c), Plaintiffs are further reasonable in fearing that the law's vague prohibitions will be arbitrarily and discriminatorily applied to their instruction and offerings related to racism, oppression, and colonialism. *Id.* at ¶ 75. That some OU

7

administrators may interpret the vague terms of H.B. 1775 to comply with the First Amendment does not cure the Act's constitutional infirmities, as such an interpretation is by no means guaranteed and depends upon an individual administrator's good judgment. *See, e.g.*, *City of Chicago v. Morales*, 527 U.S. 41, 71 (1999) (Breyer, J., concurring in part and concurring in the judgment) ("The ordinance is unconstitutional, not because a policeman applied this discretion wisely or poorly in a particular case, but rather because the policeman enjoys too much discretion in *every* case." (emphasis in original)).

Defendants' citation to *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), is inapposite. In *Clapper*, the court reasoned that the claimed injury was speculative because the challenged law "expressly provide[d] that respondents . . . cannot be targeted." 568 U.S. at 411. By contrast, education and educators are the clear focus of H.B. 1775's prohibitions. Similarly, in *D.L.S. v. Utah*, 374 F.3d 971 (10th Cir. 2004), cited by Defendants, OU Defs.' Mot. to Dismiss at 11, the Tenth Circuit found that there was affirmative "additional evidence indicating that prosecution . . . is unlikely," including evidence that the law had been largely unenforced for over ten years and a prosecutor's affidavit that D.L.S. would not be prosecuted. *D.L.S.*, 374 F.3d at 975. Here, OU Defendants fail to offer any specific evidence that H.B. 1775 will not be applied to Plaintiffs. To the contrary, the vague terms of the law, which abut First Amendment–protected activities, and the alleged prior application, establish a reasonable threat of enforcement. *See Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979) (risk of injury was not speculative where "the State has not disavowed any intention of

8

invoking the criminal penalty provision" even though state defendants maintained that the criminal penalty provision "may never be applied").

In addition to distorting the relevant standard, Defendants' arguments that H.B. 1775 is clear and Plaintiffs' concerns are too "hyper-technical," OU Defs.' Mot. to Dismiss at 19, are unavailing because these contentions go to the merits of the case and thus, are not appropriate grounds for dismissal at this juncture. *See Initiative & Referendum Inst.*, 450 F.3d at 1093 ("[W]here the plaintiff presents a nonfrivolous legal challenge, alleging an injury to a protected right such as free speech, the federal courts may not dismiss for lack of standing on the theory that the underlying interest is not legally protected."). Here, Plaintiffs need only "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation omitted).

Last, Defendants suggest that Plaintiffs lack standing because H.B. 1775 has no enforcement effect. OU Defs.' Mot. to Dismiss at 14. The Court should not adopt the "circular argument that [a statute] is 'unenforceable' because the statute does not contain any specific language stating how it is to be enforced." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 n.16 (10th Cir. 2007). H.B. 1775 repeatedly uses the language of "shall" in the context of its prohibitions, which courts understand to create a requirement. *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("The mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion") (citation omitted). Defendants' assertion is further belied by the evidence of the law's application and chill set forth in the Complaint. Compl. ¶¶ 74–77.

9

### B. Causation

Defendants assert that Section (1)(A) of the challenged law only impacts the diversity, equity, and inclusion training, and that this provision does not reach classroom content including the purchase of library books or substance of professors' speech. OU Defs.' Mot. to Dismiss at 10–11. This ignores Plaintiffs' allegations—which must be taken as true at this stage—that H.B. 1775's prohibition of "[a]ny orientation *or requirement* that presents any form of race or sex stereotyping or a bias on the basis of race or sex," Okla. Stat. tit. 70, § 24-157 (2021) (emphasis added), reaches classroom content, and that OU applied the law in a manner that unconstitutionally infringed upon the academic freedom of educators and students' right to information, as set forth above. *See, e.g.*, Compl. ¶¶ 74–77.

