# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| _____ | ) | |
| [1] BLACK EMERGENCY RESPONSE TEAM, et al., | ) ) ) | |
| *Plaintiffs*, | ) ) ) | |
| v. | ) ) | Case No. 5:21-cv-01022-G |
| [l] JOHN O'CONNOR, in his official capacity as Oklahoma Attorney General, et al., | ) ) ) ) | Hon. Charles B. Goodwin |
| *Defendants*. | ) ) ) | |
| _____ | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO EDMOND PUBLIC SCHOOL'S MOTION TO DISMISS

Genevieve Bonadies Torres
David Hinojosa
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
   UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005

Gary Stein
Michael Cutini
Sara Solfanelli
Elahe Hosseini
Amir Shakoorian Tabrizi
Ramya Sundaram
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY  10022

Megan Lambert
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
mlambert@acluok.org

Emerson Sykes
Leah Watson
Sarah Hinger
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................ii

I.      PRELIMINARY STATEMENT......................................................................1

II.     SUMMARY OF ALLEGATIONS ................................................................1

III.    STANDARD OF REVIEW ...........................................................................3

IV.     ARGUMENT .................................................................................................3

        A.      Plaintiffs Have Sued the Proper Defendants..................................3

        B.      The EPS Board Bears Liability for Enforcing H.B. 1775 and for Its
                Conduct in Violation of Plaintiffs' Constitutional Rights .........................6

        C.      The Complaint States a Claim for Violation of Plaintiffs' First Amendment
                Rights to Receive Information and Ideas...................................................9

                1.      EPS students have a first amendment right to receive
                        information .................................................................................10

                2.      Plaintiffs have sufficiently alleged a violation of their first
                        amendment right to receive information ........................................13

        D.      The Complaint Sufficiently States a Claim for Violation of Plaintiffs'
                Fourteenth Amendment Right to Equal Protection ..................................16

V.      CONCLUSION ...........................................................................................22

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**CASES**

*Arce v. Douglas,*
    793 F.3d 968 (9th Cir. 2015) ....................................................................12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................3

*Axson-Flynn v. Johnson,*
    356 F.3d 1277 (10th Cir. 2004) ...............................................................15

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico,*
    457 U.S. 853 (1982) ...................................................... 10, 11, 12, 15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................21

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................3

*Brown v. Bd. of Educ. of Topeka, Kan.,*
    349 U.S. 294 (1955) ...............................................................................21

*Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty.,*
    355 F. Supp. 3d 386 (E.D. Va. 2018) .......................................................9

*Burnett v. Mortg. Elec. Registration Sys., Inc.,*
    706 F.3d 1231 (10th Cir. 2013) ..........................................................3, 16

*Caminero v. Rand,*
    882 F. Supp. 1319 (S.D.N.Y. 1995) .........................................................9

*Chamber of Com. of U.S. v. Edmondson,*
    594 F.3d 742 (10th Cir. 2010) ..................................................................6

*Chavez v. Las Cruces Pub. Schs.,*
    Civ. No. 03-1043 JP/LAM, 2004 WL 7338107 (D. N.M. Feb. 5, 2004) ....... 5

*Colorado Christian Univ. v. Weaver,*
    534 F.3d 1245 (10th Cir. 2008) ...............................................................17

*Crowson v. Washington Cnty. Utah,*
    983 F.3d 1166 (10th Cir. 2020)...................................................................5

*Dowell by Dowell v. Bd. Of Educ. Of Oklahoma City Pub. Sch., Indep. Dist. No. 89,
    Oklahoma City, Okl.,*
    8 F.3d 1501 (10th Cir. 1993)....................................................................17

*Epperson v. Ark.,*
    393 U.S. 97 (1968) ...................................................................................11

*Evers v. Custer Cnty.,*
    745 F.2d 1196 (9th Cir. 1984)....................................................................9

*Ex parte Young,*
    209 U.S. 123 (1908) ...............................................................................6, 8

*Gamel-Medler v. Almaguer,*
    835 F. App'x 354 (10th Cir. 2020)...........................................................18

*Garner v. Memphis Police Dep't,*
    8 F.3d 358 (6th Cir. 1993) .........................................................................8

*Gonzalez v. Douglas,*
    269 F. Supp. 948 (D. Ariz. 2017)..............................................................12

*Hazelwood Sch. Dist. v. Kuhlmeier,*
    484 U.S. 260 (1988) ...................................................................10, 11, 15

*Hunt v. Cromartie,*
    526 U.S. 541 (1999) .................................................................................18

*Isaacs v. Konawa Pub. Schs.,*
    No. CIV-20-187-KEW, 2021 WL 1229945 (E.D. Okla. Mar. 31, 2021). ..................4, 5

*Kentucky v. Graham,*
    473 U.S. 159 (1985) ...................................................................................5

*Kitchen v. Herbert,*
    755 F.3d 1193 (10th Cir. 2014)...............................................................6, 7

*McLaughlin v. City of Canton,*
    947 F. Supp. 954, 966 (S.D. Miss. 1995) ..................................................7

*Meyer v. Neb.*,
   262 U.S. 390 (1923) ...................................................................................11

*Miles v. Denver Pub. Schs.*,
   944 F.2d 773 (10th Cir. 1991)............................................................ 10, 12

*Moore v. Urquhart*,
   899 F.3d 1094 (9th Cir. 2018)...................................................................7

