IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) BLACK EMERGENCY RESPONSE TEAM, ET AL., <br> PLAINTIFFS <br><br> VS. <br><br> (1) JOHN O'CONNOR, IN HIS OFFICIAL CAPACITY AS OKLAHOMA ATTORNEY GENERAL, ET AL., <br> DEFENDANTS. | CASE NO. CIV-21-1022-G <br><br> JUDGE CHARLES GOODWIN |

### EDMOND DEFENDANTS' REPLY TO
### PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

The Edmond Defendants—Dr. Angela Grunewald, Jamie Underwood, Cynthia Benson, Kathleen Duncan, and Lee Ann Kuhlman—submit their Reply to Plaintiffs' Response to the Edmond Defendants' Motion to Dismiss.

### RESPONSE TO PLAINTIFFS' SUMMARY OF ALLEGATIONS

Because the Amended Complaint spans 79 pages, it is important for the Edmond Defendants to respond to the inaccurate recitations of allegations included in Plaintiffs' Response to the Edmond Defendants' Motion to Dismiss. The Response inaccurately recites the allegations against the Edmond Defendants in the Amended Complaint as "prohibiting," "restricting," and "barring" teachers from using certain terms and causing students to "lose access to" certain books. Doc. No. 68, Resp. to Mot. to Dismiss at 2, 8, 13, 19. But the only allegations against the Edmond Defendants in the Amended Complaint are:

- Edmond Public Schools ("District") removed books from <u>required</u> reading lists. Doc. No. 50, Am. Compl., ¶¶ 3.

- District advised teachers not to use the word "diversity" <u>in the names of lesson plans</u> or initiate discussions about "white privilege." *Id.* at ¶¶ 66–67.

- Before H.B. 1775, District voluntarily offered diversity training to its employees, and now it does not. *Id.* at ¶ 68.

The alleged harm resulting from the acts in Paragraphs 3 and 66–68 is:

- District student A.A. and NAACP-OK members "lost access" to books by diverse authors and accompanying classroom discussions. Doc. No. 50, Am. Compl., at ¶¶ 69, 167.

- District teacher Regan Killackey's Fourteenth Amendment rights were violated because District's actions (advising teachers not to include "diversity" or "white privilege" in the names of lesson plans; not offering voluntary diversity training) are too vague for him to know what is and what is not permissible. *Id.* at ¶ 160.

- NAACP-OK members' right to equal protection is violated by District's actions (removing books from required reading lists; advising teachers not to include "diversity" or "white privilege" in the names of lesson plans; not offering voluntary diversity training). *Id.* at ¶ 187.

For the reasons outlined in the Edmond Defendants' Motion to Dismiss and this Reply, these allegations are not sufficient to state a claim against the individually-named Edmond Defendants, and they should be dismissed.

### ARGUMENT & AUTHORITY

**PROPOSITION I:** **PLAINTIFFS HAVE NOT SUED THE CORRECT ENTITY AND, EVEN IF THE BOARD OF EDUCATION AND ITS MEMBERS WERE PROPER PARTIES, PLAINTIFFS HAVE NOT ALLEGED FACTS TO SHOW THEY TOOK ANY ACTION.**

In responding to the Edmond Defendants' Motion to Dismiss, Plaintiffs urge that their claims against Defendant Grunewald and the individual board members in their official capacities suffice to state a claim against District. In doing so, Plaintiffs allege District's Board is responsible for enforcing H.B. 1775. Whether this assertion is correct or not—and it is not given the plain language of H.B. 1775 and its accompanying statute—Plaintiffs have not specifically alleged that District's Board of Education has taken *any* action regarding H.B. 1775.

In their Amended Complaint, Plaintiffs only allege that the Board (which is not a party)

and its members are responsible for enforcing H.B. 1775. Doc. No. 50, Am. Compl., ¶ 28. In Paragraphs 160, 167, and 187 of the Amended Complaint, Plaintiffs claim that H. B. 1775 has been applied by the Board and its members, yet there are no allegations of any actions by the individual Board Members regarding H.B. 1775, nor of any board meetings where the District Board of Education took action on the law.

