UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| [1] BLACK EMERGENCY RESPONSE TEAM, et al. <br> *Plaintiffs*, <br><br> v. <br><br> [l] JOHN O'CONNOR, in his official capacity As Oklahoma Attorney General, et al., <br><br> *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 5:21-cv-1022-G <br><br> Hon. Charles B. Goodwin |

**PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Black Emergency Response Team (BERT), *et al.*, respectfully supplement their Motion for Preliminary Injunction (Dkt. 27) to bring to the Court's attention a recent enforcement action taken by Defendant Oklahoma State Board of Education (the "Board") pursuant to H.B. 1775 (the "Act").[1]

Specifically, on Thursday, July 28, 2022, the Board voted 4-2 to penalize the Tulsa Public Schools district ("Tulsa Public Schools") by adjusting its accreditation status to "Accredited with Warning." This action was predicated upon a finding by the Oklahoma State Department of Education ("OSDE") that a training program for Tulsa K-12 teachers designed, in part, to address potential bias included several of the "prohibited concepts" set forth in section 1(B)(1) of the Act.

---

[1] The Act is codified as Okla. Stat. tit. 70, § 24-157.

As explained below, the finding of a violation of the Act by the Tulsa Public Schools was based entirely on strained inferences OSDE drew about the supposed "spirit" and "design" of the training rather than the actual content of the training materials. The action shows that, under the Act, even a discussion of the idea that all people hold implicit or unconscious biases has now been outlawed in Oklahoma schools. Although the matter involved a training for teachers, it also highlights how, in the words of OSDE's own spokesperson, the Act's "vague language" has a "chilling effect" on classroom instruction of students.[2] The Board and OSDE's application of the Act thus confirms the unconstitutional vagueness and overbreadth inherent in the Act's proscriptions and directly contradicts the arguments made by the State on the pending preliminary injunction motion.

## Background

On February 2, 2022, a high school teacher in the Tulsa Public Schools (the "Complainant") submitted a complaint to OSDE, claiming that a training course she was required to complete "includes statements that specifically shame white people for past offenses in history, and state that all are implicitly racially biased by nature," and therefore violated the Act. To the best of Plaintiffs' knowledge, of the more than 2,000 teachers in the Tulsa Public Schools, Complainant was the only one to file a complaint regarding this training.

---

[2] *See* Exh. 1b hereto, p. 5; discussion *infra* at p. 11.

The training course was created by Vector Solutions, a nationally recognized and award-winning provider of training and learning management tools for, *inter alia*, public school districts, law enforcement agencies, fire departments and business organizations across the country. Vector Solutions has been in business for more than 20 years and has serviced more than 34,000 customers.[3]

OSDE conducted an investigation of the complaint and OSDE's General Counsel informed the Board of the conclusion of that investigation at a board meeting on June 23, 2022. The General Counsel told the Board that, although "it was a close call," OSDE believed that "the spirit of that training—the design of it—was contradictory to House Bill [1775]." (Video Recording of June 23, 2022 Board Meeting at 4:49:47, available at https://www.facebook.com/OklaSDE/).

In a letter to the Complainant dated July 7, 2022 (the "OSDE Letter"), OSDE elaborated on its grounds for finding that the training violated H.B. 1775.[4] Significantly, OSDE *rejected* the Complainant's allegations that the training included statements that "shame white people" and stated that they "all are implicitly racially biased by nature." (OSDE Ltr. at 3 ("OSDE did not find any evidence to substantiate the allegation that the training included 'statements that specifically shame white people for past offenses in history, and state that all are implicitly racially biased in nature'")).[5] Indeed, OSDE

---

[3] *See* https://www.vectorsolutions.com/.

[4] A true and correct copy of the OSDE Letter (including attachments) dated July 7, 2022 is attached hereto as Exhibit 1a.

[5] OSDE also found no merit in the Complainant's allegation that Tulsa Public Schools failed to properly inform individuals about how to report suspected violations of the Act.

concluded that upon reviewing the training slides themselves, "there was no violation of the [Act] and its proscription on the identified concepts being part of any course." (*Id.*)

Nevertheless, OSDE asserted that the training's audio portion, in conjunction with the slides, "evidence[d]" that the training "included, incorporated or is based on" three "outlawed concepts" in the Act, specifically the following:

1. "an individual, by virtue of his or her race or sex, is inherently racist, sexist or oppressive, whether consciously or unconsciously" (section 1(B)(1)(b) of the Act);

2. "an individual, by virtue of his or her race or sex, bears responsibility for actions committed in the past by other members of the same race or sex" (section 1(B)(1)(f));

3. "any individual should feel discomfort, guilt, anguish or any other form of psychological distress on account of his or her race or sex" (section 1(B)(1)(g)).

