# Exhibit 1c



August 5, 2022

Oklahoma State Board of Education
c/o Oklahoma State Department of Education
2500 North Lincoln Boulevard
Oklahoma City, OK   73105-4599

Dear Oklahoma State Board of Education Members,

Your decision to downgrade the accreditation status of Tulsa Public Schools last week was unjustified and unsupported—both legally and factually. I request that you reconsider your determination on the grounds that the Oklahoma State Department of Education clearly erred in its determination that the district violated House Bill 1775 and that the Oklahoma State Board of Education furthered that error without any evidence or legitimate rationale. The accreditation downgrade Tulsa received based upon an alleged violation of HB1775 is—by any definition—arbitrary and capricious.

 The Oklahoma State Department of Education (OSDE) determined the district violated HB1775 and its regulations based on a training for district educators regarding implicit bias. To clarify from the outset, neither HB1775 nor its rules prohibit the concept of implicit bias. In fact, in the introduction to its rules, the board states that one of its policies is to prohibit discrimination "in the form of bias."

While the law does specifically prohibit any training or instruction based on the concept that individuals are "inherently racist" on account of their race, there is no statement or sentiment pronounced in the professional development anywhere that people are inherently or unconsciously racist due to their race or any other factor.  Instead, the message—both on the slides and in the audio—is that educators (like all humans) will have preconceived assumptions, beliefs, or associations informed in part by their experiences. Contrary to the finding, there is also no statement or intimation that an "individual, by virtue of his or her race or sex, bears responsibility for actions committed in the past by other members of the same race or sex," or that an individual "should feel discomfort, guilt, anguish or any other form of psychological distress on account of his or her race or sex."

Indeed, the OSDE itself confirmed there is no language in the training that violates the law. Specifically, on page 3 of the determination letter responding to the HB1775 complaint, the department states:

> "In fact, upon only reviewing the slides (without audio), the OSDE concluded there was no violation of the Statute and its proscription on the identified concepts being a part of any course."  (parenthetical original)

The department then states:

> "However, the audio provided in conjunction with the training did evidence the following [content]."

It is clear the OSDE erred in this determination because—from the beginning of the training video to the end—the written language on the slides and the words heard in the audio are identical. Stated another way, because the OSDE found that there was no violation of HB1775 in the slides, it is factually impossible for the audio to be unlawful.

While it is frustrating that the state department misconstrued the message in the training and also heard audio that is no different from the words on the slides, it is entirely unacceptable for such a misunderstanding to be the basis for its issuance of an accreditation deficiency of any kind. It is even more egregious and outrageous for the State Board of Education to take the additional step of escalating the penalty to an accreditation warning without having seen or heard any of the training or to even request the ability to view it.

The lack of appropriate due process is especially pronounced given that state department regulations recognize that a "warning" accreditation status may not be made without an opportunity for the school district to be heard and review the matter with the OSDE.

> If a school site is placed on warning or probation, the school board and administration will meet with one or more representatives from the Accreditation Section to review their accreditation status. After the review from the representative(s), a determination will be made concerning warning, probation or nonaccredited status. The Accreditation Section will then present a recommendation to the State Board of Education. Okla. Admin. Code 210:35-3-201(c).

If it is inappropriate and unfair for a school site to receive a warning status without a meeting and opportunity to be heard, it is necessarily unjust for a school district to receive such treatment.

It is further telling that members of the state board considered inflammatory statements attributed to me and to Tulsa Public Schools before its accreditation decision. Specifically, one or more board members, as well as the Secretary of Education, Ryan Walters, stated–without evidence–that I have "bragged" about violating the law, that I indicated I would "continue to violate 1775", and that the state board needs to "send a message that the deliberate breaking of

the law needs to" result in probation. No evidence was provided to substantiate these claims and, in fact, only a vague reference to social media was even used to substantiate them.

In conclusion, let me restate that Tulsa Public Schools has no intention of violating HB1775. We would never insinuate, much less actively tell our teachers or students they are inherently racist because of their race. Nor would the district seek to make anyone feel guilt or responsibility for wrongs of others. Such training and instruction would be illogical and harmful. Instead, Tulsa Public Schools supports training and instruction that, ironically, actually fully aligns with the state board's purpose in enacting HB1775 regulations, which is to actively "[oppose] discrimination on the basis of race or sex in the form of bias, stereotyping, scapegoating, classification, or the categorical assignment of traits, morals, values, or characteristics based solely on race or sex."

Given there was no violation of law nor any basis for any accreditation downgrade, I respectfully urge you to reconsider your determination and correct the district's accreditation so that there is no deficiency or warning.

Best,

Deborah A. Gist
Superintendent


cc.    Tulsa Board of Education
       Jana Burk, general counsel of Tulsa Public Schools
       Brad Clark, general counsel Oklahoma State Department of Education