IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

BLACK EMERGENCY RESPONSE TEAM,
*et al.*,

                                        *Plaintiffs,*

v.                                                           Case No:       21-cv-1022-G

GENTNER DRUMMOND, *et al.*,

                                        *Defendants 1–18.*

## STATE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

The Oklahoma Legislature overwhelmingly passed House Bill 1775 to prevent Oklahoma public schools from teaching children that "character is necessarily determined by his or her race or sex," along with seven other racist and sexist concepts. OKLA. STAT. tit. 70, § 24-157(B)(1)(e). HB 1775 is succinct, straightforward, and narrowly phrased. It does not impede academic freedom, and it is not overbroad. This Court should decline Plaintiffs' invitation to overturn Oklahoma's democratic and representative political process. It should instead dismiss the case for failure to state a plausible claim.

### ARGUMENT

A motion for judgement on the pleadings is analyzed under the "same standard of review applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *McCormick v. Halliburton Co.*, 895 F. Supp. 2d 1152, 1154 (W.D. Okla. 2012). To survive such a motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). While the Court

must view a complaint in a light most favorable to the nonmoving party, courts need not accept as true "labels and conclusions," legal characterizations, unreasonable deductions of fact, or "naked assertions devoid of further enhancement." *Iqbal*, 556 U.S. at 678 (citation and internal marks omitted).

When a complaint presents a question of law and "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegation," the complaint "must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (citation omitted). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law …." *Id.* at 326; *see also Wyoming v. United States,* 279 F.3d 1214, 1222 (10th Cir. 2002).

## I.     Plaintiffs cannot state a plausible claim of unconstitutional vagueness.

Defendants 1-18 ("State Defendants") incorporate the arguments made in their response to Plaintiffs' motion for a preliminary injunction. Doc. 61 at 17–22. To summarize: in a successful facial challenge for vagueness, plaintiffs "must show that the potential chilling effect on protected expression is both real and substantial." *Jordan v. Pugh*, 425 F.3d 820, 828 (10th Cir. 2005) (citation omitted). But the provisions of HB 1775, read accurately and as a whole, have a clear, defined meaning. And to the extent there is any ambiguity, subsection B of HB 1775 contains a narrowing construction: "The provisions of this subsection shall not prohibit the teaching of concepts that align to the Oklahoma Academic Standards." OKLA. STAT. tit. 70, § 24-157(B). Those standards include examining "multiple points of view regarding the evolution of race relations in Oklahoma," which demonstrates the limited scope

2

of HB 1775. Doc. 61 at 20–21 (citation omitted). For these reasons and more, judgment should be entered for State Defendants on Plaintiffs' first cause of action.

## II.     Plaintiffs cannot state a plausible claim under the First Amendment right to receive information.

State Defendants incorporate the arguments made in their response to Plaintiffs' motion for a preliminary injunction. Doc. 61 at 12–17. To summarize: Plaintiffs fail to demonstrate that the First Amendment protects the teaching, in public schools, of the racist and sexist speech prohibited by HB 1775.  Specifically, Plaintiffs have pointed to no case law establishing a First Amendment right for a student to be taught any specific concept or for a teacher to teach any specific concept, let alone concepts that violate principles of equality enshrined in federal law. The First Amendment applies differently to students and teachers, which means that Plaintiffs must be evaluated separately. *See id.* at 13. For student Plaintiffs, there is no First Amendment right to receive instruction on any given subject. *See, e.g., Seyfried v. Walton*, 668 F.2d 214, 216 (3d Cir. 1981) ("a student has no First Amendment right to study a particular aspect or period of history in his or her senior history course . . ."). Otherwise, no educational standards could be set because states could never tell schools or teachers what they should and should not teach. Therefore, judgment should be entered for State Defendants on Plaintiffs' second cause of action.

## III.    Plaintiffs cannot state a plausible claim that the Act is an overbroad restriction on academic freedom.

State Defendants incorporate the arguments made in their response to Plaintiffs' motion for a preliminary injunction. Doc. 61 at 12–17, 22–24. To summarize: the overbreadth doctrine is "strong medicine, and courts employ it with hesitation, and then, only as a last

resort." *Faustin v. City & Cty. of Denver, Colo.*, 423 F.3d 1192, 1199 (10th Cir. 2005) (cleaned up). Plaintiffs must show substantial overbreadth. *See Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). As previously stated, Plaintiffs cannot make that showing. Doc. 61 at 23–24.

