## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BLACK EMERGENCY RESPONSE TEAM et al.,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. CIV-21-1022-G** |
| **GENTNER DRUMMOND, in his official capacity as Oklahoma Attorney General, et al.,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

## <u>ORDER</u>

Now before the Court are motions to dismiss and for judgment on the pleadings submitted by the various defendants.  Following full briefing on those motions, a hearing, and submission of supplemental authority and briefing, the Court grants the motions in part, denies the motions in part, and orders that questions of state law be certified to the Oklahoma Supreme Court.

### I. BACKGROUND

#### A. *The Act*

Governor Kevin Stitt signed Oklahoma House Bill 1775 ("H.B. 1775" or "the Act") into law on May 7, 2021.  The Act, codified in title 70, section 24-157 of the Oklahoma Statutes, and its implementing regulations, codified in Oklahoma Administrative Code §

210:10-1-23 (the "Implementing Rules"),[1] prohibit the training or teaching of specified subjects in Oklahoma schools.

With respect to public colleges and universities, the Act directs:

> No enrolled student of an institution of higher education within The Oklahoma State System of Higher Education shall be required to engage in any form of mandatory gender or sexual diversity training or counseling; provided, voluntary counseling shall not be prohibited.  Any orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex shall be prohibited.

Okla. Stat. tit. 70, § 24-157(A)(1).  The Act directs the Oklahoma State Regents for Higher Education (the "State Regents") to promulgate rules to implement the provisions of section 24-157(A), but they have not yet done so.  *See id.* § 24-157(A)(2); Univ. Defs.' Mot. to Dismiss (Doc. No. 51) at 19.

With respect to school districts, charter schools, and virtual charter schools (collectively, "K-12 Schools"), the Act directs:

> No teacher, administrator or other employee of a school district, charter school or virtual charter school shall require or make part of a course the following concepts:
>
> a. one race or sex is inherently superior to another race or sex,
>
> b. an individual, by virtue of his or her race or sex, is inherently racist, sexist or oppressive, whether consciously or unconsciously,
>
> c. an individual should be discriminated against or receive adverse treatment solely or partly because of his or her race or sex,
>
> d. members of one race or sex cannot and should not attempt to treat others without respect to race or sex,

---

[1] Unless stated otherwise, references herein to the Act encompass the Implementing Rules, as such rules are authorized in and required by the Act to implement the provisions of the Act.  *See* Okla. Stat. tit. 70, § 24-157(A)(2), (B)(2).

> e.  an individual's moral character is necessarily determined by his or her race or sex,
>
> f.  an individual, by virtue of his or her race or sex, bears responsibility for actions committed in the past by other members of the same race or sex,
>
> g.  any individual should feel discomfort, guilt, anguish or any other form of psychological distress on account of his or her race or sex, or
>
> h.  meritocracy or traits such as a hard work ethic are racist or sexist or were created by members of a particular race to oppress members of another race.

Okla. Stat. tit. 70, § 24-157(B)(1).  This prohibition is limited by a clause providing that "[t]he provisions of this subsection shall not prohibit the teaching of concepts that align to the Oklahoma Academic Standards."  *Id.* § 24-157(B).  The Oklahoma Academic Standards ("Academic Standards") are educational objectives developed by the State Board of Education and approved by the Oklahoma Legislature reflecting subject matter standards for public school students in Oklahoma.  *See id.* § 11-103.6(A).  Public school districts are required to develop and implement curriculum based on the Academic Standards.  *See id.*  The Act's Implementing Rules authorize the State Department of Education to suspend or revoke the license or certificate of K-12 School employees found to have violated the Act.  *See* Okla. Admin. Code § 210:10-1-23(j).

B.  *Plaintiffs' Claims*

Plaintiffs are the Black Emergency Response Team, the University of Oklahoma Chapter of the American Association of University Professors ("OU-AAUP"), the Oklahoma State Conference of the National Association for the Advancement of Colored People ("NAACP-Oklahoma"), the American Indian Movement Indian Territory, Precious Lloyd *ex rel.* S.L., Anthony Crawford, and Regan Killackey.  Plaintiffs bring suit under 42

3

U.S.C. § 1983, requesting preliminary and permanent injunctive relief as well as a declaratory judgment that the Act is unconstitutional facially and as applied under the First and Fourteenth Amendments to the United States Constitution. *See* Am. Compl. (Doc. No. 50) at 76.

Specifically, Plaintiffs contend that:

1. The Act is unconstitutionally vague, facially and as applied by Defendants, in violation of the Fourteenth Amendment;

2. The Act infringes on the right of students to receive information, facially and as applied by Defendants, in violation of the First Amendment;

3. The Act is overbroad and imposes impermissible viewpoint-based restrictions, facially and as applied by Defendants, in violation of the First Amendment; and

4. The Act violates the Equal Protection Clause of the Fourteenth Amendment.

*See id.* ¶¶ 156-189.

Defendants comprise several delineated groups. The "University Defendants" are the University of Oklahoma Board of Regents (the "Board") and individual members of the Board sued in their official capacities (John R. "Rick" Braught, Anita Holloway, Rick Nagel, Robert Ross, Natalie Shirley, and Eric Stevenson, collectively referred to herein as the "Board Members").[2] The "State Defendants" are Kevin Stitt, in his official capacity as Governor of Oklahoma; Genter Drummond, in his official capacity as Oklahoma Attorney General; Ryan Walters, in his official capacity as Oklahoma Superintendent of Public

---

[2] Pursuant to Federal Rule of Civil Procedure 25(d) and the publicly available listing of current members of the Board, former members Frank Keating, Michael Cawley, and Phil Albert are hereby terminated as Defendants.

Education; Zachary Archer, Donald Burdick, Sarah Lepak, Katie Quebedeaux, and Kendra Wesson, in their official capacities as members of the Oklahoma State Board of Education;[3] and Jack Sherry, Dennis Casey, Steven Taylor, Courtney Warmington, P. Mitchell Adwon, Jeffrey Hickman, Dustin Hilliary, Ken Levit, and Michael Turpen, in their official capacities as the Oklahoma State Regents for Higher Education.[4]  Defendant Independent School District No. 12, Oklahoma County, Oklahoma, is herein referred to as "Edmond Public Schools" or "EPS."[5]

### C. Defendants' Motions

The University Defendants have submitted a Motion to Dismiss (Doc. No. 51), contending that Plaintiffs' claims against them should be dismissed based upon lack of

---

[3] Pursuant to Federal Rule of Civil Procedure 25(d) and the publicly available listing of current members of the Oklahoma State Board of Education, former members Trent Smith, Marla Hill, and Suzanne Reynolds are hereby terminated as Defendants and succeeding members Zachary Archer and Katie Quebedeaux are added as Defendants.

