IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BLACK EMERGENCY RESPONSE TEAM *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>GENTNER DRUMMOND, *et al.*,<br><br>*Defendants* 1–18. | No.  21-cv-1022-G |

## STATE DEFENDANTS' MOTION FOR CLARIFICATION
## AND BRIEF IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 26(b)(2)(C), State Defendants respectfully request that this Court clarify the appropriate scope of discovery regarding Plaintiffs' Fourteenth Amendment equal protection claim. In support, State Defendants would show the Court as follows:

1. On June 14, 2024, this Court dismissed or stayed all of Plaintiffs' claims, with the lone exception of their Fourteenth Amendment equal protection claim. Doc. 172 at 28–31. In doing so, the Court referred to certain "factual disputes" relating to the pending equal protection claim. *Id.* at 30.

2. Subsequently, on August 30, 2024, this Court entered its discovery scheduling order with respect to the litigation of Plaintiffs' equal protection claim. Doc. 210. Discovery on this claim is currently scheduled to conclude on or before May 1, 2025. *Id.* at 2.

3. On September 25, 2024, Plaintiffs served State Defendants with their First Requests for Production of Documents. *See* Exhibit 1. By their plain terms, Plaintiffs seek discovery, without limitation, of virtually every document and piece of correspondence relating

to the Oklahoma Legislature's drafting and enactment of HB 1775, as well as the subsequent three-year implementation and application thereof. The very first request, for example, demands—from the Governor, Attorney General, Superintendent of Public Education, all Board of Education members, and all Board of Regents members—"All Documents and Correspondence concerning HB 1775 or the Rules." Ex. 1, RFP 1. Plaintiffs, that is, appear to be seeking substantially the same breadth of discovery that they would be seeking if every claim were currently open to discovery. Any attempt to respond to Plaintiffs' requests would involve an immense amount of time and effort, *i.e.*, it would be highly burdensome.

4. On October 25, 2024, State Defendants served their responses and objections to the requests, informing Plaintiffs that such sweeping discovery is inconsistent with the relevancy and proportionality requirements outlined in Federal Rule of Civil Procedure 26(b)(1). *See* Exhibit 2. More particularly, little about Plaintiffs' requests for production appears tailored toward the resolution of the sole claim at issue: whether both houses of the Oklahoma Legislature enacted, and Oklahoma's Governor signed into law, HB 1775 with the purpose to invidiously discriminate in violation of the Equal Protection Clause of the Fourteenth Amendment.

5. State Defendants have made these objections in the good-faith belief that Plaintiffs' wide net far exceeds the proper scope of discovery contemplated by the Court in its scheduling order of August 30, 2024.

6. Disagreeing with State Defendants' articulated legal grounds for objecting to the sweeping requests, Plaintiffs persisted with broad requests in their November 15, 2024, response to the objections. *See* Exhibit 3. Indeed, in some ways Plaintiffs have broadened their

requests. In their own words, Plaintiffs' requests for documents "involving correspondence between and among State Defendants and Legislators relating to HB 1775, as well as other topics . . . fall within the proper scope of discovery . . . ." Ex. 3 at 3. And Plaintiffs clarified that, in their view, "State Defendants must produce a log noting the documents they have identified as responsive and identify the specific privilege they are invoking for that document." *Id.* at 4. Given that Plaintiffs have asked for all documents from the Attorney General "concerning HB 1775," they are effectively asking the Attorney General to log every single document and e-mail created by the Attorney General's Office as part of this litigation over the past four years. Plaintiffs' requested discovery is impermissibly expansive.

