# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BLACK EMERGENCY RESPONSE TEAM, et al.,<br><br>                    *Plaintiffs*,<br><br>v.<br><br>GENTNER DRUMMOND, in his official capacity as Oklahoma Attorney General, et al.,<br><br>                    *Defendants*. | Case No. 5:21-CV-1022-G<br><br>Hon. Charles B. Goodwin |

## PLAINTIFFS' SUPPLEMENTAL BRIEFING CONCERNING THE OKLAHOMA STATE BOARD OF EDUCATION'S ENFORCEMENT OF H.B. 1775

State Defendants' Response to Plaintiffs' Notice to Court (Doc. 213) raises two concerns relevant to Plaintiffs' Motion for Preliminary Injunction and this Court's Order of Preliminary Injunction. First, State Defendants' Response fails to clarify which provisions of H.B. 1775 ("the Act") the Board enforced. The State's ambiguity regarding its enforcement of the Act hinders this Court's ability to ensure the Preliminary Injunction is properly followed. Second, State Defendants' Response demonstrates that the Oklahoma State Board of Education ("the Board") interprets the Act differently than this Court. This difference in interpretation is a stark example of Plaintiffs' concerns that the Act is vague because it demonstrates that the Act fails to provide "people of ordinary intelligence a reasonable opportunity to understand what conduct it [the Act] prohibits." *See Hill v. Colorado*, 530 U.S. 703, 732 (2002).

1

## FACTUAL BACKGROUND

In February 2023, the Board filed an Application to Revoke Teaching Certificate of Summer Boismier ("the Application"). *See* Doc. 211-1. The Application alleged that Ms. Boismier displayed a QR code in her classroom that linked to the Brooklyn Public Library's website to create a free library card. *Id.* at ¶¶ 9-28. This free library card granted access to three books the Board alleged violate H.B. 1775, its implementing rules, and other State Board of Education policies. *Id* at ¶¶ 40-64. On June 21, 2023, the Board held a hearing before a hearing officer to determine whether the allegations justified revoking Ms. Boismier's certificate. *See* Doc. 211-2. On August 8, 2023, the hearing officer recommended that the Board not revoke Ms. Boismier's certificate because "there was no evidence presented that Respondent [Ms. Boismier] used the three identified books . . . in class instruction or otherwise shared the books with students." *Id.* at 5.

On June 14, 2024, this Court preliminarily enjoined part of the Act that applies to K-12 teachers, such as Ms. Boismier. Doc. 173 at 29-30. The Court enjoined both the implementing verb "require" in Section B of the Act as well as subsections (c) and (d) in their entirety and issued its own interpretation of the implementing verb phrase "make part of a course" in Section B. *Id.* at 15, 29-30.

On August 22, 2024, the Board voted to revoke Ms. Boismier's teaching certificate.[1] *See* Docs. 211-3, 211-4. The Board did not release any written explanation of its decision

---

[1] Ms. Boismier is challenging the revocation of her teaching certificate in Oklahoma County District Court. *Boismier v. Oklahoma State Board of Education*, Okla. Cnty. Dist. Ct., Case No. CV-2024-2884.

to depart from the hearing officer's recommendation, prompting Plaintiffs to file a Notice with this Court out of concern that the Board may have violated this Court's injunction. *See* Doc. 211. On September 5, 2024, this Court directed the Board to file a written response to Plaintiffs' Notice, including a copy of "the revocation order, a copy of the relevant minutes of the August 22, 2024 Board meeting, and any other documents necessary for the Court to consider." Doc. 212. The State Defendants responded on September 12, 2024, providing the Court with the Board's written revocation order that contained one footnote referencing this Court's injunction.  Doc. 213.

## I.    The Revocation Order provided by State Defendants fails to clarify whether the Board violated this Court's injunction.

As Plaintiffs explained in their Notice to Court, the Application, Doc. 211-1, explicitly relied on a now-enjoined provision of the Act. Doc. 211 at 2 (explaining that the Application to revoke Ms. Boismier's certificate alleged, in part, a violation of Section (1)(B)(1)(d), a provision this Court enjoined (Doc. 173 at 29-30)). In the recent Order to Revoke ("the Revocation Order"), Doc. 213-1, the Board continues to insist that the Act supports its revocation of Ms. Boismier's certificate but fails to clarify how it relies on the Act or whether the Board is enforcing an enjoined provision of the Act. Doc. 213-1 at 6 ¶ 9 ("Boismier willfully violated OAC 210:10-29-2, OAC 210:20-29-3, and OAC 210:20-29-4 by circumventing district policy and 70 O.S. § 24-157 (then HB 1775)."). The Revocation Order did not cite any specific subsections of the Act, omitting the necessary information that would allow the Court to ascertain whether the Board relied on enjoined

subsections of the Act. This ambiguity leaves Oklahoma teachers with only one safe takeaway: any and all provisions of the law can be broadly levied against them.

The Board's only attempt at addressing this Court's injunction comes in a paper-thin footnote on page 6 of the Revocation Order. In full, the footnote reads:

> "Nothing in this Order is intended to rely on provisions of 70 O.S. § 24-157 (HB 1775) that are subject to or contrary to the <u>Order on Preliminary Injunction</u> issued in *Black Emergency Response Team, et al. v. Gentner Drummond, et al.*, Case No. 21-CV-1022-G in the Western District Court of Oklahoma, June 14, 2024."

The footnote provided no indication of which provisions of the Act the Revocation Order relied. It even fell short of denying that the Board's actions violate this Court's Order of Preliminary Injunction. The Board says that "Nothing is this Order is *intended* to rely" on enjoined provisions (emphasis added). Referencing a general intent to abide by this Court's injunction is not sufficient to ensure that the Board has in fact complied with the injunction. By failing to specify which provisions of the Act the Board affirmatively relied on, the Board provides no clarity to teachers or the Court of how it is interpreting and delineating the provisions of the law. Assuring Plaintiffs and the Court that the Board did not violate this Court's Preliminary Injunction when it revoked Ms. Boismier's certificate requires more than mere say so.

