# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

BLACK EMERGENCY RESPONSE
TEAM, *et al*.,

*Plaintiffs*,

v.

GENTNER DRUMMOND, in his official
capacity as Oklahoma Attorney General, *et
al*.,

*Defendants*.

Case No. 5:21-CV-1022-G

Hon. Charles B. Goodwin

## PLAINTIFFS' MOTION TO COMPEL STATE DEFENDANTS TO COMPLY WITH PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION AND FOR ENTRY OF ESI ORDER WITH INCORPORATED MEMORANDUM OF LAW

Dated: January 10, 2025

Maya Brodziak
Sumayya Saleh
Zakiya Lewis
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
  UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005

Douglas Koff
Julia Beskin
Sara Solfanelli
Kevin Scot Johns
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022

Megan Lambert
Adam Hines
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
mlambert@acluok.org
ahines@acluok.org

Emerson Sykes
Leah Watson
Sarah Hinger
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   BACKGROUND AND PROCEDURAL HISTORY ......................................... 2

     A.    Plaintiffs File Their Complaint and the Court Finds that Plaintiffs' Equal Protection Claims are Adequately Pled. ............................................ 2

     B.    The Court Denies Defendants' Request to Stay Discovery and Sets a Pre-Trial Schedule. ................................................................................... 3

     C.    Plaintiffs Serve Discovery Requests on State Defendants and State Defendants Refuse to Produce a Single Document. ..................................... 4

     D.    Plaintiffs and State Defendants Meet and Confer and This Court Denies State Defendants' Motion to Clarify. ............................................................ 5

     E.    The Parties Reach Impasse. ........................................................................ 6

III.  LEGAL STANDARD .................................................................................... 6

IV.  ARGUMENT ................................................................................................. 7

     A.    Plaintiffs' Requests Each Seek Documents That are Relevant to Their Equal Protection Claims ............................................................................. 7

           1.    Requests Relevant To H.B. 1775's Disparate Impact (Requests 1, 4, 7-8, 10-17, and 29) ..................................................................... 8

           2.    Requests Seeking Documents Related to the Drafting and Enactment of H.B. 1775 (Requests 1-3, 5, 6, 9, 18, 19 and 27-28): .............................................................................................. 11

           3.    Requests Related to H.B. 1775's Legislative History (Requests 8 and 9): ............................................................................................. 14

     B.    Plaintiffs' Requests are Proportional to the Needs of the Case. ................. 16

     C.    State Defendants' "Fundamental Objection" is Improper. ......................... 18

     D.    State Defendants Must Provide a Privilege Log. ........................................ 20

     E.    This Court Should Adopt Plaintiffs' Proposed ESI Protocol. ..................... 21

V.    CONCLUSION ....................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Arce v. Douglas*,
    793 F.3d 968 (9th Cir. 2015) ................................................................ 15

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. of Mont.*,
    408 F.3d 1142 (9th Cir. 2005) .............................................................. 20

*Dowell by Dowell v. Bd. of Educ. of Okla. City Pub. Schs.*,
    8 F.3d 1501 (10th Cir. 1993) .................................................................. 7

*Fowler v. Stitt*,
    104 F.4th 770 (10th Cir. 2024) ............................................................. 16

*Helie v. Indep. Sch. Dist. No. 93 of Pottawatomie Cnty.*,
    No. CIV-23-473-R, 2024 WL 4193910 (W.D. Okla. Sept. 13, 2024).................. 20, 21

*Hunt v. Cromartie*,
    526 U.S. 541 (1999)................................................................................ 8

*Kunneman Props. LLC v. Marathon Oil Co.*,
    No. 17-CV-456-GKF-JFJ, 2019 WL 5188355 (N.D. Okla. Oct. 15,
    2019) ............................................................................................... 6, 17

*LKQ Corp. v. Kia Motors Am., Inc.*,
    345 F.R.D. 152 (N.D. Ill. 2023)............................................................ 21

*Mancia v. Mayflower Textile Servs. Co.*,
    253 F.R.D. 354 (D. Md. 2008)............................................................... 19

*Navajo Nation v. New Mexico*,
    975 F.2d 741 (10th Cir. 1992) ....................................................... 3, 7, 16

*Perez v. El Tequila LLC*,
    No. 12-CV-588-JED-PJC, 2014 WL 5341766 (N.D. Okla. Oct. 20,
    2014), *objections overruled*, 2014 WL 12652310 (N.D. Okla. Nov. 18,
    2014) ................................................................................................. 18

*SECSYS, LLC v. Vigil*,
    666 F.3d 678 (10th Cir. 2012) ................................................................ 8

*Shelby v. Nyhus*,
    No. CIV-16-432-SLP, 2018 WL 8345052 (W.D. Okla. Aug. 8, 2018) ..................... 17

*In re StubHub Refund Litig.*,
 No. 20-md-02951-HSG (TSH), 2023 WL 3092972 (N.D. Cal. Apr. 25,
 2023) ................................................................................................................. 22

*In re Tex. Brine Co.*,
 879 F.3d 1224 (10th Cir. 2018) ......................................................................... 20

*Tran v. Sonic Indus. Servs., Inc.*,
 No. CIV-10-69-C., 2010 WL 5376348 (W.D. Okla. Dec. 21, 2010) .......................... 6

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
 429 U.S. 252 (1977) .................................................................................... *passim*

