## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

Black Emergency Response Team, et al.

Plaintiffs,

v.

Gentner Drummond in his official capacity as Oklahoma Attorney General, et al.,

Defendants.

Case No. 5:21-cv-1022-G

## UNIVERSITY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

Dated: February 11, 2025

M. Daniel Weitman, OBA #17412
Tina S. Ikpa, OBA #32193
University of Oklahoma
Office of Legal Counsel
660 Parrington Oval, Room 213
Norman, Oklahoma 73109
(405) 325-4124; (405) 325-7681 - Fax
dan.weitman@ou.edu
tsikpa@ou.edu

*Attorneys for University Defendants*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT AND AUTHORITIES ................................................................. 7

I.    LEGAL STANDARD ............................................................................... 7

II.   PLAINTIFFS' DISCOVERY REQUESTS ARE OVERLY BROAD, UNDULY
BURDENSOME, AND NOT PROPORTIONAL TO THE NEEDS OF THE CASE ... 9

   A.  Definition of "You" ............................................................................ 9

   B.  Request No. 1 ...................................................................................... 9

   C.  Request Nos. 2-4 .............................................................................. 11

   D.  Request Nos. 5-7 .............................................................................. 12

   E.  Request No. 8 .................................................................................... 14

   F.  Request No. 9 .................................................................................... 15

   G.  Request No. 10 .................................................................................. 15

   H.  Request Nos. 11-12 .......................................................................... 16

   I.  Request Nos. 14-15 ........................................................................... 18

   J.  Request No. 16 .................................................................................. 19

   K.  Request No. 17 .................................................................................. 19

   L.  Request Nos. 26-27 .......................................................................... 20

CONCLUSION ................................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*,
   538 U.S. 188, 194 (2003) ........................................................................... 11

*Gomez v. Martin Marietta Corp.*,
   50 F.3d 1511, 1519-20 (10th Cir. 1995) ...................................................... 7

*In re Cooper Tire & Rubber Co.*,
   568 F.3d 1180, 1193 (10th Cir. 2009) ......................................................... 7

*Koch v. Koch Indus., Inc.*,
   203 F.3d 1202, 1238 (10th Cir. 2000) ....................................................... 17

*Milliken v. Bradley*,
   418 U.S. 717, 783 (1974) ........................................................................... 11

*Murphy v. Deloitte & Touche Group Ins. Plan*,
   619 F.3d 1151, 1163 (10th Cir. 2010) ......................................................... 7

*Regan-Touhy v. Walgreen Co.*,
   526 F.3d 641, 649 (10th Cir. 2008) ........................................................... 20

*Village of Arlington Heights v. Metropolitan Housing Corp*,
   429 U.S. 252 (1977) ....................................................................... 11, 12, 19

*Washington v. Seattle Sch. Dist. No. 1*,
   458 U.S. 457, 480–81 (1982) .................................................................... 11

**Oklahoma Constitution & Statutes**

Okla. Const. art. XIII, § 8 ................................................................. 11, 18, 19

Okla. Stat. Ann. 70 § 1-106 ......................................................................... 18

**Oklahoma Cases**

*Board of Regents of the University of Oklahoma v. Baker*,
   1981 OK 160, ¶ 8, 638 P.2d 464, 466 ................................................. 11, 19

*Bonilla v. Gerlach*,
   No. 23-CV-1060-R, 2024 WL 4497114 (W.D. Okla. Oct. 15, 2024) ......................... 10

*Dotson v. Experian Info. Sols., Inc.*,
   No. 17-CV-575-D, 2019 WL 440588 (W.D. Okla. Feb. 4, 2019) ................................. 8

*Kunneman Properties LLC v. Marathon Oil Co.*,
   No. 17-CV-456-GKF-JFJ, 2019 WL 5188355 (N.D. Okla. Oct. 15, 2019) .................. 6

**Other Cases**

*Aikens v. Deluxe Fin. Servs., Inc.*,
   217 F.R.D. 533, 538 (D. Kan. 2003) ................................................... 10, 14, 16

*Coe v. Cross-Lines Ret. Ctr., Inc.*,
   342 F.R.D. 539, 545 (D. Kan. 2022) ........................................................... 7

*Gen. Elec. Capital Corp. v. Lear Corp.*,
   215 F.R.D. 637, 640 (D. Kan. 2003) ........................................................... 8

*Kennicott v. Sandia Corp.*,
   327 F.R.D. 454, 470 (D.N.M. 2018) ........................................................... 8

*Simpson v. University of Colo.*,
   220 F.R.D. 354, 356 (D. Colo. 2004) ........................................................... 8

*State Farm Mutual Auto. Ins. Co. v. Fayda*,
   No. 14-CV-9792-WHP-JCF, 2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015)). ................ 8

Defendants, John R. Brought, Robert Ross, Natalie Shirley, Eric Stevenson, Anita Holloway, Kenneth S. Waits, and Rick Nagel ("University Defendants"), respectfully request the Court deny Plaintiffs' Motion to Compel [Doc. 224] in its entirety.

