**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

BLACK EMERGENCY RESPONSE TEAM, *et al.*,

*Plaintiffs*,

v.

GENTNER DRUMMOND, in his official capacity as Oklahoma Attorney General, *et al.*,

*Defendants*.

Case No. 5:21-CV-1022-G

Hon. Charles B. Goodwin

**PLAINTIFFS' REPLY AND MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL STATE DEFENDANTS TO COMPLY WITH PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION AND ENTRY OF ESI ORDER**

Dated: February 28, 2025

Maya Brodziak
Sumayya Saleh
Zakiya Lewis
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005

Douglas Koff
Julia Beskin
Sara Solfanelli
Kevin Scot Johns
Adam Kimelman
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022

Megan Lambert
Adam Hines
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
mlambert@acluok.org
ahines@acluok.org

Emerson Sykes
Leah Watson
Sarah Hinger
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..... 1

II. ARGUMENT ..... 1

A. Plaintiffs' Requests Are Relevant. ..... 1

1. *Arlington Heights* Provides For Broad Discovery. ..... 1

2. Requests Relating To H.B. 1775's Implementation And Enforcement Are Relevant. ..... 3

3. The Legislative History Of H.B. 1775 Is Relevant. ..... 4

B. Plaintiffs' Requests Are Proportional And Not Unduly Burdensome. ..... 5

C. State Defendants' Invocations Of Privilege Are Improper. ..... 6

1. State Defendants Must Produce A Privilege Log. ..... 6

2. State Defendants' Overbroad Assertion Of Qualified Privileges. ..... 8

D. State Defendants Misconstrue The ESI Protocol. ..... 9

III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Bethune-Hill v. Va. State Bd. of Elections*,
114 F. Supp. 3d 323 (E.D. Va. 2015) ........................................ 9

*Brnovich v. Democratic Nat'l Comm.*,
594 U.S. 647 (2021) ........................................ 5

*Buonauro v. City of Berwyn*,
No. 08 C 6687, 2011 WL 116870 (N.D. Ill. Jan. 10, 2011) ........................................ 2

*Citizens for Const. Integrity v. United States*,
57 F.4th 750 (10th Cir. 2023) ........................................ 5

*Citizens Union of N.Y. v. Att'y Gen. of N.Y.*,
269 F. Supp. 3d 124 (S.D.N.Y. 2017) ........................................ 9

*Dyas v. City of Fairhope*,
No. 08-0232-WS-N, 2009 WL 3151879 (S.D. Ala. Sept. 24, 2009) ........................................ 2

*Glenwood Springs Citizens' All. v. U.S. Dep't of Interior*,
No. 20-cv-00658-CMA, 2021 WL 916002 (D. Colo. Mar. 10, 2021) ........................................ 2, 3

*In re Hubbard,*
803 F.3d 1298 (11th Cir. 2015). ........................................ 8

*Hunt v. Cromartie*,
526 U.S. 541 (1999) ........................................ 1

*Kizer v. N. Am. Transp. Servs., LLC*,
No. CIV-18-846-D, 2020 WL 1161094 (W.D. Okla. Mar. 10, 2020) ........................................ 7

*La Union del Pueblo Entero v. Abbott*,
93 F.4th 310 (5th Cir. 2024) ........................................ 9

*League of United Latin Am. Citizens v. Abbott*,
708 F. Supp. 3d 870 (W.D. Tex. 2023) ........................................ 8

*Perez v. El Tequila LLC*,
No. 12-CV-588-JED-PJC, 2014 WL 5341766 (N.D. Okla. Oct. 20, 2014), *objections overruled*, 2014 WL 12652310 (N.D. Okla. Nov. 18, 2014) ........................................ 6, 7

*Robinson v. City of Arkansas City.*,
No. 10-1431-JAR-GLR, 2012 WL 603576 (D. Kan. Feb. 24, 2012) ........................... 7

