# EXHIBIT 2

FILED
SUPREME COURT
STATE OF OKLAHOMA

JAN 3 0 2025

JOHN D. HADDEN
CLERK

**Case No. CQ-122472**

# IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

BLACK EMERGENCY RESPONSE TEAM, et al.,
Plaintiff/Appellant,

v.

GENTNER DRUMMOND, in his official capacity as
Oklahoma Attorney General, et al.,
Defendants/Appellees.

CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
HONORABLE CHARLES B. GOODWIN, DISTRICT JUDGE
Case No. 21-CV-1022-G

**APPELLEES', JOHN R. BRAUGHT, ROBERT ROSS, NATALIE SHIRLEY,
ERIC STEVENSON, ANITA HOLLOWAY, KENNETH S. WAITS, AND RICK
NAGEL, in their official capacities as members of the Board of Regents of the
University of Oklahoma ("UNIVERSITY DEFENDANTS"), BRIEF-IN-CHIEF**

DATED: January 30, 2025

M. Daniel Weitman, OBA #17412
Tina S. Ikpa, OBA #32193
University of Oklahoma
Office of Legal Counsel
660 Parrington Oval, Suite 213
Norman, Oklahoma 73109
Telephone: (405) 325-4124
Facsimile: (405) 325-7681
dan.weitman@ou.edu
tsikpa@ou.edu
**Attorneys for University
Defendants/Appellees**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

UNIVERSITY DEFENDANT'S BRIEF-IN-CHIEF REGARDING CERTIFIED
QUESTIONS ............................................................................................................... 1

QUESTIONS PRESENTED ........................................................................................ 2

BACKGROUND ......................................................................................................... 3

QUESTIONS ANSWERED ........................................................................................ 5

   QUESTION 1 ........................................................................................................ 5

   QUESTION 2 ...................................................................................................... 14

   QUESTION 3 ...................................................................................................... 14

CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

## Federal Cases

*Burlington Northern and Santa Fe Ry. Co. v. Grant,*
   505 F.3d 1013 (10th Cir. 2007) ................................................................. 15

*Chamber of Commerce of U.S. v. Edmondson,*
   594 F.3d 742 (10th Cir. 2010) ...................................................................... 2

*Huron Portland Cement Co. v. City of Detroit,*
   362 U.S. 440 (1960) ..................................................................................... 11

*Mink v. Suthers,*
   482 F.3d 1244 (10th Cir. 2007) .................................................................... 2

*Nebbia v. People of New York,*
   291 U.S. 502 (1934) ..................................................................................... 11

*Pyeatte v. Bd. of Regents of Univ. of Okla.,*
   102 F. Supp. 407, (W.D. Okla. 1951), *aff'd* 342 U.S. 936 (1952) .............. 9

## Oklahoma Constitution & Statutes

70 O.S. §24-157 ................................................................................................ 1

Okla. Const. art. XIII, §8 ............................................................................... 1, 9

Okla. Const. art. XIII-A, §2 .............................................................................. 6

Okla. Const. art. XIII-A, §3 .............................................................................. 6

## Oklahoma Cases

*Board of Regents of the University of Oklahoma v. Baker,*
   1981 OK 160, 638 P.2d 464 ....................................6, 7, 8, 9, 11, 12, 13, 14

*Cox v. Dawson,*
   1996 OK 11, 911 P.2d 272 ........................................................................... 16

*Davis Oil Co. v. Cloud,*
   1986 OK 73, 766 P.2d 1347 ......................................................................... 11

*Doyle v. State,*
   1973 OK CR 282, 511 P.2d 1133 ................................................................................11

*Estes v. ConocoPhillips Co.,*
   2008 OK 21, 184 P.3d 518 ..................................................................................... 15

*Fent v. Oklahoma Capitol Imp. Authority,*
   1999 OK 64, 984 P.2d 200 ............................................................................... 13, 16

*Franco v. State ex rel. Board of Regents of University of Oklahoma,*
   2020 OK CIV APP 64, 482 P.3d 1 ........................................................................9, 11

*Gilbert Central Corp. v. State,*
   1986 OK 6, 716 P.2d 654 ...................................................................................... 16

*Jobe v. State ex rel. Dep't of Pub. Safety,*
   2010 OK 50, 243 P.3d 1171 ................................................................................. 16

