# EXHIBIT 3

**ORIGINAL** 

FILED
SUPREME COURT
STATE OF OKLAHOMA

MAR - 3 2025

JOHN D. HADDEN
CLERK

Case No. CQ-122472

# IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

BLACK EMERGENCY RESPONSE TEAM, et al.,
Plaintiffs/Appellants,

v.

GENTNER DRUMMOND, in his official capacity as
Oklahoma Attorney General, et al.,
Defendants/Appellees.

Received:
Docketed: 3-3-25
Marshal: 3-3
COA/OKC:
COA/TUL:

CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
HONORABLE CHARLES B. GOODWIN, DISTRICT JUDGE
Case No. 21-CV-1022-G

**DEFENDANTS/APPELLEES', JOHN R. BRAUGHT, ROBERT ROSS, NATALIE SHIRLEY, ERIC STEVENSON, ANITA HOLLOWAY, KENNETH S. WAITS, AND RICK NAGEL, in their official capacities as members of the Board of Regents of the University of Oklahoma ("UNIVERSITY DEFENDANTS"), ANSWER BRIEF**

DATED: March 3, 2025

M. Daniel Weitman, OBA #17412
Tina S. Ikpa, OBA #32193
University of Oklahoma
Office of Legal Counsel
660 Parrington Oval, Suite 213
Norman, Oklahoma 73109
Telephone: (405) 325-4124
Facsimile: (405) 325-7681
dan.weitman@ou.edu
tsikpa@ou.edu
**Attorneys for University Defendants/Appellees**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii
UNIVERSITY'S ANSWER TO BRIEFS IN CHIEF OF THE PLAINTIFFS AND THE STATE DEFENDANTS ................................................................................................ 1
QUESTION ONE ................................................................................................................. 1
ANSWER TO PLAINTIFFS/APPELLANTS' BRIEF IN CHIEF ....................................... 1
ANSWER TO STATE DEFENDANTS/APPELLEES' BRIEF IN CHIEF ........................ 4
QUESTIONS TWO AND THREE ................................................................................... 10
CONCLUSION ................................................................................................................. 12

# TABLE OF AUTHORITIES

**Federal Cases**

*Allen v. Wright*,
  468 U.S. 737 (1984)......................................................................................................... 6

*Chamber of Commerce of U.S. v. Edmondson*,
  594 F.3d 742 (10th Cir. 2010)......................................................................................... 6

*Mink v. Suthers*,
  482 F.3d 1244 (10th Cir. 2007)....................................................................................... 6

**Oklahoma Constitution & Statutes**

20 O.S. §1602..................................................................................................................... 7

22 O.S. §§1181, 1181.1 .................................................................................................... 10

Okla. Const. art. V, § 22 .................................................................................................... 3

Okla. Const. art. XIII, §8............................................................................................. 9, 10

**Oklahoma Cases**

*Ball v. Wilshire Ins. Co*,
  2007 OK 80, 184 P.3d 463 ............................................................................................. 8

*Board of Regents of the University of Oklahoma v. Baker*,
  1981 OK 160, 638 P.2d 464 ........................................................................................ 2, 9

*Franco v. State, ex rel. Board of Regents of University of Oklahoma*,
  2020 OK CIV APP 64, 482 P.3d 1 ................................................................................. 9

*Gilbert Central Corp. v. State*,
  1986 OK 6, 716 P.2d 654 .............................................................................................. 11

*State, ex rel Bd. of Regents of Oklahoma State University v. Oklahoma Merit Protection Com'n*, 2001 OK 17, 19 P.3d 865 .................................................................................. 3

**Other Cases**

*Board of Regents of Higher Education v. Judge,*
  543 P.2d 1323 (Mont. 1975) .................................................................................. 2

**Oklahoma Attorney General Opinions**

1987 OK AG 7 (Mar. 16, 1988) ................................................................................. 9

## UNIVERSITY'S ANSWER TO BRIEFS IN CHIEF OF THE PLAINTIFFS AND THE STATE DEFENDANTS

The Defendants/Appellees, John R. Braught, Robert Ross, Natalie Shirley, Eric Stevenson, Anita Holloway, Kenneth S. Waits, And Rick Nagel (University Defendants or University), pursuant to this Honorable Court's order of December 16, 2024, hereby submit their response to the Briefs in Chief of the Plaintiffs/Appellants and the State Defendants/Appellees.

