2025 OK 44

## IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

| | |
|---|---|
| BLACK EMERGENCY RESPONSE TEAM, )<br>)<br>UNIVERSITY OF OKLAHOMA CHAPTER )<br>OF THE AMERICAN ASSOCIATION OF )<br>UNIVERSITY PROFESSORS, )<br>)<br>OKLAHOMA STATE CONFERENCE OF )<br>THE NATIONAL ASSOCIATION FOR THE )<br>ADVANCEMENT OF COLORED PEOPLE, )<br>)<br>AMERICAN INDIAN MOVEMENT )<br>INDIAN TERRITORY, )<br>)<br>PRECIOUS LLOYD, as next friend of S.L., )<br>)<br>ANTHONY CRAWFORD, )<br>)<br>REGAN KILLACKEY, )<br>)<br>　　　　　Plaintiffs, )<br>)<br>v. )<br>)<br>GENTNER DRUMMOND, in his official )<br>capacity as Oklahoma Attorney General, )<br>)<br>RYAN WALTERS, in his official capacity )<br>as Oklahoma Superintendent of Public )<br>Instruction, )<br>)<br>CHRIS VAN DEHENDE, SARAH LEPAK, )<br>MIKE TINNEY, ZACHARY ARCHER, )<br>RYAN DEATHERAGE, BECKY CARSON )<br>in their official capacities as members )<br>of the Oklahoma State Board of Education, )<br>)<br>KEVIN STITT, in his official capacity as )<br>Governor of Oklahoma, )  | No. 122,472<br><br>FOR OFFICIAL PUBLICATION<br><br>**FILED**<br>SUPREME COURT<br>STATE OF OKLAHOMA<br><br>JUN 17 2025<br><br>JOHN D. HADDEN<br>CLERK |

1

JEFFREY HICKMAN, MICHAEL TURPEN, )
JACK SHERRY, DENNIS CASEY,           )
STEVEN TAYLOR, COURTNEY              )
WARMINGTON, P. MITCHELL ADWON,       )
DUSTIN HILLIARY, KEN LEVIT, in their )
official capacities as the Oklahoma State )
Regents for Higher Education,        )
                                     )
JOHN R. BRAUGHT, ROBERT ROSS,        )
ERIC STEVENSON, ANITA HOLLOWAY,      )
KENNETH S. WAITS, RICK NAGEL,        )
in their official capacities of the Board )
of Regents of the University of Oklahoma, )
                                     )
          Defendants.                )

## CERTIFIED QUESTIONS FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA HONORABLE CHARLES B. GOODWIN, DISTRICT JUDGE CASE NO. 21-CV-1022

¶0    The United States District Court for the Western District of Oklahoma certified questions of state law to this Court pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S.2021, §§ 1601-1611.

## CERTIFIED QUESTIONS ANSWERED IN PART.

Adam H. Hines and Megan Lambert, ACLU of Oklahoma Foundation, Oklahoma City, Oklahoma, for Plaintiffs.

Douglas Koff, Julia Beskin, Sara Solfanelli, and Kevin Scot Johns, Schulte, Roth, & Zabel, LLP, New York, New York, for Plaintiffs.

Sumayya Saleh, Lawyers Committee for Civil Rights Under Law, Washington, D.C., for Plaintiffs.

Leah Watson and Emerson Sykes, American Civil Liberties Union Foundation, New York, New York, for Plaintiffs.

M. Daniel Weitman and Tina S. Ikpa, University of Oklahoma Office of Legal Counsel, Norman, Oklahoma, for Defendants John R. Braught, Robert Ross, Eric Stevenson, Anita Holloway, Kenneth S. Waits, and Rick Nagel.

Solicitor General Gary M. Gaskins, II, Assistant Solicitor General Will Flanagan, and Director of Special Litigation Zach West, Office of Attorney General, State of Oklahoma, Oklahoma City, Oklahoma, for State Defendants.

**WINCHESTER, J.**

¶1    The United States District Court for the Western District of Oklahoma

certified to this Court the following questions of law:

1. Does 71 O.S.2021, § 24-157(A)(1) violate Okla. Const. art. 8, § 8? In other words, does the Oklahoma Legislature have the power to regulate the affairs of the University of Oklahoma, or other universities or colleges impacted by the Act, to the extent done in § 24-157(A)(1)?[1]

2. As it relates to § 24-157(A)(1)'s prohibition of "[a]ny orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex," what is the meaning the term "requirement?"

3. As it relates to § 24-157(A)(1)'s prohibition of "[a]ny orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex," what does it mean to "present[]" race or sex stereotyping or a bias on the basis of race or sex?

