# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

BLACK EMERGENCY RESPONSE
TEAM, et al.,

                              *Plaintiffs*,

v.

GENTNER DRUMMOND, in his official
capacity as Oklahoma Attorney General, et
al.,

                              *Defendants*.

Case No. 5:21-CV-1022-G

Hon. Charles B. Goodwin

## PLAINTIFFS' RESPONSE TO STATE DEFENDANTS'
## MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH
## PLAINTIFFS' NOTICES OF DEPOSITION AND SUBPOENAS TO
## <u>TESTIFY AT A DEPOSITION IN A CIVIL TRIAL</u>

# TABLE OF CONTENTS

## Contents

I.    PRELIMINARY STATEMENT ............................................................................6

II.    RELEVANT PROCEDURAL HISTORY .........................................................6

   A.   This Court's Decision on State Defendants' Motion for Judgment on the Pleadings.........6

   B.   State Defendants Refuse to Produce Any Discovery Whatsoever, Prompting Plaintiffs to Move to Compel.................................................................................................................7

   C.   State Defendants' Motions for Protective Orders Regarding Depositions and Third-Party Subpoenas. ...............................................................................................................8

III.   LEGAL STANDARD ..........................................................................................9

IV.   ARGUMENT ......................................................................................................10

   A.   Plaintiffs Have Standing to Challenge H.B. 1775's Higher Education Provisions on Equal Protection Grounds................................................................................................10

      1.   State Defendants Misunderstand This Court's Dispositive Order. ...........................11

      2.   The Oklahoma Supreme Court's Decision Does Not Change This Court's Analysis. .12

   B.   The Deposition Notices and Topics Are Relevant and Proportional to Plaintiffs' Equal Protection Claims. ...............................................................................................13

      1.   The Scope of Permissible Discovery Under Rule 26 is Broad. ...............................14

      2.   The *Arlington Heights* Factors Provide the Relevant Framework. ..............................15

      3.   Plaintiffs' Topics, Seeking Information Regarding Drafting, Enactment, Implementation, and Enforcement, Are Relevant.............................................................17

   C.   Plaintiffs Have Met Their Burden to Depose Ryan Walters, Joy Hofmeister and Carlisha Bradley. ...............................................................................................................20

V.    CONCLUSION ..................................................................................................23

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Arce v. Douglas*,
  793 F.3d 968 (9th Cir. 2015) ................................................................................. 19

*Bd. of Regents of Univ. of Okla. v. Baker*,
  1981 OK 160, 638 P.2d 464 (1981).......................................................................... 18

*Black Emergency Response Team v. Drummond*,
  2025 OK 44, 571 P.3d 135 (2025)........................................................................12–13

*Black Emergency Response Team v. Drummond*,
  737 F. Supp. 3d 1158 (W.D. Okla. 2024) ...........................................................*passim*

*Carlson v. Colo. Ctr. for Reprod. Med., LLC*,
  341 F.R.D. 266 (D. Colo. 2022) .............................................................................. 20

*Chrisman v. Bd. of Cnty. Comm'rs of Okla. Cnty.*,
  No. CIV-17-1309-D, 2020 WL 7033965 (W.D. Okla. Nov. 30, 2020).................... 10

*Citizens for Const. Integrity v. United States*,
  57 F.4th 750 (10th Cir. 2023), *cert. denied. mem.,* 144 S. Ct. 94 (2023).  ................ 16

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  603 U.S. 799 (2024) ................................................................................................. 16

*Deer Creek Water Corp. v. City of Oklahoma City*,
  No. CIV-19-1116-SLP, 2020 WL 12617252 (W.D. Okla. Aug. 24,
  2020)...................................................................................................................... 10

*Dowell by Dowell v. Bd. of Educ. of Okla. City Pub. Schs.*,
  8 F.3d 1501 (10th Cir. 1993) ................................................................................... 15

*Est. of Ratley v. Awad*,
  No. CIV-19-265-PRW, 2022 WL 3330959 (W.D. Okla. Aug. 11, 2022)................. 10

*Feltz v. Bd. of Cnty. Comm'rs of Cnty. of Tulsa*,
  No. 18-CV-298-CVE-JFJ, 2020 WL 2039250 (N.D. Okla. Apr. 29,
  2020)..................................................................................................................19–20

*Fowler v. Stitt*,
  104 F.4th 770 (10th Cir. 2024), *cert. granted and judgment vacated,* ---
  S. Ct. ---, 2025 WL 1787695 (2025)........................................................................ 19

*Hunt v. Cromartie*,
    526 U.S. 541 (1999) ................................................................. 14

*Koontz v. CSAA Fire & Cas. Ins. Co.*,
    No. CIV-18-801-SLP, 2019 WL 10060473 (W.D. Okla. Aug. 15, 2019) ................... 9