Plaintiffs' alleged harms are directly traceable to the OU Defendants. H.B. 1775 restricts academic conduct, which at the University of Oklahoma is overseen by the Board of Regents. The Board of Regents is responsible for general supervision, management, and control of University officials, faculty, and administrators. *See* Okla. Stat. tit. 70, § 3305.² As such, the Board of Regents is responsible for H.B. 1775's

---

² *See also* Regents' Policy Manual for the University of Oklahoma 11, available at https://bit.ly/3EYKJIg (The Board's broad mandate encompasses "governance of all faculty personnel matters, including without limitation, academic freedom and responsibility, appointments, evaluations, academic misconduct, and academic appeals."); *id.* at 77 (Board responsible for appointing the Dean of Libraries and Universities Library faculty); *id.* at 5 (Board has authority to "[e]stablish and maintain plans for tenure and retirement of employees of the Board of Regents and of the University of Oklahoma."); *id.* at 50 (Board has authority to revoke tenure for "[s]erious violations of law that are admitted or proved before a court of competent jurisdiction or the administrative hearing body established to hear such matters . . ."); *id.* (Board has

implementation and application on campus. While the OU Defendants did not enact H.B. 1775, their application of the law is a partial cause of the constitutional injury, and this establishes standing. "[A] state official is a proper defendant if he is 'responsible for general supervision of the administration by the local . . . officials' of a challenged provision." *Kitchen v. Herbert*, 755 F.3d 1193, 1204 (10th Cir. 2014) (quoting *Papasan v. Allain,* 478 U.S. 265, 282 n.14 (1986)). The "important and material fact" in this inquiry is "that the state officer, by virtue of his office, has some connection with the enforcement of the act." *Prairie Band Potawatomi Nation*, 476 F.3d at 828 (quoting *Ex parte Young,* 209 U.S. 123, 157 (1908)). The Tenth Circuit has rejected arguments that defendants "are not proper parties because they cannot change state law to remedy the [plaintiff's] concerns—but can only enforce the law as written." *Id*.

## C. Redressability

The relief Plaintiffs seek will prevent H.B. 1775's continued infringement on academic freedom and the right to information at the University of Oklahoma. Defendants argue that Plaintiffs' injuries cannot be remedied through this lawsuit because OU is not required to make trainings mandatory. OU Defs.' Mot. to Dismiss at 12. This argument again inaccurately and narrowly characterizes Plaintiffs' claims. As discussed above, Plaintiffs maintain that the law, and its implementation by OU, reach classroom instruction and other aspects of academic freedom, and deprive students' right to information. Further, as Defendants appear to concede, OU has complied with H.B. 1775

---

authority to change "the University's educational function," which can result in "the elimination of an academic unit.").

11

by *removing* trainings and course requirements related to racial and gender equity that the University had previously determined should be included in its academic programming. *See* Compl. ¶ 74; OU Defs.' Mot. to Dismiss at 12.

A remedy directed at the OU Defendants would ensure that H.B. 1775 is not applied to chill classroom discussion and other areas of academic freedom on OU's campus. While this would not cure the full range of the constitutional injuries caused by H.B. 1775, it would provide partial redress, which satisfies standing. *See, e.g.*, *U.S. Chamber of Com. v. Edmondson*, 594 F.3d 742, 757 (10th Cir. 2010) ("[A plaintiff] need not show 'that a favorable decision will relieve their *every* injury.' Rather, they need only show '*an* injury that is likely to be redressed by a favorable decision.'" (emphasis in original) (quoting *Larson v. Valente,* 456 U.S. 228, 243 n.15 (1982)); *Massachusetts v. EPA,* 549 U.S. 497, 526 (2007) (finding redressability satisfied where the harm "would be reduced *to some extent* if petitioners received the relief they seek." (emphasis added)).

**V.   PLAINTIFFS' CLAIMS ARE ADEQUATELY PLEAD.**

In Proposition III, OU Defendants move to dismiss Plaintiffs' claims by arguing the Complaint does not contain sufficient facts "to state a claim against the Board Members." OU Defs.' Mot. to Dismiss at 13. But OU Defendants misconstrue Plaintiffs' legal arguments and ignore their well-plead allegations. Federal Rule of Civil Procedure 8(a)(2) is satisfied where a pleading contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And while "the plaintiff must provide more than labels and conclusions, or a formulaic recitation of the elements of a cause of action, specific facts are not necessary; the statement need only

give the defendant fair notice of what the claim is and the grounds upon which it rests." *Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009) (internal citation omitted).