*Morin v. Leahy*,
   189 F. Supp. 3d 226, 236 (D. Mass. 2016) ...............................................7

*Navajo Nation v. State of N.M.*,
   975 F.2d 741 (10th Cir. 1992)............................................................ 17, 21

*O'Rourke v. Hayes*,
   378 F.3d 1201 (11th Cir. 2004)..................................................................9

*Pac. Shores Props., LLC v. City of Newport Beach*,
   730 F.3d 1142 (9th Cir. 2013)..................................................................18

*Pendleton v. Bd. of Cty. Commissioners for Oklahoma Cty.*,
   No. CIV-18-707-G, 2019 WL 4752269 (W.D. Okla. Sept. 30, 2019).........................21

*Pers. Adm'r v. Feeney*,
   442 U.S. 256 (1979) ............................................................................ 19, 21

*Prairie Band Potawatomi Nation v. Wagnon*,
   476 F.3d 818 (10th Cir. 2007)...................................................................6

*Pratt v. Indep. Sch. Dist. No. 831, Forest Lake, Minn.*,
   670 F.2d 771 (8th Cir. 1982).............................................................. 11, 15

*Primeaux v. Indep. Sch. Dist. No. 5 of Tulsa Cnty.*,
   954 F. Supp. 2d 1292 (N.D. Okla. 2012)................................................4, 5

*SECSYS, LLC v. Vigil*,
   666 F.3d 678 (10th Cir. 2012)..................................................................19

*Stanley v. Ga.*,
   394 U.S. 557 (1969) .................................................................................10

*Stump v. Gates*,
   777 F. Supp. 808 (D. Colo. 1991), ...............................................................6

*Stump v. Gates*,
   986 F.2d 1429 (10th Cir. 1993) ....................................................................6

*Tinker v. Des Moines Sch. Dist.*,
   393 U.S. 503 (1969) .....................................................................................16

*Viet Anh Vo v. Gee*,
   No. 16-15639, 2017 WL 1091261 (E.D. La. Mar. 23, 2017) ......................7

*Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977) ..................................................................... 17, 18, 19, 20

*Virgil v. Sch. Bd. of Columbia Cnty., Fla.*,
   862 F.2d 1517 (11th Cir. 1989).............................................................11, 12

*Washington v. Davis*,
   426 U.S. 229 (1976) .....................................................................................18

## STATUTES

42 US Code § 1983 ...........................................................................5, 8, 9

70 O.S. § 24-157 .............................................................................*passim*

Fed. R. Civ. P. 12(b)(6)...........................................................................3

Okla. Admin. Code § 210:10-1-23(b)(1)(A) ...........................................4

Okla. Admin. Code § 210:10-1-23(g)........................................................4

Okla. Stat. tit. 70, § 5-106 .....................................................................4

## I.      PRELIMINARY STATEMENT

Plaintiffs respectfully submit this memorandum in opposition to the motion to dismiss filed by the Edmond Defendants—the Edmond Public Schools ("EPS") Superintendent who also serves as an executive officer of the EPS Board of Education ("EPS Board" or "Board") and the four members of the EPS Board. The Edmond Defendants argue that they are not proper parties to this lawsuit and that the Complaint fails to state a claim against them, relying chiefly on the contention that Plaintiffs' issue is solely with the state for passing an unconstitutional law. As set forth below, the Edmond Defendants' arguments run contrary to long-established case law and misapprehend the allegations of the Complaint. Their motion to dismiss should be denied in its entirety.

## II.      SUMMARY OF ALLEGATIONS

The Amended Complaint (ECF No. 50 ("Complaint" or "Compl.")) alleges that in attempting to comply with H.B. 1775 and its implementing rules, the Edmond Defendants have violated Plaintiffs' First Amendment and due process rights and their right to equal protection under the Fourteenth Amendment. The Complaint seeks declaratory and injunctive relief to enjoin these violations. All the Edmond Defendants are sued solely in their official capacities. Compl. ¶¶ 27-28, ECF No. 50.

As alleged in the Complaint ¶¶ 48, 59, and conceded by Edmond Defendants, EPS Mot. to Dismiss at 2, House Bill 1775 prohibits the teaching of certain race- or sex-based concepts in public schools. EPS has applied H.B. 1775 through the issuance of its own vague directives that chill educators' ability to meaningfully engage students on their

questions about race and gender, including by prohibiting teachers from using the terms "diversity" and "white privilege." *Id.* at ¶¶ 66-67. It has also removed from its anchor texts books by women authors and authors of color, including *To Kill a Mockingbird* by Harper Lee, *A Raisin in the Sun* by Lorraine Hansberry, *Their Eyes Were Watching God* by Zora Neale Hurston, *I Know Why the Caged Bird Sings* by Maya Angelou, and *Narrative of the Life of Fredrick Douglass* by Fredrick Douglass. *Id.* at ¶ 67.

As a result of these changes, students like Plaintiff NAACP-OK member Student A.A., a high schooler attending EPS, have lost access to information and ideas, particularly those that explicitly discuss racial and gender relations from the perspective of women and Black people, as well as classroom discussions that explore these issues from multiple viewpoints. *Id.* at ¶ 69. Therefore, Student A.A. is deprived of diverse perspectives that would "broaden Student A.A.'s worldview, better prepare A.A. to participate in a multiethnic democracy, and enable Student A.A. to engage in advanced inquiry and problem-solving." *Id.* In addition, EPS teachers like Plaintiff Regan Killackey have had their speech chilled and are "no longer able to lead appropriate educational classroom discussions on topics related to race, sex, and gender." *Id.* at ¶ 20.