In their response to the Motion to Dismiss, Plaintiffs try to cure this flaw by making the new factual allegation that "the Board has approved EPS's policy implementing H.B. 1775" and refer to Exhibit 1 to their Amended Complaint. Doc. No. 50-1, Am. Compl., Ex. No. 1. However, the referenced portion of this exhibit only refers to a draft of an H.B. 1775-mandated complaint policy to be presented to the Board of Education. It does not reflect any unconstitutional action by any school board member or the board, and there is no allegation— that the Board of Education actually approved and adopted such policy.

As discussed in Plaintiffs' Response, under most circumstances, a claim asserted under 42 U.S.C. § 1983 against a public official in his or her official capacity, is an action against the governmental entity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). But, while naming individuals in their official capacity is normally sufficient to state a claim against a governmental entity, the same is not true for school board members in Oklahoma. Under Fed. R. Civ. P. 17(b)(2) and 70 O.S. § 5-105, the proper party to be sued is the school district and not the Board or its members. Doc. No. 52, Mot. to Dismiss at 5. The Response does not refute this proposition based on the Federal Rules of Civil Procedure. *See* Doc. No. 68, Response to Mot. to Dismiss.

Under LCvR 7.1(g), failure to respond to a motion deems the motion confessed. This

applies to individual arguments as well. When an issue in a motion is not addressed in the response, the Court has the discretion to deem that argument confessed. *See United States v. Nacchio,* 555 F.3d 1234, 1251 (10th Cir. 2009)("[A] respondent must address any and all issues raised by a moving party's papers, or else face the very real possibility that it will be deemed to have abandoned its right to do so."); *see also United Specialty Ins. Co. v. Homeco, LLC*, 325 F. Supp. 3d 1231, 1234 (W.D. Okla. 2018); *Calvey v. Obama*, 792 F. Supp. 2d 1262, 1273 (W.D. Okla. 2011); *Nat'l Fire Ins. Co. of Hartford v. NWM-Okla., LLC, Inc.*, 546 F. Supp. 2d 1238, 1249 (W.D. Okla. 2008). Plaintiffs have wholly failed to offer any argument as to why the Edmond Defendants are proper defendants under Fed. R. Civ. P. 17.

Under Oklahoma law, individual school board members are not "agents" of the school district; they are elected members of the governing body of a school district, the board of education. 70 O.S. § 5-106. The board of education can only lawfully act at public meetings called pursuant to the Oklahoma Open Meetings Act. 25 O.S. §§ 301, *et seq.* There is no allegation that occurred here. Neither is there an allegation of actions taken in violation of the Open Meetings Act.

Further, H.B. 1775—70 O.S. § 24-157—prohibits a "teacher, administrator, or other employee of a school district" from including certain concepts in public instruction. None of the individual board members are teachers, administrators, or employees of District. It would have been sufficient for Plaintiffs to have either named Independent School District No. 12 of Oklahoma County, Oklahoma—Edmond Public Schools—or Dr. Angela Grunewald, Superintendent, in her official capacity, as defendants, but suing the individual board members is improper, especially in the absence of any alleged board action. Being named as an individual

defendant in a federal civil rights lawsuit would be distressing to anyone, and it is especially so for these public servants who have taken no action regarding H.B. 1775.

As Plaintiffs have offered, they should amend to name Edmond Public Schools as the sole Edmond defendant.

**PROPOSITION II:** **THE AMENDED COMPLAINT DOES NOT STATE A CLAIM AGAINST DISTRICT BECAUSE IT IS NOT CHARGED WITH ENFORCING H.B. 1775.**

The Response argues the Edmond Defendants are properly named pursuant to *Ex parte Young*, 209 U.S. 123 (1908), which held public officials may be sued in individual capacities when they have "some connection with the enforcement of" an allegedly unconstitutional state law, such as "a particular duty to enforce the statute[.]" Doc. No. 68, Resp. to Mot. to Dismiss at 6. While this remains true for some defendants, Plaintiffs' reliance on *Young* is misplaced as applied to the Edmond Defendants.