The OSDE Letter acknowledged that the training materials did not contain—in either the audio portion or the slides—any "express statements," "explicit content," or "direct statements" setting forth any of these three prohibited concepts. (OSDE Ltr. at 3-4). Yet OSDE claimed that other "evidence" made it "more likely than not" that the training "incorporated" and/or was "based on" the prohibited concepts. (*Id.* at 4).

---

OSDE noted that this information was, in fact, contained on the school district's website. (OSDE Ltr. at 1-2).

The only evidence cited in the OSDE Letter consists of six categories of predominantly factual statements that, according to OSDE, are evidenced in the training materials. These are set forth on page 3 of the Letter, and Plaintiffs invite the Court to review them in their entirety. According to OSDE, the offending messages included such things as: "demographics are changing and we can expect to be interacting with students of varying cultures, ethnicities and backgrounds such that we need to be aware of our own inherent biases, as well as historical biases against minorities"; "deeply rooted stereotypes, built over time and by history and culture, can still be found in classrooms"; "statistics demonstrate that while just 18% of preschool students were Black in 2015, they accounted for 42% of the out-of-school suspensions"; and "the goal of the course is to provide an overview of racial bias." (OSDE Ltr. at 3).

OSDE's Letter does not contend that any of the statements in the training materials are untrue, let alone demonstrate that they are untrue. For example, OSDE does not dispute that due to changing demographics teachers need to interact with students of varying cultures and ethnicities. Nor does it dispute that people may hold implicit biases or that historical biases have existed against minorities. Nor does it claim that statistics showing Black students are disproportionately subject to discipline are inaccurate. As OSDE interprets the Act, it does not matter whether these things are true or whether they help improve teaching and learning for all students and all educators, consistent with Oklahoma's academic standards; they cannot be taught in Oklahoma public schools because they could possibly be understood to imply—and thus are tantamount to teaching—the concepts prohibited by the Act.

Based on its finding, OSDE recommended that the Board adjust the Tulsa Schools district's accreditation status to "Accredited with Deficiency." (OSDE Ltr. at 4). At its meeting on July 28, 2022, however, a majority of Board members went further, and voted to *escalate* the punishment by downgrading the Tulsa Public Schools' status by an additional level to "Accredited with Warning."[6] See Lenzy Krehbiel-Burton, "Tulsa Public Schools accredited with a warning over HB1775 violation," TULSA WORLD, July 29, 2022, available at https://tulsaworld.com/news/local/education/watch-now-tulsa-public-schools-accredited-with-a-warning-over-hb1775-violation/article_e2aa9fa2-0dd9-11ed-aca4-4bfac4fed0ef.html.[7]

The Board members reached this determination even though they did not have access to, and thus never listened to, the audio portion of the training that purportedly was the basis for OSDE's finding of a violation. (Video Recording of July 28, 2022 Board Meeting at 2:03:56, available at https://fb.watch/eGuV91aK0B/). It has now been reported that, in fact, the audio portion of the training consists merely of a speaker

---

[6] The status of "Accredited With Warning" requires a school district to meet with representatives from the Accreditation Section for further review and a final determination, including the possibility of losing accreditation. Okla. Admin. Code 210:35-3-201. If a school district loses accreditation, it can no longer serve students; the State Board of Education "shall annex the district to one or more other districts." Okla. Stat. Ann. tit. 70, § 3-104.4.

[7] At the July 28 meeting, the Board also voted 4-2 in favor of downgrading Mustang Public Schools' status to "Accredited with Warning" based on an alleged violation of H.B. 1775. (*Id.*) Plaintiffs do not have further information at present regarding the circumstances leading up to the Mustang determination but hope to obtain more information via a pending records request submitted to the OSDE.

reading the text of the training slides verbatim (slides which OSDE found did *not* violate the Act). *See* Lenzy Krehbiel-Burton, "Audio from TPS implicit bias training was a voice reading presentation slides verbatim," TULSA WORLD, Aug. 6, 2022, available at https://tulsaworld.com/news/local/education/audio-from-tps-implicit-bias-training-was-a-voice-reading-presentation-slides-verbatim/article_140cabde-1524-11ed-b809-1f6eb7ac6c64.html ("*Tulsa World* Article").[8]

### Relevance to the Pending Preliminary Injunction Motion

In the pending preliminary injunction motion, Plaintiffs specifically describe the broad reach and inherent vagueness in the Act's prohibited concepts, including two of the concepts cited in the OSDE Letter: subsections (f) and (g). (ECF No. 27 at 13-14). In response, the State, in essence, accused Plaintiffs of exaggerating, arguing that the Act's language was "succinct, straightforward, and narrowly phrased" and would be interpreted as such. (ECF No. 61 at 1, 19-21). Thus, for example, the State argued that subsection (g) merely prohibits "telling students they *should* feel guilty for being of a certain race." (*Id.* at 21 (emphasis in original)).