For secondary school teacher Plaintiffs, the First Amendment does not grant a teacher constitutional protection to determine classroom curriculum. *See* Doc. 61 at 14–15. With respect to higher education Plaintiffs, only section 1(A)(1) of HB 1775 addresses higher education. And that provision only places prohibitions on the types of *mandatory* training, counseling, orientation, or similar "requirements" for students enrolled in an institution of higher learning. There is no constitutional right for a specific type of teaching or training to be mandatory rather than optional. Therefore, HB 1775 does not unconstitutionally impede academic freedom, and judgment should be entered for State Defendants on Plaintiffs' third cause of action.

## IV.   Plaintiffs cannot state a plausible claim that the Act was enacted with a racially discriminatory purpose.

Plaintiffs allege that HB 1775 violates the Equal Protection Clause of the Fourteenth Amendment because it was allegedly "enacted, in part, with the purpose to discriminate against students of color by chilling and suppressing Inclusive Speech aimed at enhancing the educational, social, and civic experiences of students of color and their families." Doc. 50 at 72, ¶ 184. This statement is false, and it is telling that Plaintiffs did not include this baseless claim in their motion for a preliminary injunction. In no universe does prohibiting the teaching of certain racist and sexist concepts discriminate on the basis of race.

"Whenever a challenger claims that a state law was enacted with discriminatory intent, the burden of proof lies with the challenger, not the State." *Abbott v. Perez*, 138 S. Ct. 2305,

2324 (2018) (citation omitted). At the dismissal stage, Plaintiffs must plausibly allege that the law was passed with a purpose to discriminate, not just that it has a disparate impact. *See Washington v. Davis*, 426 U.S. 229, 239 (1976) (stating the Supreme Court's "cases [addressing this issue] have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional Solely because it has a racially disproportionate impact"). Racial discrimination does not have to be the only motivation behind the law, but Plaintiffs must plausibly allege "that a discriminatory purpose has been a motivating factor in the decision . . . ." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977).

Here, Plaintiffs do not come close to alleging a plausible claim. Plaintiffs' claim rests on a series of faulty assumptions. Plaintiffs' theory, as expressed in the Complaint, is that: (a) so-called "Inclusive Speech" benefits the educational experiences of all students and particularly minority students, (b) the Act will somehow censor such speech, (c) censorship of such speech will diminish the education of all students and especially minority students, (d) state legislators believed all this is true, and despite this knowledge, enacted HB 1775 partially for that purpose. If any of those assumptions are false or implausible, Plaintiffs' claim of discriminatory intent falls apart.

Plaintiffs' string of assumptions is not plausible. To begin, as described in State Defendants' preliminary injunction response, Doc. 61 at 17–22, HB 1775 does not prohibit schools and educators from increasing "access to information that acknowledges and addresses the past and present experiences and inequities faced by historically marginalized students"—Plaintiffs' initial definition of Inclusive Speech. Doc. 50 at 38–39, ¶ 84; Doc. 61 at

17–22. It is difficult to imagine which provision of HB 1775 would prohibit such information; indeed, there is no plausible option. Therefore, Plaintiffs have not plausibly alleged that the Act will cause minority students to suffer from lacking "instructional materials, assignments, and texts that reflect students' backgrounds and experiences." Doc. 50 at 62, ¶ 147.

Plaintiffs' cherry-picked quotes from specific state legislators do not plausibly establish an intent to "discriminate against students of color," either. Doc. 50 at 72, ¶ 184. Legislators' criticisms of controversial political organizations and controversial academic concepts such as intersectionality and critical race theory do not at all indicate a base desire to discriminate. *See, e.g.*, Doc. 50 at 54-55, ¶¶ 124–26. Rather, even if accepted as accurate, the quotations often demonstrate those individual legislators' strong concern with—and opposition to—the possibility that racist and sexist concepts could be taught in Oklahoma schools. That is, they express the *opposite* of an intent to discriminate. For example, one representative stated that the law would "end the requirements for race-based biased curriculum in our schools." *Id.* at 51, ¶ 117. Other representatives asserted that the law would *prevent* Oklahoman students from "distrust[ing] others based on skin color or gender." *Id.* at 52, ¶ 119. These statements do not suggest that these legislators sought to diminish the education received by minority students.