[4] Pursuant to Federal Rule of Civil Procedure 25(d) and the publicly available listing of current members of the Oklahoma State Regents for Higher Education, former members Ann Holloway and Joseph Parker Jr. have been terminated as Defendants and succeeding members P. Mitchell Adwon and Ken Levit are added as Defendants.

[5] Plaintiffs initially brought claims against the members of the Edmond Public Schools Board of Education and EPS Superintendent Angela Grunewald (collectively, the "EPS Defendants"), in their official capacities. *See* Am. Compl. ¶¶ 27-28.  On March 8, 2022, Plaintiffs and the EPS Defendants jointly moved to substitute Edmond Public Schools for the EPS Defendants.  *See* Agreed Mot. to Substitute Parties (Doc. No. 76).  The Court, construing the Agreed Motion as a request to amend the Amended Complaint, granted the parties' request and ordered that "[t]he allegations, causes of action, and requests for relief against [the EPS Defendants] shall be deemed asserted against Independent School District No. 12, Oklahoma County, Oklahoma."  Order of Aug. 24, 2022 (Doc. No. 80) at 2. Because the EPS Defendants are no longer parties to this litigation, EPS' Motion to Dismiss is denied as moot to the extent it seeks dismissal on the basis of the EPS Defendants being improper parties.  *See* EPS Mot. to Dismiss (Doc. No. 52) at 5-8.

subject-matter jurisdiction and for failure to state a claim upon which relief may be granted. *See id.* at 5, 16; Fed. R. Civ. P. 12(b)(1), (b)(6). Plaintiffs have responded in opposition (Doc. No. 67). The University Defendants have replied in support of their Motion (Doc. No. 71).

After filing an Answer (Doc. No. 53), the State Defendants submitted a Motion for Judgment on the Pleadings (Doc. No. 106), contending that judgment should be entered in their favor on each of Plaintiffs' claims against them. *See id.* at 1; Fed. R. Civ. P. 12(c). Plaintiffs have responded in opposition (Doc. No. 110), and the State Defendants have replied (Doc. No. 112).

Defendant EPS has submitted a Motion to Dismiss (Doc. No. 52), contending that Plaintiffs' claims against it should be dismissed for failure to state a claim upon which relief may be granted. *See id.* at 1; Fed. R. Civ. P. 12(b)(6). Plaintiffs have responded in opposition (Doc. No. 68). EPS has replied in further support of its Motion (Doc. No. 73).

## II. STANDARD OF REVIEW

### A. Subject-Matter Jurisdiction

The University Defendants argue that Plaintiffs' claims against the Board Members should be dismissed because Plaintiffs have not shown Article III standing to bring those claims. *See* Univ. Defs.' Mot. to Dismiss at 7-16. This assertion challenges the Court's subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Murray v. Colorado*, 149 F. App'x 772, 774 (10th Cir. 2005).

A Rule 12(b)(1) motion seeking dismissal for lack of subject-matter jurisdiction takes the form of a facial attack or a factual attack. *See Paper, Allied-Indus., Chem. &*

*Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005). With a facial attack, such as the one made by the University Defendants, the movant challenges the sufficiency of the complaint, and the district court must accept all well-pleaded allegations in the complaint as true. *See id.*; *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009).

### B.   Failure to State a Claim

The University Defendants and Defendant EPS argue, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiffs' allegations are in various respects insufficient to plausibly state a claim upon which relief can be granted.  In analyzing a Rule 12(b)(6) motion, the Court "accept[s] as true all well-pleaded factual allegations in a complaint and view[s] these allegations in the light most favorable to the plaintiff[s]." *Smith*, 561 F.3d at 1098.  A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted).  Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

### C.  Judgment on the Pleadings

The State Defendants argue, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, that judgment should be entered in their favor on each of Plaintiffs' claims because Plaintiffs' allegations fail to plausibly state a claim.  Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).  The Court evaluates the motion under the familiar standard applied to Rule 12(b)(6) motions.  *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (citing *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992)).  Accordingly, the Court "accept[s] all facts pleaded by the non-moving party as true and grant[s] all reasonable inferences from the pleadings in favor of the same." *Adams v. Jones*, 577 F. App'x 778, 782 (10th Cir. 2014) (internal quotation marks omitted).  "[T]o survive judgment on the pleadings, [the plaintiff] must allege 'a claim to relief that is plausible on its face.'"  *Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).  "To determine whether the claim to relief is 'plausible on its face,' we examine the elements of the particular claim and review whether the plaintiff has pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted).

III. ANALYSIS

A. *The University Defendants' Motion to Dismiss*

      1. *Plaintiffs' Claims Against the University of Oklahoma Board of Regents*

To state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States" and "must show that the alleged deprivation was committed by *a person* acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). The University Defendants assert that the Board may not be sued under § 1983 because the Board is not a "person" but an arm of the State of Oklahoma. *See* Univ. Defs.' Mot. to Dismiss at 7-8.[6] Plaintiffs do not object to dismissal, stating the Board is not a named defendant. *See* Pls.' Resp. at 5. *But see* Am. Compl. ¶ 26 (identifying the Board as a defendant).

The Tenth Circuit has long recognized that the Board is an arm of the state for purposes of the Eleventh Amendment. *Hensel v. Off. of Chief Admin. Hearing Officer*, 38 F.3d 505, 508 (10th Cir. 1994). And it is well established that "a governmental entity that is an arm of the state for Eleventh Amendment purposes is not a 'person' for section 1983 purposes." *McLaughlin v. Bd. of Trs. of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000) (internal quotation marks omitted); *accord Hartman v. Kickapoo Tribe Gaming Comm'n*, 319 F.3d 1230, 1234 (10th Cir. 2003).

---

[6] Notably, the University Defendants do not seek dismissal on the basis of Eleventh Amendment immunity.

Accordingly, Plaintiffs' claims against the Board "fail[] to state a claim against a person covered by section 1983," and they shall be dismissed without prejudice. *Id.*

### 2. Standing

Next, the University Defendants argue that Plaintiffs lack standing to bring their claims against the Board Members. *See* Univ. Defs.' Mot. to Dismiss at 8-16. "Article III standing is a jurisdictional requirement for a plaintiff to plead and prove, and a lack of standing may be challenged by a motion under Rule 12(b)(1)." *Altstatt v. Bd. of Cnty. Comm'rs for Okla. Cnty.*, No. CIV-22-811-D, 2023 WL 6208550, at *2 (W.D. Okla. Sept. 22, 2023).