7. In moving for clarifications, State Defendants are guided by the Tenth Circuit's recent instruction that "the statements of a few legislators concerning their motives for voting for legislation is a reed too thin to support the invalidation of a statute." *Citizens for Const. Integrity v. United States*, 57 F.4th 750, 768 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 94 (2023); *see also, e.g.*, *Am. Trucking Ass'ns, Inc. v. Alviti*, 14 F.4th 76, 90 (1st Cir. 2021) ("To the extent that discriminatory intent is relevant, the probative value of the discovery sought by [plaintiffs] is further reduced by the inherent challenges of using evidence of individual lawmakers' motives to establish that the legislature as a whole enacted [the challenged law] with any particular purpose."). The Supreme Court has similarly warned that "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork." *United States v. O'Brien*, 391 U.S. 367, 384 (1968); *see also Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 689–90 (2021) ("The 'cat's paw' theory has no application to legislative bodies. . . . [T]he legislators who vote

3

to adopt a bill are not the agents of the bill's sponsor or proponents. Under our form of government, legislators have a duty to exercise their judgment and to represent their constituents. It is insulting to suggest that they are mere dupes or tools."); *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 778 (2019) (cautioning against the "speculation" inherent in "[t]rying to discern what motivates legislators individually and collectively") (opinion of Gorsuch, J.).

8. Consonant with these authorities, State Defendants take the position that the intent of the Legislature as a whole is most properly inferred from HB 1775's "statutory text," which itself "memorialize[s]" the intent of the entire deliberative body. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 457 (2002).

9. This Court's recitation of the *Arlington Heights* factors in its order does not change the analysis. *See* Doc. 172 at 29. *Arlington Heights* involved an as-applied challenge to a decision by a single town. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 254 (1977). Thus, the scope of discovery in that case was relatively small. Here, Plaintiffs have filed a facial challenge against a state law, and their initial discovery requests are extraordinarily broad. To give another example, Plaintiffs seek all communications between the Legislature and Defendants "concerning CRT, George Floyd, Black Lives Matter, Racial Justice Protests, DEI, or Historically Marginalized Students or Persons." Ex. 1, RFP 19. These broad fishing expeditions contradict *Arlington Heights*'s caution that such an inquiry must be "sensitive" and acknowledge the unique privileges owed to the Legislature. 429 U.S. at 266–68.

10. In its Order on June 14, 2024, this Court indicated, in regard to Plaintiffs' Equal Protection claim, that dismissal was not appropriate because "such arguments are premised upon factual disputes." Doc. 172 at 30. State Defendants respectfully ask for additional

explanation from the Court about what particular "factual disputes" need to be resolved that could actually affect the constitutional equal protection analysis for HB 1775 as a legal matter, and what methods are appropriate to resolve those factual disputes given the sensitive nature of legislative, investigative, and attorney materials combined with the Tenth Circuit's emphasis that statements from individual legislators cannot render a statute unconstitutional. A more comprehensive understanding of the Court's views on the existence of any underlying factual disputes will better allow State Defendants to respond—and, if necessary, object—to the ongoing discovery in this litigation. Mindful of the directive that "trying to peer inside legislators' skulls is too fraught an exercise," State Defendants respectfully submit that an express narrowing of the scope of discovery for Plaintiffs' equal protection claim is both appropriate and warranted in this case. *Va. Uranium*, 587 U.S. at 777. It simply cannot be the case that Plaintiffs can narrowly survive dismissal, based on certain "factual disputes," and then demand virtually every document each State Defendant has that is related in any way to HB 1775. This is almost the definition of a fishing expedition.

11.    The broad and burdensome fact discovery demanded by Plaintiffs appears to be in significant tension with, if not violative of, the scope of the Federal Rules of Civil Procedure and controlling Tenth Circuit precedent. To ensure that State Defendants comply with this Court's discovery scheduling order (and all other related Orders), State Defendants respectfully request that this Court clarify the appropriate scope of their discovery obligations concerning Plaintiffs' surviving equal protection claim. To the extent the Court is available, State Defendants request a hearing to discuss these issues.

Respectfully submitted,

*s/ Garry M. Gaskins, II*
GARRY M. GASKINS, II, OBA #20212
   *Solicitor General*
ZACH WEST, OBA #30768
   *Director of Special Litigation*
WILL FLANAGAN, OBA #35110
   *Assistant Solicitor General*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
William.Flanagan@oag.ok.gov
*Counsel for State Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 20, 2024, I electronically transmitted the foregoing document to the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

                                          *s/ Garry M. Gaskins, II*
                                          GARRY M. GASKINS, II