Put simply, the Board revoked Ms. Boismier's certificate because she posted a QR code to register for a library card which granted access to books, which the Board believed violated the Act and other rules of professional conduct. In the initial Application, the Board explicitly relied on now-enjoined provisions of the Act. When this Court asked the

Board to produce an Order explaining whether it violated the injunction, the Board responded with only a one-sentence disclaimer in a footnote.

## II.    The Board is interpreting the Act differently than the Court, which supports the Plaintiffs' claim that the Act is vague.

If the Board applied this Court's interpretation of "make part of a course," it would have foreclosed any enforcement action against Ms. Boismier for the facts alleged. Since this Court enjoined the word "require" on vagueness grounds, the only enforceable verb phrase in Section B of the Act is "make part of a course." Doc. 173 at 29-30. The Board's failure to identify any specific provisions of the Act makes it difficult to understand how it is enforcing the Act. Assuming, however, that the Board did not intend to rely on the enjoined "require" provision, its interpretation under the remaining "make part of a course" provision continues to present serious vagueness concerns. In its Preliminary Injunction, this Court interpreted "make part of a course" in Section 1(B)(1) to mean "directly endorsing, promoting, or inculcating any concept as a normative value." Doc. 173 at 15.[2] To promote one of the banned concepts as a normative value is to teach students that a banned concept is a "principle of right action", and that the concept should "guide, control, or regulate proper and acceptable behavior."[3] The facts and allegations in the Application,

_____

[2] Plaintiffs respectfully disagree with the Court's interpretation of "make part of a course" and have appealed that decision. *See* Doc. 187 (Plaintiffs' Notice of Appeal). However, even relying on the Court's interpretation of this provision, Plaintiffs assert that Defendants are enforcing H.B. 1775 more broadly than the Court's interpretation reasonably allows.

[3] *Norm*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/norm (last accessed on Dec. 11, 2024) (defining norm as "an authoritative standard" and "a principle of right action binding upon the members of a group and serving to guide, control, or regulate proper and acceptable behavior").

Doc. 211-1, and the Revocation Order, Doc. 213-1, do not align with this Court's interpretation of "make part of a course." As Plaintiffs explained in their Notice to Court, the Application hinged on Ms. Boismier's alleged posting of a QR code that linked to registration for a Brooklyn Public Library card. Doc. 211-1 at ¶ 14. Count Two of the Application alleged that Ms. Boismier "encouraged students to read the book *Stamped*," *id.* at ¶ 60, referring to one of the listed "[b]ooks at [i]ssue" available at the Brooklyn Public Library, *Stamped: Racism, Antiracism, and You* by Jason Reynolds and Ibram X Kendi. *Id.* at ¶ 28.

The Revocation Order did not retract any of these initial findings of fact and conclusions of law from the Application. Rather, it simply restates the same points more generally. The Revocation Order insists that Ms. Boismier "intended to direct her students to electronic books not deemed appropriate by the District" and "intended to entice her students to seek out and read the books." Doc. 213-1 at 3-4. Neither of those allegations rises to the level of endorsing values from the books as truth by which the students should live their lives, and the Board offered no other evidence that Ms. Boismier endorsed these materials. The Board not only fails to allege that Ms. Boismier normatively endorsed any of the books but also fails to provide any facts that the books were part of classroom instruction. *Cf.* Doc. 173 at 15.

This rift between the Court's interpretation and the Board's emphasizes the Act's vagueness. Plaintiffs have argued from the outset that the Act's language is too vague to communicate to Oklahomans what the Act does and does not prohibit. *See* Doc. 50 ¶¶ 156-163. So much so that it violates the Fourteenth Amendment's Due Process Clause. Doc. 27

6

at 12 (*citing Hill v. Colorado*, 530 U.S. 703, 732 (2002) (holding that a law is impermissibly vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits"). This disagreement between the Court and the Board shows that the Act's text does not clearly communicate what it does and does not prohibit. If a law is written in such a way that courts and state agencies charged with the law's enforcement cannot consistently discern its meaning, there is no way the educator or school administrator trying to comply with the law will be able to accurately interpret it. Such an inability to understand and comply with the law is precisely what the Due Process Clause forbids.

## CONCLUSION

Plaintiffs note that this enforcement action further demonstrates the vagueness of the Act and its ongoing harm to Oklahoma teachers and students as they endure continually increasing confusion surrounding the Act. First, the Board's general allegations and paper-thin explanations prove that the Board cannot or will not clearly explain how it interprets the law. Second, the fact that the Board's interpretation contradicts this Court's demonstrates that the Act fails to clearly apprise courts and state agencies, let alone the general public, of what it means. The Board's failure to explain itself exacerbates the confusion caused by the Act's text with a similarly confusing enforcement action, making it even more difficult for Oklahoma educators to know what the law does and does not prohibit.

Dated: December 11, 2024

Maya Brodziak
Zakiya Lewis
Sumayya Saleh
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
  UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005


Douglas Koff
Julia Beskin
Kevin S. Johns
Sara Solfanelli
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022

Respectfully submitted,

*/s/ Adam H. Hines*
Adam H. Hines
Megan Lambert
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION of OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
ahines@acluok.org
mlambert@acluok.org


Emerson Sykes
Leah Watson
Sarah Hinger
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004


*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2024, I electronically filed the foregoing document with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

Respectfully submitted,

*/s/ Adam H. Hines*
Adam H. Hines
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
ahines@acluok.org

*Counsel for Plaintiffs*

9