*Washington v. Davis*,
 426 U.S. 229 (1976) ...................................................................................... 7, 8

**Constitution**

U.S. CONST. amend. I ............................................................................................. 2

U.S. CONST. amend. XIV ........................................................................................ 2

**Statutes**

Okla. Stat. tit. 70, § 24-157 ("H.B. 1775") .................................................... *passim*

**Codes**

Okla. Admin. Code § 210:10-1-23 ........................................................................... 2

**Rules**

Fed. R. Civ. P. 1 ..................................................................................................... 7

Fed. R. Civ. P. 26(b) Committee Note (2015 amendment) ...................................... 17

Fed. R. Civ. P. 26(b)(1) ..................................................................................... 6, 16

Fed. R. Civ. P. 26(b)(5)(A) .................................................................................... 20

Fed. R. Civ. P. 26(g) ............................................................................................. 19

Fed. R. Civ. P. 33 .................................................................................................. 19

Fed. R. Civ. P. 34 ....................................................................................... 6, 19, 20

Fed. R. Civ. P. 34(b)(2)(B) .................................................................................... 18

iv

Fed. R. Civ. P. 34(b)(2)(C) ................................................................ 19

Fed. R. Civ. P. 34(b)(2)(C), Committee Note (2015 amendment) .................. 19

Fed. R. Civ. P. 37(a)(1) .................................................................... 6

Fed. R. Civ. P. 37(a)(3)(B)(iv) ............................................................ 6

Fed. R. Civ. P. 45(e)(2)(A) .......................................................... 20, 21

Oklahoma House Rule 8.21(c) ....................................................... 12, 14

**Other Authorities**

KOCO 5 News, *Ryan Walters answers questions regarding Tulsa Race
    Massacre education*, YOUTUBE (July 8, 2023),
    *https*://www.*youtube*.com/watch?v=gCrlgt_1djY .............................. 10

Okla. H.R. Rep. No. 50, 58th Leg., 1st Reg. Sess. (Apr. 29th, 2021,
    11:09:59–11:10:48), https://sg001-
    harmony.sliq.net/00283/Harmony/en/PowerBrowser/PowerBrowserV2/
    20240712/-1/30671 ............................................................... 13

*The Case for Cooperation*, 10 SEDONA CONF. J. 339 (2009) ..................... 18, 19

*The Sedona Principles, Third Edition: Best Practices, Recommendations &
    Principles for Addressing Electronic Document Production*, 19 SEDONA
    CONF. J. 1 (2018) ................................................................... 22

I.      **PRELIMINARY STATEMENT**

Plaintiffs Black Emergency Response Team (the "Plaintiffs" or "BERT"), *et al.*, move to compel State Defendants[1] to produce documents responsive to Plaintiffs' First Requests for Production (the "Requests").  Exhibit 1.

Plaintiffs bring this motion because the State Defendants have declined to provide *any* documents in response to the Requests, which seek discovery related to Plaintiffs' Equal Protection claims, for which this Court ordered discovery proceed—over the objection of State Defendants—on August 30, 2024.  Doc. 210.

After several meet and confers, State Defendants are standing on their blanket objection that the Requests seek information that is irrelevant and/or privileged, and are unduly burdensome, and are thus refusing to produce a single document.  As established below, Plaintiffs seek information that is patently relevant to their Equal Protection claims and proportionate, particularly in light of the crucial issues at stake.  Furthermore, despite relying on a blanket proportionality objection, the State Defendants have failed to substantiate their burden.  In addition, despite invoking numerous privileges, the State Defendants are refusing to provide a privilege log.  State Defendants have also refused to agree to *any* protocol governing the production format for Electronic Stored Information ("ESI") absent the Court's directive.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in this Court's June 14, 2024 Order.  Doc. 172 at 4. "University Defendants" also includes Kenneth S. Waits, who is currently a member of the Board.

With the parties at impasse, Plaintiffs respectfully request the Court (1) compel the production of the requested documents within 14 days of the issuance of this Court's order; (2) order State Defendants to produce a privilege log for any withheld documents seven days thereafter; and (3) enter Plaintiffs' proposed ESI Protocol, attached hereto, to which the University Defendants have also agreed.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Plaintiffs File Their Complaint and the Court Finds that Plaintiffs' Equal Protection Claims are Adequately Pled.

Plaintiffs filed their Complaint on October 19, 2021, challenging House Bill 1775 (codified as Okla. Stat. tit. 70, § 24-157 (2021)) ("H.B. 1775" or "the Act") and its implementing regulations (codified as Okla. Admin. Code § 210:10-1-23) (the "Rules") for violations of their rights under the First and Fourteenth Amendments.  Doc. 1.  Plaintiffs then moved for a preliminary injunction on October 29, 2021.  Doc. 27.  University and EPS Defendants moved to dismiss on November 23, 2021.  Docs. 51, 52.  State Defendants moved for judgment on the pleadings on January 25, 2023.[2]  Doc. 106.  On June 14, 2024, this Court allowed certain of Plaintiffs' claims to proceed, dismissed certain of Plaintiffs' claims, ordered certification of questions to the Oklahoma Supreme Court, and enjoined parts of the Act as likely to be unconstitutionally vague.  Docs. 172, 173.