## INTRODUCTION

All Plaintiffs have served discovery and bring this Motion to Compel Discovery, even though all but one of them, NAACP-OK, have disclaimed any active claims. [Exhibit 1, BERT's Responses and Objections to University Defendants' First Set of Discovery Requests, at p. 1 ("University Defendants' First Set of Discovery requests…are not relevant to any claim that Plaintiff BERT has brought against University Defendants. Discovery at this stage is limited to Equal Protection claims against State and University Defendants…. Plaintiff BERT has not brought an Equal Protection Claim against University Defendants."); Exhibit 2, AAUP-OU's Responses and Objections to University Defendants' First Set of Discovery Requests, at p. 1 (same).] Consequently, University Defendants could not produce any documents that would be relevant to the claims of any Plaintiffs other than NAACP-OK. To the extent that Plaintiffs other than NAACP-OK seek the production of any documents from University Defendants, their motion should be denied.

Plaintiffs have recited to this Court their characterization of discovery negotiations which have occurred. Plaintiffs have also attached documents which, they believe, support their position of reasonableness. University Defendants submit that this recitation and document attachment is inappropriate given that Plaintiffs have admitted that the Defendants negotiated in good faith. [Doc. 224, p. 8]. University Defendants believe that

it is the written document requests that this Court should be examining and not the parties' characterization of discovery negotiations. Having said the proceeding, Defendants feel compelled to address the true character of the discovery negotiations lest Plaintiffs' version goes unaddressed and is somehow deemed admitted.

Even though BERT disclaimed any equal protection claim against the University, it served its Requests for Production of Documents on September 25, 2024. [Exhibit 3, BERT's First Requests for Production of Documents to University Defendants.] University Defendants began identifying custodians with potentially discoverable information and determined search terms designed to identify documents and correspondence that address H.B. 1775. The IT department for University Defendants commenced the search using those parameters[1], an undertaking that took several days. Before counsel for University Defendants could begin reviewing the search results, they were notified by the IT department that there were more than 34 gigabytes[2] of data. [Exhibit 4, Email] Based on the file size of the returned documents, University Defendants recognized that preparing their responses and determining the scope of their objections to Plaintiffs' requests would take a considerable amount of time and engaged Plaintiffs about an extension of time to

---

[1] The search terms used by the University to identify documents potentially responsive to BERTS' are identified in Doc. 224-6 at page 34. The custodians originally searched included the named (as previous) regents and their office, the president and his office, the provost of the Norman campus and his office, the Dean and Provost of the Medical Campus and his office, the Office of Marketing and Communications, the deans of the colleges (discussed more fully below) and the chairs of each department and the Equal Opportunity Office and the Office of Access and Opportunity.

[2] While exact numbers vary, estimates of the number of pages of emails per gigabyte of data is in excess of 100,000 pages; Word files nearly 65,000 pages. See: Digital War Room: https://tinyurl.com/59ju5kdc (last accessed February 3, 2025).

serve their Responses and Objections. During a meet and confer held on October 22, 2024, **Plaintiffs were unwilling to agree to extend the deadline for written responses more than three days**. Knowing that a three-day extension would be just as helpful as no extension at all, University Defendants indicated that they would comply with the original deadline.

In the interest of responding with more than boilerplate objections, counsel for University Defendants took time to respond or object to every Request with as much information as they had at the time. Most of the objections were for overbreadth and undue burden, as the amount of information was far too vast to give a reasonable review in the time allotted to University Defendants. The day of the response deadline, but before Defendants had a chance to submit its responses, Plaintiffs tendered a letter offering to extend the written response deadline by 14 days, in an untimely attempt to cover up their previous unreasonableness. [Exhibit 5, October 25, 2024 Letter]. University Defendants served their responses and objections that day, the original deadline, as they had promised during the October 22, 2024 meet and confer. [Exhibit 6, University Defendants' Responses to Plaintiffs' First Requests for Production of Documents].