*SECSYS, LLC v. Vigil*,
666 F.3d 678 (10th Cir. 2012) ........................................................................... 1, 2

*Sonnino v. Univ. of Kan. Hosp. Auth.*,
221 F.R.D. 661 (D. Kan. 2004)............................................................................... 7

*U. S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
592 U.S. 261 (2021)............................................................................................... 9

*United States v. Gillock*,
445 U.S. 360 (1980)............................................................................................... 9

*United States v. O'Brien*,
391 U.S. 367 (1968)............................................................................................... 5

*Va. Uranium, Inc. v. Warren*,
587 U.S. 761 (2019)............................................................................................... 5

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977)........................................................................................*passim*

*Wagner v. Dryvit Sys., Inc.*,
208 F.R.D. 606 (D. Neb. 2001)............................................................................ 7, 8

*Washington v. Davis*,
426 U.S. 229 (1976)............................................................................................... 2

**Statutes**

Okla. Stat. tit. 70, § 24-157 ("H.B. 1775")...................................................*passim*

**Rules**

Fed. R. Civ. P. 26..................................................................................................... 3

Fed. R. Civ. P. 26(b)(5) ........................................................................................... 6

Fed. R. Civ. P. 34(b)(2) ........................................................................................... 6

**Other Authorities**

*About*, TULSA PUBLIC SCHOOLS, https://www.tulsaschools.org/about (last
visited Feb. 27, 2025)............................................................................................. 3

*Mustang*, U.S. NEWS, https://www.usnews.com/education/k12/oklahoma/districts/mustang-104218#:~:text=The%20student%20body%20at%20the,is%20provided%20by%20the%20government (last visited Feb. 27, 2025) ............................................... 3, 4

## I. PRELIMINARY STATEMENT

Plaintiffs' Motion to Compel State Defendants to Comply with Plaintiffs' First Requests for Production and for Entry of ESI Order with Incorporated Memorandum of Law (the "Motion" or "Mot.") demonstrated that: (i) the discovery Plaintiffs seek is relevant under the *Arlington Heights* Factors,[1] *see* Motion at 7–16, Doc. 223; (ii) the discovery is proportional to the needs of the case, *see* Motion at 16–18; (iii) State Defendants are required to produce a privilege log, *see* Motion at 20–21; and (iv) the Court should enter Plaintiffs' ESI Protocol, *see* Motion at 21–22. In their Response to the Motion (the "Response" or "Resp."), State Defendants argue that Plaintiffs' Requests (i) are not relevant, (ii) are unduly burdensome, and (iii) seek privileged materials (and State Defendants do not need to produce a privilege log). State Defendants also contend it is premature to enter an ESI protocol and that the ESI Protocol is improper. As established below, each of these arguments fail.

## II. ARGUMENT

### A. Plaintiffs' Requests Are Relevant.

#### 1. *Arlington Heights* Provides For Broad Discovery.

The Requests seek materials that are relevant under the *Arlington Heights* Factors, which factors are necessarily broad. *See, e.g.*, Mot. at 7–8; *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999); *SECSYS, LLC v. Vigil*, 666 F.3d 678, 686 (10th Cir. 2012) (opinion of

[1] Capitalized terms used but not defined in this document have the meanings ascribed to them in the Motion. Where capitalized terms used but not defined in this document are also undefined in the Motion, these terms have the meanings ascribed to them in this Court's June 14, 2024 Order, Doc. 172 ("Order").

Gorsuch, J.). State Defendants' out-of-circuit authorities are inapposite. *See, e.g.,* Resp. at 7. State Defendants cite *Dyas v. City of Fairhope,* No. 08-0232-WS-N, 2009 WL 3151879, at *9 (S.D. Ala. Sept. 24, 2009) and *Buonauro v. City of Berwyn*, No. 08 C 6687, 2011 WL 116870, at *6 (N.D. Ill. Jan. 10, 2011) for the proposition that *Arlington Heights* has narrowed the scope of discovery. These cases say no such thing: to the contrary, in these cases, courts limited the scope of discovery on the basis of legislative privilege, *not on the basis of the scope of discovery* in applying *Arlington*. Moreover, each of these cases addressed limitations on depositions of legislators—not document discovery.