*Key v. Freeman,*
   1926 OK 797, 249 P. 725 ......................................................................................11

*Oklahoma Call for Report. Just. v. Drummond,*
   2023 OK 24, 526 P.3d 1123 ............................................................................ 13, 16

*Rheam v. Board of Regents,*
   1933 OK 29, 18 P.2d 535 ...................................................................................... 12

*Spearman v. Williams,*
   1966 OK 33, 415 P.2d 597, 600 .............................................................................. 13

*St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.,*
   1989 OK 139, 782 P.2d 915 ................................................................................... 13

*State ex rel. Bd. of Regents of Oklahoma State Univ. v. Oklahoma Merit Protection*
   *Com'n,* 2001 OK 17, 19 P.3d 865 ........................................................................... 9

*Trapp v. Cook Constr. Co.,*
   1909 OK 259, 105 P. 667 ........................................................................................ 8

*Tulsa Cnty. Deputy Sheriff's Fraternal Order of Police, Lodge No. 188 v. Bd. of Cnty. Comm'r of Tulsa Cnty.*, 2000 OK 2, 995 P.2d 1124 .................................................. 13

**Other Cases**

*Board of Regents of Higher Education v. Judge,*
543 P.2d 1323 (Mont. 1975).................................................................................. 7, 12

*Board of Regents of Higher Education v. State by and through Knudsen,*
512 P.3d 748 (Mont. 2022)........................................................................................... 7

*Board of Regents of the University of Michigan v. Auditor General,*
132 N.W. 1037 (Mich. 1911) ...................................................................................... 10

*Sheehy v. Comm'r of Political Practices for Montana,*
458 P.3d 309 (Mont. 2020)........................................................................................... 7

*State ex rel. University of Minnesota v. Chase,*
220 N.W. 951 (Minn. 1928) ................................................................................. 10, 11

*Sterling v. Regents of the University of Michigan,*
68 N.W. 253 (Mich. 1896) ......................................................................................... 10

*Travelscape, L.L.C. v. S.C. Dep't of Revenue,*
705 S.E.2d 28 (S.C. 2011)........................................................................................... 13

**Oklahoma Attorney General Opinions**

1987 OK AG 7, (Mar. 16, 1988)................................................................................. 12

1995 OK AG 12, (Apr. 11, 1996) ................................................................................. 9

## UNIVERSITY DEFENDANTS' BRIEF-IN-CHIEF REGARDING CERTIFIED
## QUESTIONS

Words matter. In this case, the words that matter are contained in the Oklahoma Constitution: "The **government** of the University of Oklahoma **shall be vested** in a Board of Regents..." Okla. Const. art. XIII, §8 (Emphasis added). This provision clearly contemplates that the fundamental business of the University of Oklahoma ("University") will be controlled, not by the legislature or governor, but instead by an appointed Board of Regents ("Regents"). The Regents do not just supervise, direct, or manage the University. They **are the Government of** the University. Every act of the legislature which attempts to control the University must be viewed through this lens. When the legislature takes an action that appears to intrude upon the authority of the Regents, the act must be interpreted in a way to avoid Constitutional conflict.

House Bill 1775 (codified at 70 O.S. §24-157) appears to intrude upon the Regents' authority to govern the University. It provides that:

> No enrolled student of an institution of higher education within The Oklahoma State System of Higher Education shall be required to engage in any form of mandatory gender or sexual diversity training or counseling; provided, voluntary counseling shall not be prohibited. Any orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex shall be prohibited.

70 O.S. §24-157(A)(1).

The Plaintiffs in the federal district court case, Black Emergency Response Team ("BERT"), NAACP of Oklahoma ("NAACP-OK"), the University of Oklahoma Chapter of the American Association of University Professors ("OU-AAUP"), and

others, assert that the University is an enforcer of the statute and must be enjoined because the statute violates 42 U.S.C. §1983. The University Defendants, however, assert that this statute does not apply to them. To interpret the statute as applying to the Regents or the University would be an intrusion on the Regents' constitutional authority to govern the University. Thus, the statute is inapplicable to the University. This issue is dispositive of the federal case because if the University is not an enforcer of the statute, it cannot be held liable under §1983. *See Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007); *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010)(Defendant must have a duty to enforce a statute before he can be sued for a constitutional violation).