### QUESTION ONE

Does Title 70, section 24-157(A)(1) of the Oklahoma Statutes violate article XII, section 8 of the Oklahoma Constitution? In other words, does the Oklahoma Legislature have the power to regulate the affairs of the University of Oklahoma, or other universities or colleges impacted by the Act, to the extent done in section 24-157(A)(1)?

### ANSWER TO PLAINTIFFS/APPELLANTS' BRIEF IN CHIEF

Procedurally, this case is in an odd posture, which was created by the Plaintiffs in their naming the University as a Defendant in this lawsuit and by now asserting that H.B. 1775 (codified at 70 O.S. §24-157) is an unconstitutional attempt to control University affairs. Plaintiffs have sued the University in federal court as an enforcer of 70 O.S. §24-157, while simultaneously arguing that the legislature was without authority to impose the requirements of 70 O.S. §24-157 upon the University in the first place. This begs the question: if it is true that the legislature cannot intrude upon the University's core functions, then why is the University being sued as an enforcer of the law?

While the above is an interesting question, it creates an academic exercise for another day. Importantly, the Plaintiffs/Appellants agree with the University that, to the

1

extent the legislature intended 70 O.S. §24-157 to apply to the University, it runs afoul of the Oklahoma Constitution. Based on that agreement, this Honorable Court can answer the federal district court's question by declaring that the legislature was without the authority to impose 70 O.S. §24-157 upon the University and can declare 70 O.S. §24-157 unconstitutional as applied to the University. However, the University's position is more nuanced, and the University believes that this Court can instead declare that 70 O.S. §24-157 simply does not apply to the University. This would have the effect of answering the federal district court's question, without the need to wrestle with whether the law should be declared unconstitutional.

While 70 O.S. §24-157 could appear to apply to all universities and colleges, this Court has already declared that the Board of Regents of the University of Oklahoma (Regents) is not subject to the control of the legislature, in at least so far as the University's core or integral functions are concerned. *See Board of Regents of the University of Oklahoma v. Baker*, 1981 OK 160, ¶ 8, 638 P.2d 464, 469. Of course, nothing can be more central or integral to the mission of the University than its curriculum, which necessarily includes what orientations and trainings the University requires its students to take. *Board of Regents of Higher Education v. Judge*, 543 P.2d 1323 (Mont. 1975), cited with approval by *Baker* 1981 OK at ¶12 (the Board of Regents is the competent body for determining priorities in higher education). Because the constitution limits the legislature's power to regulate the University, unless a statute specifically states otherwise, that statute must be considered in conformance with the constitution. That is, to the extent that an entity is constitutionally exempt from the legislature's application of a law, the law should be read

2

as not applicable to the exempt entity in the first instance. This Court then avoids difficult interpretations of substantive constitutional law through an initial determination that the law at issue does not even apply to the exempt entity. In this case, the law at issue does not apply to the University.

Though it would be a rare event where the legislature lacks authority to pass laws which affect certain exempt or immune entities, such an event can occasionally arise. For instance, the legislature may pass a law that applies to state agencies that would incidentally appear to also regulate a constitutionally created Board, Commission, or Agency. *See, e.g., State, ex rel Bd. of Regents of Oklahoma State University v. Oklahoma Merit Protection Com'n*, 2001 OK 17, 19 P.3d 865 (Whistleblower Act which applied generally to state agencies could not be applied to constitutionally created Board of Regents). Another instance would be when the legislature passes a law which, through broad application, incidentally appears to affect a person with immunity. An example of such a law would be a speed limit on Oklahoma's highways, which will not apply to a legislator who is headed to the Capitol to take a vote or to a foreign diplomat who has immunity. *See* Okla. Const. art. V, § 22.; 22 U.S.C. §§254a-258a. In those cases, we do not say that the law is unconstitutional, we simply say that the law does not apply to those entities in those circumstances. There is no need for legislature to specifically carve out these entities in the text of every statute; their exemptions simply exist as a matter of law. The same holds true in the University's relationship to 70 O.S. §24-157. The law may or may not be constitutional in substance, however; it simply does not apply to the University.

3

The posture in this matter leaves the Court in a procedurally unique circumstance. The law would not be considered unconstitutional unless someone attempts to apply it to the constitutionally created entity. In which case, it would be the *application* of the law to that entity which is unconstitutional. In the federal district court, Plaintiffs have sued the University alleging that the University enforces the law, and now Plaintiffs claim that the statute as applied to the University violates the State's Constitution. Thus, the only unconstitutional application of the law is in the Plaintiffs' implausible interpretation of it. Nonetheless, this Court can avoid that quagmire by answering Judge Goodwin's question as he worded it in the alternative, "In other words, does the Oklahoma Legislature have the power to regulate the affairs of the University of Oklahoma to the extent done in section 24-157(A)(1)?" The answer to that question, upon which the University and the Plaintiffs agree, is no. The legislature's power is limited by the Oklahoma Constitution and a law of general application passed by the legislature is presumed to not apply to exempt entities.