4. As it relates to 70 O.S.2021, § 24-157(B)(1)'s directive that "[no] teacher, administrator or other employee of a school district, charter school or virtual charter school shall require or make part of a course the following concepts: . . . ," what does it mean to "require" an identified "concept[]?"

---

[1] The Court has not substantively reformulated the question of law, although it is within our discretion to do so. *See* 20 O.S.2021, § 1602.1. We have altered the question only to conform to this Court's own citation conventions.

5. As it relates to § 24-157(B)(1)(c), what does it mean to "make part of course . . . the . . . concept[]: . . . an individual should be discriminated or receive adverse treatment solely or partly because of his or her race or sex?"

6. As it relates to § 24-157(B)(1)(d), what does it mean to "make part of a course the . . . concept[]: . . . members of one race or sex cannot or should not attempt to treat others without respect to race or sex?"

¶2     We answer the first three certified questions by determining that the term "requirement" in § 24-157(A)(1) pertains only to orientation requirements and does not apply to classes, courses, or curricular speech. We decline to answer any of the remaining certified questions.

## CERTIFIED FACTS AND PROCEDURAL HISTORY

¶3     The district court's certification order sets out the underlying facts of this case. When answering a certified question, this Court will not presume facts outside those presented by the certification order itself. *Gov't Emps. Ins. Co. v. Quine*, 2011 OK 88, ¶ 14, 264 P.3d 1245, 1249. That is, "our examination is confined to resolving legal issues." *Id*. We remain free, however, to "consider uncontested facts supported by the record." *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 2017 OK 14, ¶ 2, 392 P.3d 262, 263.

¶4     On May 7, 2021, Governor Kevin Stitt signed H.B. 1775 ("§ 24-157") into law. The law prohibits mandatory gender or sexual diversity training and prohibits the teaching of specified subjects in Oklahoma schools. In relation to public colleges or universities, the law states:

> A. 1. No enrolled student of an institution of higher education within The Oklahoma State System of Higher Education shall be required to engage in any form of mandatory gender or sexual diversity training or counseling; provided, voluntary counseling shall not be prohibited. Any orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex shall be prohibited.

70 O.S.2021, § 24-157(A)(1).

¶5   In relation to K-12 public school districts and charter schools, the law states:

> B. The provisions of this subsection shall not prohibit the teaching of concepts that align to the Oklahoma Academic Standards.
> 1. No teacher, administrator or other employee of a school district, charter school or virtual charter school shall require or make part of a course the following concepts:
>     a. one race or sex is inherently superior to another race or sex,
>     b. an individual, by virtue of his or her race or sex, is inherently racist, sexist or oppressive, whether consciously or unconsciously,
>     c. an individual should be discriminated against or receive adverse treatment solely or partly because of his or her race or sex,
>     d. members of one race or sex cannot and should not attempt to treat others without respect to race or sex,
>     e. an individual's moral character is necessarily determined by his or her race or sex,
>     f. an individual, by virtue of his or her race or sex, bears responsibility for actions committed in the past by other members of the same race or sex,
>     g. any individual should feel discomfort, guilt, anguish or any other form of psychological distress on account of his or her race or sex, or
>     h. meritocracy or traits such as a hard work ethic are racist or sexist or were created by members of a particular race to oppress members of another race.

70 O.S.2021, § 24-157(B)(1)(a)-(h).

¶6   The law directs the Oklahoma State System of Higher Education to promulgate rules to implement the provisions of § 24-157(A), which has not been completed. The law also directs the Oklahoma State Board of Education to

promulgate rules to implement the provisions of § 24-157(B), which were codified in Oklahoma Administrative Code § 210:10-1-23.

¶7    Plaintiffs, Black Emergency Response Team, University of Oklahoma Chapter of the American Association of University Professors, Oklahoma State Conference of the National Association for the Advancement of Colored People, American Indian Movement Indian Territory, Precious Lloyd as next friend of S.L., Anthony Crawford, and Regan Killackey (collectively "Plaintiffs"), filed a lawsuit in the United States District Court for the Western District of Oklahoma ("Western District") requesting preliminary and permanent injunctive relief as well as a declaratory judgment that § 24-157 is unconstitutional facially and as applied under the First and Fourteenth Amendments to the United States Constitution, including that the law is unconstitutionally vague, overbroad, infringes on the rights of students to receive information, and imposes impermissible viewpoint-based restrictions.