*Magwood v. Patterson*,
    561 U.S. 320 (2010) ................................................................. 16

*Navajo Nation v. New Mexico*,
    975 F.2d 741 (10th Cir. 1992) ................................................. 7, 15, 19

*In re Office of Utah Att'y Gen.*,
    56 F.4th 1254 (10th Cir. 2022) ...................................................... 21

*Pers. Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979) ................................................................. 16

*Poe ex rel. Poe v. Drummond*,
    --- F.4th ---, 2025 WL 2238038 (10th Cir. 2025) ................................ 16, 17

*SECSYS, LLC v. Vigil*,
    666 F.3d 678 (10th Cir. 2012) ................................................... 15–17

*In re United States Dep't of Com.*,
    No. 18-2856, 2018 WL 6006885 (2d Cir. Oct. 9, 2018) .............................. 22

*United States v. Amador-Bonilla*,
    102 F.4th 1110 (10th Cir. 2024) .................................................. 14–19

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*
    429 U.S. 252 (1977) ................................................................. 14

*Washington v. Davis*,
    426 U.S. 229 (1976) .............................................................. 15, 18

**Consitution**

Okla. Const. art. XIII, § 3 ............................................................. 18

**Statutes**

Okla. Stat. tit. 70, § 24-157 (2021) ("H.B. 1775" or "the Act") ....................... 6

    § 24-157(A)(1)(2021) ........................................................... 11, 13

**Codes**

Okla. Admin. Code § 210:10-1-23 ...................................................................9, 22

**Rules**

Fed. R. Civ. P. 26 ........................................................................................9, 14

Fed. R. Civ. P. 26(b)(1) .................................................................................. 9

Fed. R. Civ. P. 26(c)(1) ...............................................................................9, 10

Fed. R. Civ. P. 30 ......................................................................................... 19

Fed. R. Civ. P. 30(c)(2) ................................................................................. 19

**Local Rules**

LCvR 47.1 (W.D. Okla. 2024) ......................................................................... 8

**Other Authorities**

KOCO 5 News, *Ryan Walters answers questions regarding Tulsa Race
    Massacre education*, YOUTUBE (July 8, 2023),
    https://www.youtube.com/watch?v=gCrlgt_1djY ..................................................... 21

## I.    PRELIMINARY STATEMENT

Plaintiffs respectfully submit this memorandum in opposition to State Defendants' Motion for Protective Order and Motion to Quash Plaintiffs' Notices of Deposition and Subpoenas to Testify at a Deposition in a Civil Trial (the "**Motion**" or "**Mot.**").  State Defendants' Motion fails because:  (1) Plaintiffs have standing to serve each Deposition Notice, which seek relevant testimony bearing on Plaintiffs' well-pled Equal Protection claims; (2) Plaintiffs' Deposition Notices and Topics are relevant and proportional to these claims; and (3) the depositions of Ryan Walters, Joy Hofmeister, and Carlisha Bradley are of heightened relevance and satisfy the "extraordinary circumstances" standard for high-ranking officials.

## II.    RELEVANT PROCEDURAL HISTORY

For a full recitation of the relevant facts, Plaintiffs incorporate the Background and Procedural History from their Motion to Compel State Defendants to Comply with Plaintiffs' First Requests for Production and for Entry of ESI Order (the "**Motion to Compel**").  Doc. 223.

### A.    This Court's Decision on State Defendants' Motion for Judgment on the Pleadings.

Plaintiffs filed their Complaint on October 19, 2021, challenging House Bill 1775 (codified as Okla. Stat. tit. 70, § 24-157 (2021)) (hereinafter "**H.B. 1775**" or "**the Act**") for violations of their rights under the First and Fourteenth Amendments.  Doc. 1.  Plaintiffs moved for a preliminary injunction on October 29, 2021.  Doc. 27.  State Defendants moved for judgment on the pleadings on January 25, 2023.  Doc. 106.  On June 14, 2024,

this Court allowed Plaintiffs' Equal Protection Clause claims to proceed, dismissed certain of Plaintiffs' claims, ordered certification of questions (the "**Certified Questions**") to the Oklahoma Supreme Court, and enjoined parts of the law as likely to be unconstitutionally vague. *See Black Emergency Response Team v. Drummond*, 737 F. Supp. 3d 1158 (W.D. Okla. 2024) (the "**Dispositive Order**"); Doc. 173.

With respect to the Equal Protection claims, this Court held "Plaintiffs have alleged facts from which it can be reasonably inferred that the Act was passed 'at least in part because of' a discriminatory purpose or intent." Dispositive Order at 1180 (quoting *Navajo Nation v. New Mexico*, 975 F.2d 741, 744 (10th Cir. 1992)).