Plaintiffs have properly alleged that H.B. 1775's unconstitutionally vague, overbroad, and viewpoint discriminatory provisions violate professors' and students' First Amendment rights. Far from conclusory statements, as detailed above, Plaintiffs' Complaint contains detailed allegations of how H.B. 1775's ambiguous and sweeping provisions chill professors' speech on topics related to race and gender and infringe on students' right to receive information and ideas. *See, e.g.*, Compl. ¶¶ 2–5, 39–56, 74–77, 156–76. Additionally, Plaintiffs clearly allege that H.B. 1775 was passed with discriminatory intent, and that its implementation—including OU's reversal of decisions on training and course requirements—causes particular harm to Plaintiffs of color, with compounding harms for LGBTQ+, women, and girls of color. *See, e.g.*, *id.* at ¶¶ 6–11, 76–77, Section III–IV, Section VI, ¶¶ 177–89.

Defendants' argument that Plaintiffs have failed to adequately plead a claim primarily rests on the erroneous assertion that Plaintiffs allege a right "to specific mandatory training." OU Defs.' Mot. to Dismiss at 13. In making this assertion, Defendants do not quote from the Complaint. Indeed, they could not, because Plaintiffs do not allege such a right, nor seek such a remedy. Rather, Plaintiffs seek only to ensure that OU—and other state actors—conform with constitutional guarantees of fair notice, freedom of speech, and equal protection as guaranteed by the First and Fourteenth Amendments. *See generally Grayned v. Rockford,* 408 U.S. 104, 108 (1972) (invalidating as vague laws whose "prohibitions are not clearly defined"); *Keyishian*, 385 U.S. at 603

13

(academic freedom entitled to First Amendment protection); *see Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988) (requiring restriction of school-sponsored speech to be reasonably related to a legitimate pedagogical interest); *Bd. of Educ. v. Pico*, 457 U.S. 853, 870 (1982) (plurality op.) (recognizing students' right to information); *Navajo Nation v. State of N.M.*, 975 F.2d 741, 744 (10th Cir. 1992) (official actions that invidiously discriminate based on race are unconstitutional).

Defendants additionally argue that "Plaintiffs have not plead that the statute at issue has been enforced by these Defendants in any way, nor have they shown that the Board Members are about to enforce H.B. 1775 . . ." OU Defs.' Mot. to Dismiss at 18. To the contrary, as discussed above, Plaintiffs allege that the law has been enforced by OU in violation of their First Amendment rights, and that the law chills speech and infringes Plaintiffs' rights through the threat of enforcement. Compl. ¶ 14.

Defendants make additional arguments that H.B. 1775 is not unconstitutionally vague, but their arguments are erroneous on multiple grounds. OU Defs.' Mot. to Dismiss at 14. First, Defendants misstate the standard for vagueness. *Id.* (citing *United States v. Stevens*, 559 US 460, 473 (2010)). But as the Supreme Court made clear in *Johnson v. United States*, the Court's "*holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." 576 U.S. 591, 602 (2015) (emphasis in original); *see also United States v. Lynch*, 881 F.3d 812, 818 (10th Cir. 2018)). Moreover, where—as here—speech and expression are implicated, "[t]he general test of vagueness applies with particular force." *Hynes v. Mayor of Oradell*, 425 U.S. 610, 620 (1976); *see also Smith v. Goguen*,

14

415 U.S. 566, 573 (1974). This is because "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109.

Plaintiffs' have amply satisfied this plausibility standard through their well-plead allegations.

## CONCLUSION

For the reasons stated above, the Court should deny the OU Defendants' Motion to Dismiss.

Dated: January 13, 2022

Genevieve Bonadies Torres
David Hinojosa
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
  UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005

Gary Stein
Michael Cutini
Sara Solfanelli
Elahe Hosseini
Amir Shakoorian Tabrizi
Ramya Sundaram
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022

Respectfully submitted,

/s/ Megan Lambert
Megan Lambert
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
mlambert@acluok.org

Emerson Sykes
Leah Watson
Sarah Hinger
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2022, I electronically filed the foregoing Plaintiffs' Memorandum of Law in Opposition to Board of Regents for the University of Oklahoma, Michael Cawley, Frank Keating, Phil Albert, Natalie Shirley, Eric Stevenson, Anita Holloway, and Rick Nagels' Motion to Dismiss with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

    Respectfully submitted,

    /s/ Megan Lambert
    Megan Lambert
    AMERICAN CIVIL LIBERTIES UNION
      FOUNDATION OF OKLAHOMA
    P.O. Box 13327
    Oklahoma City, OK 73113
    Tel.: 405-524-8511
    mlambert@acluok.org

    *Counsel for Plaintiffs*