Beyond its curriculum changes, EPS has also modified its teacher education program by removing a "Diversity Module" training that advocated for inclusive education. *Id.* at ¶ 68. That training encouraged teachers to "embrace uncomfortable and courageous conversations about race," "reflect on how marginalized students have barriers they must navigate every day," and "share tips and ideas for moving forward to build courageous classrooms and professional teams where everyone belongs." *Id.*

## III.    STANDARD OF REVIEW

In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint should not be dismissed for failure to state a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV.    ARGUMENT

### A.    Plaintiffs Have Sued the Proper Defendants

In Propositions I and II, the Edmond Defendants argue that because Plaintiffs are "asserting claims against the [EPS School] District," Plaintiffs should have named the District in this suit and that the individually named Edmond Defendants "are improper parties and should be dismissed" from the action. EPS Mot. to Dismiss at 5, 7. Both prongs of this argument are without merit. Plaintiffs are properly asserting claims against the EPS Board, the entity responsible for enforcing H.B. 1775 in EPS; and because the Board itself is not a juridical entity, Plaintiffs properly sued the individual Edmond Defendants in their official capacities.

Under Oklahoma law, the EPS Board is responsible for implementing H.B. 1775 within EPS. The Emergency Rules require "public schools" to adopt policies and

3

procedures to ensure compliance with H.B. 1775; to develop a process for students, parents, teachers, school staff and members of the public to file complaints regarding alleged violations; to designate an employee responsible for receiving reports of violations; and to investigate complaints and make a determination as to whether a violation has occurred. Okla. Admin. Code § 210:10-1-23(g). And the Emergency Rules define "public school" to mean "the *board of education* of a school district" or other schools provided for under Oklahoma law. Okla. Admin. Code § 210:10-1-23(b)(1)(A) (emphasis added).[1] In fact, the Board has approved EPS's policy implementing H.B. 1775. *See* Compl. Ex. 1 at 2. Therefore, the Complaint's allegations about EPS's unconstitutional enforcement of H.B. 1775 challenge the specific actions of the Board and seek to declare unlawful and enjoin the Board's actions.

However, as Defendants' own authorities attest, "Oklahoma school boards are not separate, suable entities." *Primeaux v. Indep. Sch. Dist. No. 5 of Tulsa Cnty.*, 954 F. Supp. 2d 1292, 1295 (N.D. Okla. 2012); *Isaacs v. Konawa Pub. Schs.*, No. CIV-20-187-KEW, 2021 WL 1229945, at *4 (E.D. Okla. Mar. 31, 2021). Accordingly, Plaintiffs sued the individual Board members and Superintendent Grunewald, who is the executive officer of the Board, in their *official capacities*. Compl. ¶¶ 27-28. This was a standard and perfectly permissible way for Plaintiffs to proceed. Indeed, Defendants admit that, under Supreme Court precedent, "an official capacity suit is 'only another way of pleading an

---

[1] *See also* Okla. Stat. tit. 70, § 5–106 (providing that the "governing body" of each school district is "the board of education of such district" and that the superintendent "shall be the executive officer of the board and shall perform duties as the board directs").

action against an entity of which an officer is an agent'" and "is the same as a suit against the public entity." EPS Mot. to Dismiss at 7 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also, e.g.*, *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1173 n.1 (10th Cir. 2020).[2]

Moreover, and contrary to the Edmond Defendants' argument, the Complaint sufficiently alleges that the Board has acted unlawfully by enforcing an unconstitutional law and doing so in an unconstitutional manner. *See* Section II, infra. These allegations are more than sufficient to state a claim against the Edmond Defendants in their official capacities. *See, e.g.*, *Chavez v. Las Cruces Pub. Schs.*, Civ. No. 03-1043 JP/LAM, 2004 WL 7338107, at *2 (D. N.M. Feb. 5, 2004) (holding that claim was sufficiently alleged against school board officials in their official capacities where alleged unconstitutional actions stemmed from an officially executed policy or decision).

Thus, the Edmond Defendants are properly sued in their capacity as officials of the EPS Board. Moreover, even if Defendants were correct that the District is the proper party in interest, their motion to dismiss should still be denied because Defendants concede that "naming the Edmond Defendants in their official capacity is just another way of naming Independent School District No. 12 of Oklahoma County." EPS Mot. to Dismiss at 7; *see also Chavez*, 2004 WL 7338107, at *2 ("'a § 1983 action appropriately

---

[2] The cases cited by the Edmond Defendants miss the mark. Those cases dismissed claims asserted against a school *board* on the ground that a board is not an entity capable of being sued under Oklahoma law. They did not dismiss official-capacity claims asserted against individual school board members or district supervisors, which is what Plaintiffs have done here. *See Primeaux*, 954 F. Supp. 2d at 1295; *Isaacs*, 2021 WL 1229945 at *4.

is pleaded against a [local governmental entity] either by naming the [entity] itself or by naming [the entity's official] in his or her official capacity. Naming either is sufficient.'") (quoting *Stump v. Gates*, 777 F. Supp. 808, 816 n.3 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993)).

Finally, if the Court believes that a suit against the Edmond Defendants is inappropriate (even though they are sued solely in their official capacities), Plaintiffs ask for leave to amend the Complaint to explicitly name the District as a defendant.