The Supreme Court in *Ex parte Young* announced an exception to the Eleventh Amendment's prohibition on suing states or state officials in federal courts. But the *Ex parte Young* exception was narrow—the state official must be tasked with a duty to *enforce* the law being challenged—and recent Supreme Court jurisprudence has further narrowed that exception.

### A. THE NARROWING OF THE *EX PARTE YOUNG* EXCEPTION.

The Supreme Court in December 2021 significantly narrowed the class of officials that may be sued individually in *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021). There, abortion providers, as Plaintiffs here, sued a multitude of state public officials in federal court—a state court judge, a state court clerk, the Texas Attorney General, the executive

5

directors of the Texas Medical, Nursing, and Pharmacy Boards, and the Commissioner of the Texas Health and Human Services Commission—in their official capacities to enjoin them from enforcing Texas S.B. 8, which allowed private parties to sue abortion patients and providers in state court for violation of a law severely limiting access to abortion. *Whole Woman's Health* at 534. The trial court denied the public official defendants' motions to dismiss, citing the *Ex parte Young* exception. *Id.* at 530.

After proceedings in the Fifth Circuit Court of Appeals, the Supreme Court granted certiorari. *Id.* at 531. At the Supreme Court, the public official defendants asserted the trial court erred by not dismissing them from the suit. *Id.* The Supreme Court analyzed each individual defendant under *Ex parte Young* and held the state court judge, the state court clerk, and even the state's Attorney General should have been dismissed because they were not charged with the duty to enforce S.B. 8. *Id.* at 533–34. The remaining individual defendants were proper parties under *Ex parte Young* because each was "an executive licensing official who may or must take enforcement actions against the petitioners if they violate the terms of [S.B. 8]." *Id.* at 535. The "enforcement actions" cited by the Supreme Court were suspensions or revocations of professional licenses. *Id.* (citing Tex. Occ. Code Ann. § 164.055(a)).

The Supreme Court further held the judge and clerk were not adverse to the petitioners and therefore not proper defendants under Article III of the Constitution, either; rather than enforce S.B. 8, they docketed disputes and decided the outcome of disputes, but they did not enforce the law's punitive provisions. *Whole Woman's Health* at 532. Neither the state judge nor the state court clerk possessed the authority to suspend or revoke the professional licenses of the abortion providers, so neither was "enforcing" S.B. 8—even while docketing cases related

to the law and determining civil liability under the law. *Id.* Therefore, the Supreme Court held the judge and court clerk held no responsibility for "enforcing" S.B. 8. and were improper defendants under a narrower interpretation of *Ex parte Young. Id.*

In the context of H.B. 1775, school districts and their boards of education are at most analogous to the state judge or court clerk in *Whole Woman's Health*. While the State Board of Education can suspend or revoke a teacher's professional license for violating H.B. 1775, school districts merely act as a conduit of information under rules promulgated by the State Board. Okla. Admin. Code § 210:10-1-23. The school district receives complaints, investigates complaints, and sends factual findings to the State Board of Education. Okla. Admin. Code § 210:1-23(g). The State Board of Education then "make[s] a determination of whether to initiate proceedings to suspend the license or certificate of any school employee who is found to have violated 70 O.S. § 24-157(B) . . . consistent with the State Board's processes and procedures for suspension of certificates." Okla. Admin. Code § 210:10-1-23(j)(1). The school district cannot suspend or revoke licenses and cannot reasonably be framed as an "enforcer" of the statute, just as the state court judge in Texas could not suspend or revoke medical licenses.

### B. THE PLAIN LANGUAGE OF THE STATUTE SHOWS THE EDMOND DEFENDANTS ARE NOT PROPER DEFENDANTS UNDER PRE-*WHOLE WOMAN'S HEALTH* INTERPRETATIONS OF *EX PARTE YOUNG*.

Even analyzing the facts under the previous interpretation of *Ex parte Young*, the Edmond Defendants are improper parties. A review of the cases cited by Plaintiffs illustrates how. In *Ex parte Young*, the individually-named defendant was a state attorney general—the chief law enforcement officer of a state responsible for enforcing state laws—who was

specifically charged by statute with the duty to enforce the law at issue. *Ex parte Young*, 209 U.S. 123, 154, 28 S. Ct. 441, 451, 52 L. Ed. 714 (1908); *see also Attorney General*, BLACK'S LAW DICTIONARY, THIRD POCKET EDITION, 2006.