The Board's and OSDE's actions against the Tulsa Public Schools confirm that the State was wrong. Nothing in the Tulsa training materials—as OSDE expressly acknowledges—told anyone they "should feel guilty" for being of a certain race. (OSDE

---

[8] A true and correct copy of the Aug. 6, 2022 *Tulsa World* Article is attached hereto as Exhibit 1b, and a letter, which the article links to, sent by the Superintendent of the Tulsa Public Schools to OSDE on August 5, 2022 ("TPS Ltr.") is attached hereto as Exhibit 1c. The Superintendent's letter similarly notes that "the written language on the slides and the words heard in the audio are identical." (TPS Ltr. at 2).

Ltr. at 4 ("there were no direct statements in the training that an individual should feel discomfort or guilt because of their race")). Nevertheless, OSDE deemed it "more likely than not" that the training "incorporated and/or is based on such a concept" because of unspecified characteristics of the "design and basis of the training," or as the OSDE's General Counsel even more cryptically told the Board, its "spirit." (*Id.*; Video Recording of June 23, 2022 Board Meeting at 4:49:47, available at https://fb.watch/eM-JPGU0S3/). When questioned at the July 28 meeting, OSDE's General Counsel agreed that the violation was premised on his "interpretations and feelings" rather than "something explicitly being stated."  (Video Recording of July 28, 2022 Board Meeting at 2:03:26, available at https://fb.watch/eGuV91aK0B/). These vague standards evince and invite the very type of arbitrary and discriminatory enforcement that due process prohibits. As Board Chair Joy Hofmeister herself accurately noted at the July 28 meeting, the Act "is a law that has a lot of vagueness." (*Id.* at 2:25:56.)

Similarly, as OSDE acknowledged, there was no "explicit content" in the training materials saying that "an individual, because of their race, is responsible for actions in the past." (OSDE Ltr. at 3-4). Yet, as the enforcement action demonstrates, someone can be punished for violating subsection (f) for purportedly suggesting or implying that educators should at least be aware of "historical biases against minorities" or presenting the idea that stereotypes "built over time and by history and culture" "can still be found in the classroom." (*Id.*) The scope of subsection (f) thus is *not* limited, as the State wrongly argued, to "ideas that are [specifically] mentioned or banned" in the Act. (*See* ECF No. 61 at 19). And the line delineating when a discussion about historical racism will be

deemed to imply that white people "bear responsibility" for such past actions, and when it will not, is impossible to discern.

In short, the only thing that is clear or straightforward about the Act, as the Board's and OSDE's actions confirm, is the message it sends to school districts and teachers: Steer clear of any discussion of race or bias that could possibly be interpreted as causing offense, or risk losing your accreditation status or your teaching license. That is the command of the Act itself as understood by those principally responsible for enforcing it. Plainly the Board and OSDE are applying the law in the manner they believe the Legislature intended and not according to the narrow construction the Attorney General has tried to place on it, unconvincingly, for purposes of prevailing in this litigation.

The action against the Tulsa Schools district also confirms the Act is overbroad and restricts access to information in violation of basic First Amendment principles. For example, as described in the OSDE Letter, the Tulsa training materials offend the Act because they discuss the ideas of examining implicit biases and the mere awareness of one's own potential biases.[9] This, OSDE determined, violates subsection (b)'s proscription against teaching that individuals are inherently racist, "whether consciously or unconsciously." But the existence of implicit or unconscious bias (among people of all races) has been amply documented by social scientists for decades and is widely accepted

---

[9] *See also* Exh. 1c TPS Ltr., p. 2 (noting that the message conveyed by the Tulsa training materials was only that "educators (like all humans) will have preconceived assumptions, beliefs, or associations informed in part by their experiences").

throughout American society, including in the courts. (ECF No. 50 at ¶¶ 8, 44, 49, 84 & n.18, 88, 149 & n.78.)[10]

As another example, OSDE concluded the training violated the Act based, in part, on statements that Black students disproportionately face suspension compared to their peers. (*See* OSDE Ltr. 3-4.) However, such racial disparities are documented by state and federal data.[11] The Board and OSDE's enforcement action thus illustrates that sharing information about racial disparities as part of a class discussion or debate may constitute a violation of the Act, thereby denying students exposure to information that can develop critical-thinking and analysis. (*See* ECF No. 27-8 at ¶ 21 (Mr. Crawford explaining that exposing students to information related to race, sex, and inequality can develop analytical, open-minded thinkers and citizens)).