To be sure, Plaintiffs allege that a single representative argued that HB 1775 was necessary to respond to concerns over "culturally responsive teaching." Doc. 50 at 54, ¶ 123. But Plaintiffs take this quote out of context. In the cited video clip, which Plaintiffs linked to in their Complaint, the representative expresses concern over a Pre-K module entitled "culturally responsive teaching" that evidently involves teachings about the supposed dangers

of colorblindness, as well as teaching about different forms of gender identification.[1] Again, if anything, this expresses a concern that students might be taught a form of racial essentialism that would have negative consequences for minority students. It is telling that Plaintiffs' own curated sampling of statements does not include a single statement expressing the motivation to hinder the educational outcomes of minority students. Plaintiffs' disagreements about the merits of the banned propositions do not amount to a finding of racially discriminatory intent.

Moreover, the statements of these legislators do not even represent what the state representatives thought about the issue as a whole. As the Supreme Court has long held, "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it . . . ." *United States v. O'Brien*, 391 U.S. 367, 384 (1968); *see also Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 457 (2002) ("We see no reason to give greater weight to the views of two Senators than to the collective votes of both Houses, which are memorialized in the unambiguous statutory text."). And just two weeks ago, the Tenth Circuit emphasized that "the statements of a few legislators concerning their motives for voting for legislation is a reed too thin to support invalidation of a statute." *Citizens for Constitutional Integrity v. United States*, 2023 WL 142782 at *11 (10th Cir. Jan. 10, 2023); *see also Rosenstiel v. Rodriguez,* 101 F.3d 1544, 1552 (8th Cir. 1996) ("Furthermore, an isolated statement by an individual legislator is not a sufficient basis from which to infer the intent of that entire legislative body.").

---

[1] Okla. House Reps., Rep. Kevin West on Newsmax, Facebook (May 4, 2021, at 00:50–1:10), https://www.facebook.com/watch/?v=493694505011113.

The historical background of the Legislature's decision also does not indicate an intent to racially discriminate. In their complaint, Plaintiffs cite generically to "Oklahoma's own history of racial and gender discrimination" to support their claim. Doc. 50 at 73, ¶ 186. But this is utterly irrelevant—no history of racial and gender discrimination, even if assumed to be true, can possibly be used as a cudgel to *prohibit* a State from banning the teaching of racism and sexism in public schools. Plaintiffs' argument, at its core, is illogical.

In any event, no court has ever said that a generic history of discrimination is enough to strike down a duly enacted and facially appropriate law. Rather, the alleged history of discrimination must be directly tied in some way to the challenged action. In *Arlington Heights*, for instance, the Supreme Court stated that "[t]he historical background of the decision is one evidentiary source, particularly if it reveals a *series of official actions* taken for invidious purposes." *Vill. of Arlington Heights*, 429 U.S. at 267 (1977) (emphasis added). For example, discriminatory intent could be inferred if a plot of land were zoned for multifamily housing, but then rezoned as single-family housing after a developer proposed to build an integrated apartment building. *Id.* The court did *not* state that laws would automatically be considered suspect if the enacting state had any history of discrimination. And as described in State Defendants' previous filings, an awareness of the increased prevalence of teachings on the eight prohibited provisions nationwide led to the enactment of HB 1775. *See* Doc. 61 at 3–7. As a result, the history of HB 1775's enactment does not contain any discriminatory intent, nor have Plaintiffs plausibly alleged such intent.

The alleged departures from procedural and substantive norms also do not evince any discriminatory intent. Plaintiffs emphasize that the original HB 1775 addressed a different

subject before the Senate Education Committee replaced the initial language with the current language of HB 1775, which was then passed following a suspension of the germaneness rule. Doc. 50 at 49–50, ¶¶ 108–13. However, all this means is that legislators used a convenient available method for enacting this legislation. HB 1775 passed with overwhelming support. *See* Doc. 61 at 7. There is no reason to believe that the manner it was passed demonstrates discriminatory intent. Plaintiffs certainly provide no conceptual justification. To hold otherwise would be to rule legitimate parliamentary procedures unconstitutional—a violation of the separation of powers. Moreover, HB 1775 does not represent a departure from substantial norms. Oklahoma teachers and school districts still enjoy broad latitude to determine how best to educate students. Again, HB 1775 only restricts eight narrow provisions from being taught.

Therefore, judgment should be entered for State Defendants on Plaintiffs' fourth cause of action.

## CONCLUSION

For the reasons stated, and more, judgment should be entered for State Defendants on all of Plaintiffs' causes of action.

Respectfully Submitted,

s/ *Will Flanagan*

GARRY M. GASKINS, II, OBA NO. 20212
  *Solicitor General*
ZACH WEST, OBA NO. 30768
  *Director of Special Litigation*
WILL FLANAGAN, OBA NO. 35110
  *Assistant Solicitor General*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Direct: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
William.Flanagan@oag.ok.gov

*Counsel for State Defendants*