To have standing to sue, a plaintiff must properly allege: (1) it "ha[s] suffered an injury in fact—an invasion of a legally protected interest"—"that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted); *New England Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008). When there are multiple plaintiffs, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).

When an organization sues on behalf of its members, the organization has standing if "(1) at least one of its members would have standing to sue in the member's own right; (2) the interest it seeks to protect is germane to its purpose; and (3) neither the claim

asserted nor the relief requested requires the member to participate in the lawsuit." *Speech First, Inc. v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024) (citing *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 181 (2000)).   The requirement that one of the organization's members have standing may be met even when the qualifying member is not identified by name.  *Id.* at 949-50.

Even prior to actual enforcement of a statute against a plaintiff, standing may be established by showing that the plaintiff is suffering "an ongoing injury resulting from the statute's chilling effect on his [or her] desire to exercise his [or her] First Amendment rights." *Wilson v. Stocker*, 819 F.2d 943, 946 (10th Cir. 1987).  "[A]n injury-in-fact exists where a chilling effect 'arises from an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the statute's enforcement.'" *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1160 (10th Cir. 2023) (alteration omitted) (quoting *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004)).  The Tenth Circuit has found that standing in a suit for prospective relief based on a chilling effect on speech may be shown through:

> (1) evidence that in the past [the plaintiff has] engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that [the plaintiff] presently [has] no intention to do so *because of* a credible threat that the statute will be enforced.

*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006); *see also Rio Grande Found.*, 57 F.4th at 1161 (describing the *Walker* three-factor framework as only one "example of circumstances giving rise to standing on a chilled speech claim").

a. *Prohibition of Mandatory Gender or Sexual Diversity Training and Counseling*

The University Defendants contend that Plaintiffs lack standing to challenge the first sentence of section 24-157(A)(1), which prohibits "mandatory gender or sexual diversity training or counseling." Okla. Stat. tit. 70, § 24-157(A)(1). The plain language of this provision prescribes that public colleges and universities in Oklahoma may continue to offer *voluntary* training or counseling regarding gender and sexual diversity, and Plaintiffs' allegations establish that the University of Oklahoma ("OU") in fact has done so. *See id.* ("[V]oluntary counseling shall not be prohibited."); Am. Compl. ¶ 74. At issue, then, is not whether university level student-Plaintiffs are being denied particular training, but whether Plaintiffs suffer an actual or imminent harm when such training is not required of all students at their respective university.

Plaintiffs offer no authority or allegations that would support the proposition that any of them or of their members has a legally protected interest in which university trainings and counseling sessions are mandatory as opposed to voluntary. Further, because making the relevant training and counseling voluntary does not restrict what information an instructor may teach during the voluntary training or counseling sessions, or what information a student enrolled in such sessions may receive, Plaintiffs' allegations are insufficient to show standing based on chilled speech or any other concrete and particularized consequences implicated by a credible threat of enforcement of the Act.

As a result, the Court concludes that Plaintiffs have shown no actual or imminent "injury in fact" from section 24-157(A)(1)'s restriction on mandatory training and

counseling.  *See Lujan*, 504 U.S. at 560.  Plaintiffs therefore lack standing to bring claims

challenging this provision as violative of the First or Fourteenth Amendments.[7]

> b. *Prohibition of Any Requirement or Orientation That Presents Race or Sex Stereotyping or Bias on the Basis of Race or Sex*

The University Defendants also contend that Plaintiffs lack standing to challenge

the second sentence of section 24-157(A)(1), which prohibits "[a]ny orientation or

requirement that presents any form of race or sex stereotyping or a bias on the basis of race

or sex."  Okla. Stat. tit. 70, § 24-157(A)(1).

> 1) *Construction of Statute*

As a threshold matter, the University Defendants argue that "from the structure of

[the Act], it is obvious that [section 24-157(A)(1)] applies to trainings and orientations, not

to classroom study or academic research."  Univ. Defs.' Mot. to Dismiss at 13.  As outlined

---

[7] In their Motion for Preliminary Injunction and attached materials, Plaintiffs state that they fear that the absence of mandatory training and counseling will lead to them being harmed by students who decline to enroll in the voluntary training and counseling.  For example, Plaintiffs contend that "[n]ow that students are not required to learn about anti-racism and rape prevention, OU community members . . . face an increased risk of harassment and prejudice."  Pls.' Mot. Prelim. Inj. (Doc. No. 27) at 17.  Lilly Amechi, on behalf of BERT, states that, following the cessation of mandatory diversity, equity, and inclusion trainings, members of BERT are "in fight or flight mode" and avoid talking to others "to reduce the chances of a racially-motivated or sexual attack."  BERT Decl. ¶ 15, Pls.' Mot. Prelim. Inj. Ex. 3 (Doc. No. 27-3).  Amechi further states that following the end of mandatory sexual harassment trainings, OU's Gender and Equality Center "has already seen an increase in sexual assaults reported as compared to the same time frame in years prior."  *Id.* ¶ 13.  Even if such assertions were to be considered in evaluating Plaintiffs' standing to challenge section 24-157(A)(1)'s prohibition on mandatory training and counseling, they are too speculative to plausibly allege an actual or imminent "injury in fact" or that such injury would be fairly traceable to the actions of Defendants.

below, the Court disagrees and concludes that the provision, based on its plain language, applies to and restricts curricular speech.

In construing a state statute, a federal court must remain mindful that "state courts are the final arbiters of state law." *United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004). "Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Id.* (alteration and internal quotation marks omitted). A federal court, however, is "without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent." *Stenberg v. Carhart*, 530 U.S. 914, 944 (2000) (internal quotation marks omitted); *see also Okla. State Conf. of NAACP v. O'Connor*, 569 F. Supp. 3d 1145, 1153 (W.D. Okla. 2021) (declining to "apply[] limitations to the [state] statute that simply do not exist in the text"). Because Oklahoma laws are severable by default, the Court may strike words from the statute to save it. *See* Okla. Stat. tit. 75, § 11a(1); *Okla. Corr. Pro. Ass'n, Inc. v. Doerflinger*, 468 F. App'x 916, 917 (10th Cir. 2012). But inserting words in order to achieve a particular construction "would exceed the power and function of the court, and would fail to bind state prosecutors, leaving the citizens of [Oklahoma] vulnerable to prosecutions under the actual language of the statute." *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1194-95 (10th Cir. 2000). Stated differently, the Court "will not rewrite a state law to conform it to constitutional requirements." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988) (noting that a court will uphold a statute only if it is "readily susceptible" "to a narrowing construction that would make it constitutional").