Relevant to the present motion, Plaintiffs' Equal Protection claims allege that H.B. 1775 was drafted and enacted with a discriminatory purpose and therefore violates

---

[2] Also in January 2023, Plaintiffs moved for leave to conduct limited discovery.  Doc. 102. State Defendants opposed.  Doc. 107.  The Court denied Plaintiffs' motion.  Doc. 155.

Plaintiffs' Fourteenth Amendment right to Equal Protection as passed and implemented by State and University Defendants.[3]  Doc. 50 ¶¶ 177–189.  In its June 14, 2024 Order, this Court found that Plaintiffs had adequately pled their Equal Protection claims.  Doc. 172.  Specifically, this Court held, "Plaintiffs have alleged facts from which it can be reasonably inferred that the Act was passed 'at least in part because of' a discriminatory purpose or intent."  *Id.* at  30–31 (citing *Navajo Nation v. New Mexico.*, 975 F.2d 741, 744 (10th Cir. 1992)).

> **B.    The Court Denies Defendants' Request to Stay Discovery and Sets a Pre-Trial Schedule.**

In a separate order, also on June 14, 2024, this Court ordered that the parties submit, among other things, "[a]n agreed proposed schedule for discovery and pretrial litigation."  Doc. 174.  On July 12, 2024, Plaintiffs submitted a proposed scheduling order, Doc. 184-1, while State and University Defendants requested a stay of discovery until the Oklahoma Supreme Court's resolution of the certified questions, Doc. 183.  Plaintiffs opposed Defendants' request for a stay, noting that discovery would primarily focus on Plaintiffs' Equal Protection claims, which would not be affected by any certification decision.  Doc. 198.  On August 30, 2024, this Court determined that "it [was] appropriate for discovery to proceed on Plaintiffs' Fourteenth Amendment equal protection claims" and set deadlines "relevant to litigation of the equal protection claims."  Doc. 210 at 2.

---

[3] Plaintiffs NAACP-Oklahoma, SL, and AIM Indian Territory brought an Equal Protection claim against State Defendants.  Plaintiff NAACP-Oklahoma also brought an Equal Protection claim against University Defendants.  Doc. 50 ¶¶ 187, 188.

**C.      Plaintiffs Serve Discovery Requests on State Defendants and State Defendants Refuse to Produce a Single Document.**

On September 25, 2024, Plaintiffs served State Defendants with their Requests, seeking documents related to H.B. 1775's drafting, enactment, implementation, and enforcement.    Exhibit 1.    Plaintiffs sent State Defendants drafts of a proposed confidentiality order and ESI protocol on September 30, 2024.  University Defendants agreed to Plaintiffs' proposed ESI protocol on October 22, 2024.  After several follow-up requests from Plaintiffs, State Defendants finally provided their position that they would not agree to the proposed ESI Protocol, nor any ESI Protocol whatsoever, in the absence of a court order during a meet and confer on December 13, 2024 (the "December Meet and Confer").

On October 25, 2024, State Defendants served their Responses and Objections ("R&Os"), refusing to produce a single document.  Exhibit 2.  State Defendants invoked a self-styled "Fundamental Objection," a boilerplate objection touching on issues concerning relevance, proportionality, and privilege.  *Id.* at 2–4.  And, despite these oft-repeated[4] invocations of various privileges, including the "Judicial Privilege, Executive Privilege, Legislative Privilege, and/or Deliberative Process Privilege," State Defendants did not produce a privilege log, nor state whether they were withholding any responsive documents on the basis of any privilege or objection.

---

[4] State Defendants responded to twenty-two of Plaintiffs' twenty-nine Requests with their Fundamental Objection.

On November 15, 2024, Plaintiffs sent State Defendants a letter outlining the deficiencies in the R&Os and explaining how the Requests are probative of discriminatory intent and correspond to specific factors outlined in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977) and its progeny (the "*Arlington Heights* Factors").  Exhibit 3.

### D.    Plaintiffs and State Defendants Meet and Confer and This Court Denies State Defendants' Motion to Clarify.

Plaintiffs and State Defendants met and conferred on November 18, 2024 (the "November Meet and Confer").  State Defendants asserted that the scope of discovery should be limited to correspondence from legislators or the Governor explicitly stating why they voted for or against H.B. 1775.  Plaintiffs disagreed, and asserted that the Court had ordered discovery to move forward on Plaintiffs' Equal Protection claims (*see* Doc. 210) and that the scope of discovery for those claims extends to each *Arlington Heights* Factor.

Two days later, State Defendants filed their Motion to Clarify, in which they "take the position that the intent of the Legislature as a whole is most properly inferred from H.B. 1775's statutory text" and that "[t]his Court's recitation of the *Arlington Heights* factors in its order does not change the analysis."  Doc. 217 at 4 (internal quotation marks and citations omitted).

This Court denied State Defendants' Motion to Clarify on November 21, 2024.  Doc. 218.  The parties met again on the December Meet and Confer.

### E.    The Parties Reach Impasse.

After meeting and conferring twice, the parties have reached impasse on the following three issues: (1) whether Plaintiffs' Requests are relevant and proportional to the needs of the case; (2) whether State Defendants may invoke various privileges, in the absence of collecting and reviewing any documents, and without providing a privilege log by which Plaintiffs may evaluate such claims; and (3) whether this Court should enter Plaintiffs' proposed ESI protocol.

## III.   LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The factors that bear on proportionality are: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*; *see also Kunneman Props. LLC v. Marathon Oil Co.*, No. 17-CV-456-GKF-JFJ, 2019 WL 5188355, at *2 (N.D. Okla. Oct. 15, 2019).