Plaintiffs then sought another meet and confer to address University Defendants' responses and objections [Doc 224-6] which was scheduled for November 12, 2024. Prior to the meet and confer, University Defendants had begun reviewing the documents and were able to come to the meeting with more details about the universe of potentially responsive information. University Defendants reiterated their stated objections but expressed a willingness to work with Plaintiffs to narrow the requests to a more

manageable size while still locating documents responsive and relevant to Plaintiffs' equal protection case. Plaintiffs asked for University Defendants' custodians and search terms, which University Defendants provided. University Defendants proposed that the custodians list be narrowed to those who were likely to have substantive documents and correspondence regarding H.B. 1775. Plaintiffs only agreed to narrow a small subset of custodians (the department chairs[3]), but then demanded that Defendants search all deans and assistant deans within each college, even though these positions do not set University policy. This includes deans and assistant deans in colleges such as fine arts, engineering, medical school, nursing school, and architecture, none of which would have any connection to classes that even touch on BERT's concerns. This would also include the deans and assistant deans at the College of Law, which common sense and reason would indicate would result in a huge number of documents returned in a search, but very few to none would be relevant to Plaintiff's claims. The University offered to search the deans if the Plaintiffs would limit their request to those most likely to have information (as they did the chairs), but Plaintiffs refused. Plaintiffs were unmoved by the breadth of custodians they were demanding be searched and simply would not agree to limiting their requests in any manageable way.[4]

Plaintiffs also demanded that Defendants run additional search terms against all of the custodians. These additional search terms were broader than the terms originally run

---

[3] A department chair is the head of a particular department within a college.

[4] The search results against the deans alone resulted in 11 Gigabytes of responsive data, before the expanded search terms, discussed below.

by the University and of the type that would generate a vast amount of irrelevant information. The additional search terms included "Diversity Equity & Inclusion" or "DEI"[5], "Black Lives Matter" or "BLM"[6] and George Floyd[7]. Plaintiffs also demanded that "racial justice (along with protest)" be searched and "Critical Race Theory" or "CRT", neither of which is targeted to return relevant documents, but is instead an incredibly broad net designed to identify all documents related in any way to some cultural hot button issues.

University Defendants told Plaintiffs they could not agree to run an additional search on their custodians using Plaintiffs' suggested search terms. Given the amount of data generated when University Defendants ran the search with their more precise search terms, running another search using Plaintiffs' suggested search terms would have added substantially more data to what University Defendants had to review.

While University Defendants were willing to work with Plaintiffs to produce documents, pursuant to a reasonable list of search terms and under a narrowed custodians list in the interest of proceeding in good faith, Plaintiffs refused to reduce the custodians list in any meaningful way and persisted in requesting University Defendants run the additional, broad searches. Plaintiffs also insisted upon a search hit report. However,

---

[5] During the relevant period of time, the University had a department named the Office of Diversity, Equity and Inclusion (DEI), thus every email sent from or addressed to this department would have been located and returned as a potential match.

[6] Well known to the Plaintiffs was that Black Lives Matter or BLM was a widely recognized and publicized social movement, and included a sit in protest by BERT in 2020. It should go as a matter of common sense that a search for this phrase would return an enormous number of documents.

[7] Again, it is common sense that this search term, which involves a highly publicized and politicized murder, would return a huge number of documents, it is also difficult to imagine what relevance this has to the Plaintiffs' claim.

Plaintiffs cite no authority that would require University Defendants to tender such a report as part of a good faith discovery negotiation. Contrary to BERT's assertions, University Defendants did not merely advance "boilerplate objection language," but conducted an ESI search and participated in a series of meet and confers to negotiate search terms and custodians. *See Kunneman Properties LLC v. Marathon Oil Co.*, No. 17-CV-456-GKF-JFJ, 2019 WL 5188355, at *3 (N.D. Okla. Oct. 15, 2019) (overruling defendant's blanket objection to ESI searches without negotiating search terms, custodians, and other ESI protocols).