State Defendants also argue that discovery should be limited to the three *Arlington Heights* Factors referenced by the Court in its decision permitting Plaintiffs' Equal Protection Claims to proceed—namely, the historical background of the decision, the statements of legislators, and the legislature's deviations from normal procedures. Resp. at 9; *see also* Mot. at 11–16. State Defendants proffer no authority to support the novel proposition that discovery should be limited in this way—indeed, this position flies in the face of well-settled law that discovery in Equal Protection cases spans each of the *Arlington Heights* Factors and the "totality of the relevant facts." *Washington v. Davis*, 426 U.S. 229, 242 (1976); *see also* Mot. at 7–8.

Nor should "discovery requests [] be narrowly tailored to address the factual issues raised by Defendants' Motion to Dismiss." Resp. at 9. *Glenwood Springs Citizens' Alliance v. United States Department of Interior*, No. 20-cv-00658-CMA, 2021 WL 916002, at *2 (D. Colo. Mar. 10, 2021)) is inapposite because that case concerned an exception to the bar on discovery in an Administrative Procedure Act case; discovery is

generally not allowed in APA cases because the courts' review is limited to the administrative record. *Id*. at *1. However, because the *Glenwood* defendants challenged the court's jurisdiction in their motion to dismiss by questioning whether there was in fact a final agency action as defined by the APA, the court permitted discovery into that issue alone. *Id*. This case has no bearing on the proper scope of discovery in a non-APA case—like this one—where the scope of discovery is governed by Fed. R. Civ. P. 26.

**2. Requests Relating To H.B. 1775's Implementation And Enforcement Are Relevant.**

State Defendants' implementation and enforcement of H.B. 1775 are relevant because they evidence whether the Act "bears more heavily on one race than another." *See* Mot. at 8–11.

State Defendants argue that Requests concerning specific enforcement actions (Requests 14 and 15) are improper and should instead be brought in the form of as-applied challenges by the school districts subject to enforcement. *See* Resp. at 18. But whether these enforcement actions may be ripe for their own suits does not diminish the clear relevance of information concerning the same in this case. *See* Mot. at 8–11. Further, each of these enforcement actions have been against districts with significantly minority populations,[2] which is relevant to the disparate impact. *Id*.

[2] *See About*, TULSA PUBLIC SCHOOLS, https://www.tulsaschools.org/about (last visited Feb. 27, 2025) (noting the breakdown of student race as: "40% Hispanic/Latinx[,] 22% Black[,] 19% white[,] 12% multiracial[,] 4% American Indian or Alaska Native[,] 3% Asian/Pacific islander"); *Mustang*, U.S. NEWS, https://www.usnews.com/education/k12/oklahoma/districts/mustang-104218#:~:text=The%20student%20body%20at%20the,is%20provided%20by%20the%20government (last visited Feb. 27, 2025) ("The district's minority enrollment is 40%.").

State Defendants next argue that discovery regarding changes in curricula in the wake of H.B. 1775 (Requests 16 and 17) is not relevant because "[i]ndividual decisions made by individual school districts do not shed any light on the Legislature's motive for enacting [H.B.] 1775." Resp. at 19. But educators' changes to their curricula pertaining to these topics is patently relevant to how the Act impacts all Oklahomans, and in particular students and educators of color. Moreover, Plaintiffs' Amended Complaint, which points to a host of academic studies demonstrating how H.B. 1775's harms fall disproportionately on students of color, with compounded harms for women and members of the LGBTQ+ community, Doc. 50 ¶¶ 146–155, refutes State Defendants' argument that curricula changes are irrelevant because "[H.B.] 1775 applies the same to all teachers and students," Resp. at 20.