The federal district court has determined that the State courts should determine certain questions related to the enforceability and interpretation of 70 O.S. §24-157. In furtherance of that determination, U.S. District Judge Goodwin certified six questions to this Court. Of the six, only three apply to universities and colleges and only one is specific to the Board of Regents of the University of Oklahoma, the constitutionally created state entity vested with the power of the government of the University of Oklahoma.

## QUESTIONS PRESENTED

The federal district court certified six questions to this Court. The first three have some possible applicability to the University:

1. Does Title 70, section 24-157(A)(1) of the Oklahoma Statutes violate article XII, section 8 of the Oklahoma Constitution? In other words, does the Oklahoma

2

Legislature have the power to regulate the affairs of the University of Oklahoma, or other universities or colleges impacted by the Act, to the extent done in section 24-157(A)(1)?[1]

2. As it relates to section 24-157(A)(1)'s prohibition of "[a]ny orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex," what is the meaning of the terms "requirement?"

3. As it relates to section 24-157(A)(1)'s prohibition of "[a]ny orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex," what does it mean to "present[]" race or sex stereotyping or a bias on the basis of race or sex?

## BACKGROUND

In April and May 2021, the Legislature overwhelmingly passed H.B. 1775. The House of Representatives voted 77 to 18 in favor (with 6 excused) and the Senate voted 38-9 in favor (with 1 excused). Governor Stitt signed H.B. 1775 on May 7, 2021. An emergency clause was approved, and the codified law went into effect on July 1, 2021. On October 19, 2021, BERT, OU-AAUP, NAACP-OK, and others sued each of the Regents of the University of Oklahoma in their official capacities in the United States

---

[1] The University addresses this question as applied to the University of Oklahoma Board of Regents, a constitutionally created entity of the state of Oklahoma. It does not address whether any other universities or colleges, which are managed by different Boards, are subject to the statute.

District Court for the Western District of Oklahoma.[2] The allegations made against Regents were for violations of federal law under 42 U.S.C. §1983 including violations of the First Amendment, of due process, and of equal protection. [W.D. Okla., 21-CV-1022-G, Doc. 1, amended at Doc. 50.] To paraphrase their allegations, Plaintiffs allege they are harmed because they fear enforcement of 70 O.S. §24-157 at the University, and they may be prohibited from teaching, researching, studying, or learning about topics which involve racial injustice or racial biases. Plaintiffs moved for a preliminary injunction to enjoin the University, via the Regents, from implementing 70 O.S. §24-157. The Regents responded by filing motions which argued that, to the extent 70 O.S. §24-157 impacts or attempts to address curriculum, it does not apply to the University as the legislature is without authority to dictate curriculum to the University. [*See Order Certifying State-Law Questions to the Oklahoma Supreme Court*, pp. 5-6.] Since the Legislature cannot regulate curriculum nor curricular speech, the University does not enforce the law such that its Regents can be sued under §1983. *Id.* Plaintiffs never substantively responded to that argument. On June 14, 2024, the federal district court sustained the University's Motion to Dismiss in part and denied it in part. The federal district court determined that the University plausibly asserted that 70 O.S. §24-157 would violate the Oklahoma Constitution if applied to the University. However, there was no conclusive authority supporting that position. [W.D. Okla., 21-CV-1022-G, Doc.

---

[2] NAACP-OK and some individual plaintiffs also joined to sue the remaining Defendants including the State Board of Education, Governor Stitt, Gentner Drummond, Ryan Walters, and the Edmond School District.

172, p. 20.] Thus, the federal district court determined that certifying the question to this Court was the appropriate means of resolving the question. [*Id.*, at pp. 20-22.]

## QUESTIONS ANSWERED

**QUESTION 1** - Does Title 70, section 24-157(A)(1) of the Oklahoma Statutes violate article XII, section 8 of the Oklahoma Constitution? In other words, does the Oklahoma Legislature have the power to regulate the affairs of the University of Oklahoma, or other universities or colleges impacted by the Act, to the extent done in section 24-157(A)(1)?

**ANSWER** – The Oklahoma Legislature lacks the power to regulate the University of Oklahoma to the extent recited in 70 O.S. §24-157 and this Court should therefore determine that the statute does not apply to the University of Oklahoma.