To the extent that this Court determines that the legislature did, in fact, intend to include the University as a covered entity in 70 O.S. §24-157, the University Defendants state, and the Plaintiffs agree, that the legislature was without authority to do so. As discussed in the University's Brief-in-Chief, this court should consider that Act to be unconstitutional as applied.

## ANSWER TO STATE DEFENDANTS/APPELLEES' BRIEF IN CHIEF

The State Defendants assert in their Brief in Chief that, because of their characterizations of the argument made in the University's Motion to Dismiss, this Court is without jurisdiction to answer Question One. The State Defendants also argue that should

4

this Court decide to answer the question, 70 O.S. §24-157 can be applied to the University because providing particular orientations or training to students is not part of the University's core function. Furthermore, they argue, if the legislature can't regulate the University, then the University is not accountable to the public. None of those positions should control this Court's decision.

First, the University Defendants dispute the characterization that the constitutionality of 70 O.S. §24-157 was <u>only</u> raised in the context of a constitutional avoidance argument. In fact, the direct constitutional question was raised a number of times by the University. *See, e.g.,* University Defendants' Motion to Dismiss, [W.D. Okla. 21-CV-1022-G, Doc. 51, at 11-12] (whether training or orientations are optional or mandatory is wholly within the discretion of the Board of Regents); University Defendants' Response to Plaintiffs' Motion for Preliminary Injunction, [W.D. Okla. 21-CV-1022-G, Doc. 58 at 7] (the Board of Regents maintains constitutionally assured independence from legislative regulation which interferes with the Board's ability to govern the University). To the extent there was any ambiguity to the University's position, the University made clear at oral argument its position on its constitutional right of independent from the Oklahoma legislature. *See* [W.D. Okla. 21-CV-1022-G, Doc. 162 at 40-41].

How the parties characterize the arguments made in the district court briefing is not dispositive of whether this Court has jurisdiction to answer the certified questions, however. The federal district court indicated that it has been adequately raised as an issue in the case below, it has squarely put the question before this Court by way of the

5

Certification Order, and the answer to the question may be determinative of the claims made against the University.

In its order granting in part and overruling in part the University's Motion to Dismiss, the federal district court stated, "Therefore, although the University Defendants plausibly suggest that section 24-157(a)(1) may violate Article XIII, they fail to identify any authority which conclusively supports their contention. Nor is the Court aware of any such authority." [W.D. Okla. 21-CV-1022-G, Doc. 172, pg. 20]. Then, in its order certifying the question to this Court, the federal court pointed out that the University put the power of the legislature to dictate academic content squarely before the court. [Certification Order, p. 6]. The Court, in turn, certified Question One, which now puts the question squarely before this Court.

The answer to the question of the legislature's authority to regulate the affairs of the University is determinative of issues before the district court. Indeed, the analysis of whether a Plaintiff may bring a § 1983 lawsuit against individuals in their official capacities, such as the members of the Board of Regents, turns in large part on whether the University is required or compelled to enforce the law which has been challenged. If the University is not required to enforce the law, then a ruling against the University in federal court will not redress the claims of the Plaintiffs. The University Defendants could not, then, be proper parties and the claims against them may be dismissed. *See Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007); *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010)(Defendant must have a particular duty to enforce a statute before he can be sued for a constitutional violation); *Allen v. Wright*, 468 U.S. 737, 751 (and fn. 19)(1984)

6

("The requirement of standing, however, has a core component derived directly from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendants' allegedly unlawful conduct and likely to be redressed by the requested relief."). Simply put, if a law does not apply to the University Defendants, an order enjoining them from enforcing the law has no meaning. Thus, an answer that effectively dismisses parties from a case is certainly significant enough to be considered determinative. If this Court determines that 70 O.S. §24-157 does not apply to the University, or if it declares that it was unconstitutional for the legislature to impose 70 O.S. §24-157 upon the University, then the University does not enforce the statute and University Defendants should be dismissed from the case. Therefore, "the answer [from this Court] <u>may</u> be determinative of <u>an</u> issue pending litigation in the certifying court." 20 O.S. §1602.