¶8    Defendants moved that Plaintiffs' claims be dismissed on various grounds. Defendants, the members of the Board of Regents for the University of Oklahoma ("University Defendants"),[2] contended that Plaintiffs' claims against them should be dismissed because they lack standing and an injury in fact. The State Defendants[3] argued that § 24-157 is succinct, straightforward, and not overbroad.

---

[2] The names of the Board of Regents for the University of Oklahoma have been updated in the case style to reflect the current persons serving in those positions. 12 O.S.2021, § 2025(D).

[3] The State Defendants are Kevin Stitt, in his official capacity as Governor of Oklahoma, Gentner Drummond, in his official capacity as Oklahoma Attorney General, Ryan Walters, in his official

¶9    On June 14, 2024, the Western District granted in part, denied in part, and reserved ruling on in part the University Defendants' Motion to Dismiss and the State Defendants' Motion for Judgment on the Pleadings. The Western District also granted in part and denied in part Plaintiffs' Motion for Preliminary Injunction.

¶10   The Western District concluded that Plaintiffs lacked standing to challenge the first sentence of § 24-157(A)(1),

> No enrolled student of an institution of higher education within The Oklahoma State System of Higher Education shall be required to engage in any form of mandatory gender or sexual diversity training or counseling; provided, voluntary counseling shall not be prohibited.

The Western District also enjoined Defendants from enforcing certain provisions of the law, concluding they were unconstitutionally vague in violation of the Fourteenth Amendment.[4] Specifically,

- The second sentence of § 24-157(A)(1), which states:

  Any orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex shall be prohibited.

- The word "require" in the introductory verb clause in § 24-157(B)(1).

- The entirety of § 24-157(B)(1)(c) and (d).

---

capacity as Oklahoma Superintendent of Public Education, the members of the Oklahoma State Board of Education, and the members of the Oklahoma State Regents for Higher Education. The names of the members of the Oklahoma State Board of Education and Oklahoma State Regents for Higher Education have been updated in the case style to reflect the current persons serving in those positions. 12 O.S.2021, § 2025(D).

[4] The Defendants have filed an appeal to the Tenth Circuit Court of Appeals regarding this ruling. The appeal was stayed pending the outcome of this matter.

¶11    The Western District concluded that questions relating to these provisions of law that it enjoined should be certified to this Court and directed the parties to submit proposed questions and a statement of facts.

## ANALYSIS

¶12    The Court's primary goal when interpreting statutes is to ascertain and follow the intent of the Legislature. *In re Protest of Raytheon Co. and Subsidiaries*, 2022 OK 32, ¶ 9, 512 P.3d 333, 337. Our duty is to construe a statute to give it a reasonable and sensible construction, avoiding absurd consequences. *State ex rel. Dep't of Pub. Safety v. 1985 GMC Pickup*, 1995 OK 75, ¶ 7, 898 P.2d 1280, 1282. As a result, words in a statute are to be construed according to their plain and ordinary meaning unless it is clear the legislature intended a different meaning. *Fanning v. Brown*, 2004 OK 7, ¶ 10, 85 P.3d 841, 845-46. Rules of construction are not utilized if the language in a statute is unambiguous. *Lang v. Erlanger Tubular Corp.*, 2009 OK 17, ¶ 8, 206 P.3d 589, 591.

   I.    **Certified Questions One through Three regarding § 24-157(A)(1).**

¶13    The primary state law constitutional question before the Court is whether § 24-157(A)(1) applies to classes, courses, or curricular speech. This raises the issue of whether the Legislature has the constitutional authority to regulate or dictate the University Defendants' classroom curriculum, curricular speech, or research as outlined in § 24-157(A)(1). However, our Court does not need to address that question at this time.

¶14    Instead, the first issue we must determine is the meaning of the term "requirement" and whether § 24-157(A)(1) affects academic curriculum. Plaintiffs contend that the term "requirement" encompasses classes, courses, and other mandatory prerequisites for academic graduation, citing *Black's Law Dictionary*, which defines the word as something "an employer, university, etc. sets as a necessary qualification." *Requirement*, *Black's Law Dictionary* (12th ed. 2024). In contrast, the State Defendants and University Defendants argue that "requirement" is not that broad in the context of § 24-157(A)(1). They assert that the term applies only to mandatory orientations and similar obligations, and it does not extend to academic curriculum.