### B. State Defendants Refuse to Produce Any Discovery Whatsoever, Prompting Plaintiffs to Move to Compel.

On September 25, 2024, Plaintiffs served State Defendants with their First Requests for Production (the "**First Requests**") seeking documents related to H.B. 1775's drafting, enactment, implementation, and enforcement. Doc. 223-1. On October 25, 2024, State Defendants served their Responses and Objections, in which they refused to produce a single document, almost exclusively on the basis of their "Fundamental Objection," a boilerplate objection touching on issues concerning relevance, proportionality, and privilege (by which State Defendants responded to twenty-two of Plaintiffs' twenty-nine First Requests). Doc. 223-2. After numerous meet and confers, the parties were unable to come to a resolution, and Plaintiffs thus filed their Motion to Compel.[1] Doc. 223. That

---

[1] State Defendants asked the Court for a stay of discovery, but the Court denied their request. *See* Docs. 183, 197, 210. Next, State Defendants filed a Motion to Clarify the scope of discovery, which was likewise denied. *See* Docs. 217, 218.

Motion to Compel has been *sub judice* as of February 28, 2025.  *See* Doc. 236 (State Defendants' Response); Doc. 241 (Plaintiffs' Reply).  Given the nature of the parties' dispute on the appropriate scope of discovery, the parties acknowledge that they are "at a de facto, near-standstill on discovery" until the Court resolves the Motion to Compel.  Doc. 268 at 1 (joint statement by the Plaintiffs and State Defendants seeking a status conference to address discovery).

C.    **State Defendants' Motions for Protective Orders Regarding Depositions and Third-Party Subpoenas.**

While Plaintiffs' Motion to Compel was pending, Plaintiffs attempted to proceed with other aspects of discovery, including providing notice of their intent to subpoena three, third-party school districts pursuant to Local Rule 47.1 (the "**Subpoenas**"), Doc. 271, and issuing notices of deposition (the "**Deposition Notices**") for five State Defendant witnesses, each a current or former State Defendant: Ryan Walters, the current State Superintendent of Public Instruction (*see* "**Walters Deposition Notice**," Doc. 276-7); Joy Hofmeister, the State Superintendent of Public Instruction when H.B. 1775 was passed (*see* "**Hofmeister Deposition Notice**," Doc. 276-4; *see also id.*, 276-6); Carlisha Bradley, a member of the State Board of Education when H.B. 1775 was passed (*see* "**Bradley Deposition Notice**," Doc. 276-3; *see also id.*, 276-5); and corporate representatives for the Oklahoma State Board of Education ("**SBE**") (*see* "**SBE Notice**," Doc. 276-1) and Oklahoma State Regents for Higher Education ("**State Regents**") (*see* "**State Regents Notice**," Doc. 276-2 (together with the SBE Notice, the "**30(b)(6) Notices**")).

The 30(b)(6) Notices contain fifteen "**Topics of Examination**" (or "**Topics**") in substantially the same form (as numbered in the State Regents Subpoena, the "**Common Topics**"), and the SBE Notice includes four additional Topics (the "**SBE Topics**," Topic Nos. 7–10 within the SBE Subpoena) bearing on the SBE's promulgation and enforcement of H.B. 1775's implementing regulations, which are codified as Oklahoma Administrative Code § 210: 10-1-23 (the "**Rules**").  *Compare* SBE Notice, Doc. 276-1; *with* State Regents Notice, Doc. 276-2.

State Defendants filed Motions for Protective Orders and to Quash in response to both the Deposition Notices, Mot., Doc. 276, and the Subpoenas, Doc. 277.  At the same time, State Defendants filed a Renewed Motion for Judgment on the Pleadings, in which they argued, as relevant here, that a new Tenth Circuit decision changes the law for Equal Protection Clause claims and necessitates severely limiting the scope of Plaintiffs' Requests.  Doc. 275.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 26 broadly permits discovery into information "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  To limit depositions, "Federal Rule of Civil Procedure 26(c)(1)—upon which [State] Defendant's motion is based—requires both that a moving party show 'good cause' for a protective order to issue and that the basis for such an order be 'protect[ion] ... from annoyance, embarrassment, oppression, or undue burden or expense.'"  *Koontz v. CSAA Fire & Cas. Ins. Co.*, No. CIV-18-801-SLP, 2019 WL 10060473, at *1 (W.D. Okla. Aug. 15, 2019) (quoting Fed. R. Civ.