**B.     The EPS Board Bears Liability for Enforcing H.B. 1775 and for Its Conduct in Violation of Plaintiffs' Constitutional Rights**

In Proposition III, the Edmond Defendants also claim they cannot be sued because they "did not draft, pass or sign H.B. 1775 into law" and instead are "merely complying with state law." EPS Mot. to Dismiss at 8, 14-15. The Edmond Defendants cite no authority in support of this argument. Their argument is, in fact, contrary to well-settled law.

*First*, under *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court has long held that public officials may be sued in their official capacities for prospective relief where they have "'some connection with the enforcement of'" an allegedly unconstitutional state law, such as "'a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014) (quoting *Young*, 209 U.S. at 157, and *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010)); *see also Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (rejecting

6

"Defendants' assertion that they are not proper parties because they cannot change state law to remedy [Plaintiff's] concerns—but can only enforce the law as written").

This doctrine applies not only to state officials, but also to local officials charged with enforcing the unconstitutional state law in question. In *Kitchen*, for example, the Tenth Circuit held that plaintiffs had standing to sue a county clerk in her official capacity for her office's implementation of an allegedly unconstitutional state law forbidding the issuance of marriage certificates to gay and lesbian couples, noting that plaintiffs' "injuries were caused by the Clerk's office and would be cured by an injunction prohibiting the enforcement of" the state law. 755 F.3d at 1201-02; *see, e.g.*, *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018) (noting that "[a]ctions under *Ex parte Young* can be brought against both state and county officials" and upholding claim seeking declaratory and injunctive relief against local official in his official capacity barring him from enforcing allegedly unconstitutional state law).[3]

Here, as shown above, the Emergency Rules confer specific and substantial duties upon the EPS Board to enforce H.B. 1775 within EPS, and the Board has demonstrated

---

[3] *See also, e.g.*, *Viet Anh Vo v. Gee*, No. 16-15639, 2017 WL 1091261, at *4 (E.D. La. Mar. 23, 2017) (upholding claim against local clerks, despite argument that they had no choice but to follow the mandates of state law, because injunctive relief is proper under *Ex parte Young* where clerks are acting as state officials in enforcing state law); *Morin v. Leahy*, 189 F. Supp. 3d 226, 236 (D. Mass. 2016) (suit proper under *Ex parte Young* against local official "to enjoin an alleged ongoing constitutional violation" where plaintiff "does not seek damages" but "seeks declaratory and injunctive relief only" to enjoin ongoing constitutional violations); *McLaughlin v. City of Canton*, 947 F. Supp. 954, 966 (S.D. Miss. 1995) (holding that while municipal officials were shielded from "liability for monetary damages" for merely enforcing a state statutory scheme that reflected state, rather than county, policy, "these defendants remain subject to the declaratory and injunctive powers of the court").

its willingness to exercise those duties. The Complaint seeks only declaratory and injunctive relief to enjoin EPS's enforcement of the law, which is depriving plaintiffs of their constitutional rights. Compl. ¶74 (Prayer for Relief). This relief is clearly permissible under *Ex parte Young*. Thus, the Edmond Defendants are proper Defendants in this action based on their responsibilities to enforce H.B. 1775.[4]

*Second*, the Complaint alleges that the Edmond Defendants have done more than merely passively enforce H.B. 1775. Rather, as noted above, the Edmond Defendants have adopted their own policies and procedures for how to implement H.B. 1775 and the Emergency Rules within EPS. And, as the Complaint alleges, EPS has implemented the law in a manner that violates Plaintiffs' constitutional rights. Among other things, in implementing H.B. 1775, EPS has chosen to restrict teachers from using terms like "diversity" and "white privilege," removed books by Black and women authors from reading lists, and eliminated a diversity training module, all of which Plaintiffs allege violates their First and Fourteenth Amendment rights.

Courts have routinely held that where, as here, a local governmental entity adopts its own policies in furtherance of an allegedly unconstitutional state law, or implements a state law in an unconstitutional manner, it is subject to liability under § 1983. *See, e.g.*, *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (local police

---

[4] Plaintiffs' action against the Edmond Defendants as the enforcers of the law is particularly apt in the context of Plaintiffs' vagueness challenge. It is not disputed that Defendants struggled to understand the meaning of the law they were tasked with enforcing, saying of one of its provisions: "Unfortunately, no one truly knows what this means or can come to agreement on its meaning." Compl. Ex. 2 at 1.

department could be sued for its alleged unconstitutional use-of-force policy that it had

adopted based on state law where policy was "a deliberate choice from among various

alternatives"); *Evers v. Custer Cnty.*, 745 F.2d 1196, 1203-04 (9th Cir. 1984) (holding

that county's implementation of an Idaho statute constituted official actions which could

provide a basis for § 1983 liability).[5] In other words, just because EPS is implementing a

state law, it is not "relieve[d] … of [its] responsibility to decide for [itself] whether to

violate clearly established constitutional rights[.]" *O'Rourke v. Hayes*, 378 F.3d 1201,

1210 (11th Cir. 2004) (citation omitted).

     Further, there is no basis for the Edmond Defendants' "public policy" argument

that they should be immune from liability. *See* EPS Mot. to Dismiss at 14. Allowing

Plaintiffs' claims to proceed against the Edmond Defendants would in no sense set a

"dangerous precedent." *See id.* Instead, it would be to *follow* precedent and provide

Plaintiffs with access to a well-established remedy to which they are entitled for the

vindication of their constitutional rights.