In *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014), the County Clerk was tasked by law with the duty to record marriage certificates and, when she refused to record a same-sex marriage certificate in compliance with state law, she "enforced" the unconstitutional statute at issue. In *Morin v. Leahy*, 189 F. Supp. 3d 226 (D. Mass. 2016), aff'd, *Morin v. Leahy*, 862 F.3d 123 (1st Cir. 2017), a state law required the local Chief of Police to approve or deny applications for gun licenses and any action he took in regard to an application was in furtherance of enforcing the state licensing statute. In *Viet Anh Vo v. Gee*, CV-16-15639, 2017 WL 1091261 (E.D. La. Mar. 23, 2017), the plaintiff sued to obtain a birth certificate; the individually-named defendant was appropriately the chief officer of the health department solely responsible for issuing birth certificates. In *Moore v. Urquhart*, 899 F.3d 1094 (9th Cir. 2018), a county Sheriff was required by statute to enforce a landlord-tenant law by forcibly evicting tenants in breach of contract.

In each of these cases, a federal court held the individual defendants were properly named because a statute specifically required them to enforce the challenged law, whether to take a particular action or to punish those in violation of the challenged law. Compare with *McLaughlin v. City of Canton, Miss.*, 947 F. Supp. 954 (S.D. Miss. 1995), where a State Board of Elections and its board members were dismissed as individual defendants while county and

municipal election officials remained named defendants.[1] In *McLaughlin*, Mississippi law placed the responsibility for enforcement of state election laws on county and municipal elections officials. *Id.* at 965. Because the state election laws did not explicitly place any such enforcement responsibility on the State Board of Elections, the federal court, citing *Ex parte Young*, held the State Board of Elections and its board members did not "enforce" the law and were improper defendants.

Although Plaintiffs allege the Edmond Defendants are "responsible for enforcing" H.B. 1775, a plain reading of the bill shows it does not confer such responsibility on District, its superintendent, or its board members. Neither H.B. 1775 nor 70 O.S. § 24-157 places any responsibility on school districts or local boards of education to enforce its provisions. As signed into law, H.B. 1775 clearly places the burden of enforcement on the State Board of Education: "The State Board of Education shall promulgate rules, subject to approval by the Legislature, to implement the provisions of this subsection." 70 O.S. § 24-157(2). By the plain language of the statute, the proper defendants reside at the State Board of Education rather than at the school district level.

## CONCLUSION

Plaintiffs cannot state a claim against the Edmond Defendants because Oklahoma law precludes suit against them individually and no Edmond Defendant is responsible for enforcing H.B. 1775. The Edmond Defendants' Motion to Dismiss should be granted.

---

[1] *McLaughlin* was superseded by a subsequent change in the statute challenged by the plaintiff. *See Harness v. Hosemann*, 3:17-CV-791-DPJ-FKB, 2019 WL 8113392 (S.D. Miss. Aug. 7, 2019), *aff'd, Harness v. Hosemann*, 988 F.3d 818 (5th Cir. 2021), *reh'g en banc granted, opinion vacated, Harness v. Hosemann*, 2 F.4th 501 (5th Cir. 2021).

        Respectfully submitted,

        <u>S/JUSTIN C. CLIBURN</u>
        F. ANDREW FUGITT, OBA #10302
        JUSTIN C. CLIBURN, OBA #32223
        THE CENTER FOR EDUCATION LAW
        900 N. BROADWAY AVE, SUITE 300
        OKLAHOMA CITY, OK 73102
        TELEPHONE: (405) 528-2800
        FACSIMILE: (405) 528-5800
        E-MAIL: AFUGITT@CFEL.COM
        E-MAIL: JCLIBURN@CFEL.COM
        ATTORNEYS FOR EDMOND DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2022 I electronically transmitted the attached document to the Clerk of the Court using the Electronic Case Filing system for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

S/JUSTIN C. CLIBURN
JUSTIN C. CLIBURN