Accordingly, the Act, as Plaintiffs have argued and as this enforcement action confirms, even suppresses information or discussion about the science of implicit and unconscious bias—and other race-related topics and data—based purely on the political

---

[10] *See, e.g., Greater Philadelphia Chamber of Commerce v. City of Philadelphia*, 949 F.3d 116, 128-31, 153 & n.280 (3d Cir. 2020) (relying on studies of subliminal or implicit bias in upholding city ordinance); *Woods v. City of Greensboro*, 855 F.3d 639, 641 & n.1 (4th Cir. 2017) ("many studies have shown that most people harbor implicit biases"); *United States v. Ray*, 803 F.3d 244, 259-60 & n.8 (6th Cir. 2015) ("we recognize the proven impact of implicit biases on individuals' behavior and decision-making"); *Martin v. F.E. Moran, Inc.*, 2017 WL 1105388 (N.D. Ill. Mar. 24, 2017); *Samaha v. Washington State Dep't of Transp.*, 2012 WL 11091843 (E.D. Wash. Jan. 3, 2012).

[11] *See, e.g.,* Civil Rights Data Collection Data Snapshot: School Discipline (Issue Brief No. 1), U.S. Department of Education (March 2014), available at https://tinyurl.com/yckzf3ux (documenting disparities including state-based data on disparities).

ideology of a majority of legislators and runs contrary to any legitimate pedagogical purpose. (*See generally* ECF No. 27 at 19-22; ECF No. 66 at 12-20).

Importantly, while this enforcement action involved a mandatory teacher training, a teacher would reasonably interpret that the same standards apply to classroom conduct since OSDE reached its conclusions under Section 1(B)(1) of the Act, which also applies to teachers' classroom conduct. (*See* OSDE Ltr. at 2-3). In fact, OSDE's own Executive Director of Communications, in a statement issued this past weekend, acknowledged that "this instance underscores how the vague language of H.B. 1775 invites imprecise judgment calls, which in turn have a chilling effect on classroom instruction." (Exh. 1b, *Tulsa World* Article.)

The Board's and OSDE's enforcement action directly implicates Plaintiffs, who include the Oklahoma State Conference of the National Association for the Advancement of Colored People ("NAACP") and the American Indian Movement Indian Territory ("AIM Indian Territory"). These organizations have members that are students, parents, and educators within Tulsa Public Schools. (ECF No. 27-5 at ¶ 7; No. 27-6 at ¶ 9.) The chilling effects of the Board's and OSDE's interpretation also harm NAACP's and AIM Indian Territory's broader membership across Oklahoma. Such actions stifle constitutionally protected speech far beyond Tulsa Public Schools by sending a clear directive to educators and districts throughout Oklahoma that H.B. 1775 will be broadly interpreted to fulfill partisan interests and the Board will inflict severe consequences on those who merely mention certain ideas irrespective of whether such ideas further legitimate educational interests. Indeed, as one Board member forthrightly stated in

support of escalating Tulsa's penalty: "we need to send a message" to other districts in Oklahoma.  (Video Recording of July 28, 2022 Board Meeting at 2:14:34, available at https://fb.watch/eGuV91aK0B/).

Plaintiffs appreciate the Court's attention and consideration of the above and respectfully urge the Court to grant their motion for a preliminary injunction.

| | |
|---|---|
| Dated: August 8, 2022 | Respectfully submitted, |
| | /s/ Megan Lambert |
| Genevieve Bonadies Torres | Megan Lambert |
| David Hinojosa | AMERICAN CIVIL LIBERTIES UNION |
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS   UNDER LAW |   FOUNDATION OF OKLAHOMA P.O. Box 13327 |
| 1500 K Street NW, Suite 900 | Oklahoma City, OK 73113 |
| Washington, DC 20005 | Tel.: 405-524-8511 |
| | mlambert@acluok.org |
| Gary Stein | |
| Ramya Sundaram | Emerson Sykes |
| SCHULTE ROTH & ZABEL LLP | Leah Watson |
| 919 Third Avenue | Sarah Hinger |
| New York, NY 10022 | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| | 125 Broad Street, 18th Floor |
| | New York, NY 10004 |
| | *Counsel for Plaintiffs* |