When interpreting a statute, "[i]f the words of the statute have a plain and ordinary meaning, [the Court] appl[ies] the text as written." *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009); *accord Day v. Great Nw. Ins. Co.*, 623 F. Supp. 3d 1252, 1255 (W.D. Okla. 2022) (citing *Hamilton v. Northfield Ins. Co.*, 473 P.3d 22, 26 (Okla. 2020)).  Although the Act does not expressly define "orientation," the plain and ordinarily understood meaning of that term is, in context, a program or course offered by universities and colleges to provide introductory information to new students.[8]  The text of the Act includes no definition or limiting modifier for the term "requirement."  The plain and ordinarily understood meaning of that term encompasses a broad range of activity[9] and would include, in context, everything from the courses demanded by a university for a degree to the assignments and readings demanded by a professor for a course.  The text of the Act also includes no definition or limiting modifier for the term "presents."  The plain and ordinarily understood meaning of that term likewise encompasses a broad range of activity[10] and would include, in context, any situation in which race or sex stereotyping or bias is deliberately introduced or otherwise discussed.

---

[8]  *See Oxford English Dictionary*, s.v. "orientation (n.), sense 1.4," *accessible at* https://doi.org/10.1093/OED/5986710372 (2024) ("The process of familiarizing a new or prospective student, recruit, etc., with the content of a course, the basics of a subject, the nature of college life, etc.  Also: a course intended to provide such familiarization.").

[9]  *See Oxford English Dictionary*, s.v. "requirement (n.), sense 3.b," *accessible at* https://doi.org/10.1093/OED/9723059198 (2024) ("Something called for or demanded; a condition which must be complied with.").

[10]  *See Oxford English Dictionary*, s.v. "present (v.), sense 1.7.a," *accessible at* https://doi.org/10.1093/OED/5912943123 (2024) ("To make clear to the mind or thought; to convey, suggest, or exhibit to mental perception; to put forward for reflection, consideration, or scrutiny; to set forth, describe.").

Applying these definitions, the Court concludes that an Oklahoma court would construe section 24-157(A)(1)'s prohibition of "[a]ny orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex" as a restriction on curricular speech, specifically here the information a university level instructor-Plaintiff teaches in any orientation, required course, or course assignment.

### 2) Injury in Fact

The parties do not dispute that the curricular speech of the university level instructor-Plaintiffs is protected to some extent by the First Amendment. *See Miles v. Denver Pub. Schs.*, 944 F.2d 773, 779 (10th Cir. 1991) (contrasting First Amendment protections afforded university professors and K-12 public school teachers).[11] Accordingly, Plaintiffs correctly contend that they may establish standing to challenge section 24-157(A)(1)'s prohibition of "[a]ny orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex" by adequately alleging that the prospect of enforcement of that provision has had a chilling effect on these Plaintiffs' exercise of their First Amendment rights. Okla. Stat tit. 70, § 24-157(A)(1).

---

[11] For purposes of analyzing standing, or the instant motions to dismiss and for judgment on the pleadings, the Court need not decide the extent that the First Amendment protects the curricular speech of university professors and instructors or whether it is properly assessed under *Garcetti v. Ceballos*, 547 U.S. 410 (2006), *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563 (1968), or some other test. It is sufficient to determine that the second sentence of section 24-157(A)(1) regulates the curricular speech of university level instructor-Plaintiffs and that at least some of the regulated speech is protected by the First Amendment.

Again, standing based on chilled speech may be established through a showing that: (1) the plaintiff "in the past. . . engaged in the type of speech affected by the challenged government action"; (2) the plaintiff has "a present desire. . . to engage in such speech"; and (3) there is "a plausible claim that [the plaintiff] presently [has] no intention to do so because of a credible threat that the statute will be enforced." *Walker*, 450 F.3d at 1089 (emphasis omitted). Here, Plaintiffs have alleged that one OU instructor has altered classroom instruction upon the direction of an OU administrator. *See* Am. Compl. ¶ 14 (Plaintiff OU-AAUP stating that one of its members was instructed to cease testing students on critical race theory by a department head in light of the Act). Additionally, Plaintiffs have alleged that instructors have altered their classroom instruction out of fear of adverse enforcement action. *See id.* ¶ 75. These allegations are sufficient at this stage to demonstrate an injury in fact for Plaintiffs' constitutional claims.

### 3) Traceability and Redressability

Plaintiffs suing public officials under *Ex parte Young* can satisfy the traceability and redressability requirements by demonstrating "a meaningful nexus" between the defendants and the alleged injury. *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014). In other words, the defendant-officials "must 'have some connection with the enforcement' of a challenged statute." *Id.* (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). "An officer need not have a special connection to the allegedly unconstitutional statute; rather, he need only have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Id.* (internal quotation marks omitted). An official's responsibility for the general supervision over others' administration of a

challenged law is sufficient, even if the official is powerless to change the state law.  *See id.* at 1204; *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (rejecting argument that state officials were not proper defendants because they could not change state law to remedy plaintiff's concerns but could only enforce the law as written).  "So long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act."  *Finstuen v. Crutcher*, 496 F.3d 1139, 1151 (10th Cir. 2007) (internal quotation marks omitted).

Applying these standards, the Court finds that the Board Members' general responsibility to enforce the laws pertaining to the University of Oklahoma makes them proper defendants in this lawsuit.  Although section 24-157(A)(1) has no express enforcement mechanism, the Board is responsible for the "supervision, management and control of [OU] and all its integral parts."  Okla. Stat. tit. 70, § 3305.[12]  This includes the powers to "[a]dopt such rules and regulations as it deems necessary to govern [OU]" and to "[d]o all things necessary and convenient to carry out the powers expressly granted to [the Board] by the Constitution and the laws of the state."  *Id.* § 3305(a), (o).  For these reasons, the Board Members have a sufficient connection to the enforcement of the Act to satisfy the traceability and redressability components of standing.

_____

[12] Although the State Regents have not yet promulgated implementing rules pursuant to section 24-157(A)(2), the University Defendants have pointed to no authority suggesting that this statute lacks independent legal force.  *See generally Prairie Band Potawatomi Nation*, 476 F.3d at 828 n.16 ("We are similarly unimpressed with Defendants' circular argument that [a statutory provision] is 'unenforceable' because the statute does not contain any specific language stating how it is to be enforced.").

### 4) Conclusion

As described above, Plaintiffs' allegations are sufficient to show an injury in fact that is traceable to the University Defendants and redressable through Plaintiffs' claims against those Defendants. The Court determines that Plaintiffs have standing to challenge section 24-157(A)(1)'s prohibition of "[a]ny orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex."