A party "may move for an order compelling . . . discovery" if the party responding to that request "fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iv). The federal rules are broadly construed to favor discovery and "it is the court[']s duty to 'administer [the rules] to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Tran v. Sonic Indus. Servs., Inc.*, No. CIV-

10-69-C., 2010 WL 5376348, at *1 (W.D. Okla. Dec. 21, 2010) (alteration in original) (quoting Fed. R. Civ. P. 1).

## IV.    ARGUMENT

This Court should grant Plaintiffs' Motion to Compel because Plaintiffs' Requests seek documents that are relevant and proportional to the needs of the case. To the extent that any such documents are withheld on the basis of any privilege, State Defendants should produce a privilege log by which Plaintiffs and the Court can evaluate such claims. Additionally, the Court should enter Plaintiffs' proposed ESI protocol to facilitate the efficient exchange of discovery in this case.

### A.    Plaintiffs' Requests Each Seek Documents That are Relevant to Their Equal Protection Claims

Plaintiffs' Requests are within the proper scope of discovery because they seek documents related to the *Arlington Heights* Factors. In *Arlington Heights*, the Supreme Court identified a list of non-exhaustive factors for courts to consider as "subjects of proper inquiry in determining whether racially discriminatory intent existed." *Arlington Heights*, 429 U.S. at 268. These *Arlington Heights* Factors are: (i) the historical background and specific sequence of events leading to the decision; (ii) departures from the normal procedure and substantive norms; (iii) legislative history; and (iv) evidence that defendants' decision bears more heavily on one race than another (*i.e.*, disparate impact). *See Navajo Nation*, 975 F.2d at 743–44 (citing *Arlington Heights*, 429 U.S. at 267–68); *see also Dowell by Dowell v. Bd. of Educ. of Okla. City Pub. Schs.*, 8 F.3d 1501, 1518 (10th Cir. 1993). Courts evaluate these factors based on "the totality of the relevant facts," *see*

*Washington v. Davis*, 426 U.S. 229, 242 (1976), and no one factor is dispositive, *see Arlington Heights*, 429 U.S. at 268.

Evaluating whether H.B. 1775 was passed by the Oklahoma legislature with discriminatory intent is an "inherently complex endeavor" that requires this Court "to perform a 'sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999) (quoting *Arlington Heights*, 429 U.S. at 266). And the Tenth Circuit has noted that courts must often examine circumstantial evidence regarding intent, as "few are anxious to own up to a discriminatory intent and direct evidence of discrimination is hard to come by. Instead, courts often must draw inferences about a law's intent or purpose from circumstantial evidence." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 686 (10th Cir. 2012) (opinion of Gorsuch, J., with Brorby, J., and Murphy, J. concurring in the result). Given these difficulties in evaluating whether the legislature acted with discriminatory intent, the *Arlington Heights* Factors seek to elicit the types of information that aid courts in evaluating challenged legislation.

### 1.  Requests Relevant To H.B. 1775's Disparate Impact (Requests 1, 4, 7-8, 10-17, and 29)

State Defendants are in charge of enforcing H.B. 1775 in all Oklahoma public schools, and Plaintiffs' Requests 1, 4, 7-8, 10-17, and 29 are relevant because each seeks documents relating to whether H.B. 1775's enforcement "bears more heavily on one race than another" or has a disparate impact on students and educators of color. *Arlington Heights*, 429 U.S. at 266 (quoting *Washington*, 426 U.S. at 242).

These Requests seek:

- **No. 1**: Documents and correspondence concerning H.B. 1775 or the Rules.

- **No. 4**: Documents and correspondence between State Defendants and legislators regarding the implementation of H.B. 1775.

- **No. 7**: Documents and correspondence between State Defendants and other defendants regarding the implementation of H.B. 1775.

- **No. 8**: Public statements made by State Defendants regarding H.B. 1775.[5]

- **No. 10**: Documents and correspondence relating to any policies, procedures, rules, guidance, trainings, or presentations regarding H.B. 1775.

- **No. 11**: Documents and correspondence relating to any formal or informal complaints made under H.B. 1775 or the Rules.

- **No. 12**: Documents and correspondence relating to any response to any formal or informal complaint concerning H.B. 1775.

- **No. 13**: Reports or other documents developed by the State Department of Education pursuant to Section (i) of the Rules.

- **No. 14**: Documents and correspondence related to the Oklahoma State Board of Education (the "SBE")'s decision to downgrade Tulsa Public Schools' accreditation status to "Accredited with Warning" on July 28, 2022.

- **No. 15**: Documents and correspondence related to the SBE's decision to downgrade Mustang Public Schools' accreditation status to "Accredited with Warning" on July 28, 2022.

- **No. 16**: Documents and correspondence related to proposed or actual changes made to the curriculum or course list of any Oklahoma public school pertaining to topics purportedly implicated by H.B. 1775, such as CRT, George Floyd, the Black Lives Matter movement, 2020 racial justice protests, DEI, or historically marginalized students or persons.

- **No. 17**: Documents and Correspondence concerning any works of literature removed from the curriculum of any Oklahoma public school pertaining to topics purportedly implicated by H.B. 1775, such as CRT, George Floyd, the Black Lives

---

[5] Plaintiffs plan to supplement Request No. 8 to seek *documents and correspondence relating to* public statements made by State Defendants regarding H.B. 1775. The omission of the "documents and correspondence relating to" language in Plaintiffs' initial Requests was inadvertent.