Simultaneously to this process, University Defendants served their First Discovery Requests on Plaintiffs BERT, NAACP-OK, and OU-AAUP separately on November 1, 2024. [Exhibit 7, University Defendants' First Discovery Requests to BERT, NAACP-OK, and OU-AAUP.] All Plaintiffs served their respective Responses and Objections on December 2, 2024. Plaintiffs BERT and OU-AAUP each lodged objections to the discovery requests from University Defendants on the basis that "discovery at this stage is limited to Equal Protection claims," and they had not brought such claims against University Defendants. [*See* Exhibit 1, at p. 1; *see also* Exhibit 2, at p. 1.] Plaintiff NAACP-OK, the lone Plaintiff bringing an Equal Protection claim against University Defendants, stated repeatedly in its Responses and Objections that any request seeking information about the harms alleged in the Amended Petition [Doc. 50] was "not relevant to any claim Plaintiff NAACP-OK has brought." [Exhibit 8, Plaintiff NAACP-OK's Responses to University Defendants' First Set of Discovery Requests, at pp. 8-9] In essence, despite arguing in their Motion to Compel that they are entitled to the discovery they seek from

University Defendants because of its importance in showing the harms they allegedly suffered because of H.B. 1775 [*see* Doc. 224, at p. 16], no Plaintiff in the case at bar deems this very information relevant to the claims they have brought.

Ultimately, given the sole remaining Equal Protection claim in this case, Plaintiffs' stated rationale for making these requests, and Plaintiffs' own disclaimer of the relevance of this information, Plaintiffs' requests in their entirety are overly broad, unduly burdensome, and not proportional to the case. Plaintiffs' Motion should be denied.

<u>ARGUMENT AND AUTHORITIES</u>

## I.     LEGAL STANDARD

The scope of discovery under Fed. Civ. P. 26(b)(1) is broad, but Rule 26 does not authorize unlimited discovery. *Murphy v. Deloitte & Touche Group Ins. Plan,* 619 F.3d 1151, 1163 (10th Cir. 2010). Considerations of both relevance and proportionality govern the scope of discovery. *Coe v. Cross-Lines Ret. Ctr., Inc.*, 342 F.R.D. 539, 545 (D. Kan. 2022). While courts use a broad definition of relevance when determining the permissibility of discovery, it "is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519-20 (10th Cir. 1995) (internal quotation omitted). The mere fact that a plaintiff offers a "broad theory of the case" does not automatically justify equally broad discovery, "unless the discovery is relevant to the plaintiff's actual claims or defenses." *In re Cooper Tire & Rubber Co.,* 568 F.3d 1180, 1193 (10th Cir. 2009). A court may constrain a party's right to obtain discovery if the desired discovery is "unreasonable or unduly burdensome given the needs of the case, the

importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Simpson v. University of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004) (internal citations omitted). When a request is overly broad, or relevance is not clear, the party seeking the discovery has the burden to show the relevance of the request. *Dotson v. Experian Info. Sols., Inc.*, No. 17-CV-575-D, 2019 WL 440588, at *3 (W.D. Okla. Feb. 4, 2019)(citing *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

Rule 26(b) outlines the concept of proportionality, added in order to "crystalize[] the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." Chief Justice John Roberts, 2015 Year–End Report on the Federal Judiciary at 6, Supreme Court of the United States, available at http://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.aspx ("2015 Year-End Report"). According to Chief Justice Roberts, the proportionality concept seeks to "eliminate unnecessary or wasteful discovery," and to impose "careful and realistic assessment of actual need." 2015 Year-End Report at 7. In practice, this assessment may require "judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 470 (D.N.M. 2018) (quoting *State Farm Mutual Auto. Ins. Co. v. Fayda*, No. 14-CV-9792-WHP-JCF, 2015 WL 7871037, at *2(S.D.N.Y. Dec. 3, 2015)).

## II.    PLAINTIFFS' DISCOVERY REQUESTS ARE OVERLY BROAD, UNDULY BURDENSOME, AND NOT PROPORTIONAL TO THE NEEDS OF THE CASE.

### A.  Definition of "You"

**"You" and "Your" means the party or parties responding to this request; any of the party's or parties' officers, agents, assigns, employees, insurers, attorneys, subsidiaries, successors, and predecessors; and anyone acting or purporting to act on the party or on the parties' behalf.**

This definition extends the Requests to virtually anyone connected to any of the Regents, current and former, as of the passing of H.B. 1775. The "employees" clause alone would encompass, at the very least, every single employee of the University. Searching and reviewing records for every employee of the University for the past five years is far too broad of a request for the needs of this case.

Plaintiffs appear to agree that such a definition is not conducive to a reasonable request, having objected to University Defendants' definition of "You" and "Your" in University Defendants' discovery requests as "unduly vague and ambiguous." [*See* Exhibits 1, 2, and 8]. Accordingly, any Request that uses "You" or "Your" is overly broad and unduly burdensome on its face.