**3. The Legislative History Of H.B. 1775 Is Relevant.**

H.B. 1775's legislative history, including information concerning its drafting, enactment, and contemporaneous statements of legislators—and Plaintiffs' Requests concerning the same—are clearly relevant to the dispute at hand. *See* Mot. at 11–16.

State Defendants argue that legislative history and legislator statements are irrelevant, *see* Response at 5–7, even though (i) *Village of Arlington Heights v. Metropolitan Housing Development Corp.* considers legislative history (and legislator statements) "highly relevant," 429 U.S. 252, 268 (1977), and (ii) this Court pointed to legislative statements in finding Plaintiffs' claims adequately pled, *see* Doc. 172 at 30–31. The cases State Defendants cite for this argument are inapposite, as they largely concern whether legislative statements are appropriately considered in merits disputes, not the

relevance of such information in discovery. *See Citizens for Const. Integrity v. United States*, 57 F.4th 750 (10th Cir. 2023); *United States v. O'Brien*, 391 U.S. 367 (1968); *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 778 (2019). And, in one case State Defendants cite, *Brnovich v. Democratic National Committee*, the Supreme Court found that the district court appropriately "appli[ed] the familiar approach outlined in *Arlington Heights*," including *considering the legislative history and statements of legislators*. 594 U.S. 647, 687–689 (2021).

**B. Plaintiffs' Requests Are Proportional And Not Unduly Burdensome.**

State Defendants' boilerplate, unsubstantiated assertion of undue burden should not be credited. *See* Mot. at 17. Presumably, State Defendants have not proffered any evidence of undue burden—such as a search term hit report—because no such evidence exists. Indeed, they have run extremely limited searches covering fewer than 100 days and limited custodians, using only a single search term: "H.B. 1775." *See* Resp. at 3, 14. Nor have State Defendants explained why, after receiving the Requests on September 25, 2024, they are unable to meaningfully quantify burden because their efforts have—nearly five months later—"barely gotten off the ground." Resp. at 14.

State Defendants argue that "Plaintiffs' overly broad definition of 'You' and 'Your' further compounds the issue as it includes every employee within the organizations regardless of how thinly—if at all—they are connected to [H.B.] 1775." Resp. at 14. This argument is a straw man: Plaintiffs have never suggested that State Defendants should include as custodians "every employee" with any connection whatsoever to H.B. 1775. To the contrary, Plaintiffs have repeatedly offered to negotiate workable search parameters

(including custodians). *See* Mot. Ex. 3 at 5, Doc. 223-3 (Plaintiffs' November 15, 2024 letter); Mot. at 17. Rather than engage in such a negotiation, State Defendants advised Plaintiffs to file a motion to compel at the December Meet and Confer. Thus, State Defendants' assertion that "Plaintiffs refused to provide a suggested list of search terms or list of people for whom to search," Response at 13, is an exercise in misdirection.

### C. State Defendants' Invocations Of Privilege Are Improper.

#### 1. State Defendants Must Produce A Privilege Log.

State Defendants' allegation that Plaintiffs seek production of privileged materials, *see* Response at 5, is incorrect: Instruction 5 of the Requests expressly exempts privileged materials from production and requests a privilege log under Fed. R. Civ. P. 26(b)(5) to evaluate any invocations of privilege. Mot. Ex. 1 at 10.

State Defendants' boilerplate Fundamental Objection contravenes Fed. R. Civ. P. 26(b)(5)'s and 34(b)(2)'s requirements that claims of privilege and objections be specific. Mot. at 18. As such, these objections are waived. *See Perez v. El Tequila LLC*, No. 12-CV-588-JED-PJC, 2014 WL 5341766, at *2 (N.D. Okla. Oct. 20, 2014), *objections overruled*, 2014 WL 12652310 (N.D. Okla. Nov. 18, 2014).