From statehood until 1944, the University of Oklahoma was a creation of statute. Politics played a major role in the University's operations. Administration and faculty positions were changed each time there was a new, controlling political party in state government. *See* David W. Levy, *University of Oklahoma*, The Encyclopedia of Oklahoma History and Culture.[3] To increase Oklahoma's higher education reputation nationwide, Oklahomans recognized the need for a deliberate separation of higher education and politics. The enactment of Article XIII-A of the Oklahoma Constitution was designed to rectify this issue. Ruth Ann Dreyer, *Oklahoma State Regents for Higher*

---

[3] Available at https://www.okhistory.org/publications/enc/entry?entry=UN010 (last visited January 15, 2025) (identifying the various University of Oklahoma presidents who were replaced during each Governor's administration).

*Education*, The Encyclopedia of Oklahoma History and Culture.[4] In 1941, the Oklahoma State Regents for Higher Education (OSRHE) was constitutionally created through Article XIII-A, §2. The OSRHE was designated as the coordinating board of control for all state institutions of higher education. *Id*. This was the first step in creating the Oklahoma State System for Higher Education, of which the University of Oklahoma was a part. Part of the function of the OSRHE is to receive higher education appropriations from the legislature and then distribute those appropriations to the System's schools. In this way, the legislature is removed from directly appropriating money to each institution and cannot control each institution through appropriations. Okla. Const. art. XIII-A, §3.

In 1944, the Board of Regents of the University of Oklahoma was elevated from a statutory entity to a constitutional entity by way of a statewide vote. SJR 2, Section 1, State Question 311, Legislative Referendum 88, adopted at an election held July 1, 1944. In that election, the people approved the language which is still applicable today: "The government of the University of Oklahoma shall be vested in a Board of Regents..." As this Court has noted, "[w]e have no doubt that in elevating the status of the Board from a statutory to a constitutional entity the people intended to limit legislative control over University affairs." *Board of Regents of the University of Oklahoma v. Baker*, 1981 OK 160, ¶ 8, 638 P.2d 464, 469.

---

[4] Available at https://www.okhistory.org/publications/enc/entry.php?entry=OK081 (last visited January 15, 2025)

In *Baker*, the question presented was whether the Board of Regents of the University of Oklahoma was required to give salary raises to its employees when the legislature had required that all state employees receive raises. This Court held that it was within the Regents' sole authority to decide University employee salaries and that the legislature was without authority to require that the University give raises to its employees. 1981 OK 160, ¶ 20. In reaching this conclusion, the Court analyzed similar constitutional university boards from other jurisdictions, such as Nebraska, California, and Montana. Although these states all have varied provisions, the Court found some common conclusions persuasive. *Id.*, at ¶ 9. Particularly, constitutional university boards, unlike statutorily created university boards, are intended to be independent bodies charged with the power to govern the universities. *Id.*, at ¶ 19. The Court specifically discussed the Montana University System, noting that the Montana Supreme Court has determined that setting personnel policies and determining priorities, such as salaries of university officials, is a power that is constitutionally vested with their Board of Regents. *Id.*, at ¶ 11. (citing *Board of Regents of Higher Education v. Judge*, 543 P.2d 1323 (Mont. 1975)).[5] After analyzing these other states' treatment of constitutionally created boards, the Court determined that:

---

[5] The Montana Supreme Court has since determined that Montana Legislature's elevation of the Montana University System Board of Regents of Higher Education ("MUS") to a constitutional entity, gave it "full power, responsibility, and authority to supervise, coordinate, manage and control[.]." *Board of Regents of Higher Education v. State by and through Knudsen*, 512 P.3d 748, 751 (Mont. 2022). The Montana Supreme Court determined that MUS's powers included "all things necessary and proper to the exercise of its general powers." *Id.*, at 753 (citing *Sheehy v. Comm'r of Political Practices for Montana*, 458 P.3d 309, 314-15 (Mont. 2020)). MUS has the

The Board of Regents of the University of Oklahoma [is] an independent body charged with the power to govern the University. While constitutionally assured independence cannot be equated with complete immunity for legislative regulation, it is unnecessary for us to fully examine here the nature and extent of legislative regulation applicable to the Board. The determination of faculty salaries is clearly an integral part of the power to govern the University and a function essential in preserving the independence of the Board…. Decisions about the level and manner of distributing salary increases directly relate to and affect judgments on individual needs and performance as well as institutional needs and resources.