In fact, the State Defendants concede the point: "At most, the certifying court could determine that Plaintiff's claims regarding higher education fail on the grounds that the Oklahoma Supreme Court opined that applying the Act to the University of Oklahoma could not be done lawfully. This outcome would result in the dismissal of Plaintiffs claims regarding higher education but would not trigger any sort of relief against the Act." [State Defendants' Opening Brief at 11-12]. Thus, the State Defendants recognize that this Court's answer to Question One would be determinative of whether the University (and possibly other higher education entities) should remain in the case. That is all that is required for this Court to maintain jurisdiction.

Nevertheless, State Defendants argue that an answer to Question One given by this Court would only be advisory because this Court is not called upon to issue a "declaratory

7

judgment or injunction." [State Defendants' Opening Brief at 11]. It is certainly true that as a general rule this Court does not give advisory opinions, and the rule holds true even when a certified question is presented. *See, e.g., Ball v. Wilshire Ins. Co*, 2007 OK 80, 184 P.3d 463 (any answer to a certified question would be advisory before the certifying court determines whether it has jurisdiction over the underlying claims). However, just because this Court is not called upon to enter a declaratory judgment or an injunction does not, in and of itself, make its decision advisory. Under the Certified Questions Act, a federal court is permitted to pose questions to this Court, and this Court is authorized to answer questions regarding novel issues of Oklahoma law when the answer to the questions may be determinative of an issue pending in the federal case. In this matter, the federal district court is already satisfied that it has jurisdiction, and it has moved on to deciding the substance of the case. This is not an instance, such as in *Ball*, where this Court's opinion may not matter in the federal case at all.

Next, the State Defendants argue that 70 O.S. §24-157 is constitutional. They argue that 70 O.S. §24-157 does not touch the University's core or integral affairs because it only applies to mandatory orientations and training. [State Defendants' Opening Brief at 14]. State Defendants proffer that, "nothing in *Baker* expressly indicates that the University's 'core' 'internal university affairs' extend to any and all student interaction." *Id*. Plaintiffs cite no cases that infer that the curriculum, orientations or training is not central to the mission of the University. In fact, the jurisprudence in Oklahoma is exactly the opposite. The Board of Regents has the power to control decisions regarding the welfare, morals and education of the students. *Franco v. State, ex rel. Board of Regents of University of*

8

*Oklahoma*, 2020 OK CIV APP 64, ¶28, 482 P.3d 1, 9. This would necessarily include which orientations or training are necessary to further the students' University learning. Thus, the legislature is without authority to dictate to the University what student orientation or training is required.[1]

Next, the State Defendants make an appeal to public policy. They allege that if this Court determines that the legislature lacks the authority to dictate educational requirements to the University, then the legislature and the people of the State would be virtually powerless to regulate the University in nearly any way. [State Defendants' Opening Brief at 4]. Of course, this hyperbole by the State Defendants overlooks the fact that the Board of Regents was elevated to a constitutional office in order to insulate it from politics. *See Baker* at ¶8 ("We have no doubt that in elevating the status of the Board from a statutory to a constitutional entity the people intended to limit legislative control over University affairs."). However, its insulation from the reactionary politics of the political branches does not make it unanswerable to the people. For one, the legislature can control the University through appropriations. *See* 1987 OK AG 7 (Mar. 16, 1988)(citing *Baker*, 638 P.2d at 469). Further, the Regents are nominated by the Governor with advice and consent of the Senate, all of whom are answerable to the people. Okla. Const. art. XIII, §8. Each Regent is appointed for a fixed term and is subject to not being re-appointed if it is

---

[1] The arguments contained in State Defendants' Opening Brief, Questions and Responses, Section (I)(B) all presuppose that this Court determines that Section (A)(1) of 70 O.S. §24-157 only applies to mandatory orientations and training. *See* State Defendants' Opening Brief at 12. University agrees that if this Court interprets Section (A)(1) in the manner urged by the Defendants, then the answer to Question One becomes less urgent.

determined that they have acted against the interest of the Governor or the legislature. *Id.* The Oklahoma Constitution provides a method of removing a nonperforming regent. *Id.*; 22 O.S. §§1181, 1181.1. Also, clearly, the Regents' powers are subject to and limited by other provisions of the State Constitution, the federal constitution, and laws of statewide concern. Likewise, the Regents are not insulated from knowing the desires of the legislature and the Governor and may act in conformance with those desires even if not required to do so by law.[2] Thus, State Defendants' concerns over the breadth of the Board of Regents' power are overblown. The Regents are answerable to the people, to the branches of government, and to the law in a myriad of different ways.