¶15    We agree with Defendants' construction of § 24-157(A)(1) that "requirement" only applies to orientation or similar orientation obligations. This Court can interpret certain provisions in the context of the statute, considering all the provisions and surrounding words and phrases. *McIntosh v. Watkins*, 2019 OK 6, ¶ 4, 441 P.3d 1094, 1096. The second sentence of § 24-157(A)(1) must be read in conjunction with the first sentence. The first sentence clearly prohibits mandatory gender or sexual diversity "training" or "counseling." The second sentence prohibits "orientation" or "requirement" that presents any form of race or sex stereotyping or a bias on the basis of race or sex. Unlike § 24-157(B)(1), which uses terms like "teacher" or "course" to address the K-12 prohibition on certain concepts taught in schools, § 24-157(A)(1) does not include such terminology. The only terms employed by the Legislature are "training," "counseling," and "orientation." When

9

considering the entirety of § 24-157(A)(1), it is clear that the context of this subsection does not pertain to classroom instruction or curriculum.

¶16    The title of an act also helps to clarify legislative intent. *Fent v. Fallon*, 2014 OK 105, ¶ 8, 345 P.3d 1113, 1116. The statute's title is "Prohibition of Mandatory Gender or Sexual Diversity Training or Counseling – Prohibited Course Concepts – Rule." *See* 70 O.S.2021, § 24-157. This title indicates that the statute addresses two distinct issues: mandatory gender or sexual diversity training or counseling, and prohibited course concepts. The statute specifies that the prohibited course concepts only apply to K-12 public and charter schools. *See* 70 O.S.2021, § 24-157(B)(1). This leaves the prohibition on mandatory training and counseling for higher education. The title of § 24-157 clearly supports a determination that the prohibition for higher education is only for training, counseling, orientation, and similar requirements, rather than to curriculum or courses.

¶17    We conclude that the Legislature intended to prohibit orientation and the like that promote forms of race or sex stereotyping. The Western District previously determined that Plaintiffs lacked standing to challenge the first sentence of the statute because it only related to training and counseling. The relevant training and counseling sessions did not restrict what information an instructor may teach. In the same way, a determination that the second sentence only relates to orientation and the like means that the provision does not apply to or restrict curricular speech. Based on the Western District's dismissal order, Plaintiffs would not have standing to challenge the entirety of § 24-157(A)(1). Therefore, this Court has no reason to

answer the remaining certified questions relating to § 24-157(A)(1), as Plaintiffs do not have standing to challenge the entirety of § 24-157(A)(1) when applying the Western District's analysis.

## II.    Certified Questions Four through Six regarding § 24-157(B)(1).

¶18    This Court declines to answer the remaining certified questions relating to § 24-157(B)(1). We have the discretionary power to answer certified questions of law if presented in accordance with the provisions of the Revised Uniform Certification of Questions of Law Act, 20 O.S.2021, §§ 1601-1611. When determining whether we should answer a federal certified question of law, we consider both factors mentioned in §1602: (1) would the answer be dispositive of an issue in pending litigation in the certifying court; and (2) is there established and controlling law on the subject matter. *See Siloam Springs Hotel, LLC*, 2017 OK 14, ¶ 14, 392 P.3d at 266. We have previously declined to answer federal certified questions for various reasons.[5] Here, an answer to the remaining certified questions would not avoid or alter the constitutional challenge to the statute.

---

[5] *See Anaya-Smith v. Federated Mut. Ins. Co.*, 2024 OK 34, 549 P.3d 1213 (declining to answer a certified question because the federal district court did not decide an issue associated with the certified question and the parties did not brief the issue); *Ball v. Wilshire Ins. Co.*, 2007 OK 80, 184 P.3d 463 (declining to answer a certified question because of the possibility of dismissal of appeal due to lack of jurisdiction); *Scottsdale Ins. Co. v. Tolliver*, 2005 OK 93, 127 P.3d 611 (declining to answer a certified question where controlling Oklahoma precedent existed on the issue certified); *Hammock v. United States*, 2003 OK 77, 78 P.3d 93 (declining to answer one of two certified questions because of the lack of legal relationship necessary to determine the issue); *Bituminous Cas. Corp. v. Cowen Constr., Inc.*, 2002 OK 34, 55 P.3d 1030 (declining to answer one of two questions certified where response to one question disposed of the case); *Cray v. Deloitte Haskins & Sells*, 1996 OK 102, 925 P.2d 60 (declining to answer a certified question since federal judge made a final determination on issue of duty such that the Court was without judicial authority to either affirm or reverse that judgment).

¶19    Plaintiffs objected to the certification of questions relating to the text in § 24-157(B)(1), contending the text fails to meet the standard for certification. Specifically, Plaintiffs argued that the statute is so vague that it is not susceptible to a limiting construction. State Defendants responded generally that the text can be interpreted by using the common definitions of the word or phrases. We agree with Plaintiffs that our Court should not answer these certified questions, but for reasons not raised by Plaintiffs.