P. 26(c)(1)); *see also Deer Creek Water Corp. v. City of Oklahoma City*, No. CIV-19-1116-SLP, 2020 WL 12617252, at *1 (W.D. Okla. Aug. 24, 2020) ("[T]he Court treats [the motion to quash FRCP 30(b)(6) notices] as one made pursuant to Rule 26(c) because the procedural vehicles for conducting discovery at issue are notices of deposition, not subpoenas"). While movants bear the burden to show good cause, "[t]he burden of demonstrating relevance is on the party seeking discovery," so Plaintiffs must demonstrate the depositions are relevant. *Est. of Ratley v. Awad*, No. CIV-19-265-PRW, 2022 WL 3330959, at *2 (W.D. Okla. Aug. 11, 2022) (quoting *Chrisman v. Bd. of Cnty. Comm'rs of Okla. Cnty.*, No. CIV-17-1309-D, 2020 WL 7033965 (W.D. Okla. Nov. 30, 2020)).

## IV.    ARGUMENT

State Defendants' Motion fails because: (1) Plaintiffs have standing to serve each Deposition Notice, which seek testimony bearing on Plaintiffs' well-pled Equal Protection claims; (2) Plaintiffs' Deposition Notices and Topics are relevant and proportional to these claims; and (3) the depositions of Ryan Walters, Joy Hofmeister, and Carlisha Bradley, three of the most significant non-legislators relevant to the Act, satisfy the heightened "extraordinary circumstances" standard for high-ranking officials.

### A.    Plaintiffs Have Standing to Challenge H.B. 1775's Higher Education Provisions on Equal Protection Grounds.

State Defendants assert that Plaintiffs do not have standing to allege an Equal Protection claim against the State Regents because the Oklahoma Supreme Court determined that Plaintiffs would not have standing to challenge *one of two* provisions bearing on higher education. Not so—Plaintiffs have standing to challenge Oklahoma

Statutes title 70, § 24-157(A)(1) and issue the Deposition Notices.  Plaintiffs reincorporate the arguments they make in response to State Defendants' Renewed Motion for Judgment on the Pleadings and briefly restate them below as relevant here.

### 1. State Defendants Misunderstand This Court's Dispositive Order.

H.B. 1775 addresses higher education across two distinct sentences within Oklahoma Statutes title 70, § 24-157(A)(1) ("**Section (A)(1)**").  The first instructs, "[n]o enrolled student of an institution of higher education within The Oklahoma State System of Higher Education shall be required to engage in any form of mandatory gender or sexual diversity training or counseling; provided, voluntary counseling shall not be prohibited" (the "**Training Sentence**"); the second states that "[a]ny orientation or requirement that presents any form of race or sex stereotyping or a bias on the basis of race or sex shall be prohibited" (the "**Requirement Sentence**").

This Court has not ruled that Plaintiffs lack standing to challenge H.B. 1775 or its higher-education provision, Section (A)(1), but rather that "Plaintiffs offer no authority or allegations that would support the proposition that any of them or of their members has a legally protected interest *in which university trainings and counseling sessions are mandatory as opposed to voluntary*."  Dispositive Order at 1170 (emphasis added). Therefore, this Court found that Plaintiffs lacked standing to bring claims challenging the *Training* Sentence.  *Id.*  But, in that same Dispositive Order, this Court rejected University Defendants' challenge to Plaintiffs' standing as to the *Requirement* Sentence.  *Id*. at 1173.[2]

---

[2] While the Court pointed to two examples of chilled speech in the classroom context, these

While the Training Sentence makes orientations and other non-classroom activities voluntary, the Requirement Sentence prohibits entire topics outright—such as those that the State Regents believe present a form of race or sex stereotyping. This Court's previous decision on standing already demonstrates that "restrict[ions on] what information an instructor may teach during the voluntary training or counseling sessions, or what information a student enrolled in such sessions may receive" can be sufficient to establish standing. Dispositive Order at 1170–1171. The prohibition of this information by the Requirement Sentence leads to the exact type of disparate impact that the Equal Protection Clause is designed to prevent. Accordingly, Plaintiffs have standing for each Deposition Notice.

> **2.    The Oklahoma Supreme Court's Decision Does Not Change This Court's Analysis.**

Nor should the Oklahoma Supreme Court's Order on the Certified Questions be read to extend this Court's holding with respect to the Training Sentence to the Requirement Sentence. *Compare Black Emergency Response Team v. Drummond*, 2025 OK 44, 571 P.3d 135 (2025) *with* Dispositive Order. The Oklahoma Supreme Court believes that its "conclu[sion] that the Legislature intended to prohibit orientation and the like that promote forms of race or sex stereotyping," supports that, "[b]ased on the Western District's dismissal order, Plaintiffs would not have standing to challenge the entirety of §

---

are but two examples that the Court deemed "sufficient at this stage to demonstrate an injury in fact for Plaintiffs' constitutional claims." *Id*. at 1173.

24-157(A)(1)."  *Drummond*, 2025 OK 44 ¶ 17.  But, for the following reasons, this is not the case.