### C.    The Complaint States a Claim for Violation of Plaintiffs' First Amendment Rights to Receive Information and Ideas

     In Proposition IV, the Edmond Defendants seek dismissal of the Complaint's

Second Cause of Action, which sets forth a claim against the Edmond Defendants based

---

[5] *See also Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty.*, 355 F. Supp. 3d 386, 400-01 (E.D. Va. 2018) (county subject to liability for manner in which it enforced state highways signs statute as "this is not a case in which a local official simply passively applied a state policy"); *Caminero v. Rand*, 882 F. Supp. 1319, 1325 (S.D.N.Y. 1995) (municipality faces § 1983 liability where it is alleged to have "inflicted a constitutional deprivation by adopting an unconstitutional policy that was in some way authorized or mandated by state law").

on EPS's affirmative restrictions on students' First Amendment right to receive information. Compl. ¶¶ 16.a, 69, 164, 166-67. This argument should also be rejected. As set forth below, Plaintiffs' First Amendment right is firmly established under applicable case law and the Complaint's well-pled facts, taken as true, sufficiently allege a violation of that right.

   1.  *EPS students have a first amendment right to receive information.*

   It is well established that "the Constitution protects the right to receive information and ideas," *Stanley v. Ga.*, 394 U.S. 557, 564 (1969), and that this right specifically applies to public school students, *see Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 866-68 (1982). In *Pico*, a plurality of the Supreme Court recognized that "the right to receive ideas is a necessary predicate to the recipient's meaningful exercise of his own rights of speech, press, and political freedom," and held that students are protected from having their access to information abridged based on illegitimate purposes like "political orthodoxy." *Id.* at 866-67. Subsequently, in *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988), the Supreme Court held that students' First Amendment rights are violated when a school chokes off their access to information for reasons untethered to "a legitimate pedagogical interest." *Id.* at 273; *see also Miles v. Denver Pub. Schs.*, 944 F.2d 773, 775 (10th Cir. 1991) (reiterating that any restriction on school-sponsored speech must be "reasonably related to a legitimate pedagogical interest").

   Contrary to the Edmond Defendants' suggestion that public schools have plenary power over their choice of the curriculum, *see* EPS Mot. to Dismiss at 10, Supreme Court

precedent has "long recognized certain constitutional limits upon the power of a State to control even the curriculum and classroom." *Pico*, 457 U.S. at 861; *see also Epperson v. Ark.*, 393 U.S. 97, 108 (1968) (striking down law banning teaching of evolution in public schools and universities); *Meyer v. Neb.*, 262 U.S. 390, 403 (1923) (striking down statute prohibiting teaching of foreign languages in public and private schools). A school violates the First Amendment when its curricular choices suppress students' ability to receive information and ideas based on illegitimate motives, such as "narrowly partisan or political" interests, "racial animus," or a desire to "deny [students] access to ideas with which [the school] disagree[s]." *Pico*, 457 U.S. at 870-72.

Although the Tenth Circuit has not directly addressed the right to receive information in the context of school curriculum, several sister circuits have done so and have squarely held that the right to receive information does apply in this context. For example, in *Pratt v. Indep. Sch. Dist. No. 831, Forest Lake, Minn.*, 670 F.2d 771 (8th Cir. 1982), the Eighth Circuit found that a local school board violated students' First Amendment right to receive information by removing a film from the school's curriculum because the board objected to the ideas expressed in the film. *Id.* at 777; *see also id.* (holding that "to avoid a finding that it acted unconstitutionally, the board must establish that a substantial and reasonable governmental interest exists for interfering with the students' right to receive information"). Similarly, in *Virgil v. Sch. Bd. of Columbia Cnty., Fla.*, 862 F.2d 1517, 1522-23 (11th Cir. 1989), the Eleventh Circuit rejected the proposition that school officials have an unfettered right to remove a textbook from a curriculum. The court adopted *Hazelwood*'s standard and held that to

11

pass constitutional muster, the removal decision must have been reasonably related to a legitimate pedagogical concern. *Id.* at 1522.

More recently, in *Arce v. Douglas*, 793 F.3d 968 (9th Cir. 2015), the Ninth Circuit, examined an Arizona law that banned ethnic studies programs. Students brought an action similar to the claims asserted here, challenging restrictions on students' access to ideas under the First and Fourteenth Amendments. The Ninth Circuit, relying on *Pico*, held that "limitations on school curricula that restrict a student's access to materials otherwise available may be upheld only where they are reasonably related to legitimate pedagogical concerns." *Id*. at 983. The court reasoned that "[g]ranting wider discretion has the potential to substantially hinder a student's ability to develop the individualized insight and experience needed to meaningfully exercise her rights of speech, press, and political freedom." *Id.* (citing *Pico*, 457 U.S. at 867). On remand, the district court analyzed the law under *Pico*, ultimately finding that the curricular decisions were based on illegitimate partisan and racial motives and thus were unconstitutional. *Gonzalez v. Douglas*, 269 F. Supp. 948, 972-74 (D. Ariz. 2017).