### 3. Failure to State a Claim

The University Defendants further argue that Plaintiffs' claims against the Board Members are meritless because the Oklahoma Constitution reserves to the Board of Regents the authority to "control academic speech or study" at the University of Oklahoma and, therefore, any aspect of section 24-157(A)(1) that restricts curricular speech is a nullity. *See* Univ. Defs.' Mot. to Dismiss at 13; *see also* Univ. Defs.' Resp. to Pls.' Mot. Prelim. Inj. (Doc. No. 58) at 9 ("Should it be determined that the text and context of the statute itself is not sufficiently clear, it should be noted that the legislature is without authority to dictate academic content to the OU Regents."). Indeed, the University Defendants contend that, to the extent they are enforcing the Act, they are doing so "out of respect to the legislature" and not because they are bound by the Act. *See* Tr. Mot. Hr'g 40:17-41:2 (Doc. No. 162).[13]

---

[13] To the extent the University Defendants argue that this asserted limit on the authority of the Oklahoma Legislature to control academic speech or study at OU deprives Plaintiffs of standing, the Court disagrees. As detailed above, Plaintiffs have sufficiently established standing to challenge the second sentence of section 24-157(A)(1). Any argument that the

The Oklahoma Constitution provides that "[t]he government of the University of Oklahoma shall be vested in a Board of Regents."  Okla. Const. art. XIII, § 8 ("Article XIII").  "The term 'government' is very broad and necessarily includes the power to pass all rules and regulations which the Board of Regents considers to be for the benefit of the health, welfare, morals and education of the students."  *Franco v. State ex rel. Bd. of Regents of Univ. of Okla.*, 482 P.3d 1, 9 (Okla. Civ. App. 2020) (quoting *Pyeatte v. Bd. Of Regents of Univ. of Okla.*, 102 F. Supp. 407, 413 (W.D. Okla. 1951)).  The Oklahoma Supreme Court has recognized that the state legislature retains some authority over OU but has not fully delineated that authority.  *See Bd. of Regents of Univ. of Okla. v. Baker*, 638 P.2d 464, 469 (Okla. 1981) ("While constitutionally assured independence cannot be equated with complete immunity for legislative regulation, it is unnecessary for us to fully examine here the nature and extent of legislative regulation applicable to [the] Board.").  Therefore, although the University Defendants plausibly suggest that section 24-157(A)(1) may violate Article XIII, they fail to identify any authority that conclusively supports their contention.  Nor is the Court independently aware of any such authority.

At oral argument, the Court, while noting that no party had moved for certification of a question to the Oklahoma Supreme Court, asked whether certification would be appropriate.  *See* Tr. Mot. Hr'g 70:10-14.[14]  Under Oklahoma law, the Oklahoma Supreme

---

provision is invalid under the Oklahoma Constitution is a question more reasonably addressed in deciding the merits of that challenge.

[14] Plaintiffs indicated their view that certification was unnecessary and requested that the Court enjoin the Act during the pendency of any certification procedure.  *See* Tr. Mot. Hr'g 70:15-71:19. The State Defendants represented that they would not oppose certification.

Court may answer a question of law certified to it "if the answer may be determinative of an issue in pending litigation" and "there is no controlling decision of the [Oklahoma] Supreme Court . . . , constitutional provision, or statute of [Oklahoma]." Okla. Stat. tit. 20, § 1602. "The decision to certify rests in the sound discretion of the federal court, and a federal court may certify a state-law issue sua sponte." *Kan. Jud. Rev. v. Stout*, 519 F.3d 1107, 1120 (10th Cir. 2008) (internal quotation marks omitted). The procedure is appropriately employed only when "the statute is fairly susceptible to a narrowing construction" and the question is "both unsettled and dispositive." *Stenberg*, 530 U.S. at 945 (internal quotation marks omitted); *Anaconda Mins. Co. v. Stoller Chem. Co.*, 990 F.2d 1175, 1177 (10th Cir. 1993); *accord Kan. Jud. Review*, 519 F.3d at 1119 ("[W]here statutory interpretation is at issue, the touchstone of our certification inquiry is whether the state statute is readily susceptible of an interpretation that would avoid or substantially modify the federal constitutional challenge to the statute." (internal quotation marks omitted)). Certification "promotes cooperative judicial federalism" and is consistent with a federal court's duty "to avoid passing on the constitutionality of a statute where possible" and "to avoid considering the Constitutionality of a state statute in the absence of a controlling interpretation of its meaning and effect by the state courts." *Kan. Jud. Review*, 519 F.3d at 1119 (internal quotation marks omitted).

---

*See id.* at 73:9-16. The University Defendants then repeated their contention that "to the extent any enforcement would take place, that would have to be spelled out in rules promulgated by the state regents," "[s]o there's really nothing for this Court to enjoin against the University of Oklahoma." *Id.* at 82:17-25.

Applying these considerations, and in particular noting the public importance of the subject matter of the Act and the lack of any opportunity for an Oklahoma court to determine how the Act should be construed and if its scope is limited by article XIII, section 8 of the Oklahoma Constitution, the Court concludes that certification is appropriate. The Court shall direct the parties to submit proposed questions related to this issue for certification to the Oklahoma Supreme Court.

Therefore, the Court will reserve ruling on Plaintiffs' First Amendment claims challenging the second sentence of section 24-157(A)(1) pending a response from the Oklahoma Supreme Court. *See Kan. Jud. Rev.*, 519 F.3d at 1122. The University Defendants' arguments for dismissal of Plaintiffs' Fourteenth Amendment claims overlap with the Rule 12(c) arguments of the State Defendants and are considered below.

B. *The State Defendants' Motion for Judgment on the Pleadings*

1. *Plaintiffs' First Amendment Claims*

Invoking the First Amendment, Plaintiffs allege that the Act infringes upon the right of educators to teach certain information and the corollary right of students to receive that information. *See* Am. Compl. ¶¶ 164-170, 171-176 ("Right to Receive Information"; "Overbroad and Viewpoint-Based Restriction on Academic Freedom"). Because section 24-157(A)(1) and section 24-157(B)(1) impose different restrictions at different educational levels, the Court considers these provisions separately.

a. *Section 24-157(A)(1): Colleges and Universities*

As noted above, section 24-157(A)(1) of the Act applies to public colleges and universities. The Court has determined that Plaintiffs lack standing to challenge the first

sentence of that section.  Accordingly, Plaintiffs' claims challenging the first sentence of section 24-157(A)(1) as violative of the First Amendment shall be dismissed without prejudice for lack of subject-matter jurisdiction.