Matter movement, 2020 racial justice protests, DEI, or historically marginalized students or persons.

- **No. 29**: Notes, memoranda, research, written analysis, white papers, reports, or opinions relied upon, created by, or reviewed by State Defendants regarding H.B. 1775's implementation.

Documents relating to State Defendants' implementation of H.B. 1775, such as correspondence with legislators and other Defendants and memoranda or opinions relating to the same, such as Request Nos. 4, 7, and 29, are directly relevant to the unique harms H.B. 1775 has on students and educators of color.

Plaintiffs also request the public statements of State Defendants regarding H.B. 1775. Exhibit 1 (Request No. 8). The statements of those charged with enforcing H.B. 1775 shine light on whether the law has a disparate impact on students and educators of color and are therefore relevant and discoverable. For example, Ryan Walters, the Oklahoma Superintendent of Public Education and President of the SBE, stated that the Tulsa Race Massacre should be taught in public schools without mentioning race. *See* KOCO 5 News, *Ryan Walters answers questions regarding Tulsa Race Massacre education*, YOUTUBE (July 8, 2023), https://www.youtube.com/watch?v=gCrlgt_1djY. Statements such as these are relevant to H.B. 1775's disparate impact on students and educators of color. Plaintiffs allege that this kind of censorship—erasing the role of race from what students are taught—disproportionately injures students and educators of color because it restricts their perspectives, ends up removing books by Black authors, reduces the engagement of these students in class discussions, blocks the ability of educators and

students to break down negative stereotypes about them, and ultimately exacerbates racial disparities in educational outcomes.  Doc. 50 ¶¶ 147–49; 154–55.

These Requests also relate to State Defendants' enforcement of H.B. 1775, including: policies, procedures, rules, guidance, trainings, or presentations regarding the Act (Request No. 10); formal or informal complaints regarding the Act (Nos. 11-13); documents relating to specific enforcement actions taken pursuant to the Act (Nos. 14-15); and documents related to proposed or actual changes to the curriculum of any Oklahoma public schools pertaining to topics purportedly implicated by H.B. 1775 (Nos. 16-17). Plaintiffs allege that, as a result of H.B. 1775, "[d]istrict administrators have struck texts by Black and women authors from their reading lists, including *To Kill a Mockingbird*, *Their Eyes Were Watching God*, *I Know Why the Caged Bird Sings*, *Narrative of the Life of Frederick Douglass*, and *A Raisin in the Sun*, while leaving in place texts by White and male authors."  Doc. 50 ¶ 3.  Documents related to curricular changes such as these are plainly relevant as to whether the Act bears differently on different races or disparately impacts students of color, *see Arlington Heights*, 429 U.S. at 266, because research has shown that the removal of these types of materials can affect graduation rates, school attendance, and standardized test scores for these students.  *See e.g.*, Doc. 50 ¶¶ 146–51.

## 2.    Requests Seeking Documents Related to the Drafting and Enactment of H.B. 1775 (Requests 1-3, 5, 6, 9, 18, 19 and 27-28):

Plaintiffs' Requests 1-3, 5-6, 9, 18-19, and 27-28 all seek documents related to the drafting and enactment of H.B. 1775, as well as the historical backdrop and specific sequence of events leading to H.B. 1775's enactment.  These Requests are relevant to of

the following *Arlington Heights* Factors: (i) the historical background and specific sequence of events leading to the decision; (ii) departures from the normal procedure and substantive norms; and (iii) the legislative history. *Arlington Heights*, 429 U.S. at 267–68.

These Requests seek:

- **No. 1**: Documents and correspondence concerning H.B. 1775 or the Rules.

- **No. 2**: Documents and correspondence between State Defendants and legislators regarding the drafting of H.B. 1775.

- **No. 3**: Documents and correspondence between State Defendants and legislators regarding the enactment of H.B. 1775.

- **No. 5**: Documents and correspondence between State Defendants and other defendants regarding the drafting of H.B. 1775.

- **No. 6**: Documents and correspondence between State Defendants and other defendants regarding the enactment of H.B. 1775.

- **No 9**: Documents and correspondence relating to public statements made by any legislator concerning H.B. 1775.

- **No. 18**: Documents and correspondence concerning the decision to suspend Oklahoma House Rule 8.21(c) in connection with the enactment of H.B. 1775.

- **No. 19**: Documents and correspondence concerning CRT, George Floyd, Black Lives Matter, Racial Justice Protests, DEI, or Historically Marginalized Students or Persons.

- **No. 27**: Notes, memoranda, research, written analysis, white papers, reports, or opinions relied upon, created by, or reviewed by State Defendants regarding H.B. 1775's drafting.

- **No: 28**: Notes, memoranda, research, written analysis, white papers, reports, or opinions relied upon, created by, or reviewed by State Defendants regarding H.B. 1775's enactment.