### B.  Request No. 1

**REQUEST FOR PRODUCTION NO. 1:    All Documents and Correspondence concerning H.B. 1775 or the Rules.**

This request is overly broad, impermissibly vague, unduly burdensome, and disproportional to the needs of the case on multiple fronts. First, the use of "All" renders it overly broad. Even with the temporal restriction of January 1, 2020 to the present, there are not enough descriptors to narrowly tailor this request to Plaintiffs' stated aims. *See*

9

*Bonilla v. Gerlach*, No. 23-CV-1060-R, 2024 WL 4497114, at *2 (W.D. Okla. Oct. 15, 2024) (requests that, on their face, do not contain geographic, temporal, or descriptive limitations and do not adequately describe some of the categories of information sought are overbroad). The use of "concerning" is vague and overly broad as well. Plaintiffs' instructions even demand that "concerning" be read in the broadest sense. Courts have deemed such omnibus requests to be overly broad. *See Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003) ("a request or interrogatory is unduly burdensome on its face if it uses the omnibus term 'relating to' or 'regarding' with respect to a general category or group of documents.)

There is no custodian referenced in the Request, but even if read as applying to each University Defendant, complying with this request would entail locating, reviewing, and producing any document in each of the University Defendants' possession with even a passing mention of the Act or its rules. Indeed, when University Defendants applied their search terms, including "H.B. 1775," to a select group of custodians (See fn. 1), the return was 34 GB of data. [Exhibit 4]. This Court will note that only two attorneys have entered an appearance for University Defendants, and those two attorneys are responsible for reviewing every single document of that 34 GB for privilege, relevance, and responsiveness.

Furthermore, this request is not relevant to any parties' claims. As discussed *supra*, all Plaintiffs but one have explicitly disclaimed any Equal Protection claims against University Defendants, and Plaintiff NAACP-OK's discovery responses could be interpreted to imply a disclaimer. The weight of authority does not favor an order

10

compelling discovery of University Defendants' documents and correspondence on this subject. *See Village of Arlington Heights v. Metropolitan Housing Corp*, 429 U.S. 252 (1977). As *Arlington Heights* and the case at bar have to do with the discriminatory intent of a legislature passing a facially neutral law, the information Plaintiffs seek from University Defendants is overbroad. Nothing in this request has the potential to show even circumstantial evidence of intent of the **Oklahoma legislature** in drafting and enacting H.B. 1775. The *Arlington Heights* factors serve as avenues through which the intent of decision-makers is evaluated. No matter what the production of these documents may yield, under no circumstances could the actions or statements of University Defendants be ascribed to the legislature. *See Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 480– 81 (1982) (citing *Milliken v. Bradley*, 418 U.S. 717, 783 (1974); *see also City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003); *see also* Okla. Const. art. XIII, § 8; *Board of Regents of the University of Oklahoma v. Baker*, 1981 OK 160, ¶ 8, 638 P.2d 464, 466 (describing the power vested in Board of Regents in comparison to the power vested in the Oklahoma legislature).

### C.  Request Nos. 2-4

**REQUEST FOR PRODUCTION NO. 2:**    **All Documents and Correspondence between You and Legislators regarding the drafting of H.B. 1775.**

**REQUEST FOR PRODUCTION NO. 3:**    **All Documents and Correspondence between You and Legislators regarding the enactment of H.B. 1775.**

**REQUEST FOR PRODUCTION NO. 4:**    **All Documents and Correspondence between You and Legislators regarding the implementation of H.B. 1775.**

These Requests, which seek <u>all</u> documents and correspondence between the University Defendants (including anyone connected to them if adhering to the overly broad definition of "You") and legislators, are overbroad and unduly burdensome on their face. As with Request No. 1, the lack of narrowing limitations imbues these requests with a daunting potential volume of responsive hits. Their relevance and proportionality to the needs of the case are similarly negligible. Again, because University Defendants are not legislators, these requests are not salvaged by the *Arlington Heights* factors. No documentation in the possession of University Defendants or anyone affiliated with them could be indicative of the intent of legislature in drafting, enacting, or implementing H.B. 1775. Additionally, Plaintiffs state that Request no. 4 is "directly relevant to the unique harms H.B. 1775 has on students and teachers of color," yet when asked about these harms in University Defendants' requests, Plaintiff NAACP-OK stated that any such evidence is not relevant to its claims. [*See* Exhibit 8].

Furthermore, these requests are not proportional to the needs of the case because other parties in the case are more likely to have relevant access to responsive information, if any exists, than University Defendants. The drain on University Defendants' resources in having two attorneys search over 34 GB of data (or significantly more if Plaintiff's demanded search terms are considered) to locate any communications or documentation between any of University Defendants' agents or employees and any legislator far outweighs the benefit or importance to Plaintiffs who admittedly do not find this evidence relevant to any claim they have brought.