State Defendants argue that they are exempted from producing a privilege log because the Requests are so facially objectionable. Resp. at 11. But that is not what the Federal Rules require. As Judge DeGiusti explained:

> [W]hen a party withholds documents based on a claim of privilege, the party must "expressly make the claim" and "describe the nature of the documents ... and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." This ordinarily is accomplished through a privilege log. . . . Whether a responding party states

> a general objection to an entire set of discovery requests based on privilege, or generally asserts a privilege objection within an individual discovery response, the resulting "blanket objection" is decidedly improper.

*Kizer v. N. Am. Transp. Servs., LLC*, No. CIV-18-846-D, 2020 WL 1161094 at *2 (W.D. Okla. Mar. 10, 2020) (citations omitted). State Defendants' sole cited authority—*Sonnino v. University of Kansas Hospital Authority*—does not address the obligation to provide a privilege log, and is thus irrelevant. In any event, *Sonnino* supports Plaintiffs' position, as the court explained: "when a party files a motion to compel and asks the Court to overrule certain objections, the objecting party must specifically show in its response to the motion to compel . . . how each request for production . . . is objectionable. By failing to address these types of objections in response to a motion to compel, a party fails to meet its burden to support its objections." 221 F.R.D. 661, 670–71 (D. Kan. 2004) (finding unsupported objections waived); *see also Robinson v. City of Arkansas City.*, No. 10-1431-JAR-GLR, 2012 WL 603576, at *6 (D. Kan. Feb. 24, 2012) (rejecting general objections as "worthless and merely delay[ing] discovery"); *Wagner v. Dryvit Sys., Inc.,* 208 F.R.D. 606, 610 (D. Neb. 2001) ("Unless it is obvious from the wording of the request . . . an objection that discovery is overly broad and unduly burdensome must be supported by affidavits or offering evidence revealing the nature of the burden and why the discovery is objectionable.").

Even assuming, *arguendo*, that State Defendants' claims of privilege are not waived, their overbroad conception of privilege necessitates a privilege log. The only binding case State Defendants cite when discussing legislative privilege concedes that legislative privilege is not limitless, *see* Resp. 9–10 ("[A]lthough the privilege protects

such 'legislative' acts, it does not protect acts that are merely 'political.'") (quoting a Tenth Circuit opinion), and State Defendants' non-binding caselaw does not support their assertion that they are exempted from producing a privilege log.[3]

**2. State Defendants' Overbroad Assertion Of Qualified Privileges.**

The necessity of a privilege log to assess State Defendants' assertions of privilege is particularly acute here because State Defendants claim ***qualified*** privileges, which may yield to the important federal interests implicated in this action.

Although some federal courts have conflated the qualified legislative privilege from discovery with the absolute legislative immunity from suit or have explicitly stated that the legislative privilege is unqualified with respect to § 1983 claims, *see, e.g., La Union del Pueblo Entero v. Abbott*, 93 F.4th 310 (5th Cir. 2024), the Supreme Court has never ruled as such. To the contrary, in *United States v. Gillock*, the Court identified one important interest to which comity demands the legislative privilege yields—namely, the enforcement of federal criminal statutes, which was the sole interest before the Court. 445 U.S. 360, 373 (1980). Without additional guidance from the Supreme Court, a number of federal courts have relied on *Gillock*'s "important federal interest" language to extend its

[3] *In re Hubbard*'s sole claim was for retaliation and the court recognized it was "not decid[ing] in this case whether a document-by-document invocation of the legislative privilege would be required in a different case, one where the documents are requested to support a claim that is not at its core and in its entirety an inquiry into the subjective motivation that lawmakers had in passing legislation," 803 F.3d 1298, 1311 (11th Cir. 2015). Similarly, *Abbott* recognized "the burden rests on the party asserting the privilege to establish that the privilege applies. To the extent that the legislators claim materials or documents . . . are covered by the legislative privilege, they must provide adequate substantiation," *League of United Latin Am. Citizens v. Abbott*, 708 F. Supp. 3d 870, 880 (W.D. Tex. 2023) (citations omitted).

holding beyond the criminal context, declaring both federal criminal cases and cases where a plaintiff proceeds against the State seeking to vindicate public rights, such as via equal protection claims, subject to a qualified legislative privilege. *See, e.g., Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 332-38 (E.D. Va. 2015); *Citizens Union of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 145-46 (S.D.N.Y. 2017). Here, like in many similar cases, any legislative or other privileges validly asserted are qualified.