*Id.*, at ¶¶ 19-20.

*Baker* was not an anomaly. Both before and after *Baker*, there have been cases examining the breadth of Oklahoma constitutional entities, including constitutionally created Boards of Regents. For example, this Court determined that the Legislature could not diminish the Board of Regents of the Oklahoma A&M Colleges' power or delegate authority to another agency. *Trapp v. Cook Constr. Co.*, 1909 OK 259, 105 P. 667. The *Trapp* Court found the A&M Board was not subject to the Oklahoma Central Purchasing Act because its elevation from a statutory to a constitutional board gave it the power to contract for and construct buildings. 1909 OK 259, ¶ 10. This Court held that when they were elevated to a constitutional entity, the Regents maintained all oversight and construction of facilities. *Id.*

The Oklahoma Court of Civil Appeals has recognized that the Board of Regents of the University of Oklahoma is the "governing body" of the University. *Franco v.*

---

power and the duty to ensure the "health and stability of the MUS." *Id.*, at 753. Accordingly, the Legislature could not regulate MUS's policy regarding guns on campus. *Id.*, at 755-56.

*State ex rel. Board of Regents of University of Oklahoma*, 2020 OK CIV APP 64, ¶ 28, 482 P.3d 1, 9. In so recognizing this governance, the Oklahoma Court of Civil Appeals referenced a decision from the United States District Court for the Western District of Oklahoma, that was affirmed by the Supreme Court, holding that the Board of Regents has broad constitutional authority. *Id.* (citing *Pyeatte v. Board of Regents of University of Oklahoma*, 102 F. Supp. 407, 410 (W.D. Okla. 1951), *aff'd* 342 U.S. 936 (1952)).

In *State ex rel. Board of Regents of Oklahoma State University v. Oklahoma Merit Protection Com'n*, 2001 OK 17, 19 P.3d 865, the Oklahoma Supreme Court found the Oklahoma Personnel Act ("OPA") inapplicable to constitutionally created boards because "the Legislature is powerless to delegate the [boards'] constitutional control over the management of their institutions to any department, commission or agency of state government." 2001 OK 17, ¶ 1. An Act which appears to contravene the fundamental power granted to a constitutional entity clearly offends the exclusive authority granted to that entity. *Id.* This statement is in accordance with this Court's pronouncement that "[e]very positive delegation of power by the Constitution to one officer or department of government implies a negation of its exercise by any other officer or department." *Baker*, at ¶ 7; *see also* 1995 OK AG 12, (Apr. 11, 1996) (Legislature's approval of a hiring freeze could not be applied to Boards created by the Constitution).

The Oklahoma Constitution vests the Board of Regents the government of the University. Okla. Const. art. XIII, §8. There is no Oklahoma case law defining government exactly. Black's Law Dictionary defines "government" as:

9

1.  The structure of principles and rules determining how a state or organization is regulated;
2.  The sovereign power in a country or state; the political and administrative authority of a state;
3.  An organization through which a body of people exercises political authority; the machinery by which sovereign power is expressed.

Black's Law Dictionary (12th ed. 2024).

When a constitution vests the power of government in a board of regents, other states have declared that the regents' authority is extremely broad. For example, in *Sterling v. Regents of the University of Michigan*, the Michigan Supreme Court held:

> The board of regents and the legislature derive their power from the same supreme authority, namely, the constitution.  In so far as the powers of each are defined by that instrument, limitations are imposed, and a direct power conferred on one necessarily excludes its existence in the other.... They are separate and distinct constitutional bodies with the power of the regents defined.  By no rule of construction can it be held that either can encroach upon or exercise the powers conferred upon the other.

68 N.W. 253, 257 (Mich. 1896). The Supreme Court of Michigan spoke again in *Board of Regents of the University of Michigan v. Auditor General*:

> ...The Board of Regents is made the highest form of juristic person known to the law, a constitutional corporation of independent authority, which, within the scope of its functions, is co-ordinate with and equal to that of the Legislature.