Despite the protests of the State Defendants, this Court should determine that it has authority to answer Question One and should rule that 70 O.S. §24-157 does not apply to the University due to Article 13, Section 8 of Oklahoma's Constitution.

## QUESTIONS TWO AND THREE

**Question 2** - As it relates to section 24-157(A)(l)'s prohibition of "[a]ny orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex," what is the meaning of the term "requirement?"

**Question 3** - As it relates to section 24-157(A)(l)'s prohibition of "[a]ny orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex," what does it mean to "present[]" race or sex stereotyping or a bias on the basis of race or sex?

---

[2] Such is exactly what happened in this matter when the Board of Regents made attendance in diversity orientations voluntary. *See* Order Certifying Questions, page 6; Open Letter from President Joe Harroz: https://www.ou.edu/web/news_events/articles/news_2021/a-message-from-president-harroz-HB-1775

10

In its Opening Brief, the University Defendants argue that a proper interpretation of 70 O.S. §24-157(A)(1) is that it only applies to mandatory orientations and trainings. It is not the intent of the legislature to encroach upon classroom curriculum or to interfere with free speech, academic freedoms, or the Board of Regents' independence due to the doctrine of constitutional avoidance. In Propositions II and III of the State Defendants' Opening Brief, they argue for the same interpretation and the University adopts the arguments made by the State Defendants in response to Certified Questions Two and Three. Plaintiffs, although they primarily disagree, recognize that it would not be unreasonable for this Court to answer Questions Two and Three in a manner consistent with the answers proposed by the Defendants: "Thus, even though Plaintiffs believe that classroom regulation was the legislature's intent in Section A, Plaintiffs also recognize that this Court's constitutional avoidance doctrine may counsel in favor of a different interpretation." [Plaintiffs' Opening Brief at 17]. As the interpretation urged by the Defendants is a reasonable one, this Court should adopt it and avoid entanglements with not only the state constitution but with the federal constitution as well. *Gilbert Central Corp. v. State*, 1986 OK 6, ¶7, 716 P.2d 654, 658 (when there are two reasonable interpretations of a statute, the Court should chose the interpretation which avoids constitutional entanglements). This Court should rule that 70 O.S. §24-157(A)(1) applies only to mandatory diversity training sessions, not to classroom instruction or curricula. If this Court holds that 70 O.S. §24-157(A)(1) only applies to mandatory orientations and trainings, the federal court has already held that the Plaintiffs/Appellants lack standing to pursue claims based on those items alone. This Court's ruling, therefore, may result in the University's dismissal from the federal lawsuit.

## CONCLUSION

Wherefore, the University Defendants pray that this Honorable Court answer Certified Question One by declaring that the Legislature did not have the authority to extend 70 O.S. §24-157 to the University of Oklahoma and that the statute does not apply to the University Defendants in the first instance. This Court should also declare, in answer to Certified Questions Two and Three, that 70 O.S. §24-157(A)(1) be interpreted to only apply to mandatory orientations and trainings.

Respectfully submitted,

*/s/ M. Daniel Weitman*

M. Daniel Weitman, OBA #17412
Tina S. Ikpa, OBA #32193
University of Oklahoma
Office of Legal Counsel
660 Parrington Oval, Suite 213
Norman, Oklahoma 73109
Telephone: (405) 325-4124
Facsimile: (405) 325-7681
dan.weitman@ou.edu
tsikpa@ou.edu
**Attorneys for University Defendants/Appellees**

## CERTIFICATE OF MAILING

The undersigned hereby certifies that on this 3rd day of March 2025, a true and correct copy of the foregoing was mailed via first class U.S. mail all postage prepaid to:

Megan Lambert
Adam Hines
American Civil Liberties Union
Foundation of Oklahoma
P.O. Box 13327
Oklahoma City, OK 73113

Maya Brodziak
Zakiya Shani Lewis
Sumayya Saleh
Lawyers' Committee for Civil
Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005

Emerson Sykes
Leah Watson
Sarah Hinger
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004

Douglas Koff
Julia Beskin
Kevin Scot Johns
Sara Solfanelli
Adam Kimelman
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

Gary Gaskins
Zachary P. West
William Flanagan
Attorney General's Office
313 NE 21st St
Oklahoma City, OK 73105

_____
M. Daniel Weitman

13