¶20    First, this case ultimately involves questions regarding whether § 24-157 is unconstitutional facially and as applied under the First and Fourteenth Amendments to the United States Constitution. The Western District interpreted the first sentence of § 24-157(A)(1) by applying the common and ordinary meanings of the terms within it. As to the other provisions, the Western District requested that our Court define specific words or phrases within § 24-157(B), presumedly using their common and ordinary meanings. *See, e.g., U.S. Fid. & Guar. Co. v. Briscoe*, 1951 OK 386, ¶ 10, 239 P.2d 754, 757 (relying on dictionary definitions to provide common, ordinary usage of terms).

¶21    Certification is useful where an interpretation of state statutory law can potentially eliminate the need to address a federal question. Inherent in this concept is the premise that there is some ambiguity in the state statute, which could lead a state court to interpret it in a way that avoids or modifies the ultimate constitutional issue. *See Pino v. United States,* 507 F.3d 1233, 1236 (10th Cir. 2007). In this case, Plaintiffs allege that the statute is essentially too vague to

define, while Defendants contend that the terms in question can be defined by their common, ordinary meanings.

¶22   This case does not involve the Court deciding between competing definitions of terms. Instead, the key question is whether these terms can be defined at all in the context of the statute. Indeed, any term or phrase can be interpreted using its common, ordinary usage. However, whether a prohibited concept is "required"— even as defined by its common and ordinary meaning—in a specific classroom grade level would be very fact determinative as what is a requirement for a first grader is different than that of a high schooler. Or, whether a teacher "makes part of a course" in a specific classroom grade level the promotion of racial "discrimination"—as defined by its common and ordinary meaning—would also be fact determinative. Therefore, we do not believe we could reasonably define these terms or phrases in the abstract to avoid or alter the constitutional challenge to the statute. *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008).

¶23   Instead, relying on dictionary definitions to provide the common, ordinary usage of the terms and phrases at issue is something that the Western District has done in this case and could undertake, attempting to reach a reasoned conclusion based on the facts before it. *Pino*, 507 F.3d at 1236. For example, the Western District determined in its dismissal order that the term "requirement" in § 24-157(A)(1) should encompass a broad range of activity, from a course for a degree to an assignment for a course but nevertheless, certified a question to our Court regarding the definition of "requirement." The Western District also interpreted

"make part of a course" to mean "directly endorsing, promoting, or inculcating any concept as a normative value" but also certified the same to our Court. The task in this case is one of reading and interpreting statutory language as written, as the statute's interpretation is essentially unaided by state court decisions. *See, e.g.*, *American Fid. Bank & Trust Co. v. Heimann,* 683 F.2d 999, 1002 (6th Cir. 1982) (holding where the task is simple interpretation of statutory language alone, because of no available legislative history and no state court decisions construing analogous state statutes, a federal court decision is appropriate). Federal courts bear a duty to decide questions of state law when necessary to render a judgment. *Copier ex rel. Lindsey v. Smith & Wesson Corp.,* 138 F.3d 833, 838 (10th Cir. 1998).

¶24    Second, the Western District concluded "that certification of relevant questions as to the Fourteenth Amendment due process claim to the Oklahoma Supreme Court is appropriate." A federal court may not impose on a state court the responsibility for determining a federal question. *Imel v. United States,* 523 F.2d 853, 857 (10th Cir. 1975). Although the Western District is requesting clarification on certain terms or phrases within the statute, this request suggests a federal constitutional issue. If the Court were to define these terms or phrases in any respect, it would effectively be addressing whether the statute is impermissibly vague and ambiguous under the Fourteenth Amendment. However, even an implicit resolution by a state court of a federal constitutional claim is not binding on the federal courts. *See, e. g., Jackson v. Virginia*, 443 U.S. 307 (1979). Thus, any

14

holding of this Court pertaining to §24-157 would be, at most, advisory in nature. *See Ball*, 2007 OK 80, ¶ 1 n.3, 184 P.3d at 464 n.3 (holding any decision issued on certified question was subject to being rendered a prohibited advisory opinion).

¶25   Finally, it is unclear whether President Trump's recent promulgation of Executive Order 14,190, entitled "Ending Radical Indoctrination in K-12 Schooling" will impact or moot the federal questions presented by Plaintiffs.[6] Therefore, our Court declines to make that determination.

---

[6] *See* Exec. Order No. 14,190, 90 Fed. Reg. 8853 *available at* https://www.federalregister.gov/documents/2025/02/03/2025-02232/ending-radical-indoctrination-in-k-12-schooling.