As this Court recognized, by its plain and ordinary meaning, the Requirement Sentence can broadly encompass a wide swath of activity, including "everything from the courses demanded by a university for a degree to the assignments and readings demanded by a professor for a course."  Dispositive Order at 1172.  That this Court subsequently used two examples regarding classroom instruction to address Plaintiffs' injury in fact does not change that Plaintiffs have well-pled a number of allegations demonstrating State Defendants', including the State Regents', application of the Requirement Sentence resulting in injury in fact.  *See*, *e.g.*, Doc. 50 ¶ 3 ("university librarians are afraid to purchase materials related to race and gender," abridging students' access to the same), ¶ 7 (discussing changes in and outside the classroom context affected by the Act), ¶ 15–16 (noting that Plaintiff NAACP-Oklahoma's membership includes "Youth & College Division chapters at nearly every public university in Oklahoma," and detailing harms to NAACP-Oklahoma members).  The Oklahoma Supreme Court's Order on the Certified Questions does not affect Plaintiffs' standing to challenge the Requirement Sentence.

### B.   The Deposition Notices and Topics Are Relevant and Proportional to Plaintiffs' Equal Protection Claims.

This Court has made clear that *Arlington Heights* is the relevant standard for examining Plaintiffs' Equal Protection Clause claims.  *See* Dispositive Order (citing to the *Arlington Heights* Factors (defined below) when discussing "Plaintiffs' well-pled [Equal Protection] allegations").  Despite this, State Defendants maintain that Plaintiffs' discovery

requests "are not subject to *Arlington Heights* because (1) Plaintiffs bring a facial challenge; and (2) the factual scope of *Arlington Heights* cannot be applied to the present challenge to HB 1775." Mot. at 13.

This is nonsensical. As this Court has noted, "a facially neutral statute can violate equal protection if a challenger proves that [the legislature] enacted the statute for a discriminatory purpose or intent and the statute has a racially disparate impact." Dispositive Order at 1179 (quoting *United States v. Amador Bonilla*, 102 F.4th 1110, 1115 (10th Cir. 2024)). Plaintiffs seek relevant and proportional information bearing on whether H.B. 1775 was enacted for a discriminatory purpose or has had a racially disparate impact.

1. **The Scope of Permissible Discovery Under Rule 26 is Broad.**

Discovery for a claim governed by *Arlington Heights* is necessarily going to be broad, and indeed, the scope of discovery under Rule 26 in general is broad. Rule 26 permits discovery into any nonprivileged matter relevant to any party's claim or defense, regardless of its admissibility or any weight ultimately assigned to it. *See* Fed. R. Civ. P. 26.

Evaluating whether H.B. 1775 was passed by the Oklahoma legislature with discriminatory intent is an "inherently complex endeavor" that requires this Court "to perform a 'sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999) (quoting *Arlington Heights*, 429 U.S. at 266). As then-Judge Gorsuch noted, courts must often examine circumstantial evidence regarding intent, as "few are anxious to own up to a discriminatory intent and direct evidence of discrimination is hard to come by. Instead, courts often must draw

14

inferences about a law's intent or purpose from circumstantial evidence." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 686 (10th Cir. 2012) (opinion of Gorsuch, J., with Brorby, J., and Murphy, J. concurring in the result). Given these difficulties in evaluating whether the legislature acted with discriminatory intent, the *Arlington Heights* Factors seek to elicit the types of information that aid courts in evaluating challenged legislation.

State Defendants assert that, "[a]t most, Plaintiffs' discovery should be limited to the sole issue of whether the Oklahoma Legislature enacted HB 1775 with the purpose to discriminate in violation of the Equal Protection Clause." Mot. at 4. Plaintiffs are doing just that, by seeking deposition testimony bearing on the Topics, which each reflect one or several *Arlington Heights* Factors.

### 2. The *Arlington Heights* Factors Provide the Relevant Framework.

In *Arlington Heights*, the Supreme Court identified a list of non-exhaustive factors (the "***Arlington Heights* Factors**") for courts to consider as "subjects of proper inquiry in determining whether racially discriminatory intent existed," including: (i) the historical background and specific sequence of events leading to the decision; (ii) departures from the normal procedure and substantive norms; (iii) legislative history; and (iv) evidence that defendants' decision bears more heavily on one race than another (*i.e.*, disparate impact). *See Navajo Nation*, 975 F.2d at 743–44 (citing *Arlington Heights*, 429 U.S. at 267–68); *see also Dowell by Dowell v. Bd. of Educ. of Okla. City Pub. Schs.*, 8 F.3d 1501, 1518 (10th Cir. 1993). Courts evaluate the *Arlington Heights* Factors based on "the totality of the relevant facts," *see Washington v. Davis*, 426 U.S. 229, 242 (1976), and no one factor is

dispositive, *see Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 at 268 (1977).