Unable to counter this governing case law, the Edmond Defendants instead rely on strawman arguments that misdirect attention away from Plaintiffs' actual First Amendment claim. For example, notwithstanding the fact that the Complaint's separate cause of action for violation of academic freedom is *not* asserted against the Edmond Defendants, *see* Compl. ¶¶ 171-76 (Third Cause of Action), the Edmond Defendants argue that under *Miles*, a secondary school teacher does not have the constitutional right to academic freedom. EPS Mot. to Dismiss at 9 (quoting *Miles*, 944 F.2d at 775). But that

proposition, whether valid or not, is irrelevant on this motion. Similarly, the Edmond Defendants argue that "Plaintiffs do not have a First Amendment right to a say in the District's choice of curriculum" or to dictate "a certain curriculum, or certain texts as part of the curriculum." *Id.* at 8-9. That argument is likewise irrelevant because the Complaint alleges no such right. Rather, the Complaint alleges that the Edmond Defendants cannot *suppress* the mere mention of certain ideas and concepts in classroom discussion.

> 2. *Plaintiffs have sufficiently alleged a violation of their first amendment right to receive information.*

The well-pled allegations in the Complaint assert abundant facts to state an as-applied challenge to EPS's restrictions. Plaintiffs have alleged facts as to all of the essential components of that claim, averring that EPS's actions have deprived them of access to diverse texts and discussions about race and gender based on partisan and racial ideology and without a legitimate pedagogical purpose.

The Complaint alleges that the Edmond Defendants have interpreted and applied H.B. 1775 by barring terms like "diversity" and "white privilege," as well as by striking anchor texts by women authors and authors of color. Compl. ¶¶ 3, 20, 67. Based on their conduct, teachers like Mr. Killackey have changed their teaching in ways that reduce discussions about race, sex, and gender. *Id.* at ¶ 20. And removing these books from reading lists has resulted in students' "los[s] of access to texts by Black and women authors that explicitly discuss racial and gender relations, and the corresponding classroom discussions that explore such issues from multiple angles." *Id.* at ¶ 69.

The Complaint further alleges that the Edmond Defendants' restrictions have deprived Plaintiffs of information that serves to broaden their worldviews, participate in a multiethnic democracy, and enable them to engage in advanced inquiry and problem-solving. Compl. ¶¶ 16.a., 69. It alleges that the restrictions have inflicted educational harms, particularly against students from historically marginalized groups. *Id.* at ¶ 68. Finally, the Complaint states facts showing that the restriction on students' access to information runs counter to the state's own learning goals. *Id.* at ¶ 5.

Plaintiffs have also alleged that the restrictions are not reasonably related to a legitimate pedagogical purpose, but rather, are based on the Edmond Defendants' attempt to steer clear of H.B. 1775's prohibitions, Compl. ¶ 66, a law that itself was passed based on "narrowly partisan or political" interests and racial animus. Taking the Amended Complaint's allegations as true, they amply allege an as-applied First Amendment claim against the Edmond Defendants.

The Edmond Defendants' arguments to the contrary are unavailing. They rely on EPS's obligation to develop and implement curricula to meet the standards set by the SBE to suggest that the restrictions are pedagogically justified. EPS Mot. to Dismiss at 10. But Plaintiffs' factual allegations, which must be accepted as true at this stage, charge that Edmond Defendants' actions are in fact *not* required by the SBE's standards, and that they run counter to the standards' stated goals and fail to serve a legitimate educational purpose. *See* Compl. ¶¶ 2, 5, 93-98.

Next, the Edmond Defendants argue that Plaintiffs' claims must fail because they have not alleged that EPS acted based on "illicit motives." EPS Mot. To Dismiss at 10.

14

That argument, however, is also refuted by the case law. Under the Supreme Court's analysis in *Hazelwood*, Plaintiffs need only allege that a school's speech restrictions are not reasonably related to a legitimate pedagogical interest. 484 U.S. at 273. Proof of illicit motive is not required. *Pico* further instructs that even if a school proffers a legitimate interest, a plaintiff may establish a First Amendment violation by proving that the reasons offered in fact serve to mask other illicit motivations. *See Pico*, 457 U.S. at 871-72; *cf. Axson-Flynn v. Johnson*, 356 F.3d 1277, 1290 (10th Cir. 2004). The Complaint alleges both that Edmond Defendants' restrictions are not grounded in legitimate pedagogical interests, and that they were formulated based on a law pursuing narrowly partisan or political interests. Compl. ¶¶ 9, 11, 116, 145. That suffices to state a claim. The rationale and motivations for EPS's restrictions raise issues of fact that cannot be decided on a motion to dismiss.

The Edmond Defendants further argue that EPS "has not removed the books from libraries altogether" and has not outright "prohibited students from reading any book." EPS Mot. To Dismiss at 13. In other words, according to the Edmond Defendants, public schools are free to purge certain texts and concepts from the classroom, even without a legitimate pedagogical justification and for partisan or political reasons, so long as students can theoretically seek out removed texts and ideas elsewhere. This contention, advanced without citation to any authority, is directly contrary to the case law cited above. *See, e.g., Pratt*, 670 F.2d at 779 ("Restraint on protected speech generally cannot

be justified by the fact that there may be other times, places or circumstances for such expression.").[6]

The argument is also logically untenable because it falsely equates students' theoretical access to information in a vacuum with students' access to information *in the classroom*. The reality is that education flows from robust classroom discussion and analysis. As the Supreme Court has declared, "[t]he classroom is peculiarly the 'marketplace of ideas,'" and "[t]he Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth 'out of a multitude of tongues, (rather) than through any kind of authoritative selection." *Tinker v. Des Moines Sch. Dist.*, 393 U.S. 503, 512 (1969). For this reason, students' ability to find the banned texts outside of the classroom does not and cannot cure EPS's unconstitutional restrictions.