The State Defendants argue that the second sentence of section 24-157(A)(1) should be construed, like the first sentence of that section, as merely restricting what "types of. . . orientation[s] or similar 'requirements'" may be made "mandatory."  *See* State Defs.' Mot. JOP at 4 (emphasis omitted).  As described above, the Court has concluded that an Oklahoma court would construe section 24-157(A)(1)'s prohibition of "[a]ny orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex" as a restriction on curricular speech, including the information a university level instructor-Plaintiff teaches in any orientation, required course, or course assignment. And, again, the parties do not dispute that the curricular speech of the university level instructor-Plaintiffs is protected to some extent by the First Amendment.  Because the State Defendants present no other argument as to why judgment should be entered in their favor on Plaintiffs' First Amendment claims challenging the second sentence of section 24-157(A)(1), and Plaintiffs' allegations present facts that would adequately support such a claim, the State Defendants' Motion is, to that extent, denied.

### b.  *Section 24-157(B)(1): K-12 Schools*

The State Defendants argue that Plaintiffs' First Amendment claims challenging section 24-157(B)(1) of the Act should be dismissed because that provision only restricts

the curricular speech of K-12 teachers, and such speech is not protected by the First Amendment.  *See* State Defs.' Mot. JOP at 3.

The Supreme Court has recognized that state and local authorities have wide latitude to craft their own curricula in a way that "transmit[s] community values," as "public schools are vitally important . . . vehicles for inculcating fundamental values necessary to the maintenance of a democratic political system." *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico,* 457 U.S. 853, 864 (1982) (internal quotation marks omitted).  In *Garcetti v. Ceballos*, the Supreme Court addressed the free speech rights of public employees, holding that while the First Amendment does not protect the speech of public employees made "pursuant to their official duties," it does in some circumstances protect speech of public employees made as private citizens on matters of public concern. *Garcetti*, 547 U.S. at 419-21 (holding that even when speaking on a manner of public concern, a public employee is subject to "those speech restrictions that are necessary for their employers to operate efficiently and effectively"); *see also Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir. 2007) (outlining "*Garcetti/Pickering* analysis").  In *Garcetti*, the Supreme Court explicitly refrained from deciding whether its analysis "would apply in the same manner to a case involving speech related to scholarship or teaching," noting that "[t]here is some argument that expression

related to academic scholarship or classroom instruction implicates additional constitutional interests." *Garcetti*, 547 U.S. at 425.[15]

The Tenth Circuit has applied *Garcetti* in considering whether the First Amendment protected a range of outside-the-classroom statements by teachers alleging they were terminated in retaliation for exercising their freedom of speech. *See Brammer-Hoelter*, 492 F.3d at 1202-08. The appeals court held that statements by the teachers "made pursuant to their duties as teachers"—including execution of the school's curriculum and use of "an effective pedagogy"—was speech "made pursuant to [the teachers'] official duties and could be freely regulated by the" school. *Id*. at 1204; *see also id*. at 1204 n.7. The same principle would mean that curricular speech of the kind regulated by section 24-157(B)(1) is not protected by the First Amendment. Other courts have expressly held that

---

[15] That question has not yet been conclusively answered. In a pre-*Garcetti* case, the Tenth Circuit applied the test for restrictions on school-sponsored student speech set forth in *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 267 (1988), to restrictions on classroom expression by teachers. *See Miles v. Denver Pub. Schs.*, 944 F.2d 773, 776 (10th Cir. 1991). Under that test, curricular speech—defined in *Hazelwood* to include "school-sponsored publications, theatrical productions, and other expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school" "so long as they are supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences," *Hazelwood*, 484 U.S. at 271—may be regulated by a school so long as the regulation serves a legitimate pedagogical purpose. *See Miles*, 944 F.2d at 778-79. Another court has invoked *Hazelwood* as a means of determining whether particular statements by a teacher qualify under *Garcetti* as protected private speech on a matter of public concern. *See Lee v. York Cnty. Sch. Div.*, 484 F.3d 687, 694 n.11, 700 (4th Cir. 2007) (finding that statements of curricular speech were not speech on a matter of public concern and were not protected by the First Amendment). Even if this broader test were applied, it is plain that the in-class instructional speech of K-12 Schools and teachers regulated by section 24-157(B)(1) is not protected by the First Amendment.

in-class instructional speech by K-12 level teachers is not protected by the First Amendment.  *See Evans-Marshall v. Bd. of Ed. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 342 (6th Cir. 2010) ("[T]he First Amendment does not protect primary and secondary school teachers' in-class curricular speech."); *Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477, 479-80 (7th Cir. 2007); *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 966-70 (9th Cir. 2011).

The Court agrees with the State Defendants that section 24-157(B)(1) is directed to the curricular speech of K-12 teachers in Oklahoma and that, in accordance with the authority set forth above, such curricular speech is not protected by the First Amendment. Accordingly, the Court finds that Plaintiffs' allegations do not plausibly support their claims that section 24-157(B)(1), either facially or as applied, violates the First Amendment.[16]  The State Defendants' Motion is, to that extent, granted.

### 2.  *Plaintiffs' Fourteenth Amendment Due Process Claims*

The State Defendants argue in relevant part that Plaintiffs have not plausibly alleged that the Act—excepting the first sentence of section 24-157(A)(1), as to which Plaintiffs lack standing—is vague in violation of the Fourteenth Amendment.  *See* State Defs.' Mot.

---

[16] The right to receive information is a corollary of the speaker's right to express it.  *See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26*, 457 U.S. at 867 ("[The right to receive information and ideas] is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution . . . ."); *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); *Doe v. City of Albuquerque*, 667 F.3d 1111, 1118 (10th Cir. 2012).  Because the Court finds no adequately pleaded claim based on a violation of K-12 level instructor-Plaintiffs' First Amendment right to teach particular information in the classroom, it follows that there is no plausible claim for a violation of K-12 level student-Plaintiffs' right to receive that information.

JOP at 2.  Relying on the text of the Act and, relevant to section 24-157(B), the safe harbor of the Academic Standards, the State Defendants contend that the Act is sufficiently clear to afford due process.  *See id.* at 2-3.

As set forth in the Order on Plaintiffs' Motion for Preliminary Injunction, issued contemporaneously with this Order, the Court has found that Plaintiffs have established a substantial likelihood of success on the merits insofar as (1) their claim that section 24-157(A)(1)'s prohibition of "[a]ny orientation or  requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex" is impermissibly vague in violation of the Fourteenth Amendment; and (2) their claim that section 24-157(B)(1) is impermissibly vague in violation of the Fourteenth Amendment to the extent that the introductory verb clause uses the term "require," and with respect to subsections (B)(1)(c) and (B)(1)(d) in their entireties.  Okla. Stat. tit. 70, § 24-157(A)(1), (B)(1).