Plaintiffs seek documents regarding the historical background of the circumstances and decisions culminating in H.B. 1775's passage. For example, Plaintiffs request

documents and correspondence "concerning CRT, George Floyd, Black Lives Matter, Racial Justice Protests, DEI, or Historically Marginalized Students or Persons." Exhibit 1 (Request No. 19). This Request relates to H.B. 1775's historical background, as H.B. 1775 was drafted in the wake of the 2020 racial justice protests, with educators and students calling for an increase in inclusive speech. Doc. 50 § III(a). Against this backdrop, DEI and Black Lives Matter were frequently discussed during the floor debates for H.B. 1775, with these topics clearly affecting legislators voting on H.B. 1775—a bill that explicitly bans concepts relating to race. For example, House Representative Justin Humphrey, who spoke in favor of H.B. 1775, likened the Black Lives Matter movement to the Ku Klux Klan, and Representative Kevin West, the Act's primary sponsor in the Oklahoma House, agreed that the Black Lives Matter movement met the description of a terrorist group.[6]

Plaintiffs' Requests are also relevant to procedural and substantive departures from the legislative process. For example, Plaintiffs have requested correspondence between legislators and State Defendants relating to the drafting or enactment of H.B. 1775.[7] Request Nos. 2, 3. Correspondence relating to H.B. 1775's drafting and enactment would include communications concerning the Oklahoma legislature's decision to wholly-redraft

---

[6] See Okla. H.R. Rep. No. 50, 58th Leg., 1st Reg. Sess. (Apr. 29th, 2021, 11:09:59–11:10:48), https://sg001-harmony.sliq.net/00283/Harmony/en/PowerBrowser/PowerBrowserV2/20240712/-1/30671.

[7] At the December Meet and Confer, State Defendants noted that they had begun the process to determine if any documents between certain State Defendants and legislators exist. However, State Defendants did not commit to producing any such documents, and stood by their R&Os.

or "shuck" H.B. 1775 away from its original subject matter, change its authors, and pass the Act as an emergency measure while suspending the House's germaneness rule. Indeed, Plaintiffs have a Request specifically regarding the procedural irregularity of suspending Oklahoma House Rule 8.21(c). Request No. 18. Public statements and correspondence between legislators and State Defendants may also describe legislators' rationale for supporting or opposing H.B. 1775. As described in more detail below (*infra* § IV(A)(3)), such statements would be relevant to the legislature's motivation behind H.B. 1775, and thus any documents relating to the public statements of legislators, who repeatedly invoked and discussed topics of race, would be relevant to Plaintiffs' claims. Request No. 9.

Plaintiffs' Requests also seek "notes, memoranda, research, written analysis, white papers, reports, or opinions relied upon, created by, or reviewed by [State Defendants] regarding" the Act's drafting and enactment. Request Nos. 27, 28. Any such analysis or opinions created by the Governor or his office would clearly be relevant to the Governor's motivation for signing H.B. 1775 into law. Similar analysis by the Attorney General's office or by SBE members relating to H.B. 1775's drafting or enactment would also be relevant, as they would relate to H.B. 1775's irregular legislative process.

### 3. Requests Related to H.B. 1775's Legislative History (Requests 8 and 9):

Plaintiffs seek documents relating to statements made by State Defendants and legislators regarding H.B. 1775. Exhibit 1 (Request Nos. 8 and 9, respectively).

These Requests seek:

- **No. 8**: Public statements made by State Defendants regarding H.B. 1775.[8]

- **No. 9**: All Documents and Correspondence regarding public statements made by any legislator concerning H.B. 1775.

These Requests are relevant to H.B. 1775's legislative history, which "may be *highly relevant*" in determining invidious discriminatory purpose within the Equal Protection context, "especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *Arlington Heights*, 429 U.S. at 268 (emphasis added). And public statements regarding legislative intent are also relevant. *See, e.g.*, *Arce v. Douglas*, 793 F.3d 968, 978 (9th Cir. 2015) (finding legislators' racially-coded statements, when coupled with other circumstantial factors, raised an inference of racial motive). In fact, this Court itself referenced legislative statements in explaining that Plaintiffs' Equal Protection claims were well-pled. *See* Doc. 172 at 30 (supporting its finding because, *inter alia*, Plaintiffs had "point[ed] to the historical background of the Act, as well as *specific statements of legislators* that, according to Plaintiffs, demonstrate the legislators' discriminatory intent.") (emphasis added). Documents and correspondence relating to public legislative statements would further shine light into whether H.B. 1775 was drafted and enacted by the Oklahoma legislator with discriminatory intent.

Additionally, documents and correspondence relating to public statements of State Defendants are relevant. Request No. 8. State Defendants include the Governor of

---

[8] As referenced *supra* at n. 5, Plaintiffs plan to supplement Request No. 8 to seek *documents and correspondence relating to* public statements made by State Defendants regarding H.B. 1775.

Oklahoma, who signed H.B. 1775 into law, as well as SBE members, who promulgated emergency rules implementing H.B. 1775.  Statements from State Defendants concerning H.B. 1775 are relevant to the intentions of government decision makers who were charged with signing, implementing, and enforcing H.B. 1775.  *See Fowler v. Stitt*, 104 F.4th 770, 775, 787–88 (10th Cir. 2024) (relying on statements from Governor Stitt, over Defendant's objection, when holding Plaintiffs stated a claim that Executive Order 2021-24 violated Equal Protection); *Navajo Nation*, 975 F.2d at 744–45 (relying on "comments from a Department official" when affirming that New Mexico Human Services Department violated Equal Protection).  Documents and correspondence regarding the statements of government officials would similarly be relevant to State Defendants' decisions in signing, implementing, and enforcing H.B. 1775.