### D.  Request Nos. 5-7

**REQUEST FOR PRODUCTION NO. 5:** **All Documents and Correspondence between You and other Defendants regarding the drafting of H.B. 1775.**

**REQUEST FOR PRODUCTION NO. 6:** **All Documents and Correspondence between You and other Defendants regarding the enactment of H.B. 1775.**

**REQUEST FOR PRODUCTION NO. 7:** **All Documents and Correspondence between You and other Defendants regarding the implementation of H.B. 1775.**

These requests are even broader and more burdensome than the three previously discussed requests. The number of Defendants in this lawsuit, together with Plaintiffs' overbroad definition of "You", make it impracticable to review the number of documents that could potentially be responsive. None of the information is relevant under *Arlington Heights* given the fact that University Defendants are not legislators. Just as with Request no. 4, *supra*, Plaintiffs cannot claim that Request no. 7 is relevant to any unique harms yet claim those harms are not relevant to their claim against University Defendants when answering University Defendants' discovery requests. [*See* Exhibit 8]. These requests are not proportional to the needs of the case because only one Plaintiff, NAACP-OK, **potentially** has an Equal Protection claim against University Defendants (since NAACP-OK's discovery responses could be interpreted as a disclaimer), other parties have more relevant access to the information, and the burden on University Defendants far outweighs the benefit to Plaintiffs. Again, the number of people physically every document is small in relation to the sheer amount of information available. Plaintiffs' mention of University endowments is dispositive of nothing; by virtue of their nature, endowments are earmarked for specific priorities and cannot simply be tapped for litigation expenses.

### E.  Request No. 8

**REQUEST FOR PRODUCTION NO. 8:**   **All Public Statements made by You regarding H.B. 1775.**

**AMENDED REQUEST FOR PRODUCTION OF DOCUMENTS NO. 8: All Documents and Correspondence relating to all Public Statements made by You regarding H.B. 1775.**

On January 27, 2025, at 4:03 p.m. C.S.T., Plaintiffs served University Defendants with an Amended Request for Production, broadening the request concerning public statements by University Defendants and all of their agents, employees, or affiliates. By serving an "amended" discovery request after filing a motion to compel, Plaintiffs have mooted that request as thirty days has not elapsed since the service of the Amended Request. The previous notwithstanding, University Defendants will serve their formal objection to Plaintiffs' Amended Request for Production, but the parties will not have had time to meet and confer on University Defendants' objection due to the pending Motion. Nevertheless, University Defendants even more fervently object to the overbreadth and undue burden of this Request.

Not only was the first version of Request no. 8 overbroad on its face based on the definition of "You," but the amended version also now requests documents and correspondence relating to the public statements. *See Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003) ("a request or interrogatory is unduly burdensome on its face if it uses the omnibus term 'relating to' or 'regarding' with respect to a general category or group of documents.) Given their definition of "Public Statements," this means Plaintiffs think they are entitled to anything having to do with all speeches, remarks,

appearances, social media posts, social media interactions, social media comments, and public statements of any kind from <u>every single employee, agent, or affiliate</u> of University Defendants together with University Defendants themselves. That is absurd.

For the reasons stated *supra*, Plaintiffs' Requests seek information that is irrelevant to their claims, and their requests are disproportionate to the needs of this case. The burden on University Defendants far outweighs any benefit producing these documents could have. University Defendants should not be compelled to comply with this request.

### F.  Request No. 9

**REQUEST FOR PRODUCTION NO. 9:    All Documents and Correspondence relating to Public Statements made by any Legislator concerning H.B. 1775.**

As written, this request to University Defendants is overbroad and disproportionate to the needs of the case. The relevance of this information is the intent of the legislators, and University Defendants are not legislators. To the extent any information is related to public statements and is publicly available, it is equally accessible to Plaintiffs. To the extent that any of the information sought is only in the possession or control of parties with relevant information, there are other parties with more access to that relevant information than University Defendants. There are no circumstances under which University Defendants would have anything responsive to this request that would serve Plaintiffs' aims in requesting them. Therefore, the amount of time and resources University Defendants are requested to expend to search for these documents is unreasonable.