Finally, State Defendants' novel invocation of investigative privilege, *see* Resp.at 17 and 19, and repeated invocations of the executive and deliberative process privileges are similar forceless, as each are qualified.[4]

**D. State Defendants Misconstrue The ESI Protocol.**

State Defendants contend that the ESI Protocol is premature and improper. *See* Resp. at 24–25. State Defendants first argue that the ESI Protocol is unnecessary because the parties have not encountered any production issues. This argument is nonsensical: there have been no production issues because State Defendants have refused to produce any documents—not because they have produced them in an unobjectionable manner. As a matter of logic and best practices, litigants typically agree to production specifications prior to making any such production, and there is no reason to deviate from that practice here. Plaintiffs' desire to have uniform production standards is not a "waste of this Court's

[4] Further, these privileges could only cover that subset of information sought in the Requests that is both deliberative and predates the passage of H.B. 1775. *See U. S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267–68 (2021) ("[T]he deliberative process privilege, which is a form of executive privilege[,] . . . distinguishes between predecisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not.").

valuable time," Resp. at 24, but is designed to avoid needing to piecemeal raise otherwise avoidable production disputes with this Court. *See* Mot. at 21–22.

State Defendants incorrectly assert that the ESI Protocol requires any party to "create, or cause to be prepared, new documents." Resp. at 24. The ESI Protocol does not require a party create a new document; it merely requires producing existing metadata already associated with each document in a structured format, such as a .DAT file, for review.[5]

State Defendants also assert, without explanation, that the five-day timeline for a producing party to provide the native version of certain imaged documents (upon request) is insufficient. *See* Resp. at 25 (citing Mot. Ex. 4 ¶ 23(b)). Plaintiffs are willing to consider a longer time period, but State Defendants have never suggested one. In any event, should valid burdens arise, ¶ 23(b) of the ESI Protocol allows the producing party to "respond in writing why it will not produce the requested files." Mot. Ex. 4 at ¶ 23(b).

## III.  CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant their Motion and order: (1) State Defendants to produce documents responsive to the Requests within 14 days of the issuance of the Court's order; (2) State Defendants to produce a privilege log for any materials withheld on account of privilege seven days thereafter; and (3) entry of the Plaintiffs' proposed ESI protocol.

---

[5] In fact, the ESI Protocol expressly states that the parties shall produce metadata "where available," that "[t]he Parties will not manually insert any metadata fields that are not automatically associated with each electronic document," Mot. Ex. 4 at ¶ 5, and that "[n]o party will have any obligation to manually generate [metadata] information," *id.* at ¶ 9.

Dated: February 28, 2025

Respectfully submitted,

/s/ Megan Lambert
Adam Hines
Megan Lambert
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
ahines@acluok.org
mlambert@acluok.org

Maya Brodziak
Zakiya Lewis
Sumayya Saleh
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005

Douglas Koff
Julia Beskin
Sara Solfanelli
Kevin S. Johns
Adam Kimelman
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022

Emerson Sykes
Leah Watson
Sarah Hinger
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2025, I electronically filed the foregoing document with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

            Respectfully submitted,

            */s/ Megan Lambert*
            Megan Lambert
            AMERICAN CIVIL LIBERTIES UNION
             FOUNDATION OF OKLAHOMA
            P.O. Box 13327
            Oklahoma City, OK 73113
            Tel.: 405-524-8511
            mlambert@acluok.org

            Counsel for Plaintiffs