132 N.W. 1037, 1040 (Mich. 1911).

The Minnesota Supreme Court has spoken on this issue as well. In *State ex rel. University of Minnesota v. Chase*, 220 N.W. 951 (Minn. 1928), it was held that vesting the government of the university in a board of regents gave those regents the power to control the university. The Court explained:

10

> [T]he purpose of the Constitution remains clear. It was to put the management of the greatest state educational institution beyond the dangers of vacillating policy, ill-informed or careless meddling and partisan ambition that would be possible in the case of management by either Legislature or executive, chosen at frequent intervals and for functions and because of qualities and activities vastly different from those which qualify for the management of an institution of higher education.

*Id.*, at 957.

Although the authority of the Regents is broad, as *Baker* and *Franco* point out, the authority to govern the University does not insulate the Regents from all acts of the legislature. Though this Court has declined in the past to wrestle with the types of acts which do or do not offend the Regents' authority under the Constitution, the Oklahoma Attorney General has written at least one opinion attempting to outline the legislative acts which may be permissible. Those are: (1) through the power of appropriations which would indirectly control the University's internal affairs, (2) general police power[6] regulations governing private persons and corporations, and (3) regulation of an agency in a way that is not generally applicable to the public if the regulation touches

---

[6] Police power is the inherent authority of a sovereign to regulate personal and property rights related to public health, public safety, and public welfare determined on a case-by-case basis. *See, e.g. Nebbia v. People of New York*, 291 U.S. 502 (1934) (holding that legislation controlling the sale of milk was well within a state's police powers); *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440 (1960) (holding legislation regarding pollution is within a state's police power). *Davis Oil Co. v. Cloud*, 1986 OK 73, 766 P.2d 1347 (legislature has general police power to establish and eliminate personal rights in causes of action). The Legislature has the power to define those acts or omissions that constitute a criminal offense and its punishment. *Doyle v. State*, 1973, OK CR 282, 511 P.2d 1133. The Legislature can determine what is a nuisance and how to abate it. *Key v. Freeman*, 1926 OK 797, ¶ 7, 249 P. 725, 726.

matters of statewide concern and does not involve internal university affairs. 1987 OK AG 7, (Mar. 16, 1988) (citing *Baker,* 638 P.2d at 469).

Just as it was determined to be unnecessary in *Baker,* this Court does not need to wrestle with the tension between the Regents' authority and the Legislature's authority over the University. This matter could not be clearer. What orientations, trainings, curricula, or other educational requirements the University places upon its students are central to the authority that the Regents have in governing the University. *Baker*, at fn. 2 (referring to the broad authority of the Regents as expressed in *Rheam v. Board of Regents of University of Oklahoma*, 1933 OK 29, 18 P.2d 535, decided before the Board's elevation to the constitutional entity). Dictating what University orientations, classroom requirements, curricula, research, or speech are allowed on any given subject is not within the general police power of the legislature, nor is it a permissible regulation of a constitutional entity, as it involves internal University affairs. In fact, there is nothing more central to the University than its decisions as to what curricula and educational requirements exist on its campuses. *Board of Regents of Higher Education v. Judge*, 543 P.2d at 1335 ("Inherent in the constitutional provision granting the Regents their power is the realization that the Board of Regents is the competent body for determining priorities in higher education."). Thus, the Regents have sole discretion to determine what may or may not be taught, researched, or spoken about on campus, and their determination cannot be disturbed by the legislature.[7]

---

[7] To this end, the University of Oklahoma adheres to the Chicago Principles of Academic                                                                  Freedom.