The purpose of the executive order is as follows:

> *Purpose and Policy.* Parents trust America's schools to provide their children with a rigorous education and to instill a patriotic admiration for our incredible Nation and the values for which we stand.
>
> In recent years, however, parents have witnessed schools indoctrinate their children in radical, anti-American ideologies while deliberately blocking parental oversight. Such an environment operates as an echo chamber, in which students are forced to accept these ideologies without question or critical examination. In many cases, innocent children are compelled to adopt identities as either victims or oppressors solely based on their skin color and other immutable characteristics. In other instances, young men and women are made to question whether they were born in the wrong body and whether to view their parents and their reality as enemies to be blamed. These practices not only erode critical thinking but also sow division, confusion, and distrust, which undermine the very foundations of personal identity and family unity.
>
> Imprinting anti-American, subversive, harmful, and false ideologies on our Nation's children not only violates longstanding anti-discrimination civil rights law in many cases, but usurps basic parental authority. For example, steering students toward surgical and chemical mutilation without parental consent or involvement or allowing males access to private spaces designated for females may contravene Federal laws that protect parental rights, including the Family Educational Rights and Privacy Act (FERPA) and the Protection of Pupil Rights Amendment (PPRA), and sex-based equality and opportunity, including Title IX of the Education Amendments of 1972 (Title IX). Similarly, demanding acquiescence to "White Privilege" or "unconscious bias," actually promotes racial discrimination and undermines national unity.

## CONCLUSION

¶26    We answer the first three certified questions by determining that the term "requirement" in § 24-157(A)(1) pertains only to orientation requirements and does not apply to classes, courses, or curricular speech. We respectfully decline to answer the remaining questions certified to our Court, although we appreciate the work that the Western District invested in the certification order.

### CERTIFIED QUESTIONS ANSWERED IN PART.

**CONCUR:** Rowe, C.J., Winchester, Edmondson, Combs, and Gurich, JJ.

**CONCUR IN PART, DISSENT IN PART:** Kuehn, V.C.J. (**by separate writing**), and Kane, J.

**RECUSED:** Darby, J.

**DISQUALIFIED:** Jett, J.

Kane, J., concurring in part, dissenting in part:

**"I would answer all of the Federal Questions presented in this case."**

2025 OK 44

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

| | | |
|---|---|---|
| BLACK EMERGENCY RESPONSE TEAM, | ) | |
| | ) | |
| UNIVERSITY OF OKLAHOMA CHAPTER | ) | |
| OF THE AMERICAN ASSOCIATION OF | ) | **FILED** |
| UNIVERSITY PROFESSORS, | ) | SUPREME COURT |
| | ) | STATE OF OKLAHOMA |
| OKLAHOMA STATE CONFERENCE OF | ) | JUN 17 2025 |
| THE NATIONAL ASSOCIATON FOR THE | ) | |
| ADVANCEMENT OF COLORED PEOPLE | ) | JOHN D. HADDEN |
| | ) | CLERK |
| AMERICAN INDIAN MOVEMENT | ) | |
| INDIAN TERRITORY, | ) | |
| | ) | |
| PRECIOUS LLOYD, as next friend of S.L., | ) | |
| | ) | |
| ANTHONY CRAWFORD, | ) | |
| | ) | |
| REGAN KILLACKEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 122,472 |
| GENTNER DRUMMOND, in his official | ) | |
| capacity as Oklahoma Attorney General, | ) | FOR OFFICIAL PUBLICATION |
| | ) | |
| RYAN WALTERS, in his official capacity | ) | |
| as Oklahoma Superintendent of Public | ) | |
| Instruction, | ) | |
| | ) | |
| CHRIS VAN DEHENDE, SARAH LEPAK, | ) | |
| MIKE TINNEY, ZACHARY ARCHER, | ) | |
| RYAN DEATHERAGE, BECKY CARSON, | ) | |
| in their official capacities as members | ) | |
| of the Oklahoma State Board of Education, | ) | |
| | ) | |

KEVIN STITT, in his official capacity as      )
Governor of Oklahoma,                         )
                                              )
JEFFREY HICKMAN, MICHAEL TURPEN,              )
JACK SHERRY, DENNIS CASEY,                    )
STEVEN TAYLOR, COURTNEY                       )
WARMINGTON, P. MITCHELL ADWON,                )
JEFFERY HICKMAN, DUSTIN HILLIARY,             )
KEN LEVIT, in their official capacities as    )
the Oklahoma State Regents for Higher         )
Education,                                    )
                                              )
JOHN R. BRAUGHT, ROBERT ROSS,                 )
ERIC STEVENSON, ANITA HOLLOWAY,               )
KENNETH S. WAITS, RICK NAGEL,                 )
in their official capacities of the Board     )
of Regents of the University of Oklahoma,     )
                                              )
            Defendants.                       )

**KUEHN, V.C.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶1    The United States District Court for the Western District of Oklahoma certified six questions to this Court pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S. 2021 §§ 1601-1611. I concur with the Majority Opinion's conclusion that this Court should not answer questions one, four, five, and six. I respectfully dissent to answering questions two and three.