This Court should reject State Defendants' invitation to revisit its prior decision that application of the *Arlington Heights* Factors is the relevant analysis here.    State Defendants' cases cited to the contrary are inapposite, as they largely (1) do not involve Equal Protection claims, *see Corner Post, Inc. v. Board of Governors of Federal Reserve Systems*, 603 U.S. 799 (2024) (interpretation of a federal statute); *Magwood v. Patterson*, 561 U.S. 320 (2010) (same); and/or (2) concern whether legislative statements are appropriately considered *in merits disputes* (not the relevance of such information in discovery), *see Citizens for Constitutional Integrity v. United States*, 57 F.4th 750, 768 (10th Cir. 2023).  And State Defendants' reliance on *Poe ex rel. Poe v. Drummond* is misplaced, as *Poe* itself cites to *Arlington Heights* for the recognition that "a state action may cause a discriminatory effect against a group and the effect 'may even be a foreseen (or known) consequence of state action.'"  *Poe*, --- F.4th ---, 2025 WL 2238038, at *3 (10 Cir. 2025) (first quoting *SECSYS*, 666 F.3d at 685; then citing *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); and then citing *Arlington Heights*, 429 U.S. 252 (1977)).  If anything, the decision strengthens Plaintiffs' argument that a proper evaluation of an Equal Protection claim looks at a variety of factors, including information regarding the statements of legislators and the history of the legislation in question (given that these are also factors that the Tenth Circuit examined in *Poe*).  *See id.* at *6–7.  *Poe* supports the unremarkable proposition that one of the many factors a court should consider when undertaking an *Arlington Heights* analysis is the legislative text—but it in no way discounts

the application or relevance of discovery regarding the other *Arlington Heights* Factors. *See id.* at \*7.

### 3.    Plaintiffs' Topics, Seeking Information Regarding Drafting, Enactment, Implementation, and Enforcement, Are Relevant.

State Defendants, discounting *Arlington Heights* and progeny in their entirety, maintain that *every* Topic is irrelevant.  To the contrary, the Topics all regard the drafting, enactment, implementation, and/or enforcement of the Act, and thus relate to one or more *Arlington Heights* Factors.

State Defendants refuse to acknowledge that information bearing on H.B. 1775's implementation and enforcement could possibly be relevant, ignoring binding caselaw and logic to discount entirely that the results of actions can suggest the reasons that motivated them.  *Compare* Mot. at 25 ("Topic 19 is irrelevant to the extent that the request asks for documents regarding the implementation and enforcement of HB 1775, as the implementation and enforcement materials are not relevant to the Plaintiffs' claim that the Legislature acted with discriminatory intent in passing HB 1775."); *with SECSYS*, 666 F.3d at 685 ("a discriminatory effect against a group or class may flow from state action, it may even be a foreseen (or known) consequence of state action").  Instead, the implementation and enforcement of H.B. 1775, and disparate impacts resulting therefrom, offer support for the existence of discriminatory intent during its passage.  *See*, *e.g.*, *SECSYS*, 666 F.3d at 685–86; *Arlington Heights*, 429 U.S. at 266.

State Defendants are in charge of enforcing H.B. 1775 in all Oklahoma public schools.  Specifically:  (1) the SBE promulgated the Rules, under which, for example,

teachers and educational institutions face severe sanctions for violating the Act's unclear parameters, including the loss of education licenses, certificates, and accreditation, *see, e.g.*, Doc. 50 ¶ 10; and State Regents are constitutionally endowed to manage university affairs[3] and thus have broad authority to determine standards and coursework across the state's higher education system. *See id.* ¶ 132. Plaintiffs' Common Topics Nos. 2, 3, 5, 7–15 and each of the SBE Topics are relevant because they seek documents relating to whether H.B. 1775's enforcement "bears more heavily on one race than another" or has a disparate impact on students and educators of color, *Arlington Heights*, 429 U.S. at 266 (quoting *Washington*, 426 U.S. at 242), and the SBE's and State Regents' testimonies on these topics will shine light on the Act's prior and ongoing disparate harms.[4]

Common Topics 1, 4, 6, 10, and 12 are relevant because they bear on the drafting and enactment of H.B. 1775, as well as the historical backdrop and specific sequence of events leading to its enactment. These Topics seek to investigate the following *Arlington Heights* Factors: (i) the historical background and specific sequence of events leading to

---

[3] Okla. CONST. art. XIII, § 3; *see also Bd. of Regents of Univ. of Okla. v. Baker*, 1981 OK 160, 638 P.2d 464, 467 (1981) (observing that the Oklahoma Constitution reflects an "inten[t] to limit legislative control over University affairs. Oklahoma is one of only a few states in which the legal status of public universities is constitutional rather than statutory.").