### D.     The Complaint Sufficiently States a Claim for Violation of Plaintiffs' Fourteenth Amendment Right to Equal Protection

In Proposition V, the Edmond Defendants argue that Plaintiffs' Fourth Cause of Action under the Equal Protection Clause should be dismissed. EPS Mot. to Dismiss at 10-14. But their arguments simply ignore the factual allegations in the Complaint, which must be taken as true, and the reasonable inferences therefrom, which must be drawn in Plaintiffs' favor. *Burnett,* 706 F.3d at 1235.

---

[6] Indeed, accepting the argument that a First Amendment right to receive information claim must fail when an individual can theoretically access that information elsewhere would all but eliminate the Supreme Court's access to information jurisprudence in today's digital age, in which information is almost always accessible somewhere else.

A law is unconstitutional under the Equal Protection Clause so long as race is a "motivating" factor in its enactment; Plaintiffs need not allege "a particular purpose was the 'dominant' or 'primary' one." *Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977) ("*Arlington Heights*"); *see also Navajo Nation v. State of N.M.,* 975 F.2d 741, 743 (10th Cir. 1992). Discriminatory intent does not require racial animus, hatred or bigotry but "*merely the intent to treat differently*." *Colorado Christian Univ. v. Weaver*, 534 F.3d 1245, 1260 (10th Cir. 2008) (emphasis added).

Where there are no express racial classifications, as here,[7] the inquiry into discriminatory intent will be guided by the *Arlington Heights* factors which consider: (1) evidence that defendants' decision bears more heavily on one race than another; (2) the historical background of the decision; (3) the specific sequence of events leading up to the decision; (4) departures from the normal procedure and substantive norms; and (5) legislative history. *Navajo Nation*, 975 F.2d at 743-44 (citing *Arlington Heights* 429 U.S. at 267-68). The *Arlington Heights* factors are non-exhaustive, 429 U.S. at 268, and the Tenth Circuit examines such factors broadly based on "the totality of the relevant facts." *Dowell by Dowell v. Bd. Of Educ. Of Oklahoma City Pub. Sch., Indep. Dist. No. 89, Oklahoma City, Okl.,* 8 F.3d 1501, 1518 (10th Cir. 1993) (quoting *Arlington Heights*, 429 U.S. at 266); *see also Gamel-Medler v. Almaguer*, 835 F. App'x 354, 368-69 (10th Cir.

---

[7] Although H.B. 1775 does not articulate explicit racial classifications, the Act does expressly single out—and chill—speech related to race and sex. While Plaintiffs proceed under *Arlington Heights,* H.B. 1775's explicit, differential treatment of race-based concepts further substantiates an inference that race motivated the Edmond Defendants' implementation of the Act.

17

2020) ("Though no single bit of circumstantial evidence is strong enough to show discriminatory intent, the 'totality of the relevant facts' permits a reasonable inference of discriminatory intent.") (quoting *Washington v. Davis*, 426 U.S. 229 (1976)).

Importantly, a plaintiff need not plead evidence supporting every factor: any indication of discriminatory motive may be sufficient. *See Arlington Heights*, 429 U.S. at 268. Because claims of intentional discrimination are fact-intensive, they are rarely decided pre-trial. *See, e.g.*, *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *see also Pac. Shores Props.*, *LLC v. City of Newport Beach*, 730 F.3d 1142, 1159 (9th Cir. 2013) (when a plaintiff relies on *Arlington Heights* to establish intent, "the plaintiff need provide 'very little such evidence … to raise a genuine issue of fact …; any indication of discriminatory motive … may suffice to raise a question that can only be resolved by a fact-finder.'").

The Edmond Defendants contend Plaintiffs' Fourteenth Amendment claim should be dismissed because Plaintiffs have not alleged "any act by the Edmond Defendants in whole or in part to discriminate against students of color." EPS Mot. to Dismiss at 11. But this is false, as both a legal and factual matter. Plaintiffs' theory of liability against Edmond Defendants is twofold, the first of which is that it bears liability as the enforcer of an unconstitutional law. *Supra* Section II. Notably, the Edmond Defendants do not dispute that the Complaint adequately alleges that H.B. 1775 was enacted with a discriminatory purpose and effect. *See* Compl. at Parts IV, VI.

Second, Plaintiffs also proceed on the theory that the Edmond Defendants did not sit on the sidelines after H.B. 1775 was enacted, but instead enforced the Act in ways that were motivated by race and that have disproportionately injured students of color. Guided

by the *Arlington Heights* factors, Plaintiffs' allegations plausibly raise an inference of discrimination based on the totality of the circumstantial evidence.