The Court declines, however, to grant dismissal to the University Defendants or judgment on the pleadings to the State Defendants at this juncture, even as to those aspects of section 24-157 that the Court has found to be sufficiently clear as to preclude issuance of injunctive relief.  Plaintiffs' inability to obtain extraordinary relief as to those provisions does not, standing alone, warrant the entry of judgment against Plaintiffs on those claims. Moreover, the Court is mindful of its limited role and that no Oklahoma court has had the opportunity to determine how the Act should be construed.  Applying the factors described above, and noting the public importance of the subject matter of the Act, the Court concludes that certification of relevant questions as to the Fourteenth Amendment due process claim to the Oklahoma Supreme Court is appropriate.  The Court shall direct the

parties to submit proposed questions related to this issue for certification.  Pending a response, the Court reserves ruling on this aspect of the State Defendants' Motion.  *See Kan. Jud. Rev.*, 519 F.3d at 1122.

### 3.  *Plaintiffs' Fourteenth Amendment Equal Protection Claims*

The Equal Protection Clause of the Fourteenth Amendment provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Plaintiffs assert that Oklahoma's enactment of the Act violated the guarantee of equal protection because it was done with a racially discriminatory purpose.  Am. Compl. ¶¶ 177-189.  The State Defendants argue that Plaintiffs' allegations fail to plausibly establish that the Act was enacted with discriminatory intent.  *See* State Defs.' Mot. JOP at 4-9; State Defs.' Reply (Doc. No. 112) at 10-11.

The Tenth Circuit has recently summarized the two primary types of equal protection claims:

> For typical equal-protection claims, . . . the challenged law facially discriminates on the basis of some discernible trait.  When a distinction between groups of persons appears on the face of a state law or action, an intent to discriminate is presumed and no further examination of the legislative purpose is required.  The only questions are (1) what degree of judicial scrutiny applies to a distinction based on this trait, and (2) whether the classification at issue withstands such scrutiny.  In other cases the challenged government action does not explicitly or overtly treat the plaintiffs differently based on a particular characteristic.  But we may deduce the existence of the requisite discriminatory intent by examining surrounding circumstances.

*Citizens for Const. Integrity v. United States*, 57 F.4th 750, 765-66 (10th Cir. 2023) (citations and internal quotation marks omitted).  In their Response, Plaintiffs argue that

their allegations are sufficient to plead an equal protection claim under the second category set forth above.  *See* Pls.' Resp. (Doc. No. 110) at 24.

Under the framework articulated in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), "a facially neutral statute can violate equal protection if a challenger proves that [the legislature] enacted the statute for a discriminatory purpose or intent and the statute has a racially disparate impact." *United States v. Amador-Bonilla*, 102 F.4th 1110, 1115 (10th Cir. 2024).

> *Arlington Heights* lists five factors to consider when determining if Congress passed a statute with a discriminatory purpose: (1) the "historical background of the decision," (2) the "specific sequence of events leading up to the challenged decision," (3) "[d]epartures from the normal procedural sequence," (4) "[s]ubstantive departures," and (5) "legislative or administrative history . . . especially where there are contemporary statements by members of the decisionmaking body."

*Id.* at 1116 (alterations and omission in original) (quoting *Vill. of Arlington Heights*, 429 U.S. at 267-68).

Importantly, a plaintiff "do[es] not have to prove that the [state action] rested solely on racially discriminatory grounds." *Dowell ex rel. Dowell v. Bd. of Educ. of Okla. City Pub. Schs.*, 8 F.3d 1501, 1518 (10th Cir. 1993).  Rather, a plaintiff need only show that "'the decisionmaker selected or reaffirmed a particular course of action *at least in part because of*, not merely in spite of, its adverse effects on an identifiable group.'" *Navajo Nation v. New Mexico*, 975 F.2d 741, 743-44 (10th Cir. 1992) (alteration and omission omitted) (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).  "The task of assessing a jurisdiction's motivation, however, is not a simple matter; . . . it is an inherently complex endeavor, one requiring the trial court to perform a sensitive inquiry

into such circumstantial and direct evidence of intent as may be available." *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999) (internal quotation marks omitted).  And, of course, "[t]he legislature's motivation is itself a factual question." *Id.* at 549.

For purposes of the present motions, the Court finds that Plaintiffs have adequately pled their Fourteenth Amendment equal protection claims.  Plaintiffs allege that the Oklahoma Legislature deviated from its own procedures when it passed the Act and that it was enacted, at least in part, "with the purpose to discriminate against students of color by chilling and suppressing Inclusive Speech aimed at enhancing the educational, social, and civic experiences of students of color and their families."  Am. Compl. ¶¶ 108-114, 184. Plaintiffs further point to the historical background of the Act, as well as specific statements of legislators that, according to Plaintiffs, demonstrate the legislators' discriminatory intent.  *See id.* ¶¶ 102-107, 120-126.  The State Defendants dispute that the Act prohibits what Plaintiffs identify as "Inclusive Speech," and they contend that the legislators' statements support a finding of anti-discriminatory, not discriminatory, intent.  *See* State Defs.' Mot. JOP at 5-6.  The State Defendants further argue that the intent of the legislature as a whole cannot be inferred from the historical background or the individual legislators' statements, and they dispute the inferences Plaintiffs draw from the Act's procedural background.  *See id.* at 7-9.  Ultimately, however, such arguments are premised upon factual disputes and do not undermine the plausibility of Plaintiffs' well-pled allegations. Accepting those allegations as true, Plaintiffs have alleged facts from which it can be

reasonably inferred that the Act was passed "at least in part because of" a discriminatory purpose or intent. *Navajo Nation*, 975 F.2d at 744 (emphasis omitted).

### C. Defendant EPS' Motion to Dismiss

Defendant Edmond Public Schools is the third-largest school district in Oklahoma and is subject to the requirements of the Act. Am. Compl. ¶ 27. Plaintiffs assert the following unique claims against EPS: (1) the Act, as applied by EPS, is unconstitutionally vague in violation of the Fourteenth Amendment; (2) the Act, as applied by EPS, violates the Equal Protection Clause of the Fourteenth Amendment. *See id.* ¶¶ 156-170, 177-189.

As to each of Plaintiffs' Fourteenth Amendment claims, Defendant EPS contends that Plaintiffs' allegations are insufficient to state a claim because Plaintiffs fail to allege "any unlawful conduct" on the part of EPS or that EPS "is violating the constitutional or statutory rights of any Plaintiff." Def. EPS's Mot. to Dismiss at 12.