### B.     Plaintiffs' Requests are Proportional to the Needs of the Case.

Each of Fed. R. Civ. P. 26(b)(1)'s proportionality factors weighs in Plaintiffs' favor: (1) the issues at stake in this action—namely, ensuring Oklahoman students' and educators' constitutional rights to Equal Protection are not abrogated—are vitally important; (2) the amount in controversy weighs in the Plaintiffs' favor, given the value of the relief sought protecting such important rights; (3) Plaintiffs have no other means to access the requested information; (4) the resources of State Defendants, who are agents of the State, exceed those of the Plaintiffs, who are individuals and public interest organizations; (5) the requested information is important to resolve Plaintiffs' claims; and (6) the burden or expense of the proposed discovery does not outweigh its likely benefit.

For the reasons explained above, each of Plaintiffs' Requests seeks discovery that is both relevant and proportional to the needs of the case. State Defendants' refusal to produce a single document in response to *any* of Plaintiffs' Requests is *prima facie* unreasonable. State Defendants' boilerplate Fundamental Objection that Plaintiffs' Requests are not proportional to the needs of the case does not suffice. Exhibit 2; Doc. 217 at 2. "Rule 26's proportionality requirement is not 'intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional.'" *Kunneman Props. LLC*, 2019 WL 5188355, at *2 (quoting Fed. R. Civ. P. 26(b) Committee Note (2015 amendment)).[9]

Further, any valid concerns with burden can be ameliorated through collaboration between the parties on appropriate search parameters (*i.e.,* custodians, search terms and time parameters), which Plaintiffs have repeatedly offered, and remain committed, to do. Such joint negotiation of search terms and custodians is commonplace in complicated civil litigations and seeks to reduce the parties' burdens in discovery and ensure the appropriate administration of the same. *See, e.g.*, *Shelby v. Nyhus*, No. CIV-16-432-SLP, 2018 WL 8345052, at *8 (W.D. Okla. Aug. 8, 2018) (at the motion to compel stage and "[w]ith respect to electronic discovery searches," directing the parties to "jointly prepare a proposal

---

[9] At the November Meet and Confer, State Defendants noted that they had not yet run any searches for documents responsive to the Requests. During the December Meet and Confer, State Defendants stated they had begun the process of determining what, if any, communications exist between certain named defendants and legislators during the narrow window of time between H.B. 1775's introduction and passage. State Defendants noted they did not anticipate any burden or proportionality concerns with respect to these initial searches but made no promises to produce any documents, or that any such documents exist.

for crafting additional search terms to assist in the retrieval of pertinent documents."); *The Case for Cooperation*, 10 SEDONA CONF. J. 339, 344 (2009) ("working cooperatively with opposing counsel to identify a reasonable search protocol, rather than making boilerplate objections to the breadth of a requested protocol or unilaterally selecting the keywords used without disclosure to opposing counsel, may help avoid sanctions or allegations of intentional suppression.").

### C. State Defendants' "Fundamental Objection" is Improper.

State Defendants' Fundamental Objection[10] fails to state with specificity the grounds for State Defendants' objections, and thus does not comply with the Federal Rules of Civil Procedure, which require "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state *with specificity* the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B) (emphasis added). State Defendants' Fundamental Objection does just the opposite, as it provides one boilerplate objection in response to twenty-two of Plaintiffs' Requests, in contravention of Fed. R. Civ. P. 34(b)(2)(B)'s mandate that objections be made with specificity. As such, State Defendants objections are waived. *See Perez v. El Tequila LLC*, No. 12-CV-588-JED-PJC, 2014 WL 5341766, at *2 (N.D. Okla. Oct. 20, 2014), *objections overruled*, 2014 WL 12652310 (N.D. Okla. Nov. 18, 2014) ("broad boilerplate objections

---

[10] State Defendants assert in a footnote to their R&O's (*See* Ex. 2 at n. 1) that Plaintiffs' Requests do not include the predecessors of certain State Defendants (such as the predecessors of Attorney General Drummond and Superintendent Walters). This is incorrect as Plaintiffs' Requests define "You" and "Your" to include "predecessors." Exhibit 1.

are waived if they are not asserted with specificity and if no factual basis for the objection is provided.").[11]

Additionally, Fed. R. Civ. P. 34(b)(2)(C) states that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." The 2015 Advisory Committee notes for this rule expand that "[t]he producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection." *Id.* Committee Note (2015 amendment).

State Defendants' blanket Fundamental Objection does not state whether any responsive materials are being withheld in response to any of Plaintiffs' Requests. In fact, State Defendants represented at the November Meet and Confer that they had not even begun searching for any responsive documents to Plaintiffs' Requests. By objecting while refusing to begin the process of reviewing a single document, State Defendants not only failed to identify any responsive documents they are withholding, they frustrated the very purpose of submitting responses and objections. *See id.*

---

[11] S*ee also Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 359 (D. Md. 2008) ("the very act of making such boilerplate objections is *prima facie* evidence of a Rule 26(g) violation, because if the lawyer had paused, made a reasonable inquiry, and discovered facts that demonstrated the burdensomeness or excessive cost of the discovery request, he or she should have disclosed them in the objection, as both Rule 33 and 34 responses must state objections with particularity, on pain of waiver"); *The Case for Cooperation*, 10 SEDONA CONF. J. 339, 343 (2009) ("failure of counsel to evaluate whether a discovery request is reasonable and not unduly burdensome before making it, or objecting to requests with boilerplate rather than fact-based objections, can warrant sanctions that impair adjudication on the merits, such as deeming facts admitted or objections waived.").