### G.  Request No. 10

**REQUEST FOR PRODUCTION NO. 10:    All Documents and**

**Correspondence relating to any policies, procedures, rules, guidance, training, or presentations regarding H.B. 1775.**

On its face, this request is not narrowly targeted enough to serve Plaintiffs' aims in requesting it. Again, these documents will not evidence legislative intent in drafting, enacting, or enforcing H.B. 1775. To the extent Plaintiffs seek evidence of any directives to change curricula, or any of their other alleged harms, they have already declared that such evidence is irrelevant to their claim. [*See* Exhibit 8]. In any event, documents regarding any and all trainings or guidance about the Act would not evidence unique or disproportionate harm. Therefore, the volume of information requested in this Request is disproportionate to the needs of the case. University Defendants' objections should be sustained.

### H. Request Nos. 11-12

**REQUEST FOR PRODUCTION NO. 11:** **All Documents and Correspondence relating to any formal or informal complaints made under H.B. 1775 or the Rules.**

**REQUEST FOR PRODUCTION NO. 12:** **All Documents and Correspondence relating to any response to any formal or informal complaint concerning H.B. 1775.**

These requests are overbroad, unduly burdensome, and disproportionate to the needs of this case on several fronts. The phrase "formal or informal complaints" encompasses a limitless amount of possible responsive matters, and Plaintiffs are seeking all documents and correspondence <u>relating to</u> them. *See Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. at 538. This would include complaints from students, faculty, staff, or even the general public outside of the University community. It would include anything from social media posts to grievances filed with any of the University's departments over the past five

years. Such a request is clearly overbroad and unduly burdensome, and it is also entirely irrelevant.

Plaintiffs state that these documents are relevant because they show whether the enforcement of H.B. 1775 "bears more heavily on one race than another" even though University Defendants do not, and cannot, enforce H.B. 1775. Additionally, as discussed *supra*, Plaintiffs themselves do not find this evidence to be relevant. They also do not appear to have their own evidence[8] of any complaints, despite alleging in their Amended Complaint that there were concrete instances of negative impact. What is happening with this Request, as with the requests discussed *infra*, is a fishing expedition. Plaintiffs are essentially basing "massive discovery requests upon . . . nebulous allegations, in the hope of finding particular evidence of wrongdoing," which "abuses the judicial process." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000).

Not only are these Requests not relevant, but they are disproportionate to the needs of the case. Plaintiffs are not truthful in stating that they have no other means to access the information they are seeking. BERT is a group of students who allegedly had materials removed from their classrooms, and OU-AAUP is a group of instructors who allegedly

---

[8] In their Responses and Objections to University Defendants' Request for Discovery [Exhibit 8], Plaintiff NAACP-OK responds that it "has no information responsive" to every Interrogatory that specifically requests identities of the individuals described in Paragraph No. 14 of the Amended Complaint [Doc. No. 50]. Additionally, for those Requests Plaintiff NAACP-OK has indicated it will answer propounded Interrogatories or produce documents, University Defendants have agreed to two extensions. This amounts to 90 days from the date Plaintiffs were served without Plaintiffs responding substantively or producing documents. To date no documents have been produced by NAACP-OK nor have substantive interrogatory responses been served.

were told to stop teaching certain subjects. NAACP-OK's claims against University Defendants hinge on the supposed harms that are being suffered disproportionately by each of these groups. At the very least, they should be able to more narrowly target their requests based on the knowledge the other Plaintiffs ostensibly have.

### I.   Request Nos. 14-15

**REQUEST FOR PRODUCTION NO. 14:    All Documents and Correspondence related to proposed or actual changes made to the curriculum or course list of any Oklahoma public school pertaining to any topics purportedly implicated by H.B. 1775, such as CRT, George Floyd, the Black Lives Matter movement, 2020 Racial Justice Protests, DEI, or Historically Marginalized Students or Persons.**

**REQUEST FOR PRODUCTION NO. 15:** **All Documents and Correspondence concerning any works of literature removed from the curriculum of any Oklahoma public school pertaining to any topics purportedly implicated by H.B. 1775, such as CRT, George Floyd, the Black Lives Matter movement, 2020 Racial Justice Protests, DEI, or Historically Marginalized Students or Persons.**

University Defendants object to these requests, *inter alia*, because of the use of "Oklahoma public school," as the University of Oklahoma is not a public school under Oklahoma law, and it is Oklahoma law that is at issue in the case at bar. *See* Okla. Const. art. XIII, § 8; *see also* Okla. Stat. Ann. 70 § 1-106. University Defendants do not control the curriculum or course lists of Oklahoma public schools, and any documents or correspondence related to any Oklahoma public school and its decisions surrounding H.B. 1775 would have nothing to do with University Defendants. Therefore, these requests are not relevant to any claim against University Defendants.

Furthermore, to the extent that Plaintiffs are seeking information about changes to curriculum or course materials at the University of Oklahoma, these requests are irrelevant.