From the above, it is clear that the legislature is without the authority to dictate to the Regents what orientations, trainings, or classes they can or cannot provide or even mandate to the students, what the curriculum of any class must or must not contain, or what areas of research or academics can be pursued by University faculty, staff, and students. The first question posed by the federal district court asks the question whether 70 O.S. §24-157 violates the Oklahoma Constitution through its overreach. It is axiomatic that this Court should presume legislative acts as constitutional and should interpret them in a way to preserve their constitutionality when possible. *See Spearman v. Williams*, 1966 OK 33 at ¶¶ 9-10, 415 P.2d 597, 600. All statutory provisions must be given effect if possible. *Oklahoma Call for Report. Just. v. Drummond*, 2023 OK 24, ¶ 14, 526 P.3d 1123, 1132. A court is bound to accept an interpretation of a statute which avoids unnecessary constitutional entanglements. *Fent v. Oklahoma Capitol Imp. Authority*, 1999 OK 64, ¶ 3, 984 P.2d 200, 204. If a statute is invalid against one party only, the facial validity of the statute remains. *Travelscape, L.L.C. v. S.C. Dep't of Revenue*, 705 S.E.2d 28, 39 (S.C. 2011). *See also Tulsa Cnty. Deputy Sheriff's Fraternal Order of Police, Lodge No. 188 v. Bd. of Cnty. Comm'r of Tulsa Cnty.*, 2000 OK 2, 995 P.2d 1124 (Opala, J., dissenting ¶¶ 9–10) (citing *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.*, 1989 OK 139, ¶ 10, 782 P.2d 915, 917). Similarly, in *Baker* this Court did not

---

https://provost.uchicago.edu/sites/default/files/documents/reports/FOECommitteeRep ort.pdf, adopted by the University of Oklahoma in November 2022, https://tinyurl.com/ms6sjvcb. Even before the formal adoption of the Chicago Principles, University President Joe Harroz issued an open letter making clear that H.B. 1775 would not impact academic freedom, and even if it was the legislature's intent to dictate curriculum, it would not pass constitutional muster. https://tinyurl.com/2drjss59

strike the statute at issue down in all its applications but only as applied to the University of Oklahoma. *Baker*, at ¶¶ 2, 20.

As stated above, the Regents take no position on the constitutionality or applicability of 70 O.S. §24-157 to any other school or college other than the campuses governed by the Board of Regents of the University of Oklahoma. Any application of 70 O.S. §24-157 to the campuses governed by the Board of Regents of the University of Oklahoma would run afoul of Oklahoma's constitution because the law, as applied to the University of Oklahoma, exceeds the authority of the legislature. Thus, this Honorable Court should rule that 70 O.S. §24-157 is inapplicable to the Board of Regents of the University of Oklahoma (or unconstitutional as applied to the Board of Regents of the University of Oklahoma). The University takes no position on 70 O.S. §24-157's application to any other entity.

**QUESTION 2** - As it relates to section 24-157(A)(1)'s prohibition of "[a]ny orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex," what is the meaning of the terms "requirement?"

**QUESTION 3** - As it relates to section 24-157(A)(1)'s prohibition of "[a]ny orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex," what does it mean to "present[]" race or sex stereotyping or a bias on the basis of race or sex?

**ANSWER** - Questions Two and Three can be answered together. 70 O.S. §24-157 intends to prohibit colleges and universities from requiring (making mandatory) trainings or orientations which stereotype or prejudice[8] one race or gender over another.

The federal district court asked this Court to determine the meaning of specific terms and phrases used in the second sentence of Section (A)(1) of 70 O.S. §24-157. Specifically, the words "requirement" and the phrase "present race or sex stereotyping or a bias on the basis of race or sex." The ambiguity, according to the district court, is whether these terms indicate a legislative instruction for the University to interfere with classroom instructions, curriculum, or other requirements. [*See* W.D. Okla. 21-CV-1022-G, Doc. 172, pp 13-17.] The University posits that, although the statute as a whole does not apply to the University of Oklahoma, a fair reading of the particular terms of the statute demonstrate that those terms do not apply to any university or college curriculum, research, or academic freedoms and should be interpreted as only prohibiting mandatory orientations and trainings.

A court's primary goal in interpreting a statute is to determine legislative intent, starting by examining the entire act in light of its general purpose and objectives using the "plain and ordinary meaning of the language employed in the text." *Burlington Northern and Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1025 (10th Cir. 2007). Only when a statute's meaning is ambiguous or unclear are rules of statutory construction invoked. *See Estes v. ConocoPhillips Co.*, 2008 OK 21, ¶ 16, 184 P.3d 518, 525; *see*

---

[8]    Merriam    Webster,    Dictionary,    *bias*,    https://www.merriam-webster.com/dictionary/bias (last accessed January 21, 2025).