¶2    This Court is authorized to answer unresolved questions of law properly certified in accordance with the Revised Uniform Certification of Questions of Law Act.[1] However, this Court has no obligation to answer

_____

[1] 20 O.S. 2021 §§ 1601-1611.

federally certified questions.[2] 20 O.S. 2021 § 1602 states the "Supreme Court
. . . *may* answer a question of law certified to it by [federal courts] . . ."
(emphasis added).[3]

¶3    The Court should answer a certified federal question of law only
after considering (1) whether the answer is dispositive of an issue in pending
litigation in the certifying court and (2) whether there is established and
controlling law on the subject matter.[4]

¶4    The two questions answered by the Majority are as follows:

2.    As it relates to § 24-157(a)(1)'s prohibition of "[a]ny
orientation or requirement that presents any form of
race or sex stereotyping or a bias on the basis of race
or sex," what is the meaning of the term
"requirement?"

3.    As it relates to § 24-157(A)(1)'s prohibition of "[a]ny
orientation or requirement that presents any form of
race or sex stereotyping or a bias on the basis of race
or sex," what does it mean to "present[]" race or sex
stereotyping or a bias on the basis of race or sex?

¶5    I respectfully dissent to answering these certified questions,
because the Western District left nothing for this Court to answer.  Without
pending questions, the request to answer fails the first requirement of § 1602,

---

[2] *See Ball v. Wilshire ins. Co.*, 2007 OK 80, 184 P.3d 463; *Scottsdale Ins. Co. v. Tolliver*,
2005 OK 93, 127 P.3d 611; *Hammock v. U.S.*, 2003 OK 77, 78 P.3d 93; *Cray v. Deloitte
Haskins & Sells*, 1996 OK 102, 925 P.2d 60 (All declining to answer certified questions).
[3] See also Scottsdale Ins. Co. v. Tolliver, 2005 OK 93, ¶ 2, 127 P.3d 611. 612 ("[P]ermits
this Court to exercise its discretion to answer a question of law within designated guidelines
when it is properly certified . . .")
[4] 20 O.S. 2021 § 1602. *See Cherokee Nation v. United States Dep't of the Interior*, 2025 OK
4, ¶ 8, 564 P.3d 58, 63; *Siloam Springs Hotel, LLC. v. Century Surety Company*, 2017 OK
14, ¶ 14, 392 P.3d 262, 265–66; *Government Employees Insurance Co. v. Quine*, 2011 OK
88, ¶ 13, 264 P.3d 1245, 1248.

3

our test for taking up a certified question.[5] At first glance, it seems the Western District's dismissal order "reserve[d] ruling" on the Plaintiff's challenges to the second sentence of § 24-157(A)(1). However, this Court is not limited by form when considering certified questions, but rather the substance of the document.[6] In its dismissal order, the Western District applied this Court's plain and ordinary meaning standard[7] to determine the scope of "requirement" in § 24-157(A)(1), and on several occasions, "conclude[d] that [§ 24-157(A)(1)], based on its plain language, applies to and restricts curricular speech." The Western District further held, that (1) "requirement" extends to a "broad range of activit[ies]" including degree-required courses and course assignments and (2) "presents" encompasses "any situation in which race or sex stereotyping or bias is deliberately introduced or otherwise discussed." With this holding, the Western District judge clearly answered the questions now presented to this Court, leaving only the possibility that the Federal Court wishes this Court provide an advisory opinion or appellate review under the guise of a certified question.

¶6    The procedural posture of this case should further caution this Court from entertaining answering certified question two and three. Beyond

---

[5] The Majority Opinion dismissed question three based on the improper certification of question two. However, absent the majority's certification, question three is still dismissed. 20 O.S. 2021 § 1602. The second requirement of § 1602 is satisfied, as the certified questions present matters of first impression for which there is no controlling Oklahoma precedent.

[6] *See Randle v. City of Tulsa*, 2024 OK 40, ¶ 37 n. 25, 556 P.3d 612, 623.