[4] State Defendants also argue that Plaintiffs cannot seek in discovery certain information regarding implementation and enforcement, because, due to the facial nature of Plaintiffs' claims, "any evidence of the specific implementation or enforcement of HB 1775 with respect to [Tulsa and Mustang Public Schools] is out of the scope of this challenge." Mot. at 26. This argument is nonsensical. Whether or not the school districts decide to challenge these enforcement actions is irrelevant to the fact that evidence bearing on H.B. 1775's disparate impact, including vis-à-vis the enforcement actions referenced in the Topics, is discoverable to Plaintiffs in this action.

the decision; (ii) departures from the normal procedure and substantive norms; and (iii) the legislative history.  *See Arlington Heights*, 429 U.S. at 267–68.  Testimony relating to these Topics would further shine light into whether H.B. 1775 was drafted and enacted by the Oklahoma legislature with discriminatory intent.  *See*, *e.g.*, *id.* at 268 ("legislative or administrative history may be highly relevant, especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports"); *Fowler v. Stitt*, 104 F.4th 770, 775, 787–88 (10th Cir. 2024), *cert. granted and judgment vacated on other grounds*, --- S. Ct. ---, 2025 WL 1787695 (2025) (relying on statements from Governor Stitt, over Defendant's objection, when holding Plaintiffs stated a claim that Executive Order 2021-24 violated Equal Protection); *Navajo Nation*, 975 F.2d at 744–45 (relying on "comments from a Department official" when affirming that New Mexico Human Services Department violated Equal Protection); *Arce v. Douglas*, 793 F.3d 968, 978 (9th Cir. 2015) (finding legislators' racially-coded statements, when coupled with other circumstantial factors, raised an inference of racial motive).

State Defendants' request to quash or for a protective order is inappropriate and unnecessary here, where Plaintiffs seek relevant testimony from appropriate deponents.[5]

---

[5] State Defendants also assert certain Topics may implicate the attorney-client privilege or deliberative process privilege.  *See* Mot. at 16, 18–19, 21–22.  A protective order is not necessary or warranted here to preserve these privileges.  First, Federal Rules of Civil Procedure 30 permits State Defendants to instruct their deponent not to answer when necessary to preserve a privilege.  *See* Fed. R. Civ. P. 30(c)(2).  Second, State Defendants' concerns with the deliberative process privilege, while overblown and unsupported, are also easily avoided, seeing as that privilege protects only predecisional and deliberative materials (leaving free for investigation factual and postdecisional matters).  *See*, *e.g.*, *Feltz v. Bd. of Cnty. Comm'rs of Cnty. of Tulsa*, No. 18-CV-298-

### C.    Plaintiffs Have Met Their Burden to Depose Ryan Walters, Joy Hofmeister and Carlisha Bradley.

Contrary to State Defendants' assertions, the testimonies of Ryan Walters, Joy Hofmeister, and Carlisha Bradley satisfy even a heightened relevance standard.  State Defendants cite to an inapposite case to declare "when the relevance of a discovery request or device is not apparent on the face of the request . . . itself, the proponent of the discovery bears the burden of making the initial showing of relevance," and "Plaintiffs have failed to make their initial relevance showings."  Mot. at 6 (quoting *Carlson v. Colo. Ctr. for Reprod. Med.*, *LLC*, 341 F.R.D. 266, 275 (D. Colo. 2022)).  But even pursuant to State Defendants' improper view that only information bearing on challenged legislation's enactment is discoverable, *see*, *e.g.*, Mot. at 14 ("evidence of implementation is not probative to show that the Legislature passed HB 1775 with a discriminatory purpose"), this position strains credulity.  Far from "current and former State officials with little or no relation to the enactment of the challenged legislation," *see* Mot. at 6, the noticed depositions of Ryan Walters, Joy Hofmeister, and Carlisha Bradley are appropriate because each individual:  (1) has first-hand knowledge of essential information (including with respect to the Act's enactment, implementation, and enforcement); (2) their testimony about the same is likely to be admissible; and (3) the information cannot be obtained from

---

CVE-JFJ, 2020 WL 2039250 (N.D. Okla. Apr. 29, 2020) (denying a pre-deposition, privilege-based protective order over claims of deliberative process privileges).  *Feltz* also suggests the deliberative process privilege may not serve as a bar to discovery at all here, as it recognizes "[c]ourts have also held, in the context of legislative [deliberative process] privileges, that privilege may be overcome if the government's intent and motivations are at issue."  *Id.* at *11.

alternative sources or less burdensome means.  *See In re Office of Utah Att'y Gen.*, 56 F.4th 1254, 1260 (10th Cir. 2022).