To begin, Plaintiffs' Complaint sufficiently alleges the Edmond Defendants' actions have disparately harmed students of color. *See SECSYS, LLC v. Vigil*, 666 F.3d 678, 686 (10th Cir. 2012) (citing *Pers. Adm'r v. Feeney*, 442 U.S. 256, 273 (1979)) ("when a neutral law has a disparate impact upon a group that has historically been the victim of discrimination, an unconstitutional purpose may still be at work"). First, EPS has removed books by Black authors from reading lists and directed teachers not to use certain terms such as "diversity" and "white privilege." Compl. ¶¶ 3, 16.a., 20, 67, 69. Plaintiffs have further alleged that the inclusion of material reflecting the backgrounds and experiences of students of color—such as the texts and terms struck by EPS— improve comprehension, engagement, and meaningful learning for such students. *Id.* at ¶ 147. In addition, EPS no longer provides the "Diversity Module" training to teachers that was offered in prior years. *Id.* at ¶ 68. Plaintiffs have alleged that such trainings better support students of color by counteracting existing prejudices and opportunity gaps that stem from pre-existing biases within our education system. *Id.* at ¶¶ 147-149. Finally, Plaintiffs allege that the prohibition of inclusive speech—as EPS has done here— exacerbates existing racial disparities in education, thereby inflicting pronounced harm on students of color, with compounded harms for girls of color, LGBTQ+ students of color, and those with intersecting marginalized identities. *Id.* at ¶¶ 148, 150-151.

Next, the historical background and sequence of events leading to Edmond Defendants' actions also support an inference of discriminatory motivation. *See Arlington*

19

*Heights,* 429 U.S. at 267. The Complaint lays out the context in which H.B. 1775 was enacted—of which EPS surely was aware—explaining the history of the law, the racially biased comments by the law's proponents, and the unusual procedures that lawmakers used to pass it. Compl. at Part IV. Against this racially-charged background, EPS chose to remove texts by Black authors and issue guidelines that singularly restrict discussion of race-based ideas and trainings. *Id.* at ¶¶ 3, 16.a., 20, 67, 69. This racially differential treatment supports a plausible inference that Edmond Defendants became a participant in the state's discriminatory program.

Finally, the Complaint alleges Edmond Defendants departed from substantive norms by contravening the District's and State's educational goals. *See Arlington Heights*, 429 U.S. at 267-268. EPS has espoused an "instructional vision … based on five pillars: collaboration, creativity, choice, inquiry, and reflection." Compl. ¶ 27. Plaintiffs have alleged facts—which must be taken as true at this stage—that EPS's removal of Black authors and race-based concepts undermines these pillars by denying students instruction that "improves critical thinking and problem solving, increases cross-racial understanding, reduces stereotypes and prejudices, and develops leadership skills and many other skills necessary to thrive in an increasingly diverse society." *Id.* at ¶ 146. Plaintiffs also plausibly allege that EPS's actions are directly contrary to the State's instructional goals, which include ensuring English classes are "inclusive of the identities that reflect the richness and diversity of the human experience." *Id.* at ¶ 27. This conflict with adopted educational goals creates an inference that a race-based motive animated Edmond Defendants' actions.

The Edmond Defendants' defenses to Plaintiffs' Equal Protection Claim wholly miss the mark. Similar to their First Amendment defenses, Edmond Defendants assert that teachers and students do not have an "unqualified right" to discuss certain social issues and receive certain trainings. EPS Mot. to Dismiss at 13. But this misunderstands Plaintiffs' equal protection claim. While Plaintiffs cannot control curricula, it is axiomatic that the Fourteenth Amendment safeguards against districts making decisions—curricular or otherwise—based on impermissible racial motives. *Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294, 298 (1955) ("racial discrimination in public education is unconstitutional … . All provisions of federal, state, or local law requiring or permitting such discrimination must yield to this principle"). Nor does it matter that the EPS guidance only "advised" teachers to avoid race-based terms—liability arises from race being at least part of the underlying motive for such an action. *Navajo Nation,* 975 F.2d at 744 ("Discriminatory intent is simply not amenable to calibration. It either is a factor that has influenced the [governmental actor's] choice or it is not.") (quoting *Feeney*, 442 U.S. at 277).

At this stage, Plaintiffs need only provide sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of" a discriminatory motive. *See Bell Atl. Corp.*, 550 U.S. at 556 ; *see also Pendleton v. Bd. of Cty. Commissioners for Oklahoma Cty.*, No. CIV-18-707-G, 2019 WL 4752269, at *7 (W.D. Okla. Sept. 30, 2019). For all the aforementioned reasons, Plaintiffs have more than satisfied this standard.

## V.    CONCLUSION

For the reasons set forth above, the Court should deny the Edmond Defendants'

motion to dismiss in its entirety.


Dated: January 13, 2022                              Respectfully submitted,


                                                     /s/ Megan Lambert
Genevieve Bonadies Torres                            Megan Lambert
David Hinojosa                                       AMERICAN CIVIL LIBERTIES UNION
LAWYERS' COMMITTEE FOR CIVIL RIGHTS                     FOUNDATION OF OKLAHOMA
   UNDER LAW                                          P.O. Box 13327
1500 K Street NW, Suite 900                          Oklahoma City, OK 73113
Washington, DC 20005                                 Tel.: 405-524-8511
                                                     mlambert@acluok.org


Gary Stein
Michael Cutini
Sara Solfanelli                                      Emerson Sykes
Elahe Hosseini                                       Leah Watson
Amir Shakoorian Tabrizi                              Sarah Hinger
Ramya Sundaram                                       AMERICAN CIVIL LIBERTIES
SCHULTE ROTH & ZABEL LLP                                UNION FOUNDATION
919 Third Avenue                                     125 Broad Street, 18th Floor
New York, NY  10022                                  New York, NY 10004


                                                     *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2022, I electronically filed the foregoing Plaintiffs' Memorandum of Law in Opposition to Edmond Public School's motion to dismiss with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

Respectfully submitted,

*/s/ Megan Lambert*
Megan Lambert
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
mlambert@aclu.ok.org

*Counsel for Plaintiffs*