A local governmental entity such as EPS may be sued directly under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). Thus, to establish a claim against Defendant EPS, Plaintiffs must plead facts plausibly showing: (1) the existence of a policy or custom attributable to EPS; and (2) "an affirmative or direct causal link between [EPS'] adoption or implementation of [that] policy [or custom] and a deprivation of federally protected rights." *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010) (internal quotation marks omitted); *see also Walker v. Wegener*, No. 11-CV-

03238, 2012 WL 4359365, at *10 (D. Colo. Aug. 30, 2012) (R. & R.), *adopted*, 2012 WL 4355621 (D. Colo. Sept. 24, 2012).

Plaintiffs take issue with four policies allegedly adopted by Defendant EPS following the Act's enactment.  First, EPS issued an interpretative guidance document relating to the Act.  The Guidance Document lists section 24-157(B)(1)'s prohibited concepts and provides commentary on the scope of each prohibition.  *See* Am. Compl. ¶ 66; *id.* Ex. 1 (Doc. No. 50-1) (the "Guidance Document").  Second, EPS prohibited teachers from using the terms "diversity" and "white privilege."  Am. Compl. ¶ 67.  Third, EPS removed certain books from its reading list and curriculum.  *Id.*  Finally, EPS discontinued offering its "Diversity Module" training to teachers.  *Id.* ¶ 68.

Accepting Plaintiffs' allegations as true, the Court finds that Plaintiffs have sufficiently identified specific policies whose implementation or execution is attributable to Defendant EPS.  *See Dodds*, 614 F.3d at 1202; *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) ("A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision.").

Plaintiffs fall short, though, in alleging an "affirmative" or "direct causal" link between those policies and any deprivation of their Fourteenth Amendment rights.  *Dodds*, 614 F.3d at 1202; *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997) ("Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights."

(emphasis omitted)).  A law violates due process guarantees if it "fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015).  And "[t]he Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike," as equal-protection jurisprudence is generally "concerned with governmental action that disproportionately burdens certain classes of citizens."  *A.M. v. Holmes*, 830 F.3d 1123, 1166 (10th Cir. 2016) (internal quotation marks omitted). Plaintiffs suggest that Defendant EPS' Guidance Document "chill[s] [educators] in their ability to provide students with anything but the most ambiguous answers to their questions."  Am. Compl. ¶ 66.  Plaintiffs also allege that EPS student A.A., a member of Plaintiff NAACP-Oklahoma, has "lost access to texts by Black and women authors that explicitly discuss racial and gender relations."  *Id.* ¶ 69.  Finally, Plaintiffs allege that removing these texts from the school's reading list "is a detriment to the students' social, cognitive, and emotional development."  *Id.*  These allegations do not plausibly demonstrate that EPS' policies are unconstitutionally vague or violative of equal protection.

Further, to the extent that Plaintiffs premise their claim for liability on the allegedly unconstitutional nature of the Act, compliance with this state statute "do[es] not constitute [an EPS] policy for the purposes of § 1983 claim municipal liability."  *Walker*, 2012 WL 4359365, at *10 ("Mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability." (internal quotation marks omitted)); *see also Brown*, 520 U.S.

at 405, 415 (explaining that a municipality must be the "moving force" behind the alleged injury and should not "be held liable for an injury that it did not cause").

For these reasons, the Court finds that Plaintiffs' Amended Complaint fails to state a Fourteenth Amendment claim against EPS upon which relief can be granted. The Court need not reach EPS' additional arguments for dismissal.

CONCLUSION

IT IS THEREFORE ORDERED:

- The Court GRANTS IN PART, DENIES IN PART, and RESERVES RULING IN PART as to the University Defendants' Motion to Dismiss (Doc. No. 51). Specifically:

    o Plaintiffs' claims against the University of Oklahoma Board of Regents are DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(6);

    o Plaintiffs' First Amendment and Fourteenth Amendment vagueness claims against the members of the University of Oklahoma Board of Regents in their official capacities challenging the first sentence of title 70, section 24-157(A)(1) of the Oklahoma Statutes are DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(1);

    o The Court RESERVES RULING on Plaintiffs' First Amendment claims and Fourteenth Amendment vagueness claims against the members of the University of Oklahoma Board of Regents in their official capacities challenging the second sentence of title 70, section 24-157(A)(1) of the Oklahoma Statutes, pending certification of questions of law and a response from the Oklahoma Supreme Court; and

    o Plaintiffs' Fourteenth Amendment equal protection claims shall remain pending.

- The Court GRANTS IN PART, DENIES IN PART, and RESERVES RULING IN PART as to the State Defendants' Motion for Judgment on the Pleadings (Doc. No.

106). Specifically, as to Plaintiffs' claims against Governor Stitt, Attorney General Drummond, Superintendent Walters, the members of the Oklahoma State Board of Education, and the Oklahoma State Regents for Higher Education, all in their official capacities:

- o Plaintiffs' First Amendment and Fourteenth Amendment vagueness claims challenging the first sentence of title 70, section 24-157(A)(1) of the Oklahoma Statutes are DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(1);

- o Plaintiffs' First Amendment claims challenging the second sentence of title 70, section 24-157(A)(1) of the Oklahoma Statutes shall remain pending;

- o The request for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is GRANTED as to Plaintiffs' First Amendment claims challenging title 70, section 24-157(B)(1) of the Oklahoma Statutes. Judgment on these claims shall be entered at the conclusion of the litigation;

- o The Court RESERVES RULING on Plaintiffs' claims that the Act is unconstitutionally vague in violation of the Fourteenth Amendment, pending certification of questions of law and a response from the Oklahoma Supreme Court; and

- o Plaintiffs' Fourteenth Amendment equal protection claims shall remain pending.

- The Motion to Dismiss (Doc. No. 52) filed by Defendant Independent School District No. 12, Oklahoma County, Oklahoma, is GRANTED IN PART and DENIED AS MOOT IN PART, as follows:

- o The Motion is DENIED AS MOOT insofar as it seeks dismissal on the basis that the claims are brought against improper defendants; and

- o Plaintiffs' claims against Defendant Independent School District No. 12, Oklahoma County, Oklahoma, are DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(6).

IT IS FURTHER ORDERED that the Court shall separately direct the parties to submit proposed questions of state law relating to article XIII, section 8 of the Oklahoma Constitution for certification to the Oklahoma Supreme Court.

IT IS SO ORDERED this 14th day of June, 2024.

CHARLES B. GOODWIN
United States District Judge