**D.    State Defendants Must Provide a Privilege Log.**

State Defendants invoke various privileges in their Fundamental Objection, including the "Judicial Privilege, Executive Privilege, Legislative Privilege, and/or Deliberative Process Privilege," (Ex. 2 at 4), but such blanket and uninformed objections are premature and inappropriate.  Moreover, Defendants are refusing to provide a privilege log.

The Federal Rules instruct that, where otherwise discoverable information is withheld, it must be done so expressly and with a description sufficient for other parties to assess the claim.  *See* Fed. R. Civ. P. 26(b)(5)(A).  State Defendants ignore this rule, and instead offer a blanket, omnibus assertion of various privileges without providing a privilege log or any other description of the documents in their custody and control by which Plaintiffs and this Court might evaluate such claims.  This is plainly improper.  *See, e.g., In re Tex. Brine Co.*, 879 F.3d 1224, 1229–30 (10th Cir. 2018) ("Why Texas Brine believes it can assert a blanket claim of privilege over its communications . . . without complying with Fed. R. Civ. P. 45(e)(2)(A) or Fed. R. Civ. P. 26(b)(5)(A) is beyond us"); *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege.").

The recent Western District of Oklahoma decision in *Helie v. Independent School District No. 93 of Pottawatomie County*, No. CIV-23-473-R, 2024 WL 4193910 (W.D. Okla. Sept. 13, 2024) is instructive.  The court in that case considered a subpoena issued to a non-party State Senator, and noted that the legislative privilege "does not

indiscriminately protect all conduct performed by a legislator in the course of his duties." *Id.* at *5. *Helie* counsels further that "careful consideration of whether the conduct qualifies as a legislative act must precede application of the legislative privilege." *Id.* Having determined that the Senator had not adequately described the withheld documents, Judge Russell ordered the *Helie* parties to meet and confer to discuss whether (1) the subpoena at issue could be narrowed and (2) the Senator was still asserting legislative privilege in light of the court's order expounding its bounds. *Id.* at *6. If so, Judge Russell ordered that the Senator "'describe the nature of the withheld documents' in a manner that will enable the parties to assess the claim." *Id.* (quoting Fed. R. Civ. P. 45(e)(2)(A)(ii)). So too here, the Court should require State Defendants to produce a detailed privilege log if they insist on maintaining this objection.

### E.     This Court Should Adopt Plaintiffs' Proposed ESI Protocol.

Finally, State Defendants have refused to agree to any ESI protocol. Plaintiffs' proposed ESI Protocol (Exhibit 4) covers a host of issues relating to the production format of documents and establishes production standards for all of the parties. State Defendants have not identified any provision of the ESI Protocol with which they disagree; instead, State Defendants seem to object to the idea of an ESI protocol altogether. State Defendants stated that they view the ESI Protocol as aspirational or a general guideline to follow, but they are unwilling to bind themselves to the same document that Plaintiffs and University Defendants agreed to months ago, or any other ESI protocol.

ESI protocols are standard in complex civil litigations such as this one. *See LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 163 (N.D. Ill. 2023) ("ESI protocols are

common tools used in litigation to encourage collaboration between parties in determining search terms and ESI strategies to respond to discovery requests[.]").  Indeed, "[c]ourts encourage parties to work out things like ESI protocols and other procedures governing discovery" because "[w]ithout [discovery agreements], courts would have to rule on everything, and litigation would be even more expensive than it already is." *In re StubHub Refund Litig.*, No. 20-md-02951-HSG (TSH), 2023 WL 3092972, at *1 (N.D. Cal. Apr. 25, 2023); *see also The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, 71 (2018) (recognizing as Principle No. 3, that "[a]s soon as practicable, parties should confer and seek to reach agreement regarding the preservation and production of electronically stored information.").

State Defendants' refusal to agree to set parameters for the disclosure of ESI increases the chances for discovery disputes in the future and further evidences State Defendants' refusal to meaningfully participate in the discovery process.  To ensure the Parties have workable standards going forward and to decrease the need for court intervention, Plaintiffs respectfully request that this Court enter the proposed ESI protocol—whose terms (1) seek to reduce future disputes and streamline the discovery process, (2) have not specifically been objected to by State Defendants, (3) are agreeable to both Plaintiffs and University Defendants, and (4) should apply equally to each party in this action.

## V.    CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant their Motion to Compel and order: (1) State Defendants to produce documents responsive to the Requests within 14 days of the issuance of the Court's order; (2) State Defendants to produce a privilege log for any materials withheld on account of privilege seven days thereafter; and (3) entry of the Plaintiffs' proposed ESI protocol.

Dated: January 10, 2025

Maya Brodziak
Zakiya Lewis
Sumayya Saleh
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
  UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005


Douglas Koff
Julia Beskin
Kevin S. Johns
Sara Solfanelli
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022

Respectfully submitted,

*/s/ Megan Lambert*
Megan Lambert
Adam Hines
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
mlambert@acluok.org
ahines@acluok.org


Emerson Sykes
Leah Watson
Sarah Hinger
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004


*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2025, I electronically filed the foregoing document with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

Respectfully submitted,

*/s/ Megan Lambert*
Megan Lambert
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
mlambert@acluok.org

*Counsel for Plaintiffs*