18

Plaintiff NAACP-OK disclaims the relevance of such topics in their Responses and Objections. Therefore, these Requests concern matters that are not important to the issues and are not proportional to the needs of the case.  University Defendants' objections to these Requests should be sustained.

### J.  Request No. 16

**REQUEST FOR PRODUCTION NO. 16: All Documents and Correspondence concerning the decision to suspend Oklahoma House Rule 8.21 (c) in connection with the enactment of H.B. 1775.**

How University Defendants are expected to have any relevant information responsive to this Request confounds the mind. University Defendants are clearly not members of the Oklahoma House of Representatives. Even if University Defendants had opinions or discussions about the application of Oklahoma House Rules, they ultimately are not legislative decision-makers. *See* Okla. Const. art. XIII, § 8; *see also Board of Regents of the University of Oklahoma v. Baker*, 1981 OK 160, ¶ 8, 638 P.2d 464, 466 (describing the power vested in Board of Regents in comparison to the power vested in the Oklahoma legislature). Whether under the *Arlington Heights* factors or Rule 26(b)(1) proportionality considerations, there is no universe in which University Defendants should be compelled to comply with this Request.

### K.  Request No. 17

**REQUEST FOR PRODUCTION NO. 17:  All Documents and Correspondence between You and other Persons, including Legislators and other Defendants, concerning CRT, George Floyd, Black Lives Matter, Racial Justice Protests, DEI, or Historically Marginalized Students or Persons.**

For the reasons stated *supra*, this request for documents and correspondence having to do with these topics is overbroad, unduly burdensome, and disproportionate to the needs of the case. These terms, which also happen to be Plaintiffs' proffered additional search terms given with the purported aim to more narrowly tailor their requests, have the potential to yield far more results than could possibly be relevant to Plaintiffs' stated objectives. The University is home to myriad disciplines; it is expected that its faculty, staff, and students would discuss current events both privately and as part of their academic and professional endeavors. University Defendants should not be compelled to comply with this Request.

### L.  Request Nos. 26-27

**REQUEST FOR PRODUCTION NO. 26:**  Any and all notes, memoranda, research, written analysis, white papers, reports, or opinions relied upon, created by, or reviewed by You regarding H.B. 1775's enactment.

**REQUEST FOR PRODUCTION NO. 27:**  Any and all notes, memoranda, research, written analysis, white papers, reports, or opinions relied upon, created by, or reviewed by You regarding H.B. 1775's implementation.

While Request no. 26 has to do with enactment, and Request no. 27 concerns implementation, both requests present the same overbreadth and undue burden for University Defendants. There are not enough limitations to tailor these requests to the objectives for which Plaintiffs claim they are relevant. *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) (upholding denial of discovery where requests are not tailored to the issues and instead "cast a much wider net, encompassing much information irrelevant to that stated purpose, of a potentially personal nature, or protected by attorney-

client privilege"). There is no way they can be relevant, in fact, because nothing responsive to these requests will be attributable to the intent of the Oklahoma legislature.

## **<u>CONCLUSION</u>**

For the reasons set forth herein, University Defendants respectfully request the Court deny Plaintiffs' Motion to Compel, along with all other relief the Court deems appropriate.

Respectfully submitted,


s/ Tina S. Ikpa
M. Daniel Weitman, OBA #17412
Tina S. Ikpa, OBA #32193
University of Oklahoma
Office of Legal Counsel
660 Parrington Oval, Room 213
Norman, Oklahoma 73109
(405) 325-4124; (405) 325-7681 - Fax
dan.weitman@ou.edu
tsikpa@ou.edu

*Attorneys for University Defendants*

## <u>CERTIFICATE OF MAILING</u>

The undersigned hereby certifies that on this 11th day of February 2025, a true and correct copy of the foregoing was mailed via electronic mail:

Maya Brodziak
Zakiya Shani Lewis
Sumayya Saleh
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, D.C. 20005

Megan Lambert
Adam Hines
American Civil Liberties Union Foundation of Oklahoma
P.O. Box 13327
Oklahoma City, OK 73113

Emerson Sykes
Leah Watson
Sarah Hinger
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004

Douglas Koff
Julia Beskin
Sara Solfanelli
Kevin Scot Johns
Adam Kimelman
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

Garry M. Gaskins, II
Zachary P. West
William Flanagan
Attorney General's Office
313 NE 21 St
Oklahoma City, OK 73105

s/ Tina S. Ikpa
Tina S. Ikpa

22