*also Jobe v. State ex rel. Dep't of Pub. Safety*, 2010 OK 50, ¶ 13, 243 P.3d 1171, 1175. All statutory provisions must be given effect if possible. *Oklahoma Call for Report. Just.*, 2023 OK 24, ¶ 14; *see also Cox v. Dawson*, 1996 OK 11, ¶ 6, 911 P.2d 272, 276 (Statutes are interpreted to avoid "absurdity" and "discriminatory treatment.").

If there are two possible interpretations of a statute and one of these interpretations would render the statute unconstitutional, a court is "bound to accept an interpretation that avoids constitutional doubt as to the legality of a legislative enactment." *Fent*, 1999 OK 4, ¶ 3; *Gilbert Central Corp. v. State*, 1986 OK 6, 716 P.2d 654, 658 (A court is bound to accept an interpretation that avoids constitutional doubt as to the legality of a legislative enactment).

In the matter at bar, the federal court determined that the words and phrases at issue are vague and that the federal court is powerless to give a narrowing construction to the terms. It therefore needs this Court to clarify their meanings. [*See Order Certifying State-Law Questions* at 6-7.] On the one hand, the Regents have taken the statute to mean that it prohibits mandatory orientations or the like which advance[9] a sex or race bias. The Plaintiffs believe, and the federal court was concerned, that the statute might reach classroom requirements or areas of study which involve sex or race bias. The Plaintiffs' reading of the statute entangles the wording of the statute with the concept of academic freedom, Oklahoma's Constitutional Free Speech Clause, and the

---

[9] Thesaurus.com, *present*, https://www.thesaurus.com/browse/present (Last accessed January 27, 2025).

First Amendment to the United States Constitution. There is no reason to wrestle with this entanglement.

To stay consistent with the Constitution, the statute should be construed to mean nothing more than a college or university may not "require" or make mandatory any orientations that advance a racial bias. This is consistent with the first sentence of Section 1 (No enrolled student... shall be **required** to engage in any form of **mandatory gender or sexual diversity training** or counseling ..."), and it avoids the Constitutional entanglement of H.B. 1775's potential intrusion into academic freedom or free speech. In fact, this is how the University interpreted the language of H.B. 1775 when, out of respect to the legislature, it voluntarily changed its required diversity, equity, and inclusion training from mandatory to voluntary. *See* Letter from University President Joe Harroz https://tinyurl.com/2drjss59. Merely expressing what a university may make mandatory is substantively different than determining what a professor may say or teach in his or her classroom. With this reasonable interpretation, the entanglement of free speech rights and academic freedom is avoided.

## CONCLUSION

Words matter. Pursuant to the Constitution, the Board of Regents **IS** the **GOVERNMENT** of the University of Oklahoma. This necessarily includes the authority to determine what orientations, training, curriculum, and research can occur on the campuses governed by the Regents. The Regents' discretion in this area cannot be disturbed, even by the legislature. This Court should hold and declare that 70 O.S. §24-157 is inapplicable to the Board of Regents of the University of Oklahoma and that

17

the Regents are not compelled to enforce 70 O.S. §24-157. Any attempt to apply it to the University, as Plaintiffs ask the federal court to do, would run afoul of Oklahoma's Constitution.

Respectfully submitted,

M. Daniel Weitman, OBA #17412
Tina S. Ikpa, OBA #32193
University of Oklahoma
Office of Legal Counsel
660 Parrington Oval, Suite 213
Norman, Oklahoma 73109
Telephone: (405) 325-4124
Facsimile: (405) 325-7681
dan.weitman@ou.edu
tsikpa@ou.edu
**Attorneys for University Defendants/Appellees**

## CERTIFICATE OF MAILING

The undersigned hereby certifies that on this 30th day of January 2025, a true and correct copy of the foregoing was mailed via first class U.S. mail all postage prepaid to:

Megan Lambert
Adam Hines
American Civil Liberties Union
Foundation of Oklahoma
P.O. Box 13327
Oklahoma City, OK 73113

Maya Brodziak
Zakiya Shani Lewis
Sumayya Saleh
Lawyers' Committee for Civil
Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005

Emerson Sykes
Leah Watson
Sarah Hinger
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004

Douglas Koff
Julia Beskin
Kevin Scot Johns
Sara Solfanelli
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

Gary Gaskins
Zachary P. West
William Flanagan
Attorney General's Office
313 NE 21st St
Oklahoma City, OK 73105

M. Daniel Weitman

19