[7] *Hamilton v. Northfield Insurance Company*, 2020 OK 28, ¶ 10, 473 P.3d 22, 26.

4

the Order of dismissal, the Western District issued a preliminary injunction *only after* reaching conclusions in its Order *and* granting an Order of Preliminary Injunction. When issuing the preliminary injunction, the Western District judge determined the plaintiffs have (1) a likelihood to succeed on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) a threatened injury that outweighs the injury the opposing party will suffer under the injunction; and (4) shown the injunction will serve the public interest.[8] In reaching its holding, the Western District relied on its prior conclusions as to the definitions of "requirement" and "present[]" in § 24-157(A)(1).

¶7    Even beyond issuing the injunction, both the injunction and the order to dismiss are on appeal in the Tenth Circuit.[9] The proper procedural path, when faced with questions of state law which may affect a preliminary injunction, is to appeal the injunction and allow the circuit court to determine if certification is proper.[10] Despite this well-accepted procedure, the Western District chose to issue a preliminary injunction *and* certify questions to this Court—unlike other similarly situated district courts who have chosen to *either*

---

[8] *Id.*; *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 19 (2008).
[9] Order Certifying State-Law Questions to the Oklahoma Supreme Court at 3, Black Emergency Response Team et al. v. Drummond (No. 122,472) (Okla. 2024).
[10] *Kansas Jud. Rev. v. Stout*, 519 F.3d 1107 (10th Cir. 2008), *certified question answered,* 287 Kan. 450, 196 P.3d 1162 (2008), *opinion after certified question answered*, 562 F.3d 1240 (10th Cir. 2009) (Certifying questions to Kansas Supreme Court on appeal of a preliminary injunction); *Diginet, Inc. v. W. Union ATS, Inc.*, 958 F.2d 1388 (7th Cir. 1992) (Addressing appeal of a preliminary injunction and the potential of certification).

grant the preliminary injunction *or* certify questions.[11] This action simultaneously disrupts a proper appeal to the Tenth Circuit and seeks this Court's appellate review in the form of certified questions.

## Conclusion

¶8    For the above reasons, I would respectfully decline to answer. Although this Court encourages certification on questions of state law, proper certification occurs prior to determinative decisions by the certifying court. The purpose of certifying questions to state courts, at its core, is to "save time, energy, and resources and help[] build a cooperative judicial federalism."[12] When used correctly, certification ensures (1) federal courts are properly informed on substantive Oklahoma law[13] and (2) a state's highest court decides important questions of state law.[14] Certified questions are not to be used to pose abstract or hypothetical questions,[15] coerce the court into

---

[11] *See Kansas Jud. Watch v. Stout*, 455 F. Supp. 2d 1258, 1263 (D. Kan. 2006) (Finding certification after the issuance of a preliminary injunction to be "wasteful of the parties' and the Court's time, energy, and resources that have already been spent . . . for [the] preliminary injunction); *Turner v. City of Bos.*, 760 F. Supp, 2d 202, 207 (Requiring parties to file memoranda addressing if certification is appropriate prior to discussing preliminary injunction issues); *Willey v. Brown*, No. CV 23-2299-BAH, 2024 WL 3557937, p. 19 (D. Md. July 25, 2024) (Denying the motion for preliminary injunction and motions to dismiss without prejudice to be refiled after certified questions were answered); *But see Minnesota Recipients All. v. Noot*, 527 F. Supp 140, 144-145 (D. Minn. 1981) (Issuing a preliminary injunction due to irreparable harm to plaintiffs and in the same order certifying questions to the highest court as questions may be resolved by a complete judicial analysis of the state statutes).

[12] *United States v. Defreitas*, 29 F.4th 135, 141 (2022) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)).

[13] *Bonner v. Oklahoma Rock Corp.*, 1993 OK 131, n.3, 863 P.2d 1176, 1178.

[14] *Mitchell v. Roberts*, 43 F.4th 1074, 1086 (10th Cir. 2022).

[15] *Bagby v. Trustees of Claremore Jr. College Authority*, 1974 OK 74, ¶ 10, 525 P.2d 1355, 1356.

6

providing advisory opinions,[16] or as a form of appellate review.[17] This Court accepts certified questions for unresolved legal issues, none of which are present here.

---

[16] *Ball v. Wilshire Ins. Co.*, 2007 OK 80, ¶1 n.3, 184 P.3d 463, 464 n.3.
[17] *Cray v. Deloitte Haskins & Sells*, 1996 OK 102, ¶ 8, 925 P.2d 60, 62.