Ryan Walters, as the current Superintendent of Public Instruction, is uniquely situated to speak to the ongoing effects of H.B. 1775—indeed, he is charged with implementing them.  Ryan Walters has also made public statements relevant to H.B. 1775's disparate impact on students and educators of color, such as that the Tulsa Race Massacre should be taught in public schools without mentioning race.  *See* KOCO 5 News, *Ryan Walters answers questions regarding Tulsa Race Massacre education*, YOUTUBE (July 8, 2023), https://www.youtube.com/watch?v=gCrlgt_1djY.  Ryan Walters—who was also proximate to the Act's passage and enactment, serving at the time as Governor Stitt's Secretary of Education—is the best source to discuss statements like these and their motivations and effects, which testimony is likely to be admissible.  While the weight ultimately assigned to this testimony may be obscure, its relevance and discoverability is not.

Joy Hofmeister was the Oklahoma State Superintendent and President of the SBE, when, as directed by H.B. 1775, the SBE approved emergency rules in July 2021 regarding the implementation and enforcement of H.B. 1775.  *See*, *e.g.*, Doc. 50 ¶ 57.  After the SBE announced that these emergency rules required a revote because of "technical errors," Superintendent Hofmeister blamed the unspecified "scrivener's errors" on a "rushed and unorthodox process" (on September 10, 2021, the SBE re-approved the Rules, identical in substance to the July emergency rules but with the technical errors corrected).  *See id*. ¶¶ 143–144.  Carlisha Bradley is the sole SBE member to have voted against the Rules, after

21

speaking out in length in opposition to them, emphasizing that: (1) H.B. 1775 is predicated on misunderstanding of Critical Race Theory; (2) the Rules were subject to an opaque process that did not prepare the SBE for their vote; and (3), because of the rushed process, schools, teachers, and students were not able to weigh in on potential impacts. *See id.* ¶¶ 139–141. Thus, Joy Hofmeister and Carlisha Bradley are uniquely situated to speak to this process, and their impressions about the same are not available from other sources. Further, it is confounding to Plaintiffs how State Defendants can, on the one hand, claim the Hofmeister and Bradley Notices are irrelevant, *see* Mot. at 10–11, and, on the other, compare their putative testimonies to "an amicus brief" (which are necessarily relevant to the issues about which they are submitted), *see id.* at 11.

Ironically—while Ryan Walters's, Joy Hofmeister's, and Carlisha Bradley's depositions are the only sources for their oral testimonies, which are likely the best available sources of evidence for Plaintiffs' *Arlington Heights*-based subjects of inquiry— it is the State Defendants themselves who are ensuring information bearing on the same cannot be obtained from alternative sources, as State Defendants are refusing to produce a single document, *see* Motion to Compel, and actively seeking to foreclose other avenues of discovery, such as by moving to quash Plaintiffs' third-party Subpoenas, *see* Doc. 277.

Given their relevance and Plaintiffs' inability to otherwise obtain the necessary information, these depositions satisfy the "extraordinary circumstances test." *See*, *e.g.*, *In re United States Dep't of Com.*, No. 18-2856, 2018 WL 6006885, at *1 (2d Cir. Oct. 9, 2018) (refusing to quash the deposition of the United States Secretary of Commerce, because "[d]epositions [of high-ranking officials], though generally disfavored, may be

appropriate if the official has 'unique first-hand knowledge related to the litigated claims,' or 'the necessary information cannot be obtained through other, less burdensome or intrusive means.'").

## V.    CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court deny State Defendants' Motion for Protective Order and Motion to Quash Plaintiffs' Notices of Deposition and Subpoenas to Testify at a Deposition in a Civil Trial.

Date: September 8, 2025                                     Respectfully submitted,

/s/ Maya Brodziak
Maya Brodziak
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
  UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
mbrodziak@lawyerscommittee.org

Megan Lambert
Oklahoma Bar Number: 33216
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
mlambert@acluok.org

Emerson Sykes
Leah Watson
Sarah Hinger
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
esykes@aclu.org
lwatson@aclu.org

shinger@aclu.org

Douglas Koff
Julia Beskin
Sara Solfanelli
Kevin Scot Johns
Adam Kimelman
MCDERMOTT WILL & SCHULTE LLP
919 Third Avenue New York, NY 10022
douglas.koff@srz.com
julia.beskin@srz.com
sara.solfanelli@srz.com
kevin.johns@srz.com
adam.kimelman@srz.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2025, I electronically filed the foregoing Response Brief with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

Respectfully submitted,

*/s/ Maya Brodziak*
Maya Brodziak
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
mbrodziak@lawyerscommittee.org

*Counsel for Plaintiffs*